# Exhibit A

# Case No. 1:12-cv-1332

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

---

*To* The Honorable Eric H. Holder Jr., Attorney General of the United States
SERVE: Faith Burton, Special Counsel, Office of Legislative Affairs

You are hereby commanded to be and appear before the Committee on Oversight and Government Reform

of the House of Representatives of the United States at the place, date and time specified below.

☐ **to testify** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: ____________________

Date: ____________ Time: ____________

☑ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of production: 2157 Rayburn House Office Building, Washington D.C. 20515

Date: October 25, 2011 Time: 12:00 noon

*To* any authorized staff member

____________________ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at the city of Washington, this 11th day of October, 2011.

[signature]
*Chairman or Authorized Member*

Attest: [signature: Karen L. Haas]
*Clerk*

## SCHEDULE

**In accordance with the attached schedule instructions, you, Eric H. Holder Jr., are required to produce all records in unredacted form described below:**

1. All communications referring or relating to Operation Fast and Furious, the Jacob Chambers case, or any Organized Crime Drug Enforcement Task Force (OCDETF) firearms trafficking case based in Phoenix, Arizona, to or from the following individuals:

   a. Eric Holder Jr., Attorney General;

   b. David Ogden, Former Deputy Attorney General;

   c. Gary Grindler, Office of the Attorney General and former Acting Deputy Attorney General;

   d. James Cole, Deputy Attorney General;

   e. Lanny Breuer, Assistant Attorney General;

   f. Ronald Weich, Assistant Attorney General;

   g. Kenneth Blanco, Deputy Assistant Attorney General;

   h. Jason Weinstein, Deputy Assistant Attorney General;

   i. John Keeney, Deputy Assistant Attorney General;

   j. Bruce Swartz, Deputy Assistant Attorney General;

   k. Matt Axelrod, Associate Deputy Attorney General;

   l. Ed Siskel, former Associate Deputy Attorney General;

   m. Brad Smith, Office of the Deputy Attorney General;

   n. Kevin Carwile, Section Chief, Capital Case Unit, Criminal Division;

   o. Joseph Cooley, Criminal Fraud Section, Criminal Division; and,

   p. James Trusty, Acting Chief, Organized Crime and Gang Section.

2. All communications between and among Department of Justice (DOJ) employees and Executive Office of the President employees, including but not limited to Associate Communications Director Eric Schultz, referring or relating to Operation Fast and Furious or any other firearms trafficking cases.

3. All communications between DOJ employees and Executive Office of the President employees referring or relating to the President's March 22, 2011 interview with Jorge Ramos of Univision.

4. All documents and communications referring or relating to any instances prior to February 4, 2011 where the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) failed to interdict weapons that had been illegally purchased or transferred.

5. All documents and communications referring or relating to any instances prior to February 4, 2011 where ATF broke off surveillance of weapons and subsequently became aware that those weapons entered Mexico.

6. All documents and communications referring or relating to the murder of Immigrations and Customs Enforcement Agent Jaime Zapata, including but not limited to documents and communications regarding Zapata's mission when he was murdered, Form for Reporting Information That May Become Testimony (FD-302), photographs of the crime scene, and investigative reports prepared by the FBI.

7. All communications to or from William Newell, former Special Agent-in-Charge for ATF's Phoenix Field Division, between:

   a. December 14, 2010 to January 25, 2011; and,

   b. March 16, 2009 to March 19, 2009.

8. All Reports of Investigation (ROIs) related to Operation Fast and Furious or ATF Case Number 785115-10-0004.

9. All communications between and among Matt Axelrod, Kenneth Melson, and William Hoover referring or relating to ROIs identified pursuant to Paragraph 8.

10. All documents and communications between and among former U.S. Attorney Dennis Burke, Attorney General Eric Holder Jr., former Acting Deputy Attorney General Gary Grindler, Deputy Attorney General James Cole, Assistant Attorney General Lanny Breuer, and Deputy Assistant Attorney General Jason Weinstein referring or relating to Operation Fast and Furious or any OCDETF case originating in Arizona.

11. All communications sent or received between:

    a. December 16, 2009 and December 18, 2009, and;

    b. March 9, 2011 and March 14, 2011, to or from the following individuals:

       i. Emory Hurley, Assistant U.S. Attorney, Office of the U.S. Attorney for the District of Arizona;

       ii. Michael Morrissey, Assistant U.S. Attorney, Office of the U.S. Attorney for the District of Arizona;

       iii. Patrick Cunningham, Chief, Criminal Division, Office of the U.S. Attorney for the District of Arizona;

       iv. David Voth, Group Supervisor, ATF; and,

       v. Hope MacAllister, Special Agent, ATF.

12. All communications sent or received between December 15, 2010 and December 17, 2010 to or from the following individuals in the U.S. Attorney's Office for the District of Arizona:

    a. Dennis Burke, former United States Attorney;

    b. Emory Hurley, Assistant United States Attorney;

    c. Michael Morrissey, Assistant United States Attorney; and,

    d. Patrick Cunningham, Chief of the Criminal Division.

13. All communications sent or received between August 7, 2009 and March 19, 2011 between and among former Ambassador to Mexico Carlos Pascual; Assistant Attorney General Lanny Breuer; and, Deputy Assistant Attorney General Bruce Swartz.

14. All communications sent or received between August 7, 2009 and March 19, 2011 between and among former Ambassador to Mexico Carlos Pascual and any Department of Justice employee based in Mexico City referring or relating to firearms trafficking initiatives, Operation Fast and Furious or any firearms trafficking case based in Arizona, or any visits by Assistant Attorney General Lanny Breuer to Mexico.

15. Any FD-302 relating to targets, suspects, defendants, or their associates, bosses, or financiers in the Fast and Furious investigation, including but not limited to any FD-302s ATF Special Agent Hope MacAllister provided to ATF leadership during the calendar year 2011.

16. Any investigative reports prepared by the FBI or Drug Enforcement Administration (DEA) referring or relating to targets, suspects, or defendants in the Fast and Furious case.

17. Any investigative reports prepared by the FBI or DEA relating to the individuals described to Committee staff at the October 5, 2011 briefing at Justice Department headquarters as Target Number 1 and Target Number 2.

18. All documents and communications in the possession, custody or control of the DEA referring or relating to Manuel Fabian Celis-Acosta.

19. All documents and communications between and among FBI employees in Arizona and the FBI Laboratory, including but not limited to employees in the Firearms/Toolmark Unit, referring or relating to the firearms recovered during the course of the investigation of Brian Terry's death.

20. All agendas, meeting notes, meeting minutes, and follow-up reports for the Attorney General's Advisory Committee of U.S. Attorneys between March 1, 2009 and July 31, 2011, referring or relating to Operation Fast and Furious.

21. All weekly reports and memoranda for the Attorney General, either directly or through the Deputy Attorney General, from any employee in the Criminal Division, ATF, DEA, FBI,

or the National Drug Intelligence Center created between November 1, 2009 and September 30, 2011.

22. All surveillance tapes recorded by pole cameras inside the Lone Wolf Trading Co. store between 12:00 a.m. on October 3, 2010 and 12:00 a.m. on October 7, 2010.

**Schedule Instructions**

1. In complying with this subpoena, you are required to produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. You should also produce documents that you have a legal right to obtain, that you have a right to copy or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party. Subpoenaed records, documents, data or information should not be destroyed, modified, removed, transferred or otherwise made inaccessible to the Committee.

2. In the event that any entity, organization or individual denoted in this subpoena has been, or is also known by any other name than that herein denoted, the subpoena shall be read also to include that alternative identification.

3. The Committee's preference is to receive documents in electronic form (i.e., CD, memory stick, or thumb drive) in lieu of paper productions.

4. Documents produced in electronic format should also be organized, identified, and indexed electronically.

5. Electronic document productions should be prepared according to the following standards:

   (a) The production should consist of single page Tagged Image File ("TIF"), files accompanied by a Concordance-format load file, an Opticon reference file, and a file defining the fields and character lengths of the load file.

   (b) Document numbers in the load file should match document Bates numbers and TIF file names.

   (c) If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

6. Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, box or folder is produced, each CD, hard drive, memory stick, thumb drive, box or folder should contain an index describing its contents.

7. Documents produced in response to this subpoena shall be produced together with copies of file labels, dividers or identifying markers with which they were associated when the subpoena was served.

8. When you produce documents, you should identify the paragraph in the Committee's schedule to which the documents respond.

9. It shall not be a basis for refusal to produce documents that any other person or entity also possesses non-identical or identical copies of the same documents.

10. If any of the subpoenaed information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), you should consult with the Committee staff to determine the appropriate format in which to produce the information.

11. If compliance with the subpoena cannot be made in full by October 25, 2011 at 12:00 noon, compliance shall be made to the extent possible by that date. An explanation of why full compliance is not possible shall be provided no later than October 23, 2011 at 12:00 noon.

12. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author and addressee; and (e) the relationship of the author and addressee to each other.

13. If any document responsive to this subpoena was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

14. If a date or other descriptive detail set forth in this subpoena referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the subpoena, you are required to produce all documents which would be responsive as if the date or other descriptive detail were correct.

15. With the exception of paragraphs 4 and 5, the time period covered by this subpoena is from August 1, 2009 to the present, unless otherwise specified.

16. This subpoena is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data or information, not produced because it has not been located or discovered by the return date, shall be produced immediately upon subsequent location or discovery.

17. All documents shall be Bates-stamped sequentially and produced sequentially.

18. Two sets of documents shall be delivered, one set to the Majority Staff and one set to the Minority Staff. When documents are produced to the Committee, production sets shall be delivered to the Majority Staff in Room 2157 of the Rayburn House Office Building and the Minority Staff in Room 2471 of the Rayburn House Office Building.

19. Upon completion of the document production, you should submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive

documents; and (2) all documents located during the search that are responsive have been produced to the Committee.

## Schedule Definitions

1. The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone call, meeting or other communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, email (desktop or mobile device), text message, instant message, MMS or SMS message, regular mail, telexes, releases, or otherwise.

3. The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this subpoena any information which might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neuter genders.

4. The terms "person" or "persons" mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, business or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

5. The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; and (b) the individual's business address and phone number.

6. The term "referring or relating," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with or is pertinent to that subject in any manner whatsoever.

7. The term "employee" means agent, borrowed employee, casual employee, consultant, contractor, de facto employee, independent contractor, joint adventurer, loaned employee, part-time employee, permanent employee, personnel, provisional employee, staffer, subcontractor, or any other type of service provider.

8. The terms "Target Number 1" and "Target Number 2" mean the individuals identified as such during the October 5, 2011 briefing for congressional staff provided by FBI, DEA, ATF, and DOJ employees at DOJ headquarters.

# PROOF OF SERVICE

Subpoena for The Honorable Eric H. Holder Jr., Attorney General of the United States
SERVE: Faith Burton, Special Counsel, Office of Legislative Affairs

Address 950 Pennsylvania Avenue NW

Washington, D.C. 20530-0001

before the Committee on Oversight and Government Reform

*U.S. House of Representatives*
*112th Congress*

---

Served by (print name) Steve Castor

Title Chief Counsel for Investigations

Manner of service by e-mail per agreement

Date 10/12/11

Signature of Server [signature]

Address 2157 RHOB, WDC 20515