```
1                    UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF COLUMBIA

3
       ---------------------------------  :
4      COMMITTEE ON OVERSIGHT AND          :  Case No. 12-CV-1332
       GOVERNMENT REFORM, UNITED STATES    :  January 10, 2013
5      HOUSE OF REPRESENTATIVES,           :  Thursday
                                           :
6                   Plaintiff,             :  10:04 a.m. - 10:19
                                           :  a.m.
7      v.                                  :
                                           :
8      ERIC H. HOLDER, JR.,                :
                                           :
9                   Defendant.             :
       ---------------------------------
10

11

12    TRANSCRIPT OF STATUS CONFERENCE BEFORE THE HONORABLE AMY BERMAN
               JACKSON, UNITED STATES DISTRICT JUDGE
13

14   APPEARANCES:

15   For the Plaintiff:   Kerry W. Kircher and William Pittard
                          219 Cannon Building
16                        Washington, DC 20515
                          (202) 225-9700
17
     For the Defendant:   Ian Gershengorn, Eric Womack, Gregory
18                        Dworkowitz, John Tyler and Luke Jones
                          950 Pennsylvania Avenue, NW
19                        Washington, DC 20530
                          (202) 514-2331
20
     Court Reporter:      Kellie M. Humiston, RMR, CRR
21                        Room 6720, U.S. Courthouse
                          Washington, DC 20001
22                        (202) 354-3187

23

24
     Proceedings reported by machine shorthand, transcript
25   produced by computer-aided transcription.
```

1                    P R O C E E D I N G S

2

3          THE CLERK:  Your Honor, calling civil matter 12-1332,
4   Committee on Oversight and Government Reform, United States House
5   of Representatives v. Eric H. Holder, Junior.
6          Counsel, please approach the lectern and identify
7   yourselves for the record.
8          MR. KIRCHER:  Morning, Your Honor.  Kerry Kircher and
9   William Pittard for the Committee.
10         THE COURT:  Good morning.
11         MR. PITTARD:  Good morning.
12         MR. GERSHENGORN:  Good morning, Your Honor.  Ian
13  Gershengorn from the Justice Department.  With me at counsel
14  table, Eric Womack, Luke Jones, Greg Dworkowitz and John Tyler
15  from the Department of Justice.
16         THE COURT:  All right.  Good morning.  This date was
17  originally set for a hearing on the motion to dismiss.  The
18  hearing was put off at plaintiff's request with the consent of
19  the defendant so that plaintiff could have the opportunity to
20  file a response to the amicus brief that was filed in this case.
21  So today is just going to be a status conference.  And the
22  parties have submitted a status report, which I appreciated, but
23  it indicates that there are a few things we need to discuss.
24         The first thing is the issuance of the new subpoena.
25  The 112th Congress that issued the subpoena at issue in this case

1   adjourned and the subpoena itself therefore expired, but on
2   January 3rd, 2013, the House Oversight Committee of the 113th
3   Congress expeditiously issued a new substantially identical
4   subpoena.  So anybody who says that Congress can't get things
5   done is wrong.
6           The defendant has advised the Court that he's not
7   taking the position that the case should be dismissed on mootness
8   or ripeness grounds.  And the Court really wouldn't have been
9   inclined to do that, to dismiss the case on those grounds in any
10  event, but I do agree with the defendant that I think the
11  complaint needs to be amended.
12          What's pending before the Court is a lawsuit to enforce
13  a particular subpoena attached to the complaint as Exhibit A.
14  Since it's expired, I believe it's necessary for the plaintiff to
15  amend the complaint and add the recent events and substitute the
16  new subpoena.
17          So Mr. Kircher, how much time do you need to do that?
18  I don't think this is -- we're not going to hold the case until
19  it gets done, but when do you think you can have it?
20          MR. KIRCHER:  Would next Tuesday be all right, Your
21  Honor?
22          THE COURT:  Next Tuesday would be fine.  You may have
23  until whatever that is, the 22nd.  Is that the --
24          THE CLERK:  The 15th.
25          THE COURT:  Oh, next Tuesday.

1             MR. KIRCHER:  Next Tuesday.

2             THE COURT:  Okay.  The 15th to amend the complaint,

3    January 15th.

4             There is a pending motion to dismiss in this case, and

5    with the exception of the anticipated response to the amicus

6    brief, it's been fully briefed, so on that point, I agree with

7    the plaintiff that the matter need not be briefed again.  I'm

8    going to deem the motion to dismiss and the supporting and

9    opposing memoranda to apply to the amended complaint, which is

10   certainly not an unusual occurrence.

11            If I determine that I have jurisdiction to enforce the

12   subpoena at all and I reach the question of whether I should

13   decline to do so anyway in an exercise of my equitable

14   discretion, and the question of the extent of negotiation and

15   accommodation becomes irrelevant, even those issues have already

16   been briefed by the parties.

17            The defense has advanced further arguments in the

18   status report, and the notice in the status report pretty clearly

19   reflect that there was no further negotiation conducted by the

20   newly constituted Committee before the subpoena was reissued.

21   Should further briefing be necessary on that narrow issue, at

22   that time I'll direct the parties to submit supplemental

23   memoranda on it, but right now I don't think that's going to be

24   necessary.

25            So that brings me to another issue that was raised at

1    the status conference and raised in the status report, and that
2    is the question of the presidential communications privilege.
3    The Committee seems bound and determined to put before the Court
4    the question of whether the Attorney General is withholding any
5    documents on the grounds of the presidential communications
6    privilege as opposed to the executive privilege.
7              Count 2 of the complaint alleges that the Attorney
8    General quote, may, close quote, contend that the privilege
9    assertion in the June 20th, 2012, letter was meant to assert that
10   privilege, and that, quote, in the event he does, the Court
11   should provide relief.
12             I think as the Committee undertakes the exercise of
13   amending the complaint, it needs to keep in mind that an
14   Article III court can only address live cases and controversies,
15   and that there may be some serious question about a count that
16   asks me to take some action in the event something may happen in
17   the future.
18             Also on that subject at the last status hearing,
19   counsel for the House asked me to ask the defense if it was in
20   fact asserting that privilege.  And I'm not really aware of a
21   procedural mechanism that provides for one party to put questions
22   to me to put to the other party at this stage in proceedings, but
23   in the status report, the Attorney General went ahead and
24   answered the question anyway, and it stated what Count 2
25   indicated was already apparent to the Committee, that the June

1  letter did not assert the presidential communications privilege.
2  So an assertion of that privilege is not before me and what might
3  happen in the future is also not before me.
4          The Committee issued a subpoena, the Attorney General
5  asserted executive privilege, the Committee brought this action
6  seeking a declaration that the assertion of the privilege was
7  invalid and that an order that the documents be produced should
8  be issued.  The Attorney General moved to dismiss that action,
9  telling me that I don't have jurisdiction to hear it at all, or
10 that if I do, I should exercise discretion and not grant the
11 relief sought on separation of powers grounds, that I should let
12 you work it out among yourselves.  That's what's pending before
13 me, all of which brings me to the fourth thing I want to address
14 today.
15         As I said before, the Court can only hear controversies
16 that are ripe for determination.  Ordinarily it can't sort of
17 kind of generally oversee a dispute that sort of kind of
18 generally is in the process of taking shape and take positions on
19 what the parties might or might not do in the future, but the
20 plaintiff keeps inviting me to do that, to anticipate an issue
21 that in the House's words in the status report, quote, has the
22 potential to narrow the scope, close quote, of the dispute.
23         Meanwhile, the defense, while it specifically took the
24 position that the case should not be dismissed on ripeness
25 grounds or mootness grounds, did ask me to consider the fact

1    that, quote, a number of factors have changed, close quote,

2    quote, including new issues facing the parties in the wake of the

3    elections, close quote.

4            I think that those issues probably really do not go to

5    my power to hear the case.  And while the extent of negotiation

6    and accommodation may go to whether or not I should exercise my

7    jurisdiction if I have it, it's still unlikely that it's going to

8    be appropriate for me to decide this case based on a view of

9    whether this subpoena or this investigation is something that

10   Congress should devote its resources to, given the issues facing

11   the parties in the wake of the elections.  I don't think that's

12   the level of oversight of the House that I have.

13           But at bottom what struck me after I read the status

14   report and reread the complaint is that what you're telling me is

15   the same thing that the plaintiff is telling me, which is this is

16   a dynamic, ongoing process.  All of which brings me right back to

17   where I was last time.

18           At the last status conference, I noted that the DOJ

19   Inspector General had recently issued a report, and I raised the

20   question of whether that circumstance, even if it doesn't have

21   legal significance for the case, had altered the landscape of

22   what DOJ was willing or not willing to disclose or in fact had

23   already made part of the public record.  According to the report

24   itself, the IG based the report on the review of a hundred

25   thousand documents, and many of those documents are described in

1    the report.
2            So for that reason, as well as the others that I put on
3    the record last time, and I'm not going to repeat, I asked the
4    parties whether I should order them to participate in some sort
5    of mediation, whether this dispute is being narrowed by
6    activities that are going on on both sides while the case is
7    sitting here frozen as it was filed originally.  What you've said
8    to me in the status report suggests again that there may be some
9    benefit to the parties working out what's left of this on their
10   own without a ruling from me on the significant jurisdictional
11   question.  You told me last time, there's really no need to order
12   us to do that, Judge, because we're going to meet on our own, and
13   you've now reported that you met once on December 7th.
14           Three weeks later, the defense counsel sent plaintiff's
15   counsel a letter, and House counsel has responded to that letter.
16   I don't know what you said.  I don't want to know.
17           I am fully aware that both Congress and the executive
18   branch had a few things to do in late December, but the pace of
19   the negotiations isn't encouraging, given the fact that we have a
20   pending motion to dismiss and a hearing date that's already been
21   put off once.
22           So I don't intend to take the February hearing date off
23   the calendar unless you both ask me to do that, but I do want to
24   know, given the way that you've both described this litigation
25   and given the changing nature of the dispute, why I shouldn't go

1  ahead and order you to meet with a senior judge for the purpose
2  of mediation this time.
3          Mr. Kircher?
4          MR. KIRCHER:  The reason I think you should not do
5  that, Your Honor, is I don't believe it will do any good.  I
6  think the parties are perfectly capable of reaching a resolution
7  if a resolution is in the cards.  To be frank with the Court, I'm
8  not optimistic about that at this point.  As the status report
9  indicated, we did meet, we did exchange correspondence.
10         You're obviously free to do what you want.  I'm just --
11 I will tell you, I'm not encouraged by where the parties stand,
12 and for that reason I think it would be largely a waste of time
13 to appoint a mediator.  And that's -- that's the House's position
14 on that.
15         THE COURT:  All right.  Thank you.
16         MR. GERSHENGORN:  Your Honor, I -- a couple things.
17 On -- first on the point you raised on mootness and ripeness and
18 the issue raised in the status report, if Your Honor would like
19 additional briefing on that, how the change in Congress and the
20 subpoena re-issuance affects equitable discretion, we'd be happy
21 to provide that to the Court if the Court would desire additional
22 briefing on that.
23         On the specific issue here about reference to the
24 mediator, I guess we remain more optimistic than Mr. Kircher that
25 agreement can be reached.  I guess our sense is at the moment

1  that I would characterize it as premature.  We're hoping -- we
2  are planning to respond to Mr. Kircher's letter, and hope to do
3  so promptly.
4          THE COURT:  You would characterize what as premature,
5  an order sending you to a mediator?
6          MR. GERSHENGORN:  That's right, Your Honor.  I think
7  that right now the way to -- the way to proceed is the way we
8  have been proceeding:  direct discussions between the executive
9  branch and Congress.  And I would agree with Mr. Kircher that
10 that process should be allowed to continue.
11         THE COURT:  Well, I'd like the process to continue.
12 I'd like the process to speed up.  As I said, I set the motion to
13 dismiss down for a prompt hearing because everybody wanted a
14 prompt hearing.  I postponed it once because I was asked to
15 postpone it once.
16         I'm prepared to have a prompt hearing on this, but it's
17 a complicated issue, it's going to involve a lot of thought, it's
18 going to involve an opinion that will have some bearing in the
19 future on future investigations by the House.  And whether you
20 want another opinion out of this Court on that issue that
21 essentially has an all-or-nothing result as opposed to a
22 negotiated solution that deals with the narrow question before
23 you, which is these documents, many of which have now been
24 revealed to the public, that's up to you, obviously, but it's
25 something that you should think about.

1        You know what the date of the hearing is, so I think if
2   it takes three weeks to respond to their letter again, then we're
3   not going to get anywhere.  And I really don't want to prepare
4   for a hearing, have a hearing, start writing the opinion and --
5   and then found out that you resolved the case.
6        If you're really at the point on the eve of hearing
7   where the conversations have gotten more productive and you think
8   we should put the hearing off for a couple of weeks, I would
9   appreciate it if you'd let me know.  If you think that the
10  hearings are productive, but having a neutral person in the room
11  that would actually make you be in the room instead of waiting
12  three weeks to write a letter would also help, I'm happy to order
13  that.
14       I'm still going to consider whether I'm going to order
15  it anyway, but since neither one of you is asking for it, I'm not
16  inclined to do it, so I don't think I will, but all you have to
17  do is call chambers if you think it's useful.  And all you need
18  to do is file something if you think that you are sufficiently
19  down the road that the hearing would be premature, you can let me
20  know that.
21       MR. GERSHENGORN:  Okay.  Thank you, Your Honor.
22       THE COURT:  All right.  In terms of your filing
23  supplemental briefs, I'm going to hold off on waiting to see if I
24  actually need them.
25       Is there anything else I need to take up on behalf of

1   the plaintiff today?

2           MR. KIRCHER:  One later matter, Your Honor.  I was

3   wondering whether you were intending to allocate a certain amount

4   of time for oral argument, so that I could, and the defendants

5   could, plan accordingly?

6           THE COURT:  I don't generally do that.

7           MR. KIRCHER:  Okay.

8           THE COURT:  So if it's an important case, I like to

9   hear what you have to say.  I think anybody who's ever been in

10  this courtroom probably knows that you may not get to say what

11  you had to say.  I tend to ask a lot of questions, but I also do

12  have a practice of asking when I'm finished with that exercise if

13  there's anything left that we didn't cover.  So you should be

14  prepared to tell me what you think I need to hear.  And I'm not

15  going to set a time limit.

16          MR. KIRCHER:  Very well, Your Honor.

17          THE COURT:  Generally I would say that court reporters

18  and lawyers and the court staff enjoy lunch.

19          MR. KIRCHER:  Very good.  That's all I wanted to hear,

20  Your Honor.

21          THE COURT:  Okay.

22          MR. KIRCHER:  Thank you.

23          THE COURT:  Anything on behalf of the defense?

24          MR. GERSHENGORN:  No, Your Honor.

25          THE COURT:  All right.  Okay.  Is -- I don't think the

1  parties are here for the next matter?
2           THE CLERK:  No, Your Honor.
3           THE COURT:  All right.  Thanks very much.
4              (Proceedings adjourned at 10:19 a.m.)
5
6              CERTIFICATE OF OFFICIAL COURT REPORTER
7
8           I, Kellie M. Humiston, RMR, CRR, certify that
9  the foregoing is a correct transcript from the record of
10 proceedings in the above-entitled matter.
11
12                                     January 11, 2013
   _____         _____
13 Kellie M. Humiston                  Dated
14
15
16
17
18
19
20
21
22
23
24
25