## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM, UNITED STATES HOUSE OF REPRESENTATIVES, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:12-cv-1332 (ABJ) |
| ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT'S MOTION FOR CERTIFICATION OF THIS COURT'S SEPTEMBER 30, 2013 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

## INTRODUCTION

This Court's September 30, 2013 Order denying Defendant's Motion to Dismiss demonstrates that this Court's ruling regarding the reviewability of the President's claim of Executive Privilege in response to a Congressional subpoena is "of special consequence" to the relationship between the Branches and the constitutional separation of powers. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009).  And it presents questions that have not yet been resolved by the Circuit, and therefore merits certification for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  *See id*.  Indeed, the Circuit already has acknowledged the significance of such questions in another matter, although it did not ultimately adjudicate that case.  The Circuit granted a stay of the *Miers* decision based, in part, on its conclusion that the implications of a justiciability ruling over this type of inter-Branch dispute are "of potentially great significance for the balance of power between the Legislative and Executive Branches." *Comm. on the Judiciary of the United States House of Reps. v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (per curiam).  The significance and novelty of the issues at hand, and that the Circuit has not yet resolved them, make certification warranted here.

A decision by the D.C. Circuit now on the threshold issues presented would, if decided in Defendant's favor, conclude the litigation because the case would be dismissed.  That would preserve the resources of the parties and this Court from further litigation.  It also would avoid further judicial proceedings on the merits of the Executive Privilege dispute between the Branches in a case where such proceedings may ultimately be wholly unnecessary if the Circuit rules that the matter does not belong in the courts to begin with.  And those judicial proceedings, themselves, would compromise the separation of powers under the Defendant's view of the

1

issues.  Thus, the D.C. Circuit should have the opportunity to resolve the fundamental issues of whether such proceedings can even take place, before those proceedings move forward.

Therefore, in light of the "potentially great significance" of the issues that are presented by Defendant's Motion to Dismiss, and decided by the Court's September 30, 2013 Order, Defendant respectfully requests that this Court certify its decision for interlocutory appeal and stay further proceedings pending the disposition of that appeal.  *Miers*, 542 F.3d at 911.

Pursuant to Local Civil Rule 7(m), counsel for Defendant has consulted with counsel for Plaintiff, who indicates that the Committee intends to advise the Court of its position on the Attorney General's motion once it has reviewed the motion papers.

## BACKGROUND

On October 15, 2012, Defendant moved to dismiss the present suit, in which the Committee seeks post-February 4, 2011 documents related to its allegations of obstruction and responsive to paragraphs 1, 4, 5 and 10 of the subpoena issued to Defendant.  The motion argued, among other things, that judicial involvement in a dispute concerning the Committee's efforts to obtain enforcement of a subpoena against the Executive Branch is inconsistent with the process of negotiation and accommodation between the two Branches, which has historically governed such disputes, and would result in a concomitant harm to the separation of powers.  *See* ECF No. 13.  The motion raised various bases for dismissal, including the Committee's lack of standing and the Court's lack of constitutional or statutory jurisdiction, the absence of a cause of action, and the compelling reasons to invoke the discretionary power of this Court to refuse to exercise jurisdiction over this dispute between the political Branches.  *See id*.

On September 30, 2013, the Court denied Defendant's motion with respect to the first count of the Committee's Amended Complaint.  *See* Mem. Op., ECF No. 52.  The Court held

that, for reasons detailed in its Opinion and "set forth in [*Committee on the Judiciary v.*] *Miers*,"
558 F. Supp. 2d 53 (D.D.C. 2008), "neither the Constitution nor prudential considerations
require judges to stand on the sidelines." *See id*. at 4.  Rather, in the Court's view, "the narrow
legal question posed by the complaint is precisely the sort of crisp legal issue that courts are
well-equipped to address and routinely called upon to resolve." *Id*.  In addition, the Court
expressed its view that "[t]here is federal subject matter jurisdiction over this complaint, and it
alleges a cause of action that plaintiff has standing to bring." *Id*.

With respect to the second count of the Committee's Amended Complaint, requesting a
"declaratory judgment that the Presidential Communications Privilege would not apply 'in the
event' the defendant invokes it in the future," the Court held that the claim was "entirely
hypothetical and speculative." *Id*. at 36 n.10.  Accordingly, the Court dismissed that count of the
Amended Complaint *sua sponte*. *Id*.

On October 25, 2013, in response to the Court's Orders, the parties submitted a joint
status report concerning a schedule for future proceedings in this matter, including whether the
parties are amenable to further mediation.  Upon consideration of that report, this Court returned
the parties to mediation, to conclude by December 16, 2013, and ordered that any motion
pursuant to 28 U.S.C. § 1292(b) be filed by November 15, 2013.

## ARGUMENT

I.      **THIS COURT SHOULD CERTIFY ITS SEPTEMBER 30, 2013 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

This Court may certify an order for interlocutory appeal if it concludes that the order
"involves a controlling question of law as to which there is substantial ground for difference of
opinion and that an immediate appeal from the order may materially advance the ultimate
termination of the litigation."  28 U.S.C. § 1292(b).  This Court's Order satisfies these three

requirements for certification:  (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance the litigation.  *APCC Services, Inc. v. Sprint Communications Co.*, 297 F. Supp. 2d 90, 95 (D.D.C. 2003).  Moreover, the Supreme Court has explained in the specific context of privilege that 1292(b) certification is most appropriate when a decision "involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases."  *Mohawk Indus.*, 558 U.S. at 110-11. The Court's Order, one of "potentially great significance for the balance of power between the Legislative and Executive Branches," therefore should be certified.  *Miers*, 542 F.3d at 911; *cf. Comm. for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 790-91 (D.C. Cir. 1971) (per curiam) (noting certification of question relating to assertion of executive privilege).

## A.       This Court's Order Involves a Controlling Question of Law

"Under section 1292(b), a question of law is controlling if it would require reversal if decided incorrectly."  *Howard v. Office of the Chief Admin. Officer of the United States House of Reps.*, 840 F. Supp. 2d 52, 55 (D.D.C. 2012) (internal quotations omitted).  "Controlling questions of law include issues that would terminate an action if the district court's order were reversed."  *APCC Services*, 297 F. Supp. 2d at 96.  Thus, for example, decisions resolving issues of subject matter jurisdiction involve a controlling question of law.  *See id.* (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990); *United States ex rel. Wis. v. Dean*, 729 F.2d 1100, 1103 (7th Cir. 1984)).

The arguments presented in Defendant's Motion to Dismiss, including the Committee's lack of standing, the Court's lack of constitutional or statutory jurisdiction to decide Count I of Plaintiff's Amended Complaint as well as the absence of a cause of action, and the compelling

reasons not to entertain an action for equitable relief in these extraordinary circumstances, are

foundational threshold issues that would be dispositive of this litigation.  Accordingly, there can

be no dispute that the Court's Order rejecting those arguments involves a controlling question of

law.

> **B.      There Is a Substantial Ground for Difference of Opinion on the Threshold
>             Issues Underlying The Order**

The need for a "substantial ground for difference of opinion" on the matters at issue

requires neither certainty that the underlying decision was incorrect nor doubt by the Court about

the correctness of its decision.  After all, a substantial ground for difference of opinion may exist

even when "a substantially greater number of judges have resolved the issue one way rather than

another."  *In re Vitamins Antitrust Litigation*, No. 99–197 TFH, 2000 WL 33142129, at *2

(D.D.C. Nov. 22, 2000) ("Although this Court firmly believes that the facts of this case warrant a

ruling in favor of application of the Federal Rules to jurisdictional discovery, the Court

recognizes that the arguments in support of the opposite conclusion *are not insubstantial*.")

(emphasis added).  Accordingly, "when novel legal issues are presented, on which fair-minded

jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory

appeal without first awaiting development of contradictory precedent."  *Reese v. BP Exploration

Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *see also Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 55

(D.D.C. 2009) (finding a substantial ground for difference of opinion in light of "the novelty of

the issues" and the fact that "courts could reasonably differ" in their application).[1]

---

[1] Especially in the separation-of-powers context, the D.C. Circuit has at times disagreed with the
views of the district courts that have addressed the same issues.  *See, e.g.*, *Miers*, 542 F.3d at 911
(granting stay of order requiring former counsel to the President to comply with congressional
subpoena); *United States v. Rayburn House Office Bldg.*, *Room 2113*, 497 F.3d 654 (D.C. Cir.
2007) (reversing district court order involving seizure of legislative records); *Judicial Watch,
Inc. v. United States Secret Service*, 726 F.3d 208 (D.C. Cir. 2013) (reversing district court order

A number of the issues raised in Defendant's Motion to Dismiss, including the proper interpretation of *Raines v. Byrd*, 521 U.S. 811 (1997), in the context of congressional subpoena enforcement, were also presented by the Executive Branch and decided by the district court in *Miers*.  *See* 558 F. Supp. 2d 53.  None of those issues has been decided by a Court of Appeals, however, post-*Raines*.[2]  The *Miers* litigation was ultimately resolved before the D.C. Circuit acted on the merits.  The D.C. Circuit did, however, have an opportunity to consider and opine on the significance of the issues when the Executive Branch sought a stay pending its appeal as of right from the district court's decision in *Miers*.  The D.C. Circuit there recognized the seriousness of the issues presented on appeal – issues that included those decided by this Court's September 30, 2013 opinion.   According to the D.C. Circuit, those issues are "of potentially great significance for the balance of power between the Legislative and Executive Branches." *See Miers*, 542 F.3d at 911.  The D.C. Circuit then proceeded to grant the Executive's request for a stay pending appeal despite the fact that the subpoena that formed the basis for the Committee's lawsuit was about to expire.  *See id*.

The seriousness of the jurisdictional issues presented in *Miers* was echoed by Judge Tatel, who concurred in the decision to grant the stay.  Judge Tatel noted that the standard for a stay includes a showing of likelihood of success on the merits of appeal, which requires "'questions going to the merits so serious, substantial, difficult and doubtful, as to make them a

---

in part and directing the Secret Service to treat records of visitors to the White House as agency records subject to the FOIA).

[2] Defendant recognizes that this Court disagrees with Defendant's view of the novelty of the issues presented, as well as the impact of the Supreme Court's decision in *Raines* on these issues. *See, e.g*., Mem. Op. at 18-19.  However, it is undisputed that these are issues that have not been resolved by the D.C. Circuit post-*Raines*, and that the D.C. Circuit recognized the issues to be "of potentially great significance for the balance of power" between the Branches when granting a stay pending appeal as of right in *Miers*.

fair ground for litigation and thus for more deliberative investigation.'" 542 F.3d at 912 (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc*., 559 F.2d 841, 844 (D.C. Cir. 1977)). Excepting a testimonial immunity issue that is not present in this case, Judge Tatel noted that this standard was satisfied by the remaining "issues before" the court on appeal—the same issues that are, *inter alia*, presented by the present case. *Id.*

In addition to the weighty issues presented here that were recognized as such in *Miers*, this Court's September 30, 2013 ruling also rejected Defendant's significant argument regarding the lack of statutory subject matter jurisdiction (an argument that was not addressed by the district court in *Miers*). Specifically, 28 U.S.C. § 1365(a), which authorizes subpoena-enforcement actions brought by the Senate, contains an express carve-out for cases against Executive Branch officials. That express limitation would be rendered superfluous if, as plaintiffs contend, 28 U.S.C. § 1331 (the general federal question provision for federal court jurisdiction) provides jurisdiction over all congressional subpoena enforcement actions. Particularly in light of the courts' obligation to construe statutes to avoid constitutional questions, Sections 1331 and 1365(a) are best read to foreclose rather than authorize federal court jurisdiction over the subpoena enforcement action here. This significant question, to which the Circuit has not yet spoken, also supports certification of interlocutory review here.

Defendant understands that this Court has concluded that "this case presents the sort of question that the courts are traditionally called upon to resolve." *See* Mem. Op. at 36 (citing "the enforcement of subpoenas, in both civil and criminal litigation, and even administrative proceedings" as well as FOIA litigation). This case presents a critically distinct *context*, however – to which the D.C. Circuit has not yet spoken post-*Raines*, but has recognized as extremely significant. This is so because, unlike routine subpoena enforcement, this dispute involves a

direct confrontation between the political Branches – each with resources that they can levy in a political dispute such as the present, *see* Reply in Supp. of Def.'s Mot. to Dismiss at 4-9, ECF No. 27.  And in other settings involving subpoena enforcement, there is a pending civil or criminal case or proceeding otherwise properly within the jurisdiction of the court or an administrative agency in which the subpoena and its enforcement are ancillary, and in which there is an established judicial role.  Here, by stark contrast, there is no constitutional or statutory basis and no pedigree deeply rooted in history for a suit by a House of Congress to compel compliance with one of its subpoenas in a suit against a coordinate Branch.

In light of this unique constitutional context, this Court's Order denying Defendant's Motion to Dismiss does not present merely a question of "the applicability of privileges or exclusions asserted by the executive" that is akin to that in "the FOIA litigation that comprises a significant portion of this court's docket."  Mem. Op. at 36.  Rather, if this Court denies Defendant the opportunity to raise its foundational threshold objections in the D.C. Circuit at this juncture of the litigation, this Court will proceed to decide the validity of the President's view of the scope of Executive Privilege and its applicability to deliberative and other materials sought by Congress that were "created after the investigative tactics at issue in [Operation Fast and Furious] had terminated and in the course of the Department's deliberative process concerning how to respond to congressional and related media inquiries into that operation."  Letter from the Attorney General at 2, June 19, 2012, available at http://www.justice.gov/olc/2012/ag-ff-exec-priv.pdf.  As the Attorney General's June 19, 2012, letter to the President explained, the documents covered by the President's claim of Executive Privilege were created in the course of the Department's deliberative process concerning the Department's response to congressional and related media inquiries; however, they do not all contain material that would be considered

deliberative under common law or statutory standards.  The Executive Branch has recognized

that confidential material prepared in conjunction with responding to Congress – regardless of

whether such material is itself deliberative – is congressional response work product subject to a

claim of Executive Privilege, akin to the privilege over attorney work product.  Because the

President's assertion of Executive Privilege in this context is constitutionally grounded, it is not

limited to documents that are "deliberative" under common law or statutory standards.  *See*

Letter from the Attorney General at 3, June 19, 2012 ("Compelled disclosure of such material,

regardless of whether a given document contains deliberative content, would raise 'significant

separation of powers concerns,' by 'significantly impair[ing]' the Executive Branch's ability to

respond independently and effectively to matters under congressional review.") (internal citation

omitted).  Such a situation "implicates different constitutional considerations than the President's

ability to withhold evidence in judicial proceedings."  *In re Sealed Case*, 121 F.3d 729, 753

(D.C. Cir. 1997).

 In short, the matters to be resolved if this case proceeds – including the validity of the

President's view of the scope of Executive Privilege in response to a congressional subpoena –

are of both first impression and great constitutional import for the separation of powers between

the political Branches.  And, once that inquiry is undertaken, harm to the separation of powers

and the Executive Branch interests will have occurred, even if that inquiry by the Court is

subsequently ruled improper by the Circuit.  Accordingly, the merits of this case should not be

reached without definitive resolution by the Circuit of the jurisdictional and other threshold

issues implicated by this Court's order, which determines whether the matter should proceed in

court at all.

### C.      Certification Would Materially Advance the Disposition of the Litigation

"When there are substantial grounds for difference of opinion as to a court's subject matter jurisdiction, courts regularly hold that immediate appeal may materially advance the ultimate termination of the litigation."  *Al Maqaleh*, 620 F. Supp. 2d at 55 (internal quotations omitted).  "[I]n the event that it is ultimately found that this Court lacks jurisdiction to litigate [this] case[], it would be far better for all concerned, including plaintiff[], to have these matters resolved now, as opposed to sometime in the distant future."  *APCC Services*, 297 F. Supp. 2d at 100.  This is particularly so here, where judicial resolution by this Court of the proper scope of Executive Privilege would itself cause the harm to the separation of powers and the Executive Branch that Defendant seeks to prevent.

Indeed, "[a]n immediate appeal would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's rulings are reversed."  *Id*. Absent settlement (which depends on the willingness of both parties to achieve a negotiated resolution), or an immediate appeal, this Court will proceed toward deciding the scope of the President's assertion of Executive Privilege in response to a congressional demand, and will do so absent a definitive ruling from the Circuit that such a novel judicial inquiry, in a suit instituted by a Committee of Congress, is appropriate under the law, including the Constitution.  The very experience of participating in such proceedings will cause harm – to the Defendant, the Executive Branch, and the separation of powers – that cannot be reversed if the D.C. Circuit ultimately rules in Defendant's favor on the threshold questions presented.  In light of the harm to the separation of powers that such an adjudication would entail, including the impact of such proceedings on the negotiation process between the political Branches – a process that has generally proceeded without judicial involvement since the inception of congressional oversight

– Defendant's jurisdictional objections should be resolved by the Circuit before this Court takes such a momentous step.

## II.     SHOULD THIS COURT CERTIFY ITS SEPTEMBER 30 ORDER FOR APPEAL, DEFENDANT RESPECTFULLY REQUESTS THAT THIS COURT STAY FURTHER PROCEEDINGS PENDING APPEAL

Should this Court decide that certification of its ruling for interlocutory appeal is proper pursuant to Section 1292(b), the same factors supporting that decision weigh in favor of a stay of further proceedings pending the outcome of the appeal, considering as well the economy of time and effort for the court, counsel, and the parties. Acting pursuant to its authority to stay proceedings pending resolution of an appeal under Section 1292(b), the D.C. Circuit determined in *Miers* that a stay was warranted, and it did so there even though the stay risked mooting the case before it. *See* 542 F.3d 909.

In light of the constitutional importance of the dispositive jurisdictional and prudential issues decided by this Court's September 30, 2013 Order, a stay is warranted pending resolution of those issues on appeal.

## CONCLUSION

For the preceding reasons, this Court should grant Defendant's Motion for Certification and stay proceedings pending appeal.


Dated: November 15, 2013              Respectfully submitted,


                                      STUART F. DELERY
                                      Assistant Attorney General

                                      KATHLEEN R. HARTNETT
                                      Deputy Assistant Attorney General

                                      JOSEPH H. HUNT

11

Director, Federal Programs Branch

JOHN R. TYLER
Assistant Branch Director


_____/s/ Eric Womack_____
ERIC R. WOMACK
(IL Bar No. 6279517)
GREGORY DWORKOWITZ
(NY Bar Registration No. 4796041)
LUKE M. JONES
(VA Bar No. 75053)
Trial Attorneys
U.S. Department of Justice
Civil Division
Federal Programs Branch
Washington, D.C. 20001
Tel: (202) 514-4020
Fax: (202) 616-8470
eric.womack@usdoj.gov

Counsel for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2013, I caused a true and correct copy of the foregoing Motion and the attached Proposed Order to be served on plaintiff's counsel electronically by means of the Court's ECF system.


 */s/ Eric Womack*
ERIC R. WOMACK