*Comm. on Oversight & Gov't Reform, U.S. House of Reps. v. Holder*, No. 12-1332 (ABJ)

DEFENDANT'S RESPONSE TO
PLAINTIFF'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE

Ex. F



**U.S. Department of Justice**

Office of Legislative Affairs

Office of the Assistant Attorney General                   *Washington, D.C. 20530*

January 27, 2012

The Honorable Darrell E. Issa
Chairman
Committee on Oversight
 and Government Reform
U.S. House of Representatives
Washington, DC  20515

Dear Mr. Chairman:

    This responds to your subpoena dated October 11, 2011, which requested documents regarding the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) investigation known as Operation Fast and Furious and related matters.  It also supplements our previous responses to your subpoena of March 31, 2011 to then ATF Acting Director Kenneth Melson requesting documents about Fast and Furious, your letter dated July 11, 2011, requesting communications of twelve named Department employees, and your letter dated September 1, 2011, requesting documents and communications of six current or former employees in the United States Attorney's Office for the District of Arizona.

    We are delivering today to your office 486 pages of material.[1]  We have identified an additional 94 pages that we are prepared to make available at the Department for review by staff of your Committee, as well as staff of the Senate and House Committees on the Judiciary.  The majority of the materials produced today are responsive to items 7, 11 and 12 of your October 11 subpoena.  We are producing or making available for review materials that are responsive to these items, most of which pertain to the specific investigations that we have already identified to

---

[1] These documents bear limited redactions to protect specific details about pending investigations, including text that would identify targets and sensitive techniques or disclose prosecutorial deliberations, plus limited information implicating individual privacy interests, such as employee cellular phone numbers or information about individuals who have been investigated but not prosecuted.  In addition, we have redacted text from multi-subject documents that is not responsive to your requests.  In some substantial multi-subject documents, such as regular ATF reports, we have not included pages that contained text that was either not responsive or contained details of investigations outside of the scope of your inquiry.  In response to requests from Chairman Smith and Chairman Leahy, we will deliver to the House and Senate Committees on the Judiciary the same documents that we deliver to you.

the Committee. We are not, however, providing materials pertaining to other matters, such as documents regarding ATF cases that do not appear to involve the inappropriate tactics under review by the Committee; non-ATF cases, except for certain information relating to the death of Customs and Border Protection Agent Brian Terry; administrative matters; and personal records. Consistent with established third-agency practice, we have consulted with the Departments of State and Homeland Security about materials that are responsive to your interests and implicate their equities. We have completed those consultations with the Department of Homeland Security, and with the Department of State as to a portion of the documents implicating its equities, and those documents are enclosed today with limited redactions. We will supplement this response when the consultation with the Department of State as to the remaining documents is completed.

In addition, following the public release of the indictment in Fast and Furious, ATF's William Newell emailed copies of that indictment and several others multiple times. We have included in this production one full set of these materials, following the email at HOGR DOJ 005645. These indictments were also attached to emails at HOGR DOJ 005734 and HOGR DOJ 005738 but, for your convenience, we have not reproduced them. Similarly, because some of the materials requested in subpoena items 7, 11 or 12 overlap with other requests you have made, we have not re-produced duplicates of materials previously produced to you.

To assist the Committee in its oversight duties, we also appreciate the opportunity to provide relevant and necessary context for some of the documents in today's production.

We have previously produced communications from the mid-December 2010 time period between former Arizona U.S. Attorney Dennis Burke and Monty Wilkinson, former Deputy Chief of Staff to the Attorney General. Today's production includes additional communications between the two from that same time period that were located in response to your most recent requests. Burke received an email during the early morning hours of December 15 reporting that Customs and Border Protection Agent Brian Terry had tragically lost his life. HOGR DOJ 005869. Burke forwarded that information to Wilkinson later that morning. HOGR DOJ 005872. Wilkinson responded by saying, "[t]ragic. I've alerted the AG, the Acting DAG, Lisa, etc." HOGR DOJ 005872. Later that morning, Wilkinson again emailed Burke, saying "[p]lease provide any additional details as they become available to you." HOGR DOJ 005876. Burke followed up with an email later that afternoon, and Wilkinson responded, "[t]hanks, Dennis. Terrible situation." HOGR DOJ 005888. That same evening, Burke emailed Wilkinson that "[t]he guns found in the desert near the murder [sic] BP officer connect back to the investigation we were going to talk about – they were AK-47s purchased at a Phoenix gun store." HOGR DOJ 005917. Wilkinson responded "I'll call tomorrow." HOGR DOJ 005917. Wilkinson does not recall a follow-up call with Burke or discussing this aspect of the matter with the Attorney General. Similarly, we have been advised that Burke has no recollection of discussing this aspect of the matter with Wilkinson.

The Committee has received testimony and evidence in this matter regarding the priority that the Department has placed on fostering a cooperative relationship with Mexican law

The Honorable Darrell E. Issa
Page 3

enforcement officials in order to advance the two nations' efforts to combat Mexican drug cartels. Today's production includes several documents that reflect this commitment. We are producing these documents because, although they fall outside the terms of the subpoenas and letter requests referenced earlier, they may pertain to your investigative interests.[2] These include a redacted summary, written by the then-Criminal Division attaché to Mexico, of several meetings that Assistant Attorney General Lanny Breuer participated in, along with the U.S. Deputy Chief of Mission in Mexico, the attaché, and others, during an official visit to Mexico on February 1-3, 2011. HOGR DOJ 005752 - HOGR DOJ 005754. As this document reflects, on February 2, 2011, Assistant Attorney General Breuer met with numerous senior officials in the Mexican government, including the Attorney General of Mexico, who heads the Procuraduría General de la República (PGR); the Secretary of Public Security, who heads the Secretaría de Seguridad Pública (SSP); and the Undersecretary for North American Affairs, in the Secretaría de Relaciones Exteriores (SRE). The document reflects that Assistant Attorney General Breuer discussed with the Attorney General of Mexico and the Secretary of Public Security a number of mutual law enforcement priorities, including prosecutions on both sides of the border in connection with the March 2010 murders of a U.S. Consular official and others that occurred in Cíudad Juarez; extraditions between Mexico and the United States; and the sharing of evidence between the two countries.

     In addition, the summary indicates that Assistant Attorney General Breuer met with the Mexican Undersecretary for North American Affairs to discuss multiple issues of mutual Mexico/U.S. interest, including U.S. extradition requests to Mexico; the Mérida initiative; and ways to stem the flow of arms from the United States to Mexico. The summary states that, during the arms trafficking discussion, the Undersecretary said that "greater coordination and flow of information would be helpful to combat arms trafficking into Mexico." HOGR DOJ 005754. According to the document, Assistant Attorney General Breuer followed up with two ideas: that the SRE or PGR write a letter in support of increased sentencing guidelines for straw purchasers, and that the United States and Mexico consider working together to allow straw purchasers to "cross into Mexico so SSP can arrest and PGR can prosecute and convict" them. HOGR DOJ 005754. In short, Assistant Attorney General Breuer and the Undersecretary discussed how their two nations could work more closely with one another to fight arms trafficking, including whether U.S. and Mexican law enforcement should consider coordinating their law enforcement operations to enable the Mexican government to interdict at the border and prosecute in Mexico straw purchasers, given the more expansive prohibitions in Mexico on the possession and purchase of firearms.

     Today's production also includes a summary, written by the same Criminal Division attaché to Mexico mentioned above, of a meeting that then-Acting Director Melson had with the former U.S. Ambassador to Mexico while Acting Director Melson was in Mexico during the week of February 7, 2011. At that meeting, the summary states, "Melson and the Ambassador discussed the possibility of allowing weapons to pass from the US to Mexico and US law enforcement coordinating with SSP and PGR to arrest and prosecute the arms trafficker."

---

[2] Certain of the documents produced on this subject are also being made available for review by the Committee with fewer redactions than are contained in the versions being produced.

The Honorable Darrell E. Issa
Page 4

HOGR DOJ 005761. The summary further states that the then-attaché "raised the issue that there is an inherent risk in allowing weapons to pass from the US to Mexico; the possibility of the [Government of Mexico] not seizing the weapons; and the weapons being used to commit a crime in Mexico." HOGR DOJ 005761.

    We hope that this information is helpful. Our efforts to identify documents responsive to your subpoena are continuing and we will supplement this response when additional documents become available. Please do not hesitate to contact this office if we may be of additional assistance in this or any other matter.

Sincerely,

Ronald Weich
Assistant Attorney General

Enclosures

cc:    The Honorable Elijah E. Cummings
       Ranking Minority Member

       The Honorable Patrick J. Leahy
       Chairman
       Committee on the Judiciary
       United States Senate

       The Honorable Charles E. Grassley
       Ranking Minority Member
       Committee on the Judiciary
       United States Senate