*Comm. on Oversight & Gov't Reform, U.S. House of Reps. v. Holder*, No. 12-1332 (ABJ)

DEFENDANT'S RESPONSE TO
PLAINTIFF'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE

Ex. J



**U.S. Department of Justice**

Office of Legislative Affairs

Office of the Assistant Attorney General                    *Washington, D.C. 20530*

December 6, 2011

The Honorable Darrell E. Issa
Chairman
Committee on Oversight and
    Government Reform
U.S. House of Representatives
Washington, DC 20515

The Honorable Charles E. Grassley
Ranking Member
Committee on the Judiciary
United States Senate
Washington, DC 20510

Dear Mr. Chairman and Senator Grassley:

This responds to the requests set forth in your letter dated September 1, 2011, for
transcribed interviews of three prosecutors in the United States Attorney's Office for the District
of Arizona (the "USAO") and the requests communicated to us by Committee staff for
transcribed interviews of eight additional Department of Justice attorneys concerning ongoing
firearms trafficking investigations and related pending prosecutions. Although we are prepared
to make several attorneys available for interviews, your request for interviews of some line and
lower level supervisory prosecutors raises grave concerns for the Department. In addition, the
Committee's need for interviews of several others is unclear because of their limited connection
with the firearms trafficking investigations.

The Committee's request for interviews of Department prosecutors is part of a review in
which the Committee has already had extraordinary access to Department personnel and
documents. As you know, the Department has voluntarily made six ATF employees available
for transcribed interviews, and the Committee has conducted interviews of additional ATF
personnel, including then-Acting Director Melson. We likewise have made senior Department
officials available for public testimony. The Department has cooperated in the scheduling and
conduct of those interviews notwithstanding the fact that the Committee sought to inquire about
matters related to open investigations and pending prosecutions. The Department has sought to
accommodate the Committee's interests regarding the strategy adopted in this law enforcement
effort because it recognizes the legitimate questions about whether illegally purchased firearms
were knowingly permitted to cross the border to Mexico.

The Honorable Darrell E. Issa
The Honorable Charles E. Grassley
Page 2

For these same reasons, the Department has made more than 5,000 pages of documents available to the Committee, and it continues to search for and review documents responsive to the Committee's requests, including but not limited to its subpoenas. Indeed, as you are well aware, the Department has dedicated substantial resources to accommodating the Committee's information requests related to the strategy adopted in connection with Operation Fast and Furious. At the same time, however, we have attempted to accommodate the Committee's requests without harming pending investigations and prosecutions, and without impairing other values that are central to the Department's mission.

As we have advised your staff, we are prepared to make Patrick Cunningham, Chief of the Criminal Division in the United States Attorney's Office for the District of Arizona, available for an interview. However, the Department expects to be present to protect its law enforcement interests during the interview. We understand that Mr. Cunningham has retained private counsel and we will defer to him with regard to scheduling, as long as we can attend. We also will make available Gary Grindler, formerly the Acting Deputy Attorney General and now Chief of Staff to the Attorney General, in accordance with our conversations with Committee staff, on December 14, 2011. In addition, we are prepared to make available Jason Weinstein, Deputy Assistant Attorney General in the Department's Criminal Division, but we need to be present to protect the Department's interests, regardless of whether Mr. Weinstein also chooses to be accompanied by any private counsel. We understand that you would like to continue the interview of now former United States Attorney Dennis K. Burke, whom we understand has retained private counsel. The Department has no objection to this further interview so long as we are permitted to attend. We are currently preparing to provide documents to Mr. Burke and his attorney to assist his preparation for this resumed interview.

It is particularly important that the Department attend the interviews of these current and former employees in order to protect its own interests, especially those pertaining to the ongoing criminal investigations and prosecutions. It is standard Executive Branch practice for agency counsel or other agency representatives to attend congressional staff interviews of agency personnel, and a witness's personal counsel does not represent the agency. Indeed, we understand that the Committee has informed another agency that both private counsel and agency counsel may be present at a Committee staff interview. We expect that Messrs. Cunningham, Burke, Grindler and Weinstein may answer questions at their interviews about their knowledge of the strategy adopted in Operation Fast and Furious. For the reasons discussed below, however, and consistent with limitations applicable in prior interviews, they will not discuss the details of pending investigations or prosecutions, including prosecutorial decisions about particular individuals. These limitations are essential to protect the integrity and independence of the criminal justice process as well as the public's confidence that such decisions are made without regard to political considerations. It is the responsibility of the Department's counsel to identify these limitations as needed and any other Department equities that may be implicated during the course of the interviews.

We expect that Messrs. Burke and Cunningham will be in a position to address the topics that Assistant Attorney General Weich identified on page 3 of his prepared statement for the

The Honorable Darrell E. Issa
The Honorable Charles E. Grassley
Page 3

Committee hearing on June 15 as being at the "core of the Committee's oversight interests" and which the Department has been and is willing to accommodate: "the decisionmaking and responsibility for strategic decisions, if any, regarding the timing of arrests in connection with the alleged sale of firearms to individuals suspected of being straw purchasers, the legal basis to seize such firearms, and any efforts to track the firearms to those higher up the chain of command in firearms and drug trafficking interests." We are concerned about your request for interviews of Kenneth Blanco, also a Deputy Assistant Attorney General in the Criminal Division, because his only connection with Operation Fast and Furious arose from his role in reviewing applications for Title III surveillance, a technique that the Department has acknowledged was used in this investigation. That acknowledgement will not, however, relieve Mr. Blanco of his obligation to protect the confidentiality of information pertaining to particular applications. Moreover, to the extent that you are interested in eliciting from Mr. Blanco any information about the general process for reviewing Title III applications, Mr. Weinstein could provide that information during his interview. Additionally, we have previously agreed to provide a briefing on the Title III procedures in response to a request from Committee staff. Under these circumstances, we would seek to defer the interview of Mr. Blanco and, following Mr. Weinstein's interview, proceed with a briefing if you feel you still need additional information about the general procedures for reviewing Title III applications.

We are also unclear about the Committee's interest in interviewing Bruce Swartz, another Deputy Assistant Attorney General in the Criminal Division, whom the Committee has not indicated had any connection with Operation Fast and Furious. As noted above, we are in the process of searching for documents responsive to the Committee's subpoena, including categories that mention Mr. Swartz. We would like to defer any final decisions about the Committee's request for Mr. Swartz's interview until we have identified any responsive documents, some of which may implicate equities of another agency. We will supplement this response when that process is completed.

The remaining employees you have asked to interview are all career employees who are either line prosecutors or first- or second-level supervisors. James Trusty and Michael Morrissey were first-level supervisors during the time period covered by the Fast and Furious investigation, and Kevin Carwile was a second-level supervisor. The remaining three employees you have asked to interview – Emory Hurley, Serra Tsethlikai, and Joseph Cooley – are line prosecutors. We are not prepared to make any of these attorneys available for interviews. We believe that, in addition to the staff interviews of Department employees that have already occurred and the documents we have and will provide, the transcribed interviews offered above should provide sufficient information to satisfy the Committee's legitimate oversight interests. Committee staff questioning of lower level supervisors and line prosecutors poses significant risks, however unintended, to the Department's discharge of its law enforcement responsibilities and in particular would have a substantial chilling and intimidating effect on Department prosecutors across the country, as we discuss more fully below.

The Honorable Darrell E. Issa
The Honorable Charles E. Grassley
Page 4

I.      **Respected Governmental Officials on a Bipartisan Basis Have Opposed Subjecting
        Line Prosecutors to Congressional Inquiry**

        Subjecting line prosecutors to congressional scrutiny concerning decisions they have
made in particular cases raises very grave concerns for the Department and similarly has troubled
an array of respected Congressional leaders and Department officials across the ideological
spectrum. In the enclosed September 21, 1993 letter to Attorney General Janet Reno, Senator
Orrin Hatch wrote:

        I have been troubled to learn recently that consideration is apparently
        being given to having career line attorneys of the Department of Justice
        interrogated by, and appear before, Congressional committees for the
        purpose of defending or otherwise explaining their conduct of particular
        cases. My initial impression is that this is a very disturbing idea. It
        could chill career Department of Justice lawyers in the exercise of their
        daily duties. . . .

        Beyond practical concerns of case management, constitutional concerns
        are, of course, also raised by the contemplated plan.

        Similarly, in the enclosed September 7, 1993 letter to Attorney General Reno on the same
topic, Representative Henry J. Hyde criticized the notion that line prosecutors might appear
before Congress, calling the idea "misguided" and urging the Attorney General to "thwart this
outrageous politicizing of law enforcement" because "[w]e should not open the door to
congressional micromanagement of prosecutions." Such a result, Representative Hyde wrote,
"would threaten the integrity of the Justice Department and undermine public respect for our
entire judicial system."

        The views expressed by Senator Hatch and Representative Hyde were shared by the
Department during the Administration of George W. Bush. In the enclosed letter dated March
23, 2005, William E. Moschella, Assistant Attorney General for Legislative Affairs, wrote to
Senator Susan Collins that:

        [t]he Department has a strong institutional interest in ensuring that
        appropriate supervisory personnel, rather than line attorneys and agents,
        answer Congressional inquiries about Department actions. This is based
        in part upon our view that supervisory personnel, not line employees,
        make the decisions that are the subjects of Congressional review, and
        therefore they should be the ones to explain their decisions. More
        fundamentally, however, the Department needs to ensure that our line
        attorneys and agents can exercise the independent judgment essential to
        the integrity of our law enforcement activities and to public confidence
        in those activities.

The Honorable Darrell E. Issa
The Honorable Charles E. Grassley
Page 5

Stuart M. Gerson, an Assistant Attorney General during the Administration of George H.W. Bush, has observed that congressional efforts to subpoena line prosecutors "pose a long-term constitutional threat by impinging upon the core, judicially-unreviewable, Executive Branch function of rendering independent decisions concerning the undertaking or forebearance of criminal prosecutions." Stuart Gerson, "The Legislative Politicization of the U.S. Department of Justice," Legal Backgrounder for the Washington Legal Foundation, at 1 (Nov. 18, 1994) (copy enclosed).

In the enclosed January 5, 1994 response to the letter from Senator Hatch, Attorney General Reno wrote that:

> A prosecutor's discretion to investigate or indict a particular individual is an awesome power, with irreparable impact on the life of that individual and on the integrity of our system of justice. It must be exercised with the greatest of care and in a manner guaranteed to ensure that only objective, non-political considerations bear on its determination. Permitting Congressional examination of line prosecutors carries substantial danger of chilling the objective exercise of that discretion and of generating the appearance of political influence on prosecutorial decisions.

And, for similar reasons, the American Bar Association in 1996 adopted recommendations that "[c]ongressional committees should not seek . . . compelled testimony of . . . line attorneys regarding discretionary decisions being made in pending cases" and that, as a general matter, "congressional committees should not seek the compelled testimony of line attorneys about adjudicated cases." ABA Resolution 104A (AM 96-104A) *available at* http://www.americanbar.org/groups/criminal_justice/policy/index_aba_criminal_justice_policies _by_meeting.html#am96104a.

## II.    Requiring These Prosecutors in the Instant Matter to Provide Information to the Committee Would Imperil Pending and Future Prosecutions Arising Out of the Criminal Investigations Under Review

We take as a given that the Committee seeks to give no aid to those who either have been or will be charged with serious crimes arising out of the Fast and Furious matter. However, requiring an appearance by these prosecutors about the prosecution of already-charged defendants, and the oversight of investigations that may lead to charges against others is certain to lead to significant legal attacks in court by counsel for these individuals. Requiring these prosecutors to explain why certain facts did or did not give rise to legal rights on behalf of the government, or requiring them to explain in exacting detail the government's investigative actions, can give rise to motions by counsel for criminal defendants that may, at the least, complicate the government's ability to bring dangerous individuals to justice. Such results are not in the interests of the criminal justice system or the public generally.

The Honorable Darrell E. Issa
The Honorable Charles E. Grassley
Page 6

Similarly, requiring these prosecutors to provide information to Congress can trigger additional discovery obligations in favor of criminal defendants that can undermine the government's case. We recognize that such outcomes are not intended consequences of the Committee's request for information, but they may well be unavoidable consequences.

We hope this information is helpful and appreciate your consideration of our views in this matter. Please do not hesitate to contact this office if we may provide additional assistance.

Sincerely,

Ronald Weich
Assistant Attorney General

Enclosures

cc:     The Honorable Patrick Leahy
        Chairman
        Committee on the Judiciary
        United States Senate

        The Honorable Elijah E. Cummings
        Ranking Member
        Committee on Oversight and Government Reform
        U.S. House of Representatives