**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COMMITTEE ON OVERSIGHT AND          )
GOVERNMENT REFORM,                  )
UNITED STATES HOUSE                 )
OF REPRESENTATIVES,                 )
                                    )
          Plaintiff,                )
                                    )          Case No. 1:12-cv-1332 (ABJ)
          v.                        )
                                    )
ERIC H. HOLDER, JR.,                )
in his official capacity as         )
Attorney General of the United States,  )
                                    )
          Defendant.                )
_____)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO STRIKE THE DECLARATIONS OF
PAUL P. COLBORN AND M. FAITH BURTON**

**INTRODUCTION**

The U.S. Department of Justice ("Department") submitted two declarations in support of

summary judgment, which Plaintiff Committee on Oversight and Government Reform, U.S.

House of Representatives ("Committee"), now asks the Court to strike.  The striking of a

declaration is "an exceptional remedy" presenting the movant with "a formidable burden,"

*United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 53

(D.D.C. 2006) (quotation marks and citations omitted)—one the Committee has failed to meet.

As explained in greater detail herein, the declarations at issue were submitted by M. Faith

Burton and Paul P. Colborn, career officials of the Department who have, through decades of

service, developed substantial knowledge and experience regarding the process of congressional

oversight, and who were closely involved in the response of the Department to the Committee's

investigation of Operation Fast and Furious ("Fast and Furious").  Their testimony is based on

personal knowledge regarding matters within their professional experience, and is in full

compliance with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the

precedent and practice of this District and the D.C. Circuit.

Indeed, such declarations reflect standard and accepted practice in this Court's substantial

docket of litigation involving the Executive Branch.  In these cases, the Executive Branch

frequently submits declarations explaining, among other things, how the Executive Branch has

historically exercised the legal authority in question, what occurred before litigation commenced,

the rationale for the privileges, if any, upon which the Executive Branch is relying, and the

expected harm to the operation of the Executive Branch if the Court were to order release of the

withheld material.  This Court and the D.C. Circuit have repeatedly credited such verified

statements from government declarants who, like Mr. Colborn and Ms. Burton, have testified

with personal knowledge to matters within their professional practice and experience; such

declarations play a central role in litigation involving the federal government in the federal

courts.  *See, e.g.*, *Wolf v. CIA*, 473 F.3d 370, 375 n.5 (D.C. Cir. 2007); *Elec. Frontier Found. v.*

*Dep't of Justice*, 892 F. Supp. 2d 95, 102-03 (D.D.C 2012).  If the Committee were correct, and

Executive declarants were suddenly precluded from testifying to information provided to them in

their official capacity, it would work a sea change in government litigation, as the Executive

Branch would have to submit, and courts would have review, multiple, repetitive and

overlapping declarations going to the same basic points.  This has never been the practice in this

Circuit, and it should not be newly required now.

In any event, the Committee should have succinctly raised its evidentiary objections in its

briefing on summary judgment.  The Court should therefore summarily deny this motion, and

address the Committee's evidentiary objections only to the extent they are relevant to summary judgment.  *See, e.g.*, *EPOS Technologies Ltd. v. Pegasus Technologies Ltd.*, 916 F. Supp. 2d 88, 90 n.2 (D.D.C. 2013).  And if there are any such statements that the Court determines are improper, the Court should not strike them but should simply exclude them from consideration.  *See, e.g.*, *MCI Communications Corp. v. United States*, 26 F. Supp. 2d 6, 10 n.6 (D.D.C. 1998).

Accordingly, and for the reasons that follow, the Department respectfully requests that the Court deny the Committee's motion to strike.

## RELEVANT PROCEDURAL BACKGROUND

On December 16, 2013, the Committee moved for summary judgment.  *See* Pl.'s Mot. for Summ. J. (ECF No. 61).  The Committee's memorandum of law and statement of material facts relied heavily on three declarations the Committee submitted, as well as the twenty-nine exhibits attached thereto.  *See* Mem. of P. and A. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Summ. J. Mem.") (ECF No. 61); Pl.'s Statement of Material Facts as to Which There is No Genuine Issue ("Committee's Statement of Material Facts," or "Statement") (ECF No. 61); Decl. of Stephen R. Castor (ECF Nos. 61-1 through 61-33); Decl. of Carlton J. Davis (ECF No. 61-34); Decl. of Ashok Pinto (ECF No. 61-35).

On January 21, 2014, the Department moved for summary judgment and opposed the Committee's motion for summary judgment.  *See* Def.'s Mot. for Summ. J. (ECF No. 63); Mem. in Supp. of Def.'s Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Summ. J. Mem.") (ECF Nos. 63, 64).  In support of its filings, it attached two declarations, one from Ms. Burton and one from Mr. Colborn.  *See* Decl. of M. Faith Burton ("Burton Decl.") (ECF No. 63-1); Decl. of Paul P. Colborn ("Colborn Decl.") (ECF No. 63-2).

Ms. Burton is a Special Counsel with the Department's Office of Legislative Affairs ("OLA"), the office that "coordinat[es] the Department's response to oversight requests from Congress." Burton Decl. ¶ 1. She declared that she has been employed as a career official at the Department since 1976, that she has served for twenty-seven years in OLA, and that "most of [her] practice is devoted to congressional oversight." *Id.* She testified to the manner in which Congress conducts oversight of the Department generally, *see id.* ¶¶ 2-6, how the Committee sought information about Fast and Furious, and the way in which the Department responded, *see id.* ¶¶ 7-23. Her statements were "known personally by [her] to be true, or [we]re based on information provided to [her] in [her] official capacity by others in the Department." *Id.* ¶ 1.

Mr. Colborn stated that he is a Special Counsel in the Department's Office of Legal Counsel ("OLC"), which "assist[s] the Attorney General in his role as legal advisor to the President of the United States and to the departments and agencies of the Executive Branch." Colborn Decl. ¶ 1. He indicated that he has worked as a career official at the Department since 1982, and that he has, since 1986, been the "primary OLC attorney responsible" for advising the Executive Branch on congressional oversight, during which time he has "gained an in-depth understanding" of the entire oversight process. *Id.* ¶ 2. Mr. Colborn testified to the manner in which Congress has historically conducted oversight of the Executive Branch, and how the Executive Branch has responded, including what types of information it has withheld pursuant to Executive Privilege. *See id.* ¶¶ 4-8. He also spoke to the process that led to the President's assertion of Executive Privilege in this case, *see id.* ¶¶ 9-14, the documents over which the President asserted Executive Privilege, *see id.* ¶¶ 18-26, and the risk of harm to the Executive Branch if such material could not be protected by an assertion of the Privilege, *see id.* ¶¶ 15-17. He testified "based on [his] personal knowledge and experience, on information provided to

[him] by OLC attorneys working under [his] direction, and on information provided to [him] by others within the Executive Branch."  *Id.* ¶ 3.

The Department cited the Burton and Colborn Declarations in support of its motion for summary judgment, and in opposition to the Committee's motion.  *See, e.g.*, Def.'s Statement of Material Facts as to Which There is No Genuine Issue (ECF No. 63) ¶¶ 1, 3; Def.'s Summ. J. Mem. at 29, 36.  In responding to the Committee's Statement of Material Facts, the Department stated its general objection to the Committee's "failure to identify 'facts' that are 'material'" to its motion.  Def.'s Resp. to Pl.'s Statement of Material Facts as to Which There is No Genuine Issue ("Defs.' Resp. to Pl.'s Statement") (ECF No. 64-1) at 1 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Subject to this objection, the Department proceeded to respond to the sixty-four individual paragraphs of the Committee's Statement.  *See id.*  When disputing or otherwise providing necessary context for "facts" the Committee claimed to be material, the Department cited to record evidence, including the Burton Declaration.  *See* LCvR 7(h)(1) (requiring inclusion of "references to the parts of the record relied on").

On February 14, 2014, the Committee filed its reply in support of its motion for summary judgment, as well as its opposition to the Department's motion for summary judgment.  *See* Pl.'s Consolidated (I) Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J., and (II) Opp'n to Def.'s Cross-Mot. for Summ. J. ("Pl.'s Reply/Opp'n") (ECF Nos. 68, 69).  In the argument section of its brief, the Committee mentioned the Colborn Declaration only once, *see id.* at 14 n.14, and its sole citation of the Burton Declaration was in purported support of its legal position, *see id.* at 23-24.  Also on February 14, the Committee filed the instant motion, asking the Court to strike both of the Department's declarations in their entirety.  *See* Pl.'s Mot. to Strike the Decls. of Paul P. Colborn and M. Faith Burton (ECF No. 70); Pl.'s Proposed Order (ECF No. 70-1) at 1.

## STANDARD OF REVIEW

A "motion to strike is considered an exceptional remedy and is generally disfavored, and the proponent of such a motion must shoulder a formidable burden." *E.g.*, *United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 53 (D.D.C. 2006) (quotation marks and citations omitted). Courts "resolve all doubts in favor of denying the motion to strike." *Aftergood v. CIA*, 355 F. Supp. 2d 557, 565 (D.D.C. 2005). While the "decision to grant or deny a motion to strike is vested in the trial judge's sound discretion," *Ng. v. Lahood*, 952 F. Supp. 2d 85, 92 (D.D.C. 2013) (quotation marks and citation omitted), Rule 56's "'directive with respect to admissibility of an affidavit's contents on summary judgment has been liberally construed,'" *Conservation Force v. Salazar*, 715 F. Supp. 2d 99, 107 (D.D.C. 2010) (quoting *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981)). And, as explained further below, this Court and the D.C. Circuit regularly hold that declarations of Executive Branch officials such as those at issue here satisfy Federal Rule of Civil Procedure 56. *See, e.g.*, *Canady v. Erbe Elektromedizin GmbH*, 384 F. Supp. 2d 176, 180 (D.D.C. 2005).

If the Court were to find any statements in the declarations to be improper, the appropriate recourse would be to "exclude[ them] from consideration" rather than strike them. *MCI Communications Corp. v. United States*, 26 F. Supp. 2d 6, 10 n.6 (D.D.C. 1998); *see, e.g.*, *People for the Ethical Treatment of Animals, Inc. v. Bureau of Indian Affairs*, 800 F. Supp. 2d 173, 178 n.2 (D.D.C. 2011); *Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 60 (D.D.C. 2006); *Synergistic Technologies, Inc. v. IDB Mobile Communications, Inc.*, 871 F. Supp. 24, 26 n.1 (D.D.C. 1994). And if the Court were to determine that any sections did warrant striking, it should remove them "us[ing] a scalpel, not a butcher knife," while still "allow[ing] all properly stated facts." *Canady*, 384 F. Supp. 2d at 180 (quotation marks and citation omitted); *see, e.g.*,

*Bowyer v. Dist. of Columbia*, 910 F. Supp. 2d 173, 196 n.17 (D.D.C. 2012) ("[P]laintiffs' request to strike these three declarations in their entirety is denied because all three declarations contain a number of facts that are not based on hearsay and that are relevant to deciding the defendants' motions."); *Ascom Hasler Mailing Systems, Inc. v. U.S. Postal Service*, 815 F. Supp. 2d 148, 162-63 (D.D.C. 2011).

## ARGUMENT

I. **EXECUTIVE OFFICIALS TESTIFY BASED ON THEIR PERSONAL KNOWLEDGE WHEN THEY TESTIFY BASED ON INFORMATION PROVIDED TO THEM IN THEIR OFFICIAL CAPACITY**

The Committee's primary complaint about the Colborn and Burton Declarations is that they are based in part on information provided to the declarants in their official capacity, and therefore allegedly fail to establish the declarants' personal knowledge as required by Federal Rule of Civil Procedure 56.  *See* Mem. of P. and A. in Supp. of Pl.'s Mot. to Strike the Decls.' of Paul P. Colborn and M. Faith Burton ("Pl.'s Strike Mem.") (ECF No. 70) at 4-9, 16-18; *see also* Fed. R. Civ. P. 56(c)(4) (providing that a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").  This objection is without merit: as courts routinely recognize, government declarants satisfy the "personal knowledge" requirement of Rule 56 when they testify to information provided them in their official capacity – something they routinely and, of necessity, do.

This Court and the D.C. Circuit have repeatedly held that the government may appropriately submit declarations based on information provided to declarants in their official capacity.  *See, e.g.*, *Wolf v. CIA*, 473 F.3d 370, 375 n.5 (D.C. Cir. 2007); *Safecard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C. Cir.

1986); *Blunt-Bey v. U.S. Dep't of Justice*, 612 F. Supp. 2d 72, 74 (D.D.C. 2009).  The cases

make clear that by allowing such declarations, courts have not granted the government an

exception to Rule 56's "personal knowledge" requirement.  Rather, courts have recognized that

government declarants can "acquire[]" personal knowledge "through the performance of their

official duties and their review of the official files."  *Blunt-Bey*, 612 F. Supp. 2d at 74; *see Wolf*,

473 F.3d at 375 n.5 (noting that affidavit "reflects personal knowledge, obtained in [affiant's]

official capacity"); *Institute for Policy Studies v. CIA*, 885 F. Supp. 2d 120, 134 (D.D.C. 2012)

(noting that "a declaration met the standard for personal knowledge because it was based, in part,

on declarant's review of official files and records" (quotation marks and citation omitted)); *see*

*also Ridenour v. Collins*, 692 F. Supp. 2d 827, 846 (S.D. Ohio 2010) ("Personal knowledge is

not strictly limited to actions in which the affiant directly participated, but may be derived from

reviewing the content of files and records.").  Thus, government declarants may testify based on

information provided to them in their official capacity because review and consideration of such

material gives them the type of "personal knowledge" required by Rule 56.  *See Hainey v. U.S.*

*Dep't of the Interior*, 925 F. Supp. 2d 34, 40-41 (D.D.C. 2013) (rejecting "personal knowledge"

challenge when declarant "expressly confirm[ed] that all of the information set forth in his

declaration [wa]s based upon his personal knowledge or upon information furnished to him in his

official capacity." (quotation marks, citation and alterations omitted)).

    This Court routinely accepts such declarations from the Executive Branch in many types

of matters, from cases brought under the Freedom of Information Act, *see, e.g.*, *Barnard v. DHS*,

531 F. Supp. 2d 131, 138-39 (D.D.C. 2008), or the Administrative Procedure Act, *see, e.g.*,

*Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury*, 606

F. Supp. 2d 59, 69 (D.D.C. 2009), to cases implicating the state secrets privilege, *see, e.g.*,

*Edmonds v. U.S. Dep't of Justice*, 323 F. Supp. 2d 65, 74 (D.D.C. 2004).  And for good reason:

in the Executive Branch, managers "supervise[] the processing" of third-party requests for

information.  *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 813 (2d Cir. 1994).  But supervising

responses to information requests is not necessarily all these officials do; those who exercise

such leadership must frequently attend to "major policy issues and the management of their

departments and agencies" as well.  *Gen. Elec. Co. v. Johnson*, Civ. Action No. 00-2855, 2007

WL 433095, at *7 (D.D.C. Feb. 5, 2007) (quotation marks and citation omitted).  As this Court

has already explained, "[r]equiring [such] agency official to review all" privileged material

"generated at the working attorney staff level or by mid-level managers or administrators . . .

would be an unwarranted imposition on the time of such officials, who need to be free to devote

their time" to other official responsibilities.  *Id.* (quotation marks, citation and alterations

omitted).

 If the Committee's view of the "personal knowledge" requirement were correct, in this

case, an unknowable but assuredly large number of declarants with the Committee's brand of

"first-hand" knowledge would be required to describe the massive effort undertaken by the

Department in response to congressional oversight, an undertaking Ms. Burton summarizes in

one paragraph.  *See* Burton Decl. ¶ 10.  And in lieu of Mr. Colborn describing the material over

which the President has asserted Executive Privilege, it would be necessary for the Department

to provide declarations from several OLC attorneys who worked under Mr. Colborn's

supervision.  *See* Colborn Decl. ¶¶ 18-26.  This is not and should not be the rule of this Court.

*See, e.g.*, *Barnard*, 531 F. Supp. 2d at 138-39.

 If the Executive Branch could not submit declarations based on information provided to

declarants in their official capacity, significant undue burdens would be imposed on government

litigation, which constitutes a significant portion of this Court's docket (and the D.C. Circuit's).

Government litigants would be forced to introduce, and courts would be forced to review,

multiple declarations filed by different individuals who, in the Committee's words, obtained the

information "first-hand . . . through one of [their] . . . five senses."  Pl.'s Strike Mem. at 4

(quotation marks and citation omitted) (final alteration in original).  But there simply is "no need

for [an] agency to supply affidavits from each individual who participated" in a process

undergoing judicial review.  *Carney*, 19 F.3d at 814 (citing, *inter alia*, *Safecard Servs.*, 926 F.2d

at 1201); *see also id.* at 813-14 (affirming denial of motion to strike declarations of Mr. Colborn

and other Department officials on ground that they only supervised but did not personally

conduct searches described in declarations).

 The Committee further criticizes both Mr. Colborn and Ms. Burton for testifying to the

states of mind of third parties.  *See* Pl.'s Strike Mem. at 6-7, 18.  Both declarants testify to their

familiarity with the actions taken by the Committee during its oversight of Fast and Furious

(including the Committee's written demands for information), and the Department's response

thereto (including discussions with the Committee).  They clearly are in a position to speak

competently regarding the nature of the Committee's requests and asserted interests in this

matter, and how the Department endeavored to respond, *see Cucci v. DEA*, 871 F. Supp. 508,

513 (D.D.C. 1994) (holding that government declarant could testify to the "understanding" of a

third party based on "her discussion with a representative of" the third party); *cf. Southwestern

Elec. Co-op., Inc. v. FERC*, 347 F.3d 975, 983 (D.C. Cir. 2003) (noting that agency "properly

credited the testimony of those with first-hand knowledge of the negotiations"); *cf. also* Fed. R.

Evid. 803(3) (permitting court consideration of a "statement of [an individual's] then-existing

state of mind (such as motive, intent, or plan)"), especially given their extensive and

unquestioned experience in oversight,[1] *see Laborers' Int'l Union of N. Am. v. U.S. Dep't of Justice*, 578 F. Supp. 52, 55 (D.D.C. 1983) (explaining that declarant could testify to "his personal experiences as an agent to the extent that they bore relevance to the case" (quoting *Londrigan*, 670 F.2d at 1174)).  The Committee also fails to explain why Mr. Colborn's claimed underuse of the word "I," *see* Pl.'s Strike Mem. at 6, or Ms. Burton's claimed overuse of the word "we," *see id.* at 17, requires this Court to strike the declarations, or any parts thereof.

The Committee additionally contends that Mr. Colborn cannot competently testify to oversight matters that occurred before he joined OLC in 1986.  *See* Pl.'s Strike Mem. at 7-9.  Mr. Colborn established that, during his 27 years at OLC, he has been the "primary OLC attorney responsible" for advising the Executive Branch on congressional oversight, during which time he has "gained an in-depth understanding" of the history and operation of congressional oversight.  Colborn Decl. ¶ 2.  He is certainly in a position to competently summarize for the Court a "certain amount of background information" that he has learned during his tenure to "ensure[] that the Court understands the context in which the dispute arose."  *Patton Boggs, LLP v. Chevron Corp.*, 791 F. Supp. 2d 13, 22 (D.D.C. 2011) (denying motion to strike).  Indeed, this Court has explained that "it is routine for parties to provide the Court" with such information.  *Id.*; *see also, e.g.*, *MCI Communications Corp. v. United States*, 26 F. Supp. 2d 6, 10 n.6 (D.D.C. 1998) ("Much of the instant declaration is background information to assist the Court.").  If the Court finds the history Mr. Colborn describes to be unhelpful, it should proceed without relying on it, rather than striking it.  *See, e.g.*, *MCI Communications*, 26 F. Supp. 2d at 10 n.6.

---

[1] The Committee has provided no evidence to support its contrary view of the congressional oversight process.

## II.     THE COMMITTEE HAS NOT OTHERWISE SHOWN THAT THE DEPARTMENT'S DECLARATIONS CONTAIN IMPROPER MATERIAL

Many of the other evidentiary issues the Committee raises appear to be restatements of its "personal knowledge" objections.  *See, e.g.*, Pl.'s Strike Mem. at 9 (complaining that Mr. Colborn proffers inadmissible hearsay "to the extent that his statements are based on information provided to him by OLC attorneys and others within the Executive Branch." (quotation marks, citation and alterations omitted)).  As explained above, the Committee has failed to show that the Department's declarants lacked the "personal knowledge" required by Rule 56.  And to the extent the Committee's arguments are not co-extensive with their "personal knowledge" argument, the Committee has failed to shoulder its "formidable burden" to establish that any of the statements within these two declarations are improper.

### A.     Statements Showing What the Department Communicated to the Committee Are Not Hearsay.

The Committee has identified multiple statements in the Burton Declaration to which it erroneously and without explanation takes exception as hearsay.  *See* Pl.'s Strike Mem. at 19 & n.17; *see also id.* at 9-10.

A statement is hearsay if it is "made by an out-of court declarant" and "'offered in evidence to prove the truth of the matter asserted.'"  *Riggsbee v. Diversity Servs., Inc.*, 637 F. Supp. 2d 39, 46 (D.D.C. 2009) (quoting Fed. R. Evid. 801(c)(2)).  The statements from the Burton Declaration about which the Committee complains describe communications Department officials had with Committee staff regarding the Department's objections to the Committee's inquiries, *see* Pl.'s Strike Mem. at 19 & n.17; these communications occurred periodically throughout the process of negotiation and accommodation, *see, e.g.*, Def.'s Resp. to Pl.'s Statement ¶ 49.  These communications became an issue in this case only when the Committee

made them so by arguing that the Department did not explain its privilege objections early enough, and that the Committee was thereby prejudiced.  *See, e.g.*, Pl.'s Summ. J. Mem. at 33-36.

Ms. Burton's statements were not offered to prove the truth of what Department officials *said* within those communications, but rather to establish that the communications *actually happened*, and that the Committee *received certain messages*.  *See, e.g.*, Def.'s Summ. J. Mem. at 36 ("[T]he Committee's argument ignores the fact that the accommodation process in this case involved discussions about the sensitivity of the very documents at issue well before the privilege was asserted and the contempt vote was held.").  This Court has repeatedly held that evidence is not hearsay if it is "offered to show that certain statements were made or to establish the effect of those statements on their recipients," *Ali v. Dist. of Columbia Gov't*, 810 F. Supp. 2d 78, 83 (D.D.C. 2011);[2] it should do so again here.[3]

_____

[2] *See also Gordon v. Office of the Architect of the Capitol*, 928 F. Supp. 2d 196, 210 n.10 (D.D.C. 2013) ("[T]he information on Camera's application is being offered for its impact on the selecting official."); *Beaver v. McHugh*, 840 F. Supp. 2d 161, 166 n.1 (D.D.C. 2012) ("[T]he statement is offered to show that others told Dr. Chang that they were having problems understanding Dr. Beaver."); *Wicks v. Am. Transmission Co.*, 701 F. Supp. 2d 38, 46 n.4 (D.D.C. 2010) ("The letter is not hearsay, as it is not offered to prove the truth of the matter asserted, only the effect on the reader."); *Bolger v. Dist. of Columbia*, 608 F. Supp. 2d 10, 19 n.8 (D.D.C. 2009) ("Johnson's out-of-court statement . . . is being offered to show that Johnson made such a statement at the scene to Officer Cadle and that the substance of his statement was known to Cadle (and thereby MPD) at the time."); *Ransom v. Ctr. For Nonprofit Advancement*, 514 F. Supp. 2d 18, 27 n.7 (D.D.C. 2007) ("The statements are not hearsay, as they are not offered to prove the truth of the matter asserted, only to show the effect on the listener."); *Barry v. Trustees of Int'l Ass'n Full-Time Salaried Officers and Employees of Outside Local Unions and District Counsel's (Iron Workers) Pension Plan*, Civ. Action No. 02-2371, 2006 WL 2507557, at *5 n.2 (D.D.C. Aug. 29, 2006) ("[T]he statements are evaluated as evidence of the effect that they can reasonably be expected to have had on West.").  And even if the Court were to conclude, contrary to this substantial authority, that Ms. Burton's statements were hearsay, it should still consider them in opposition to the Committee's motion for summary judgment insofar as they would be "'reducible to admissible evidence in the form of trial testimony.'" *Ali*, 810 F. Supp. 2d at 84 (quoting *Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33, 38 (D.C. Cir. 1987)); *cf.* Fed. R. Evid. 802, 803; *Cunningham v. U.S. Dep't of Justice*, --- F. Supp. 2d ---, 2013 WL

**B.      The Department's Declarations Are Not Conclusory and They Assist the Court in Assessing the Parties' Claims.**

The Committee objects, without explanation, to statements within the Burton and Colborn Declarations as conclusory.  *See* Pl.'s Strike Mem. at 10-11 & n.11, 19-20 & nn.18-19. Indeed, the principal basis for this claim seems to be the fact that the declarants have used adverbs.  *See, e.g., id.* at 10 ("Many of these involve assertions that something 'historically,' 'traditionally,' 'typically,' 'ordinarily,' 'often,' and/or 'generally' occurs.").

The statements about which the Committee complains are not conclusory, as the declarants have provided "supporting facts" regarding past and present oversight that help put the Court, as fact-finder, in a "position to assess" the parties' claims.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *see Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465 (D.C. Cir. 2009); *see also People for Ethical Treatment of Animals v. USDA*, No. Civ. 03 C 195, 2005 WL 1241141, at *6 (D.D.C. May 24, 2005) ("Hunte's declaration is not conclusory.  He lists the number of competitors in the puppy distribution industry and describes the nature of the competition.").  The Committee is not, moreover, the first litigant to "insist[] that the use of [an] adverb" renders a statement "one of a conclusion, not of a fact."  *Suter v. Lockwood Dental Co.*, 45 App. D.C. 92, 109, 1916 WL 21699, at *9 (D.C.

---

4446795, at *5 (D.D.C. Aug. 21, 2013); *Holiday CVS, LLC v. Holder*, 839 F. Supp. 2d 145, 155 (D.D.C. 2012), *vacated on other grounds*, 493 F. App'x 108 (D.C. Cir. 2012).

[3] The Committee specifically describes as hearsay only one statement from Mr. Colborn.  *See* Pl.'s Strike Mem. at 9.  In it, Mr. Colborn explains his view of why it is important to protect certain Executive Branch information from disclosure, noting as well that the Attorney General has made similar points.  *See* Colborn Decl. ¶ 15.  These statements are not "made by an out-of court declarant," *Riggsbee*, 637 F. Supp. 2d at 46, as they are Mr. Colborn's.

Cir. 1916).  The D.C. Circuit rejected this argument nearly one hundred years ago,[4] *see id.*, just as this Court should now.

In any event, the statements the Committee identifies as conclusory are the type of "background information" that parties "routine[ly]" and appropriately provide to this Court. *Patton Boggs*, 791 F. Supp. 2d at 22.  If the Court considers any of these statements to be conclusory, it should not strike them, but simply "disregard[] them for the purposes of adjudicating" summary judgment.  *E.g.*, *Holiday CVS, LLC v. Holder*, 839 F. Supp. 2d 145, 155 (D.D.C. 2012), *vacated on other grounds*, 493 F. App'x 108 (D.C. Cir. 2012).

## C.      The Department's Lay Witnesses Have Offered Permissible Factual Testimony.

The Committee further argues that the Department's declarations fail to "set out facts that would be admissible in evidence," as required by Rule 56(c)(4), because, in the Committee's view, they contain improper opinions, expert testimony, and legal argument.  *See* Pl.'s Strike Mem. at 9, 11-16, 21-22.  The Committee's various arguments provide no basis to strike the declarations.  The declarations reflect the testimony of competent witnesses providing factual information about how the Department responds to congressional oversight, and how it did so in this case.

The Committee asserts that Mr. Colborn cannot testify to the frequency of certain events, because his use of certain adverbs—"historically," "traditionally," "typically," etc.—transform his testimony into impermissible opinions.  *See id.* at 11.  This argument appears largely to restate the Committee's preceding complaint that such statements are "conclusory," which, as noted above, the D.C. Circuit has already rejected.  *See Suter*, 45 App. D.C. at 109.  The only authority the Committee offers on this point is *Judicial Watch v. U.S. Department of Commerce*,

---

[4] The D.C. Circuit was known then as the Court of Appeals of the District of Columbia.

which held in pertinent part that a declarant "lack[ed] the first-hand knowledge and personal experience necessary to render her competent to attest to any sets of facts underlying her statements." 224 F.R.D. 261, 264 (D.D.C. 2004). As has already been established, Mr. Colborn—and Ms. Burton, for that matter—have the "personal knowledge" Rule 56 requires. And even if the Court concluded that the Colborn or Burton Declarations did contain lay opinion testimony, such testimony would be admissible because it is based on their substantial personal experience with this matter and Executive Branch oversight practice. *See* Fed. R. Evid. 701; *Barnes v. Dist. of Columbia*, 924 F. Supp. 2d 74, 83 (D.D.C. 2013).

Without citing any legal authority, the Committee objects to Mr. Colborn's testimony regarding the harm that would flow if the Executive could not protect against the disclosure of the material withheld pursuant to the President's assertion of Executive Privilege. *See, e.g.*, Pl.'s Strike Mem. at 12 ("The Attorney General is certainly entitled to advance a 'chilling' argument in support of his legal position, but Mr. Colborn cannot declare it as a 'fact.'"). This argument ignores binding caselaw establishing that courts can consider such testimony, even if it is "speculative to some extent, in the sense that it describes a potential future harm rather than an actual past harm." *Halperin v. CIA*, 629 F.2d 144, 149 (D.C. Cir. 1980). This Court routinely credits testimony of future harm by government officials in disputes concerning government privileges. Indeed, this Court recently credited a declaration from Mr. Colborn himself explaining how disclosure of certain material would "'chill the candid and frank communications necessary for effective governmental decision-making.'" *Elec. Frontier Found. v. Dep't of Justice*, 892 F. Supp. 2d 95, 102-03 (D.D.C 2012) (quoting the declaration). Citing the declaration submitted by Mr. Colborn, the Court concluded that "it is not hard to imagine how

disclosure . . . would likely interfere with the candor necessary for open discussions . . . ." *Id.* at

103.  His testimony regarding chill was proper there, and it is proper here.

The Committee next attacks a straw man, arguing that the Department's declarations fail

to meet the requirements for expert testimony under Federal Rule of Evidence 702.  *See* Pl.'s

Strike Mem. at 13-14.  Courts "exercise[] more control over experts than over lay witnesses,"

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993) (quotation marks and citations

omitted), but because neither Mr. Colborn nor Ms. Burton are offered as experts, there is no need

for their testimony to meet the requirements of Rule 702, *see, e.g.*, *United States v. Machado-*

*Erazo*, 950 F. Supp. 2d 49, 52 (D.D.C. 2013) (distinguishing between lay testimony and expert

testimony governed by Fed. R. Evid. 702); *Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 86 (D.D.C.

2012) (same).

Finally, the Committee criticizes the Colborn and Burton Declarations for allegedly

offering impermissible legal arguments.  *See* Pl.'s Strike Mem. at 14-16, 21-22.  The Committee

has failed to offer a single case in support of its theory that the statements to which it objects are

impermissible legal arguments.  *See id.*  Rather, government declarants are permitted to explain

their view of what material may be withheld pursuant to a particular privilege.  *See Citizens for*

*Responsibility and Ethics in Wash. v. U.S. Dep't of Justice*, 658 F. Supp. 2d 217, 235-36 (D.D.C.

2009) (crediting testimony from OLC official regarding what material may be "'protected by [a]

privilege,'" what "'fall[s] within the core of the privilege,'" and what "'additional categories of

communications'" could be withheld pursuant to the privilege (quoting declaration)).  This Court

has even ordered submission of such testimony.  *See id.* at 223 (describing order to file

declarations "'explaining with specificity the precise information contained in the records that is

exempt from disclosure under FOIA, which exemptions apply to which portions of the records, and why such exemptions apply'" (quoting order)).

The declarants' references to the legal authority on which the Department is relying do not, as the Committee claims, "insulate the Attorney General's legal position from judicial scrutiny by enshrining it as a 'fact' in the record," Pl.'s Strike Mem. at 16; the declarants have simply explained what is being withheld, and why.  *See, e.g.*, *Elec. Frontier Found.*, 892 F. Supp. 2d at 99 ("The Hardy declaration makes clear that, in accordance with E.O. 13526, all withheld information in the OLC Opinion was appropriately classified at the 'SECRET/NOFORN' ('S/NF') level by the FBI, was under the control of the U.S. government, and continues to warrant classification at the 'S/NF' level in the interest of national security." (citing the declaration)); *cf. Citizens for Responsibility and Ethics in Wash. v. Nat'l Archives and Records Admin.*, 583 F. Supp. 2d 146, 158 (D.D.C. 2008) (crediting government attorney's declaration regarding what agencies do pursuant to particular federal statute).  In any event, if the Court determines that the Department's declarations "contain some legal conclusions that are irrelevant," those conclusions should simply be "excluded from consideration" on summary judgment; they should not be stricken.  *E.g.*, *MCI Communications*, 26 F. Supp. 2d at 10 n.6.

## III.   THE COURT SHOULD DENY THE MOTION TO STRIKE BECAUSE THE COMMITTEE'S ARGUMENTS CAN AND SHOULD BE ADDRESSED IN THE CONTEXT OF THE PARTIES' SUMMARY JUDGMENT MOTIONS

Although, as explained above, the Committee's motion to strike fails on the merits, it should also be denied as procedurally improper and unnecessary.  The 2010 amendments to the Federal Rules of Civil Procedure make clear that there is "no need" for a party challenging a declaration "to make a separate motion to strike."  Fed. R. Civ. P. 56, Comm. Notes on Rules— 2010 Amends.; *cf. Humane Soc'y of United States v. Babbitt*, 46 F.3d 93, 96 n.5 (D.C. Cir. 1995)

18

(requiring, under prior version of the Rules, a separate motion to strike).  Thus, the Committee should have lodged its objections to the Colborn and Burton Declarations in the Committee's latest summary judgment brief, where it could have explained how the issues it raises here are relevant to summary judgment.  *See Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981) (per curiam) ("The points raised in the motion might have been presented, concisely, in the reply brief.  There was no need for appellants to burden this court with a motion to strike."); *cf. Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 59 (D.D.C. 2013) (noting that Court did not "need[] more lawyers to spend more time on more briefs on more subjects in order to decide" a dispositive motion).

Not only has the Committee burdened the case with this additional motion, but by separating the motion to strike from its summary judgment filings, the Committee has failed to establish any relevance between its objections to the declarations and the parties' summary judgment arguments.  Because the Committee's separate motion is procedurally improper and unnecessary, the Court should deny the motion to strike, and address the Committee's evidentiary objections only "as needed," and to the extent they "overlap with arguments advanced in its summary judgment briefing."  *EPOS Technologies Ltd. v. Pegasus Technologies Ltd.*, 916 F. Supp. 2d 88, 90 n.2 (D.D.C. 2013).  Moreover, and as explained above, if the Court concludes that any portion of either declaration is not proper, it should simply ignore that portion for purposes of resolving the parties' summary judgment motions; it need not "strike" anything. *See, e.g.*, *supra* at 6.

## CONCLUSION

For the foregoing reasons, the Department respectfully requests that the Court deny the Committee's motion to strike.

Dated: March 3, 2014                    Respectfully submitted,

                                        STUART F. DELERY
                                        Assistant Attorney General

                                        KATHLEEN R. HARTNETT
                                        Deputy Assistant Attorney General

                                        JOSEPH H. HUNT
                                        Director, Federal Programs Branch

                                        JOHN R. TYLER
                                        Assistant Branch Director

                                        _____*/s/ Gregory Dworkowitz*_____
                                        ERIC R. WOMACK
                                        (IL Bar No. 6279517)
                                        GREGORY DWORKOWITZ
                                        (NY Bar Registration No. 4796041)
                                        LUKE M. JONES
                                        (VA Bar No. 75053)
                                        Trial Attorneys
                                        U.S. Department of Justice
                                        Civil Division
                                        Federal Programs Branch
                                        Washington, D.C. 20001
                                        Tel: (202) 305-8576
                                        Fax: (202) 616-8470
                                        gregory.p.dworkowitz@usdoj.gov

                                        Counsel for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2014, I caused a true and correct copy of the foregoing

Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike the Declarations of Paul

P. Colborn and M. Faith Burton to be served on plaintiff's counsel electronically by means of the

Court's ECF system.

  */s/ Gregory Dworkowitz*
GREGORY DWORKOWITZ