## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM, UNITED STATES HOUSE OF REPRESENTATIVES, <br><br> *Plaintiff*, <br><br> v. <br><br> ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States, <br><br> *Defendant*. | Case No. 1:12-cv-01332-ABJ |

## COMMITTEE'S NOTICE OF DISPUTED CLAIMS AND OTHER ISSUES

Plaintiff Committee on Oversight and Government Reform of the U.S. House of Representatives respectfully submits this Notice of Disputed Claims and Other Issues pursuant to this Court's August 20 and September 9, 2014 Orders. *See* Order at 5 (Aug. 20, 2014) (ECF No. 81) ("August 20 Order") ("[T]he parties shall file a notice identifying any disputed privilege claims by October 17, 2014."); Order at 3 (Sept. 9, 2014) (ECF No. 88) ("September 9 Order") ("[T]he Committee shall have until November 26, 2014 to identify the disputed claims.").

## BACKGROUND

On August 20, 2014, the Court ordered the Attorney General (i) to produce to the Committee all documents at issue in this litigation that he does not contend are "both predecisional and deliberative," Aug. 20 Order at 4, and (ii) to provide to the Committee, with respect to any documents that he does contend are "both predecisional and deliberative," a "detailed list" in support of that contention that is "'sufficient to enable resolution of any privilege claims.'" *Id.* (quoting *Comm. on the Judiciary v. Miers*, 558 F. Supp. 2d 53, 107

(D.D.C. 2008)). The Court further ordered that "[t]he list should set forth not only the author and recipient(s) and the general subject matter of the record being withheld, but the basis for the assertion of the privilege; in particular, [the Attorney General] should specify the decision that the deliberations contained in the document precede." *Id.*

Subsequently, at the Attorney General's request, the Court extended his production and privilege list deadlines to November 3, 2014 – *see* Sept. 9 Order at 3 (adjusting privilege list deadline); Order at 2 (Oct. 6, 2014) (ECF No. 95) ("October 6 Order") (adjusting production deadline) – and directed that the privilege list "describe the decisionmaking process to which the document contributed, by, for example, identifying the decision, policy, or action under consideration in the document, whether or not the decision, policy, or action was eventually adopted or undertaken." Sept. 9 Order at 5.

On November 4, 2014, the Attorney General produced to the Committee a 1,311-page list (the "privilege list") and 10,104 previously-withheld documents (totaling 64,404 pages).[1] The Attorney General's document production breaks down as follows:

- 3,188 documents (31.6% of the total) produced in full with no redactions;

- 380 documents redacted in part, but with no assertion of any privilege, or other ground for withholding; and

- 6,536 documents redacted in whole or in part, with at least one (and in some cases more than one) assertion of privilege, or other ground for withholding.

With respect to the 6,536 documents as to which the Attorney General asserted at least one claim of privilege (or other ground for withholding), the privilege list contains 14,281

---

[1] The Committee agreed that the privilege list and documents could be delivered on November 4, 2014, rather than November 3, 2014.

individual line entries in a column on that list entitled "Withholding Basis."  Those 14,281

entries in the "Withholding Basis" column fall into the following categories:

- deliberative process – 5,369 claims;

- law enforcement sensitive – 3,169 claims;

- privacy – 976 claims;

- attorney-client/attorney work product – 16 claims;

- other – 297 claims;[2] and

- unrelated – 372 claims.

These numbers were derived by counting the number of times each withholding basis name

("e.g., "deliberative process," "law enforcement sensitive") appears in the "Withholding Basis"

column on the privilege list.[3]

---

[2]  As best we can tell, the "other" category appears to be, for the most part, a synonym for "foreign policy sensitive" or "foreign relations sensitive."

[3]  The "Withholding Basis" column on the privilege list also contains a number of entries that are substantially the following form:  "This document is wholly contained within Document [bates numbered X].  The Withholding Basis, if any, is described in the entry for Document [bates numbered X]."  As a result of this peculiarity, the sum of the six substantive privilege categories is less than the total number of individual line entries (14,281) in the "Withholding Basis" column on the privilege list.

In addition, the Court should be aware that it appears that there are a substantial number of duplicate documents on the privilege list, e.g., multiple copies of the same email.  As a result, the numbers set forth above for each of the six privilege categories may overstate the total number of non-identical documents as to which any particular privilege claim has been asserted.

Finally, the Court should be aware that, on November 18, 2014, the Attorney General purported to produce to us "documents as produced today [i.e., November 18] to the [Freedom of Information Act ("FOIA")] requester in connection with that FOIA litigation," i.e., *Judicial Watch v. U.S. Dep't of Justice*, No. 1:12-cv-01510 (D.D.C).  Letter from John R. Tyler, Ass't Dir., to Kerry W. Kircher, Gen. Counsel, at 1 (Nov. 18, 2014), attached as Ex. OGR-1.  The letter indicates that these documents consist of "the November 4 production set [produced to the Committee], subject to additional redactions."  *Id.*  In other words, these newly (and lately) produced documents add nothing to what the Committee already has, notwithstanding the letter's statement that this belated production "update[s] the Department's production to the Committee."

*(Continued . . .)*

## DISPUTED CLAIMS AND OTHER ISSUES

I.      **The Attorney General's Production and Privilege List Do Not Account for All Documents at Issue in This Lawsuit.**

From the outset of this litigation, the universe of documents at issue has been the "Post-February 4 Subset," a limited and well-defined subset of documents responsive to the Committee's October 11, 2011 subpoena to the Attorney General.  *See* Compl. ¶ 62 (Aug. 13, 2012) (ECF No. 1) (defining "Post-February 4 Subset" as "those documents dated or that were created after February 4, 2011, that are responsive to Categories 1, 4, 5, and 10 [out of a total of 22 categories ] of the Holder Subpoena"); *id.* ¶ 71; *id.* at Prayer for Relief A.1.iv; First Am. Compl. ¶¶ 67, 76, Prayer for Relief A.1.iv. (Jan. 15, 2013) (ECF No. 35).

As a result, the August 20 Order – directing the Attorney General to produce to the Committee (i) all documents that he does not contend are both predecisional and deliberative, and (ii) a privilege list identifying all documents that he does contend are both (and his reasons for all such contentions), *see* Aug. 20 Order at 4-5 – necessarily required that *all Post-February 4 Subset documents* either would be produced or accounted for on the privilege list.

The Attorney General, however, now contends otherwise.  His position is that the documents at issue in this lawsuit consist of a smaller universe which he calls the "Executive

---

The November 18 letter goes on to say that "in some instances redactions contained in the November 4 production set have been removed, and . . . additional redactions have been made to some documents previously produced to the Committee," *id.*, although the letter does not identify any such added or removed redactions.

The November 18 letter concludes by stating that "[t]he Department also intends to soon provide to the Committee an updated version of the detailed list provided on November 4, 2014."  *Id.* However, that has not happened.  Accordingly, this Notice of Disputed Claims necessarily is based solely on the Attorney General's November 4 production to the Committee and his November 4 privilege list.

Privilege Set."  Letter from Gregory Dworkowitz, Trial Att'y, to Kerry W. Kircher, Gen.

Counsel, at 1-2 (Nov. 10, 2014) ("Dworkowitz Letter"), attached as Ex. OGR-2.

> [The] "Executive Privilege Set" . . . refers to the approximately
> 15,000 documents at issue in this lawsuit, over which Executive
> Privilege was asserted in June 2012, and which were logged on the
> detailed list we provide you.

*Id.*[4]  The "Executive Privilege Set" thus excludes an undefined number of documents

encompassed by the Post-February 4 Subset, which documents, according to the Attorney

General, were "tak[en] off the table" "in the weeks leading up to the June 2012 contempt vote by

the House of Representatives."  *Id.*[5]

There are two principal problems with the Attorney General's "Executive Privilege Set"

argument.  *First*, this is exactly the same argument he advanced in his cross-motion for summary

judgment.  *See* Mem. in Supp. of Def.'s Mot. for Summ. J. & in Opp'n to Pl.'s Mot. for Summ. J.

at 42-45 (Jan. 21, 2014) (ECF No. 63) (arguing that Amended Complaint should be construed

---

[4]  *See also* Def.'s Mem. . . . in Opp'n to Pl.'s Mot. for Entry of Order Directing Att'y Gen. to Show Cause at 8 n.4 (Oct. 5, 2014) (ECF No. 94) (referring to "Executive Privilege Set" as documents at issue in lawsuit).

[5]  The Dworkowitz Letter responded to a letter we wrote on November 6, 2014, aimed at pinning down the Attorney General, once and for all, on this issue which has been lurking in this case since the Court's entry of its August 20 Order.  *See* Letter from Kerry W. Kircher, Gen. Counsel, to Kathleen R. Hartnett, Dep'y Ass't Att'y Gen., et al. (Nov. 6, 2014), attached as Ex. OGR-3.

Earlier, the Attorney General had hinted that he might withhold from his production and privilege list certain Post-February 4 Subset documents, but had refused to confirm whether he would do so.  *Compare, e.g.*, Letter from Kerry W. Kircher, Gen. Counsel, to Kathleen R. Hartnett, Dep'y Ass't Att'y Gen., at 1-3 (Oct. 7, 2014) (seeking clarification of whether Attorney General in fact would produce, or account for on his privilege list, *all* Post-February 4 Subset documents), attached as Ex. OGR-4, *with* E-mail from Kathleen R. Hartnett, Dep'y Ass't Att'y Gen., to Kerry W. Kircher, Gen. Counsel (Oct. 10, 2014) (refusing to answer), attached as Ex. OGR-5.

At the time of his November 4, 2014 production, the Attorney General still did not acknowledge that he was withholding and failing to account for an undefined number of documents encompassed by the Post-February 4 Subset.  Instead, he only admitted this when we again pressed him, post-production, on November 6, 2014.

not to apply to documents that, in Attorney General's view, Committee took off table in spring

2012, even though such documents were included within Post-February 4 Subset); *see also id.* at

43 ("[T]he President was not asked to, and did not, assert Executive Privilege over [at least

certain Post-February 4 Subset documents].").  And it is exactly the same argument this Court

necessarily rejected when it denied the Attorney General's cross-motion.  *See* Aug. 20 Order at 5.

     *Second*, the Attorney General's argument is flatly wrong on its substance for the

multitude of reasons we previously have articulated.  *See* Pl.'s Consol. (i) Reply to Def.'s Opp'n.

to Pl.'s Mot. for Summ. J., & (ii) Opp'n to Def.'s Cross-Mot. for Summ. J. at 41-44 (Feb. 14,

2014) (ECF No. 68).  Among other things:

1. The Committee's complaint defines the scope of the documents at issue in this
   lawsuit, not positions it may or may not have taken in prior settlement discussions,
   and certainly not an arbitrary and unilateral diktat by the Attorney General that the
   Committee is seeking a universe of documents (the Executive Privilege Set) smaller
   than the universe it says it is seeking (the Post-February 4 Subset).

2. As a factual matter, the Committee never narrowed the Holder Subpoena in the
   manner the Attorney General suggests.  While the Committee and the Attorney
   General held discussions aimed at resolving the dispute between them regarding the
   Attorney General's non-compliance with the Holder Subpoena, those discussions
   ultimately failed to produce a resolution.

3. The Attorney General's argument improperly conflates the contempt proceedings in
   the House – which culminated with the June 28, 2012 floor vote adopting H. Res.
   711, 112th Cong. (2012) – with this litigation which is proceeding pursuant to a

different resolution, H. Res. 706, 112th Cong. (2012) (enacted).[6]  Those are two separate matters.  Contempt of Congress is a crime, *see* 2 U.S.C. § 192, and, pursuant to statute, it was the responsibility of the U.S. Attorney to present the matter of the Holder contempt to a grand jury, *see id.* § 194, something the U.S. Attorney refused to do.  *See* First Am. Compl. ¶¶ 52, 55, 57.  This is a civil case, a subpoena enforcement matter, and the relief that the Committee seeks – including the particular documents it seeks – is entirely consistent with the authorizing resolution, which is not limited in any way by what may or may not have occurred earlier.

The Court, in its October 15, 2014 Minute Order, characterized this issue as "hypothetical . . . [before the Attorney General's] compliance [with the August 20 and September 9 Orders] has taken place."  Minute Order (Oct. 15, 2014).  The issue is hypothetical no longer.  Notwithstanding the Court's August 20 and September 9 Orders, the Attorney General clearly is withholding – both from production and from inclusion on his privilege list – an undefined (perhaps substantial) number of documents included in the Post-February 4 Subset which is (and always has been) the universe of documents at issue in this lawsuit.

Under these extraordinary circumstances, the Committee urges the Court to direct the Attorney General immediately to produce to the Committee all Post-February 4 Subset documents that he did not produce on November 4, 2014, and that do not appear on his privilege list.  Alternatively, the Committee urges the Court to direct the Attorney General immediately to account for all such withheld and unidentified Post-February 4 Subset documents in accordance with the Court's August 20 and September 9 Orders.  Absent direction from the Court, the

---

[6]  *See also* H. Res. 5, 113th Cong. (2013) (enacted) (authorizing Committee to continue litigation after commencement of 113th Congress).

Committee will move at an appropriate time for an order requiring the Attorney General to produce to the Committee, in full and with no redactions, all Post-February 4 Subset documents that the Attorney General did not produce on November 4, 2014, and that do not appear on his privilege list.

II.     **Disputed Claims:  the 380 Redacted Documents as to Which No Privilege Claim, or Other Withholding Basis, Has Been Asserted.**

As noted above, the Attorney General produced 380 documents which have been redacted in part, but as to which he has asserted no claim of privilege, or other withholding basis. The Committee disputes the propriety of those redactions and urges the Court to direct the Attorney General immediately to produce those 380 documents in full with no redactions. Absent that, the Committee will move at an appropriate time for an order requiring the Attorney General to produce these documents to the Committee in full with no redactions.

III.    **Disputed Claims:  the Non-Deliberative Process Privilege Claims.**

The Attorney General has articulated five non-deliberative process privilege grounds for withholding, or redacting information from, responsive documents:  (i) law enforcement sensitive; (ii) privacy; (iii) attorney-client/attorney work product; (iv) other (foreign policy/foreign relations sensitive); and (v) unrelated.

"Unrelated" could mean non-responsive to the Holder Subpoena, or it could mean not relevant (in the opinion of the Attorney General) to the Committee's investigation.  The Committee is willing to confer with the Attorney General regarding this category; to the extent these withholdings reference non-responsive material, the Committee hopes that the parties can resolve these issues without further Court intervention (provided, for example, that the parties can agree on a means of verification that these redactions indeed are only of non-responsive material).

Otherwise, the Committee disputes all of the Attorney General's withholdings on non-deliberative process privilege grounds because, among other reasons:

- This Court already has held, repeatedly, that there is but one privilege at issue in this case:  "From the start, the Attorney General has sought to withhold the records in question on one ground only:  he asserted that they were covered by the deliberative process component of the Executive Privilege."  Oct. 6 Order at 2. The Court so held in rejecting Attorney General's effort to inject into this case a claim that he could withhold responsive records under "some sort of general work file privilege along the lines of the attorney work product doctrine."  *Id.* at 3; *see also* Aug. 20 Order at 4 (deliberative process is only "claim of privilege asserted" by the Attorney General in this case).

- In light of the following facts (among many others), the Attorney General long-ago waived his right to assert any new privileges at this late stage in the proceedings:  (i) the Holder Subpoena was issued on October 11, 2011, and returnable October 25, 2011; (ii) the Attorney General made no privilege assertion at that time; (iii) when the Attorney General, on June 20, 2012, belatedly did assert a privilege, he asserted only one such privilege – the "deliberative process component of the Executive Privilege," Oct. 6 Order at 2; and (iv) this lawsuit was initiated on August 13, 2012, more than two years ago.[7]

---

[7]  *See* Mem. . . . in Supp. of Pl.'s Mot. for Summ. J. at 33-36 (Dec. 16, 2013) (ECF No. 61) ("Committee Summary Judgment Memorandum"); *see generally Sikorsky Aircraft Corp. v. United States*, 106 Fed. Cl. 571, 580-82 (Fed. Cl. 2012) ("[I]nvocation of the deliberative process privilege, as with other privileges, is subject to a timeliness requirement. . . . and there is no basis to refrain from extending the waiver to instances of indiligence, indolence, or dawdling"; holding privilege waived when asserted ten months after discovery that document arguably covered by

(*Continued . . .*)

- There is no legal basis for the Attorney General to withhold, or redact information from, documents responsive to a congressional subpoena on the basis of law enforcement sensitive, privacy, attorney-client/attorney work product, other (foreign policy/foreign relations sensitive), or unrelated (not relevant to Committee investigation).  None of these asserted bases are rooted in the Constitution; all are either creatures of common law and/or created by FOIA.  *See* 5 U.S.C. § 552(b)(1) (foreign policy sensitive); *id.* § 552(b)(6) (personal privacy); *id.* § 552(b)(7) (law enforcement sensitive).  And neither the common law nor FOIA supplies authority for withholding information from Congress.[8]

Under these circumstances, the Committee urges the Court to direct the Attorney General immediately to produce to the Committee all documents withheld or information redacted on the basis of any non-deliberative process privilege ground (other than the "unrelated" category about which the Committee proposes to confer with the Attorney General).  Absent that, the

---

privilege); *Fonville v. Dist. of Columbia*, 230 F.R.D. 38, 42 (D.D.C. 2005) (executive waived deliberative process privilege through untimely assertion); *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 80 (2d Cir. 2002) (executive may waive claim of deliberative process privilege); *Blumenthal v. Drudge*, 186 F.R.D. 236, 240 & n.4 (D.D.C. 1999) (failure to assert privilege within reasonable time, without showing of good cause, may constitute waiver); *cf.* Fed. R. Civ. P. 45(d)(2) (privilege claim must be lodged within "the earlier of the time specified for compliance or 14 days after the subpoena is served").

[8] Common Law:  *See* Comm. Summ. J. Mem. at 25-33; *see also, e.g.*, *Senate Select Comm. on Ethics v. Packwood*, 845 F. Supp. 17, 20-21 (D.D.C. 1994) ("In determining the proper scope of a legislative subpoena, this Court may only inquire as to whether the documents sought by the subpoena are 'not plainly incompetent or irrelevant to any lawful purpose . . . in the discharge of [the legislature's] duties.'" (quoting *McPhaul v. United States*, 364 U.S. 372, 381 (1960))).

FOIA:  *See* 5 U.S.C. § 552(d) (FOIA "is not authority to withhold information from Congress"); *see also, e.g.*, *Murphy v. Dep't of the Army*, 613 F.2d 1151, 1156 (D.C. Cir. 1979) (stating, in FOIA case, that "Congress, whether as a body, *through committees*, or otherwise, must have the widest possible access to executive branch information if it is to perform its manifold responsibilities effectively" (emphasis added)).

Committee will move at an appropriate time for an order requiring the Attorney General to produce to the Committee all documents withheld, or information redacted, on the basis of any non-deliberative process privilege ground.

## IV.   Disputed Claims:  the Deliberative Process Privilege Claims.

The Committee disputes the Attorney General's deliberative process privilege claims on two grounds.  First, three identifiable collections of deliberative process privilege claims contain information sufficient to enable the Committee to conclude that the documents withheld or the information redacted decidedly *is not* both predecisional and deliberative.

Second, *none* of the deliberative process privilege claims contain information sufficient to enable the Court or the Committee reasonably to conclude that the documents withheld or the information redacted is both predecisional and deliberative.

### A.   The Attorney General Improperly Has Claimed Deliberative Process as to Three Identifiable Collections of Documents.

The Attorney General has characterized as both predecisional and deliberative three identifiable collections of withheld documents (or redacted information) that the Court can reject out of hand:  (i) Department of Justice ("DOJ") responses to congressional inquiries (2,576 claims); (ii) DOJ responses to media or press reports (680 claims); and (iii) documents for which the Attorney General has provided no explanation whatsoever for his claim of deliberative process privilege (55 claims).[9]

----

[9]  Predecisional" means that documents are "generated 'antecedent to the adoption of an agency *policy*.'"  *Paisley v. CIA*, 712 F.2d 686, 698 (D.C. Cir. 1982) (emphasis added; quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc)).  "Deliberative" means that the documents must reflect "the 'give-and-take' of the deliberative process and contain opinions, recommendations, or advice about agency *policies*."  *Id.* (emphasis added; citing *Arthur Anderson & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982), and *Jordan*, 591 F.2d at 774); *see also Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975) ("[T]he document must be a direct

(*Continued . . .*)

Documents that concern DOJ's responses to Congress' request for information about Operation Fast and Furious or DOJ's responses to media or press reports about Operation Fast and Furious are not documents that concern the kinds of "legal or policy matters," *Vaughn*, 523 F.2d at 1144, to which the deliberative process privilege applies. Responding to congressional inquiries is a constitutional obligation, and spinning the press (presumably for perceived political advantage), while certainly to be expected, is not entitled to the protection of the deliberative process privilege.

Under these circumstances, the Committee urges the Court to direct the Attorney General immediately to produce to the Committee in full, with no redactions, all documents described above. Absent that, the Committee will move at an appropriate time for an order requiring the Attorney General to produce to the Committee in full, with no redactions, the documents described above.

### B.     The Attorney General Has Not Provided Sufficient Information.

The Attorney General was obligated to include on his privilege list, with respect to each document he contended was "both predecisional and deliberative," information "'sufficient to enable resolution'" of his claim. Aug. 20 Order at 4 (quoting *Comm. on the Judiciary*, 558 F. Supp. 2d at 107). This included "not only the author and recipient(s) and the general subject matter of the record being withheld, but the basis for the assertion of the privilege; in particular, . . . the decision that the deliberations contained in the document precede." *Id.* In its

---

part of the deliberative process in that it makes recommendations or expresses opinions on *legal or policy matters*." (emphasis added)). Unless a document satisfies both prongs of this test it is not privileged. *See In Re Sealed Case (Espy)*, 121 F.3d 729, 737 (D.C. Cir. 1997); *see also Waters v. U.S. Capitol Police Bd.*, 218 F.R.D. 323, 324 (D.D.C. 2003) (records "that speak[] to a particular investigation rather than the adoption of a policy that applies to all cases of a particular nature or type" are not privileged).

September 9 Order, the Court refined this requirement by directing the Attorney General to "describe the decisionmaking process to which the document contributed, by, for example, identifying the decision, policy, or action under consideration in the document, whether or not the decision, policy or action, was eventually adopted or undertaken." Sept. 9 Order at 5 (citing *Senate of the Commonwealth of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) ("*Senate of P.R.*"), which emphasizes that "conclusory assertions of privilege will not suffice to carry the agency's burden" (quotation marks omitted)).[10]

Senate of P.R.* illustrates the type of document description that this Circuit expressly has rejected as conclusory.  There, the Court noted that a typical entry to DOJ's index read as follows:

> Memo dated 8-20-80 from Stephen Clark, Attorney, CRT, to Charles Wellford, Deputy Administrator, Federal Justice Research Program. (2 pages).  RE: Report on status of Cerro Maravilla case . . . .  [C]andid discussion and recommendation as to strategy is deleted to protect the intra-agency deliberative process and attorney work-product.

*Senate of P.R.*, 823 F.2d at 584.  Although the district court found that DOJ provided adequate justification, the D.C. Circuit reversed, holding that "[t]he information provided by the DOJ – consisting almost entirely of each document's issue date, its author, and intended recipient, and the briefest of references to its subject matter – will not do." *Id.* at 585.  Rather, the Court said, "the agency must establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" *Id.* at 586 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)).

---

[10]  *Cf. Parke, Davis & Co. v. Califano,* 623 F.2d 1, 6 (6th Cir. 1980) (exemption 5 claims must be supported with "specificity and [in] detail").

The Attorney General's explanations provide less information than the descriptions rejected as inadequate in *Senate of P.R.*  For example, nearly 100 deliberative process claims provide no information beyond the phrase "discussing proposed changes to a draft letter to Congress."  Others consist of such statements as "directing and drawing attention to language within publicly available documents," "discussing how to respond to quote," "deliberations about briefing," and "deliberations about setting up meetings."  These kinds of explanations do not come close to either "describ[ing] the decisionmaking process to which the document contributed" or "identify[ing] the decision, policy, or action under consideration in the document," as contemplated by the September 9, 2014 Order.

Indeed, even the Attorney General's most detailed explanations fall well far short of what is required to enable the Committee and the Court to make a reasonable judgment as to whether the document was "both predecisional and deliberative."  This is a sampling of the most detailed explanations that appear on the Attorney General's privilege list:

- "Internal DOJ discussion about how to handle expected MLAT request in re F&F fm Gov of Mexico; Discussion amongs [sic] involved personnel over process of consultation on the matter" [DOJ-FF-12145 to DOJ-FF-12147];

- "discussing what materials should be made available to which entities; discussion of how Department assets should be managed in light of resource constraints; discussion of necessary steps in an ongoing prosecution" [DOJ-FF-44794 to DOJ—FF-44795];

- "discussion re plan for completing collection and review of documents re Fast & Furious inquiry, production of documents to Chairman Issa committee, and conducting interviews re F&F investigation to facilitate decisions re how to communicate info to Congress and public" [DOJ-FF-48609];

- "Redacted DP material identifies matters of interest to a DOJ official working on a reponse [sic] to a F&F congressional subpoena, and reveals the pre-decisional deliberations of the Department over how to respond to the request." [DOJ-FF-50970]; and

- "discussing particular issue requiring discussion in light of recent development in congressional investigation; providing particular facts as relevant to identified topic, including extrapolation based on prior experience and postdecisional analysis of reasons for prior decision that's relevant to future decision" [DOJ-FF-57609].

In short, the Attorney General's privilege list is woefully inadequate.  While it is conceivable that some of the 2,085 remaining deliberative process assertions – that is, all those not included within the three identifiable collections of deliberative process claims described above in Section IV.A – might reference privilege claims for which the Attorney General could proffer information sufficient to establish the basic "predecisional" and "deliberative" elements of such a claim, the Attorney General's current privilege list fails to provide such information.

Accordingly, the Committee disputes the remaining 2,085 deliberative process claims, and urges the Court to direct the Attorney General to provide, no later than December 15, 2014, additional explanatory information sufficient to comply with the Court's August 20 and September 9 Orders with respect to the materials covered by these 2,085 claims.  Absent that, the Committee will move at an appropriate time for an order requiring the Attorney General to produce to the Committee in full, with no redactions, the documents described above.

Respectfully submitted,

*/s/ Kerry W. Kircher*
KERRY W. KIRCHER, D.C. Bar # 386816
General Counsel
WILLIAM PITTARD, D.C. Bar # 482949
Deputy General Counsel
TODD B. TATELMAN
Assistant Counsel
ELENI M. ROUMEL
Assistant Counsel
ISAAC B. ROSENBERG, D.C. Bar # 998900
Assistant Counsel
KIMBERLY HAMM, D.C. Bar # 1020989
Assistant Counsel

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
(202) 225-9700 (phone)
(202) 226-1360 (fax)

*Counsel for Plaintiff Committee on Oversight and Government Reform, United States House of Representatives*

November 25, 2014

## CERTIFICATE OF SERVICE

I certify that on November 25, 2014, I served one copy of the foregoing Committee's

Notice of Disputed Claims and Other Issues by CM/ECF on all registered parties and by

electronic mail (.pdf format), on:

> Kathleen R. Hartnett, Deputy Assistant Attorney General
> John R. Tyler, Assistant Branch Director
> Gregory Dworkowitz, Trial Attorney
> U.S. Department of Justice
> Civil Division, Federal Programs Branch
> Washington, D.C.  20001
> kathleen.r.hartnett@usdoj.gov
> john.tyler@usdoj.gov
> gregory.p.dworkowitz@usdoj.gov

*/s/ Todd B. Tatelman*
Todd B. Tatelman