**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COMMITTEE ON OVERSIGHT AND                )
GOVERNMENT REFORM, UNITED STATES          )
HOUSE OF REPRESENTATIVES,                 )
                                          )
                         *Plaintiff*,     )
                                          )
              v.                          )        Case No. 1:12-cv-01332 (ABJ)
                                          )
ERIC H. HOLDER, JR.,                      )
in his official capacity as Attorney General of the )
United States,                           )
                                          )
                         *Defendant*.     )

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**

Kerry W. Kircher, General Counsel
William Pittard, Deputy General Counsel
Todd B. Tatelman, Senior Assistant Counsel
Eleni M. Roumel, Assistant Counsel
Isaac B. Rosenberg, Assistant Counsel
Kimberly Hamm, Assistant Counsel

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)

*Counsel for Plaintiff Committee on Oversight and
Government Reform, U.S. House of Representatives*

January 16, 2015

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... iii

GLOSSARY OF SHORT CITES ........................................................ viii

INTRODUCTION ...................................................................1

ARGUMENT ......................................................................3

I.     The Attorney General Should Be Compelled to Produce in Full All Post-February 4
       Subset Documents He Has Not Produced and That Do Not Appear on His Detailed
       List. ....................................................................3

II.    The Attorney General Should Be Compelled to Produce in Full All Documents He Has
       Redacted as to Which He Has Asserted No Claim of Privilege. ........................................8

III.   The Attorney General Should Be Compelled to Produce in Full All Post-February 4
       Subset Documents He Has Withheld, or Redacted in Whole or in Part, on Any Non-
       Deliberative Process Privilege Basis. ...................................................9

       A.     The Court Already Has Ruled That the Attorney General May Not Assert Non-
              Deliberative Process Privilege Claims. ...............................................10

       B.     The Attorney General's Non-Deliberative Process Privilege Claims Have Been
              Waived. ..........................................................................10

       C.     There Is No Legal Basis for the Attorney General to Withhold Information
              Responsive to the Holder Subpoena on Any of the New Non-Deliberative
              Process Privilege Grounds. ..................................................14

              1.  The Attorney General May Not Withhold Information from the Committee
                  on the Basis of FOIA Exemptions. .....................................15

              2.  The Attorney General May Not Withhold Information from the Committee
                  on the Basis of Common Law Privileges. ...........................16

       D.     There Is No Legal Basis for the Attorney General to Withhold Materials from
              Documents Responsive to the Holder Subpoena on the Ground that Such
              Materials Are "Unrelated." ..................................................23

IV.    The Attorney General Should Be Compelled to Produce in Full All Post-February 4
       Subset Documents He Has Withheld, or Redacted in Whole or in Part, on Deliberative
       Process Privilege Grounds. ..................................................24

       A.     All Documents the Attorney General Has Withheld or Redacted Without
              Explanation Must Be Produced. ...........................................25

i

B.      All Withheld or Redacted Documents the Explanation for Which Is Predicated on Responses to Congressional Inquiries or Media/Press Reports Must Be Produced. ...........................................................................................................26

C.      All Remaining Withheld or Redacted Documents Must Be Produced Because the Explanation Provided Is Not Sufficient to Bear Out the Attorney General's Deliberative Process Claim....................................................................................29

CONCLUSION...................................................................................................................33

CERTIFICATE OF SERVICE

EXHIBITS

Ex. A -  Letter from Gregory Dworkowitz, Trial Att'y, to Kerry W. Kircher, Gen. Counsel (Nov. 10, 2014)

Ex. B -  Letter from Kerry W. Kircher, Gen. Counsel, to Kathleen R. Hartnett, Dep'y Ass't Att'y Gen. (Oct. 7, 2014)

Ex. C -  E-mail from Kathleen R. Hartnett, Dep'y Ass't Att'y Gen., to Kerry W. Kircher, Gen. Counsel (Oct. 10, 2014)

Ex. D -  Letter from Kerry W. Kircher, Gen. Counsel, to Kathleen R. Hartnett, Dep'y Ass't Att'y Gen. et al. (Nov. 6, 2014)

Ex. E -  Docs. Not Produced in Full & No Withholding Basis Given

Ex. F -  Letter from James M. Cole, Dep'y Att'y Gen., to Hon. Darrell E. Issa, Chairman, Oversight Comm. (June 20, 2012)

Ex. G -  Letter from Eric H. Holder, Jr., Att'y Gen., to the President (June 19, 2012)

Ex. H -  Subpoena to Hon. Eric H. Holder, Jr. (Oct. 11, 2011)

Ex. I -   Docs. With No "Withholding Description" Given

# TABLE OF AUTHORITIES

## Cases

*Arthur Anderson & Co. v. I.R.S.*,
679 F.2d 254 (D.C. Cir. 1982) ........................................................................27

\* *Ashland Oil, Inc. v. F.T.C.*,
548 F.2d 977 (D.C. Cir. 1976) (per curiam) .............................................20, 21

*Ashland Oil, Inc. v. F.T.C.*,
409 F. Supp. 297 (D.D.C. 1976) ....................................................................21

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ..................................................................27, 30

\* *Comm. on the Judiciary v. Miers*,
558 F. Supp. 2d 53 (D.D.C. 2008) ..........................................................1, 12, 13

*David v. Alphin*,
No. 3:07-cv-11, 2010 WL 1404722 (W.D.N.C. Mar. 30, 2010) ......................23

*Eastland v. U.S. Servicemen's Fund*,
421 U.S. 491 (1975) ........................................................................................12

\* *Exxon Corp. v. F.T.C.*,
589 F.2d 582 (D.C. Cir. 1978) ..........................................................12, 20, 21

*Fonville v. Dist. of Columbia*,
230 F.R.D. 38 (D.D.C. 2005) ..........................................................................14

*Friedman v. Bache Halsey Stuart Shields, Inc.*,
738 F.2d 1336 (D.C. Cir. 1984) ......................................................................16

*F.T.C. v. Anderson*,
631 F.2d 741 (D.C. Cir. 1979) ........................................................................13

*F.T.C. v. Owens-Corning Fiberglass Corp.*,
626 F.2d 966 (D.C. Cir. 1980) ........................................................................12

*Formaldehyde Inst. v. Dep't of Health & Human Servs.*,
889 F.2d 1118 (D.C. Cir. 1989) ......................................................................27

*Fox News Network, LLC v. U.S. Dep't of the Treasury*,
678 F. Supp. 2d 162 (S.D.N.Y. 2009) ............................................................30

\*   *Hannah v. Larche*,
    363 U.S. 420 (1960)................................................................................................19

*Hickman v. Taylor*,
    329 U.S. 495 (1947)................................................................................................16

*Howell v. City of New York*,
    No. CV-06- 6347, 2007 WL 2815738 (E.D.N.Y. Sept. 25, 2007) ....................................24

*In re Provident Life & Accident Ins. Co.*,
    No. CIV-1-90-219, 1990 U.S. Dist. LEXIS 21067 (E.D. Tenn. June 13, 1990) ..............20

*In re Sealed Case* (*Espy*),
    121 F.3d 729 (D.C. Cir. 1997) ...........................................................................17, 27, 32

*In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*,
    No. 08 md 1945, 2009 WL 1026013 (S.D.N.Y. Apr. 8, 2009)........................................24

*Jordan v. U.S. Dep't of Justice*,
    591 F.2d 753 (D.C. Cir. 1978) (en banc) ................................................................26, 27

*Judicial Watch, Inc. v. Reno*,
    154 F. Supp. 2d 17 (D.D.C. 2001) ...................................................................................27

*Judicial Watch, Inc. v. U.S. Dep't of Justice*,
    20 F. Supp. 3d 260 (D.D.C. 2014) ...................................................................................30

*McPhaul v. United States*,
    364 U.S. 372 (1960)................................................................................................21

*Murphy v. Dep't of Army*,
    613 F.2d 1151 (D.C. Cir. 1979) ...............................................................................15, 21

*N.L.R.B. v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975)................................................................................................15

*N.Y. Times Co. v. U.S. Dep't of Defense*,
    499 F. Supp. 2d 501 (S.D.N.Y. 2007)......................................................................26, 30

*Paisley v. C.I.A.*,
    712 F.2d 686 (D.C. Cir. 1983), *vacated in part*, 724 F.2d 201 (D.C. Cir. 1984) ........26, 27

*Pub. Citizen, Inc. v. Office of Mgmt. & Budget*,
    598 F.3d 865 (D.C. Cir. 2009) .........................................................................................27

*Schiller v. City of New York*,
No. 04 Civ. 7922, 2007 WL 136149 (S.D.N.Y. Jan. 19, 2007)........................................26

\* *Senate of the Commonwealth of P.R. v. U.S. Dep't of Justice*,
823 F.2d 574 (D.C. Cir. 1987) ...............................................................................29, 30

*Senate Select Comm. on Ethics v. Packwood*,
845 F. Supp. 17 (D.D.C. 1994) ....................................................................................21

*Senate Select Comm. on Presidential Campaign Activities v. Nixon*,
498 F.2d 725 (D.C. Cir. 1974) ....................................................................................12

*Sikorsky Aircraft Corp. v. United States*,
106 Fed. Cl. 571 (Fed. Cl. 2012) ................................................................................14

*Taxation With Representation Fund v. I.R.S.*,
646 F.2d 666 (D.C. Cir. 1981) ....................................................................................26

*United States v. Am. Tel. & Tel. Co.*,
567 F.2d 121 (D.C. Cir. 1977) ....................................................................................12

*United States v. Bryan*,
339 U.S. 323 (1950) ....................................................................................................13

*United States v. Burr*,
25 F. Cas. 30 (C.C.D. Va. 1807) (Marshall, J.) ...........................................................13

*United States v. Davis*,
596 F.3d 852 (D.C. Cir. 2010) ......................................................................................6

*United States v. House of Representatives*,
556 F. Supp. 150 (D.D.C. 1983) ..................................................................................12

*United States v. Nixon*,
418 U.S. 683 (1974)...............................................................................................12, 13

*United States v. Poindexter*,
727 F. Supp. 1501 (D.D.C. 1989) ................................................................................12

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) ....................................................................................................16

*Vaughn v. Rosen*,
523 F.2d 1136 (D.C. Cir. 1975) ..............................................................................27, 28

*Waters v. U.S. Capitol Police Bd.*,
  218 F.R.D. 323 (D.D.C. 2003)........................................................28

## Constitutional Provisions, Statutes, and Federal Rules

2 U.S.C. § 192.............................................................................................6

2 U.S.C. § 194.............................................................................................6

\*   Freedom of Information Act, 5 U.S.C. § 552 ......................................14, 15

18 U.S.C. § 1505......................................................................................22

Fed. R. Civ. P. 5.2....................................................................................23

Fed. R. Civ. P. 45.....................................................................................14

Fed. R. Evid. 408 .......................................................................................6

## Legislative Authorities

Comm. on Gov't Reform, *Everything Secret Degenerates, The FBI's Use of Murderers as Informants*, H. Rep. No. 108-414 (2004).........................................12

H. Rep. No. 112-546 (2012) ...................................................................6, 7

S. Rep. No. 95-170 (1977)........................................................................22

H. Res. 706, 112th Cong. (2012) (enacted) ...............................................

H. Res. 711, 112th Cong. (2012) (enacted) ...............................................6

H. Res. 5, 113th Cong. (2013) (enacted) ...................................................7

H. Res. 5, 114th Cong. (2015) (enacted) ...................................................7

*Int'l Uranium Cartel:  Hr'gs Before the Subcomm. on Oversight & Investigations of the H. Comm. on Interstate & Foreign Commerce*, vol. I, 95th Cong., 1st Sess. (1977).............19

*Iran-Contra Investigation:  Joint Hr'gs Before the H. Select Comm. to Investigate Covert Arms Transactions with Iran & the S. Select Comm. on Secret Military Assistance to Iran & the Nicaraguan Opp'n*, 100th Cong., 1st Sess. (1987) .........................................20

*Health Care Fraud/Medicare Secondary Payer Program:  Hr'g Before the S. Permanent Subcomm. on Investigations of the Comm. on Gov'tal Affairs*, 101st Cong., 2d Sess. (1990)..............................................................................................20

*Environmental Crimes at the Rocky Flats Nuclear Weapons Facility:  Hr'gs Before the Subcomm. on Investigations & Oversight of the H. Comm. on Science, Space & Tech.*, vol. I, 102d Cong., 2d Sess. (1992) .......................................................12

*Investigation into Allegations of Justice Dep't Misconduct in New England – Hr'gs Before the H. Comm. on Gov't Reform*, vol. I, 107th Cong., 1st & 2d Sess. (2002) (statement of Prof. Charles Tiefer) ...................................................................12

Cong. Globe, 34th Cong., 3d Sess. (1857).................................................................19

Rules of the Comm. on Oversight & Gov't Reform, 112th Cong. (2011) ....................20

## Other Authorities

Raoul Berger, *Executive Privilege:  A Constitutional Myth* (1974) ..............................18

Ronald L. Claveloux, *The Conflict Between Executive Privilege and Congressional Oversight:  The Gorsuch Controversy*, 1983 Duke L.J. 1333 (1983)..............................17

*Congressional Requests for Confidential Executive Branch Information*, 13 Op. O.L.C. 153 (1989)..........................................................................................................14

Luther Stearns Cushing, *Elements of the Law and Practice of Legislative Assemblies in the United States of America* (1856)........................................................19

D.C. Bar Ethics Op. 288, *Compliance with Subpoena from Congressional Subcomm. to Produce Lawyer's Files Containing Client Confidences or Secrets* (1999).....................21

Alissa M. Dolan & Todd Garvey, Cong. Research Serv., R42811, *Congressional Investigations of the Dep't of Justice 1920-2012:  History, Law, and Practice* (2012)................................................................................................................11, 12

Thomas Erskine May, *Erskine May's Treatise on the Law, Privileges, Proceedings, and Usage of Parliament* (20th ed. 1983)..............................................................19

Arvo Van Alstyne, *Congressional Investigations*, 15 F.R.D. 471 (1953) ....................18

J. Wigmore, *Evidence* (McNaughton rev., 1961) .......................................................16

Woodrow Wilson, *Congressional Government* (Dover Publ'ns 2006) (1885) ..............18

## GLOSSARY OF SHORT CITES

| **Short Cite** | **Full Cite** |
| --- | --- |
| AG Summary Judgment Memorandum | Mem. in Supp. of Def.'s Mot. for Summ. J. . . . . (Jan. 21, 2014) (ECF No. 63) |
| August 20 Order | Order (Aug. 20, 2014) (ECF No. 81) |
| Committee Reply and Opposition | Pl.'s Consol. (i) Reply to Def.'s Opp'n. to Pl.'s Mot. for Summ. J., & (ii) Opp'n to Def.'s Cross-Mot. for Summ. J. (Feb. 14, 2014) (ECF No. 68) |
| Committee Report | H. Rep. No. 112-546 |
| Committee SJ Memorandum | Mem. of P. & A. in Supp. of Pl.'s Mot. for Summ. J. (Dec. 16, 2013) (ECF No. 61) |
| CRS Report | Alissa M. Dolan & Todd Garvey, Cong. Research Serv., R42811, *Congressional Investigations of the Dep't of Justice 1920-2012: History, Law, and Practice* (2012) |
| Dworkowitz Letter | Letter from Gregory Dworkowitz, Trial Att'y, to Kerry W. Kircher, Gen. Counsel (Nov. 10, 2014) |
| FOIA | Freedom of Information Act, 5 U.S.C. § 552 |
| June 20, 2012 Privilege Letter | Letter from James M. Cole, Dep'y Att'y Gen., to Hon. Darrell E. Issa, Chairman, Oversight Comm. (June 20, 2012) |
| List of 55 | Docs. With No "Withholding Description" Given |
| List of 380 | Docs. Not Produced in Full & No Withholding Basis Given |
| Notice of Issues | Comm.'s Notice of Disputed Claims & Other Issues (Nov. 25, 2014) (ECF No. 98) |
| October 6 Order | Order (Oct. 6, 2014) (ECF No. 95) |
| September 9 Order | Order (Sept. 9, 2014) (ECF No. 88) |

## INTRODUCTION

The Committee on Oversight and Government Reform of the U.S. House of Representatives ("Committee" or "Oversight Committee") filed this suit to enforce its October 11, 2011 subpoena to the Attorney General.  By way of relief, the Committee requested, among other things, a declaration "that the Attorney General's failure to produce to the Oversight Committee the Post-February 4 Subset . . . is without legal justification and violates the Attorney General's legal obligations to the Committee," and an "order [directing] the Attorney General forthwith to produce to the Oversight Committee the Post-February 4 Subset . . . ."  Compl. at 39 (Aug. 13, 2012) (ECF No. 1).  That request for relief has never varied.  *See* First Am. Compl.at 42 (Jan. 15, 2013) (ECF No. 35) (same).  So too, the definition of the documents that comprise the "Post-February 4 Subset" has never varied:

> [T]he Committee here seeks to compel the Attorney General to produce those documents dated or that were created after February 4, 2011, that are responsive to Categories 1, 4, 5, and 10 of the Holder Subpoena [defined for purposes of the Complaint as the Post-February 4 Subset].

Compl. ¶ 62; First Am. Compl. ¶ 67.

On August 20, 2014, the Court ordered the Attorney General to produce to the Committee two things:  (i) all documents at issue in this litigation that he does not contend are "both predecisional and deliberative," and (ii) with respect to any documents the Attorney General contends are both, a "detailed list" in support of that contention "sufficient to enable resolution of any [deliberative process] privilege claims."  Order at 4 (Aug. 20, 2014) (ECF No. 81) ("August 20 Order") (quoting *Comm. on the Judiciary v. Miers*, 558 F. Supp. 2d 53, 107 (D.D.C. 2008)).  The Court directed that "[t]he list . . . set forth not only the author and recipient(s) and the general subject matter of the record being withheld, but the basis for the

assertion of the privilege; in particular, [the Attorney General] should describe the decisionmaking process to which the document contributed, by, for example, identifying the decision, policy, or action under consideration in the document, whether or not the decision, policy, or action was eventually adopted or undertaken."  Order at 5 (Sept. 9, 2014) (ECF No. 88) ("September 9 Order") (modifying August 20 Order).

On November 4, 2014, in response to the Court's August 20 and September 9 Orders, the Attorney General (i) provided to the Committee a 1,311-page list with 15,662 document entries; (ii) produced 10,104 previously withheld documents; and (iii) withheld completely the remaining 5,558 documents logged on the list.  Of the 10,104 documents that were produced, 3,188 (31.6%) were produced in full with no redactions, meaning they were withheld from production for more than three years without even a colorable basis for their withholding.  The remaining 6,916 produced documents were redacted in whole or in part; of these, the Attorney General asserted *no* privilege or other ground for withholding as to 380, and asserted at least one (and in some cases more than one) privilege or other ground for withholding as to the other 6,536.  *See* Comm.'s Notice of Disputed Claims & Other Issues at 2 (Nov. 25, 2014) (ECF No. 98) ("Notice of Issues").

The Attorney General's withholding claims include both deliberative process claims (as contemplated by the August 20 and September 9 Orders), and five non-deliberative process claims – law enforcement sensitive, privacy, attorney-client/attorney work product, "other," and "unrelated" – which made their appearance in this case for the very first time on November 4. *Id.* at 8-11.

Pursuant to the September 9 Order, the Committee filed its Notice of Issues on November 25, 2014, identifying disputed claims and other issues.  On December 4, 2014, the Attorney

2

General delivered to the Committee a revised detailed list, *see* Comm.'s Resp. to Ct.'s Dec. 3, 2014 Minute Order at 1 n.1 (Dec. 10, 2014) (ECF No. 99), and subsequently filed that revised privilege list with the Court in electronic format, *see* Notice of Filing of Privilege List (Dec. 10, 2014) (ECF No. 100).  As best we can tell, there are no differences between the two lists with regard to the Attorney General's withholding categories.  Accordingly, for purposes of this motion, we refer to the November 4, 2014 original list and the December 4, 2014 revised list collectively as the "Detailed List."

## ARGUMENT

### I.    The Attorney General Should Be Compelled to Produce in Full All Post-February 4 Subset Documents He Has Not Produced and That Do Not Appear on His Detailed List.

From day one of this litigation, the universe of documents at issue has been the "Post-February 4 Subset," a limited and well-defined subset of documents responsive to the Holder Subpoena, specifically "those documents dated or that were created after February 4, 2011, that are responsive to Categories 1, 4, 5, and 10 [out of a total of 22 categories] of the Holder Subpoena."  Compl. ¶ 62; *see also id.* ¶ 71; *id.* at 39; First Am. Compl. ¶¶ 67, 76; *id.* at 42.

As a result, the August 20 Order – directing the Attorney General to produce to the Committee (i) all documents that he does not contend are both predecisional and deliberative, and (ii) a detailed list identifying all documents that he does contend are both (and his reasons for such contentions), *see* Aug. 20 Order at 4-5 – necessarily required that *all Post-February 4 Subset documents* either be produced or accounted for on the Detailed List.

The Attorney General, however, contends otherwise, as we suspected prior to his November 4 production and delivery of the original Detailed List, but as he confirmed only subsequently, on November 10, 2014.  *See* Letter from Gregory Dworkowitz, Trial Att'y, to

Kerry W. Kircher, Gen. Counsel (Nov. 10, 2014) ("Dworkowitz Letter"), attached as Ex. A.  The

Attorney General's position, he now has revealed, is that the documents at issue in this lawsuit

consist only of a smaller universe he calls the "Executive Privilege Set," a made-up term he says

"refers to the approximately 15,000 documents . . . over which Executive Privilege was asserted

in June 2012, and which were logged on the detailed list we provided you."  *Id.* at 1.  The

"Executive Privilege Set" excludes an unknown number of documents encompassed by the Post-

February 4 Subset; these excluded documents, the Attorney General now asserts, were "tak[en]

off the table" "in the weeks leading up to the June 2012 contempt vote by the House of

Representatives."  *Id.*[1]

The Attorney General's brazen effort to rewrite the Committee's complaint is badly

flawed.

*First*, the argument the Attorney General now makes is exactly the same argument he

advanced in his cross-motion for summary judgment.  *See* Mem. in Supp. of Def.'s Mot. for

---

[1]  This issue has been lurking since the August 20 Order was entered.  On October 5, 2014, the Attorney General referenced, but did not define, something he called the "Executive Privilege set."  Def.'s Mem. . . . in Opp'n to Pl.'s Mot. for Entry of Order Directing Att'y Gen. to Show Cause at 8 n.4 (Oct. 5, 2014) (ECF No. 94).  We responded to that reference by asking him to clarify whether he intended to produce, or account for on his detailed list, *all* Post-February 4 Subset documents.  *See* Letter from Kerry W. Kircher, Gen. Counsel, to Kathleen R. Hartnett, Dep'y Ass't Att'y Gen. at 1-3 (Oct. 7, 2014), attached as Ex. B.  The Attorney General refused to say.  *See* E-mail from Kathleen R. Hartnett, Dep'y Ass't Att'y Gen., to Kerry W. Kircher, Gen. Counsel (Oct. 10, 2014), attached as Ex. C.

We then asked the Court to clarify that its Order applied to all Post-February 4 Subset documents.  *See* Comm.'s Mot. for Order (i) Confirming or Clarifying that Ct.'s Aug. 20, 2014 Order Applies to All Docs. that Comprise the Post-Feb. 4 Subset . . . (Oct. 14, 2014) (ECF No. 96).  The Court declined to address the issue at that time.  *See* Minute Order (Oct. 15, 2014).

Following the November 4 production, we again pressed the Attorney General to define the scope of his response to the Court's August 20 and September 9 Orders.  *See* Letter from Kerry W. Kircher, Gen. Counsel, to Kathleen R. Hartnett, Dep'y Ass't Att'y Gen. et al. (Nov. 6, 2014), attached as Ex. D.  It was only then that the Attorney General finally admitted what he had done.  *See* Dworkowitz Letter.

Summ. J. . . . . at 42-45 (Jan. 21, 2014) (ECF No. 63) ("AG Summary Judgment Memorandum")
(arguing that, "in the weeks leading up to the House votes for contempt and to authorize this
suit," the Committee "narrow[ed its] . . . demands," and therefore the Committee's Complaint
should be construed to not apply to any "material beyond what [the Committee] was seeking at
the time of the votes for contempt and authorization," even though such materials are included in
Post-February 4 Subset); *see also id.* at 43 ("[T]he President was not asked to, and did not, assert
Executive Privilege over [at least certain Post-February 4 Subset documents].").  The Court
necessarily rejected that argument when it denied the Attorney General's cross-motion, and
directed him to produce or account for on a privilege list "the disputed documents."  Aug. 20
Order at 3-5.

  *Second*, the Committee is the plaintiff in this subpoena-enforcement action and, as such,
its Complaint defines the universe of documents that have been placed at issue.  The Attorney
General, as the defendant, does not get to do that.  Moreover, the Attorney General's assertion
that "[t]his suit contests the validity of the assertion of Executive Privilege to protect the
withheld materials sought by the Committee at the time of contempt – *i.e.*, materials responsive
to certain categories of the October 2011 subpoena as narrowed prior to the contempt finding,"
Dworkowitz Letter at 2, is simply incorrect.  That is not what the Complaint says – the
Complaint makes clear that the Committee is suing to enforce the subpoena as to the Post-
February 4 Subset – and the Attorney General's bald assertion that this suit concerns some lesser
universe he calls the "Executive Privilege Set" does not make it so.

  *Third*, the Attorney General's contention is wrong on its merits, for reasons we
previously have articulated.  *See* Pl.'s Consol. (i) Reply to Def.'s Opp'n. to Pl.'s Mot. for Summ.

J., & (ii) Opp'n to Def.'s Cross-Mot. for Summ. J. at 41-44 (Feb. 14, 2014) (ECF No. 68)

("Committee Reply and Opposition").  Among other things:

a.  The Committee never narrowed the Holder Subpoena in the manner the Attorney

General suggests.  While the Committee and the Attorney General held discussions in the spring

of 2012 aimed at resolving their dispute regarding the Attorney General's non-compliance with

the Holder Subpoena, those discussions failed to produce a resolution.  *See id.* at 44 (discussing

exchange of letters between Attorney General and Committee in spring 2012).

b.  Positions the Committee may or may not have taken in failed settlement discussions

that occurred prior to the House vote to authorize the Committee to sue, and prior to the filing of

the Complaint, self-evidently cannot define the scope of relief to which the Committee is entitled

here.[2]

c.  The Attorney General, by grounding his argument in the Committee's contempt

report, *see* Dworkowitz Letter at 2 (citing H. Rep. No. 112-546 (2012)), improperly conflates the

House's contempt proceedings with this litigation.

House Report No. 112-546 ("Committee Report") provided the factual background, and

the legal and policy justification, for the Committee's recommendation that the full House find

the Attorney General in contempt for failing to comply with the Holder Subpoena.  The House

did just that when it adopted House Resolution 711 on June 28, 2012.  *See* H. Res. 711, 112th

Cong. (2012) (enacted) (finding Attorney General "in contempt of Congress for failure to

comply with a congressional subpoena").  Contempt of Congress is a crime, *see* 2 U.S.C. § 192,

and, pursuant to 2 U.S.C. § 194, it was the duty of the U.S. Attorney to present the matter of the

---

[2]  *Cf.* Fed. R. Evid. 408; *United States v. Davis*, 596 F.3d 852, 859 (D.C. Cir. 2010) ("[Rule 408]
is meant to promote settlements.  If one party attempts to initiate negotiations with a settlement
offer, the offer is excluded from evidence . . . ." (citation omitted)).

Holder contempt to a grand jury – which he refused to do, *see* First Am. Compl. ¶¶ 52, 55, 57,

meaning the Attorney General's contempt has gone unpunished.

This civil subpoena enforcement action is a legally separate matter proceeding pursuant

to, and wholly consistent with, a different House resolution, House Resolution 706:

> *Resolved*, That the Chairman of the Committee on Oversight and Government Reform is authorized to initiate or intervene in judicial proceedings in any Federal court of competent jurisdiction, on behalf of the Committee on Oversight and Government Reform, *to seek declaratory judgments affirming the duty of Eric H. Holder, Jr., Attorney General, U.S. Department of Justice, to comply with any subpoena that is a subject of the resolution accompanying House Report 112-546 issued to him by the Committee as part of its investigation into the United States Department of Justice operation known as "Fast and Furious" and related matters, and to seek appropriate ancillary relief, including injunctive relief.*

H. Res. 706, 112th Cong. (2012) (enacted) (second emphasis added).[3]

Accordingly, the Committee Report is beside the point insofar as the Attorney General's

"Executive Privilege Set" argument is concerned.  That report in no way limits the universe of

documents the Committee was entitled to sue for in this litigation.

d.  Moreover, and in any event, the Committee Report language which the Attorney

General cites does not even facially support his position.  *See* Dworkowitz Letter at 2 ("'[The

Committee] narrow[ed] the scope of documents the Department needed to provide in order to

avoid contempt proceedings.'" (quoting Comm. Report at 38)).  But all that language says is that

the Committee gave the Attorney General an opportunity to produce a "narrowed" set of

documents "to avoid contempt proceedings."  The Attorney General self-evidently did not accept

that opportunity, and he can hardly justify his effort to rewrite the Committee's Complaint now

---

[3]  *See also* H. Res. 5, § 4(a)(2)(A), 113th Cong. (2013) (enacted) (authorizing Committee to continue litigation begun in 112th Congress "pursuant to House Resolution 706"); H. Res. 5, § 3(f)(1)(A)(i), 114th Cong. (2015) (enacted) (same).

on the basis of *his own refusal* to accept an accommodation offered by the Committee prior to the filing of this suit.

e.  The Attorney General's argument, if adopted, would severely distort (if not destroy) the negotiation and accommodation process he otherwise is so fond of touting.  *See, e.g.*, AG Summ. J. Mem. at 1-3, 9, 21, 25-27, 29, 34-36; Mem. in Supp. of Def.'s Mot. to Dismiss at 1, 3-4, 14-15, 20-21, 27-30, 44-45 (Oct. 15, 2012) (ECF No. 13-1).  No congressional committee ever would negotiate with the Executive Branch regarding a congressional subpoena – at least not for anything less than its maximum demands – if its negotiating position thereafter cabined its ability to seek enforcement of the subpoena.

In sum, notwithstanding the Court's August 20 and September 9 Orders, the Attorney General improperly has withheld – both from production and from inclusion on his Detailed List – an unknown (and perhaps substantial) number of Post-February 4 Subset documents. Accordingly, the Court should compel the Attorney General to produce to the Committee, in full and with no redactions, any and all Post-February 4 Subset documents he did not produce on November 4, 2014 (or thereafter), and that are not otherwise accounted for on the Detailed List.

**II.  The Attorney General Should Be Compelled to Produce in Full All Documents He Has Redacted as to Which He Has Asserted No Claim of Privilege.**

As noted above, the Attorney General produced some documents – 380 by our count – which he redacted in part, but as to which he asserted no privilege claim or other withholding basis.  *See* Docs. Not Produced in Full & No Withholding Basis Given ("List of 380"), attached as Ex. E (itemizing these documents by document number and corresponding bates number range).  (The List of 380 was prepared from the revised Detailed List.)  While we specifically described this category of documents in response to the Attorney General's original November 4,

2014 Detailed List, *see* Notice of Issues at 8, the December 4, 2014 revised Detailed List is unchanged in this regard.

The documents containing these unexplained redactions do not comply with the Court's August 20 and September 9 Orders.  Accordingly, the Court should compel the Attorney General to produce to the Committee, in full and with no redactions, all documents for which the Attorney General has asserted no privilege claim or other withholding basis, including those itemized on the List of 380.

**III.   The Attorney General Should Be Compelled to Produce in Full All Post-February 4 Subset Documents He Has Withheld, or Redacted in Whole or in Part, on Any Non-Deliberative Process Privilege Basis.**

More than two years after the Attorney General justified his refusal to produce to the Committee any post-February 4, 2011 responsive documents on the sole ground that all such documents were protected by the deliberative process privilege,[4] and more than two years after this litigation began, the Attorney General has asserted for the first time four new "privileges" as justification for withholding or redacting documents responsive to the Holder Subpoena:  (i) law enforcement sensitive; (ii) privacy; (iii) attorney-client/attorney work product; and (iv) other (which appears to be synonymous with some notion of foreign policy or foreign relations sensitive).  *See* Notice of Issues at 3.  In addition, the Attorney General redacted materials from some documents he produced on the ground that the redacted materials are "unrelated."  *See id*.

The Court should reject all five of these new claims for the reasons that follow.

---

[4]  *See* Letter from James M. Cole, Dep'y Att'y Gen., to Hon. Darrell E. Issa, Chairman, Oversight Comm. at 4 (June 20, 2012) ("June 20, 2012 Privilege Letter") (legal basis for privilege assertion "is set forth in [a June 19, 2012] letter to the President from the Attorney General"), attached as Ex. F; Letter from Eric H. Holder, Jr., Att'y Gen., to the President at 2 (June 19, 2012) (privilege assertion grounded on claim that responsive documents "were created . . . in the course of [DOJ's] deliberative process concerning how to respond to congressional and related media inquiries into th[e] [Fast and Furious] operation"), attached as Ex. G.

**A.      The Court Already Has Ruled That the Attorney General May Not Assert
Non-Deliberative Process Privilege Claims.**

In its August 20 Order, this Court held that, aside from deliberative process, "there has
been no other claim of privilege asserted."  Aug. 20 Order at 4.  Subsequently, the Attorney
General attempted to inject into this case a claim that he could withhold responsive records under
"some sort of general work file privilege along the lines of the attorney work product doctrine."
Order at 3 (Oct. 6, 2014) (ECF No. 95) ("October 6 Order") (referring to Def.'s Mot. for Partial
Stay of, & Partial Relief from, Ct.'s Order of Aug. 20, 2014 (Sept. 2, 2014) (ECF No. 84)).  The
Court firmly rejected that effort:  "From the start, the Attorney General has sought to withhold
the records in question on one ground only:  he asserted that they were covered by the
deliberative process component of the Executive Privilege."  Oct. 6 Order at 2 (citing June 20,
2012 Privilege Letter at 1, 4); Answer to First Am. Compl. ¶¶ 12, 42, 45 & Fourth Defense (Nov.
15, 2013) (ECF No. 56); Joint Status Report at 5 (Jan. 7, 2013) (ECF No. 32) (Attorney
General's portion of Report)).

The reasoning of this Court's August 20 and October 6 Orders applies with equal force
here.  If the Attorney General was barred from introducing into this case, in September 2014, a
"general work file privilege [claim] along the lines of the attorney work product doctrine," Oct. 6
Order at 3, then he also should be barred from introducing into this case, in November 2014, a
raft of other non-deliberative process privilege claims.

**B.      The Attorney General's Non-Deliberative Process Privilege Claims Have
Been Waived.**

The Attorney General's belated non-deliberative process privilege claims do not remotely
comply with the terms of the Holder Subpoena and, for that reason, have been waived.

The original Holder Subpoena contained an explicit return date (October 25, 2011).  *See* Subpoena to Hon. Eric H. Holder, Jr. at 1 (Oct. 11, 2011), attached as Ex. H.  It also directed him, "[i]n the event that a document is withheld on the basis of privilege," to "provide a privilege log containing [specified] information concerning any such document."  *Id*. at Sched. Instr. No. 12.  The Attorney General ignored these instructions.

- By the original October 25, 2011 return date, he produced no documents, no privilege log, and no explanation for his failure to comply.

- He waited nearly eight months, until June 20, 2012, to assert any privilege and, when he did so, he asserted only one such privilege – "the deliberative process component of the Executive Privilege."  Oct. 6 Order at 2.

- The non-deliberative process privilege claims first surfaced on November 4, 2014, *see* Detailed List, more than three years after the Holder Subpoena issued, and more than two years after this lawsuit was initiated in August 2012.

Subpoenas issued by congressional committees normally mandate timely privilege assertions for a reason:  congressional investigations are always on a time clock because of the two-year election cycle established by the Constitution, and timely privilege assertions enable committees promptly (i) to assess the policy considerations that favor or disfavor honoring a privilege claim in a given situation; (ii) to assess the importance of the information at issue and whether that information can be obtained from other sources; and (iii) to determine whether some accommodation is possible, all in the interest of moving the investigation along.  *See generally* Alissa M. Dolan & Todd Garvey, Cong. Research Serv., R42811, *Congressional Investigations of the Dep't of Justice 1920-2012:  History, Law, and Practice* 10-14 (2012) ("CRS Report").  Indeed, historically, privilege assertions to congressional subpoenas, including

those by the Executive, have been registered by the subpoena return date or, at the latest, soon thereafter.[5]

Accordingly, belated privilege assertions, such as the Attorney General's three-year tardy assertion here, directly undercut Congress' ability to carry out its constitutional responsibilities. *See, e.g.*, *Exxon Corp. v. F.T.C.*, 589 F.2d 582, 588 (D.C. Cir. 1978) ("[E]nforced delay [of ten days] on the legitimate investigations of Congress . . . could seriously impede the vital investigatory powers of Congress and would be of highly questionable constitutionality."); *id.* at 594 (noting "clear public interest in maximizing the effectiveness of the investigatory powers of Congress"); *United States v. Am. Tel. & Tel. Co.*, 567 F.2d 121, 133 n.40 (D.C. Cir. 1977) (noting, in context of congressional subpoena, "there is a plain duty on both the executive and judicial branches to advance any problems for prompt consideration"); *see also Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 511 (1975) (recognizing that "protracted delay" resulting from litigation frustrates congressional inquiries); *F.T.C. v. Owens-Corning Fiberglass Corp.*, 626 F.2d 966, 970 (D.C. Cir. 1980) ("[C]ourts may not require [subpoena recipient] to delay surrendering documents to Congress [pending advance notification of] affected parties . . . , for

---

[5]  *See, e.g.*, *Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 727 (D.C. Cir. 1974) (privileges timely asserted in response to congressional subpoena); *Miers*, 558 F. Supp. 2d at 61-62 (Presidential communications privilege asserted on or before subpoena return dates); *United States v. House of Representatives*, 556 F. Supp. 150, 151 (D.D.C. 1983) (same); Comm. on Gov't Reform, *Everything Secret Degenerates, The FBI's Use of Murderers as Informants*, H. Rep. No. 108-414 at 129-30, 134-35 (2004) (same); *Environmental Crimes at the Rocky Flats Nuclear Weapons Facility:  Hr'gs Before the Subcomm. on Investigations & Oversight of the H. Comm. on Science, Space & Tech.*, vol. I, 102d Cong., 2d Sess., 25-29 (1992) (same); *see also Investigation into Allegations of Justice Dep't Misconduct in New England – Hr'gs Before the H. Comm. on Gov't Reform*, vol. I, 107th Cong., 1st & 2d Sess. at 520-56 (2002) (statement of Prof. Charles Tiefer) (chronicling such instances); CRS Report (chronicling such instances); *cf. United States v. Nixon*, 418 U.S. 683, 687-88, 713 (1974) (privilege asserted by return date of criminal discovery subpoena); *United States v. Poindexter*, 727 F. Supp. 1501, 1503 (D.D.C. 1989) (same).

the judiciary must refrain from slowing or otherwise interfering with the legitimate investigatory

functions of Congress."); *F.T.C. v. Anderson*, 631 F.2d 741, 747 (D.C. Cir. 1979) (same).

Indeed, timely assertion is what the law requires:

> [I]f [a] respondent [to a Committee's subpoena] ha[s] legitimate
> reasons for failing to produce the records . . . , a decent respect for
> the House of Representatives, by whose authority the subpoenas
> issued, . . . require[s] that []he state h[is] reasons for
> noncompliance upon the return of the writ.

*United States v. Bryan*, 339 U.S. 323, 332 (1950).[6]  The Attorney General is bound to comply in

a timely fashion with judicial subpoenas, and congressional subpoenas are entitled to no less

respect.

Furthermore, the accommodation and negotiation process the Attorney General otherwise

is so fond of touting is seriously hampered and cannot be effective where, as here, the Executive

makes an untimely privilege assertion.  As the Department of Justice ("DOJ") itself has

acknowledged, a timely, accurate, and precise assertion of privilege contributes significantly to

an effective accommodation and negotiation process:  "The process of accommodation requires

that each branch explain to the other why it believes its needs to be legitimate.  Without such an

explanation, it may be difficult or impossible to assess the needs of one branch and relate them to

---

[6]  *See also Bryan*, 339 U.S. at 331 (congressional subpoena respondents "have certain minimum
duties and obligations which are necessary concessions to the public interest in the orderly
operation of legislative . . . machinery"); *id*. at 332-33 (rejecting, in context of contempt of
Congress prosecution, objection to congressional subpoena lodged after return date); *id*. at 344
(Jackson, J., concurring) (withholding objections to congressional subpoena "profits only the
witness who seeks a concealed defect to exploit"); *cf. United States v. Nixon*, 418 U.S. at 713 ("If
a President concludes that compliance with a subpoena would be injurious to the public interest
he may properly, as was done here, invoke a claim of privilege *on the return of the subpoena*."
(emphasis added)); *Miers*, 558 F. Supp. 2d at 72 ("[F]ederal precedent dating back as far as 1807
contemplates that even the Executive is bound to comply with duly issued subpoenas."); *United
States v. Burr*, 25 F. Cas. 30, 37 (C.C.D. Va. 1807) (Marshall, J.) (claims of presidential
privilege "will have [their] due consideration on return of the subpoena").

those of the other." *Congressional Requests for Confidential Executive Branch Information*, 13 Op. O.L.C. 153, 159 (1989).

In short, if the constitutionally-mandated authority for Congress to issue compulsory process means anything, it must mean that subpoena recipients – including the Attorney General here – cannot blithely ignore the terms of a congressional subpoena without consequence. Accordingly, the Court should hold that the Attorney General's recently-arrived non-deliberative process privilege claims have been waived.[7]

**C.     There Is No Legal Basis for the Attorney General to Withhold Information Responsive to the Holder Subpoena on Any of the New Non-Deliberative Process Privilege Grounds.**

There is no legal basis for the Attorney General to withhold, or to redact information from, documents responsive to the Holder Subpoena on any of the four new non-deliberative process privilege grounds he belatedly has raised.  None of these new privileges is rooted in the Constitution.  Rather, all are created by the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), for purposes of that statute only, and/or are creatures of common law, and neither FOIA nor the common law supplies authority for withholding information from Congress, as we now explain.

---

[7]  *Cf.* Fed. R. Civ. P. 45(d)(2)(B), 45(e)(2) (persons objecting to subpoena under claim of privilege must lodge objection within "the earlier of the time specified for compliance or 14 days after the subpoena is served," and must provide information sufficient to "enable the parties to assess the claim"); *Sikorsky Aircraft Corp. v. United States*, 106 Fed. Cl. 571, 579-82 (Fed. Cl. 2012) ("[I]nvocation of the deliberative process privilege, as with other [common law] privileges, is subject to a timeliness requirement . . . . and there is no basis to refrain from extending the waiver to instances of indilgence, indolence, or dawdling"; holding that Executive Branch waived privilege by untimely assertion (citing cases)); *Fonville v. Dist. of Columbia*, 230 F.R.D. 38, 42 (D.D.C. 2005) (Executive Branch waived qualified, common law deliberative process privilege by untimely assertion).

      1.      **The Attorney General May Not Withhold Information from the Committee on the Basis of FOIA Exemptions.**

All four of the Attorney General's new privileges – law enforcement sensitive; privacy; attorney-client privilege/attorney work product; and foreign affairs/foreign relations sensitive (i.e., "other") – are lifted directly from FOIA, which provides various exemptions for disclosure of agency documents to the public. *See* 5 U.S.C. § 552(b)(7) (exemption for "records or information compiled for law enforcement purposes"); *id.* § 552(b)(6) (exemption for "files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"); *id.* § 552(b)(5) (exemption for materials that otherwise would not "be available [to the requesting party] by law," which has been judicially interpreted to include the attorney-client privilege and attorney work product, *see, e.g.*, *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975)); 5 U.S.C. § 552(b)(1) (exemption for "matters that are . . . specifically authorized . . . to be kept secret in the interest of national defense or foreign policy").

However, these FOIA exemptions do not apply to Congress, as the statute itself provides: "[FOIA] is not authority to withhold information from Congress." *Id.* § 552(d).  The reason for this is not difficult to discern:

> Congress, whether as a body, through committees, or otherwise, *must have the widest possible access to executive branch information if it is to perform its manifold responsibilities effectively*.  If one consequence of the facilitation of such access is that some information will be disclosed to congressional authorities but not to private persons, that is but an incidental consequence of the need for informed and effective lawmakers.

*Murphy v. Dep't of Army*, 613 F.2d 1151, 1158 (D.C. Cir. 1979) (emphasis added) (construing FOIA provision now codified at 5 U.S.C. § 552(d)).

Indeed, the Attorney General earlier acknowledged that "the rules applicable to . . . statutory privileges are inapplicable to this dispute," AG SJ Mem. at 33, because, he said, this

case "is about the constitutionally-based Executive Privilege, which here is grounded in the Executive's need to protect . . . its internal deliberative processes . . . .," *id.* at 32.

Accordingly, to the extent the Attorney General predicates any of his withholdings on FOIA exemptions, his claims are baseless.

### 2.     The Attorney General May Not Withhold Information from the Committee on the Basis of Common Law Privileges.

Two of the Attorney General's new privilege claims – law enforcement sensitive and attorney client/attorney work product – also are rooted in the common law.[8]  Like FOIA exemptions, these common law privileges are inapplicable to congressional subpoenas.[9]

Congress' authority to oversee Executive Branch agencies, including DOJ, and to compel the production of testimony and documents in furtherance of that authority, is derived directly from the Constitution.  *See* Mem. of P. & A. in Supp. of Pl.'s Mot. for Summ. J. at 5-7 (Dec. 16, 2013) (ECF No. 61) ("Committee SJ Memorandum").  This responsibility is critical, indeed foundational, to our constitutional system of checks and balances which is the most basic guarantee of our liberty as a people.  It follows that privileges created by common law may not be asserted in response to the Holder Subpoena, as the Attorney General earlier seemed to concede:  "[R]ules applicable to common law . . . privileges are inapplicable to this dispute," AG

---

[8]  *See, e.g.*, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." (citing 8 J. Wigmore, *Evidence* § 2290 (McNaughton rev., 1961)); *Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (affirming existence of attorney work product privilege at common law); *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984) (noting that executive authority to withhold law enforcement materials is "a qualified common-law privilege").

[9]  Because the number of documents from which materials have been redacted on the ground of attorney-client/attorney work product is small, we wrote to the Attorney General on December 31, 2014, in an effort to obtain additional information that we believed might lead to the elimination of this withholding category as an issue.  We never received a response.

SJ Mem. at 33, because, he said, this case "is about the constitutionally-based Executive

Privilege, which here is grounded in the Executive's need to protect . . . its internal deliberative

processes . . . .," *id.* at 32.  Indeed, this Court's willingness to consider the Attorney General's

deliberative process privilege claims was grounded in its conclusion that "[s]ome aspects of the

[deliberative process] privilege . . . have roots in the constitutional separation of powers."  Aug.

20 Order at 2 (quoting *In re Sealed Case* (*Espy*), 121 F.3d 729, 737 n.4 (D.C. Cir. 1997)).[10]

Common law evidentiary privileges, which are designed to protect certain kinds of

communications or information in the context of adjudicatory proceedings, are not consistent

with the overarching constitutional principle that requires the Congress to oversee Executive

Branch agencies by peering inside them.

> *Congress's exercise of oversight protects the liberties of the*
> *American people by serving as a check on unbridled executive*
> *power.*  Congress, by "acquainting itself with the acts and
> dispositions of the administrative agents of the Government," will
> be able to uncover corruption, waste, inefficiency, and rigidity and
> to ensure that the President is enforcing the laws as enacted by
> Congress.

Ronald L. Claveloux, *The Conflict Between Executive Privilege and Congressional Oversight:*

*The Gorsuch Controversy*, 1983 Duke L.J. 1333, 1339 (1983) (emphasis added).

> *[T]he investigatory power plays an indispensable role as a check*
> *upon the untrammeled exercise of executive power.*  The great bulk
> of special investigations have been directed historically at specific
> functions, activities, or individuals in the executive branch.  The
> very possibility that a government official may be called to account
> for his stewardship before a Congressional investigating committee
> undoubtedly exerts a beneficent influence for more responsible
> administration.

---

[10]  The Committee here preserves its legal position that the deliberative process privilege is not
rooted in the Constitution, and may not be asserted in response to a congressional subpoena.
*See, e.g.*, Comm. Reply & Opp'n at 11-29.

Arvo Van Alstyne, *Congressional Investigations*, 15 F.R.D. 471, 474 (1953) (emphasis added).

> Quite as important as legislation is vigilant oversight of administration . . . . *It is the proper duty of a representative body to look diligently into every affair of government* and to talk much about what it sees.  It is meant to be the eyes and the voice, and to embody the wisdom and will of its constituents.

Woodrow Wilson, *Congressional Government* 195, 198 (Dover Publ'ns 2006) (1885) (emphasis added).

> If the House of Representatives, as the grand inquest of the nation, should at any time have reason to believe that there has been malversation in office by an improper use or application of public money by a public officer, and should think proper to institute an inquiry into the matter, *all the archives and papers* of the Executive Department, public or private, would be subject to inspection and control of a committee of their body and *every facility* in the power of the Executive *be afforded* to enable them to prosecute the investigation. . . .  [T]o investigate the conduct of *all* public officers under the Government . . . the power of the House in the pursuit of this object *would penetrate into the most secret recesses* of the Executive Departments. It could command the attendance of any and every agent of the government, and compel them to produce all papers, public or private, official or unofficial, and to testify on oath to tell all facts within their knowledge.

President James K. Polk (1846), *reprinted in* Raoul Berger, *Executive Privilege:  A Constitutional Myth* 262-63 (1974) (emphases in original).

> [C]ases may occur in the course of [Congress'] . . . proceedings in which it may be indispensable to the proper exercise of its powers that it should inquire or decide upon the conduct of the President or other pubic officers, and in every case its constitutional right to do so is cheerfully conceded.

President Andrew Jackson (1834), *reprinted in* Berger, *supra*, at 182 (emphases omitted).

Moreover, congressional investigations – such as the Committee's Fast and Furious investigation – are qualitatively different from adjudicatory proceedings.  Congressional investigations are fact-finding inquiries convened to produce information upon which Congress

18

can bring its legislative judgment to bear; they are not intended to resolve disputes between parties and are not subject to rules of evidence, as the Supreme Court long has recognized: "[W]hen governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used." *Hannah v. Larche*, 363 U.S. 420, 442 (1960). "[T]he history of these committees clearly demonstrates that only infrequently have witnesses appearing before congressional committees been afforded the procedural rights normally associated with an adjudicative proceeding." *Id.* at 445. Indeed, since the very founding of the Republic, Congress itself has determined whether and when to recognize common law privileges raised in response to congressional subpoenas.[11]

---

[11] The early Congresses adopted many of the practices and precedents of the British Parliament and, consistent with that practice, common law privileges and general claims of confidentiality were not available of right to congressional witnesses. *See, e.g.*, Thomas Erskine May, *Erskine May's Treatise on the Law, Privileges, Proceedings, and Usage of Parliament* 746 (20th ed. 1983); Luther Stearns Cushing, *Elements of the Law and Practice of Legislative Assemblies in the United States of America* § 983 (1856) ("A witness cannot excuse himself from answering, on the ground that . . . the matter was a privileged communication to him . . . ."). In the years since, each House of Congress consistently has rejected the notion that common law privileges must apply to proceedings before it.

In 1857, Congress debated whether common law privileges should apply to congressional proceedings. *See* Cong. Globe, 34th Cong., 3d Sess., at 431 (1857) (statement of Rep. Orr) ("With reference to communications made to counsel, . . . the common law of England does not exempt a witness from testifying on any such ground. . . . Either the House of Commons or House of Lords can extract such communication."). The Senate defeated an amendment that would have required recognition of common law evidentiary privileges. *See id.* at 434-35 (proposal of Sen. Seward); *id.* at 443 (amendment defeated).

In 1977, a House subcommittee expressly rejected a witness' attorney client privilege claim. *See Int'l Uranium Cartel: Hr'gs Before the Subcomm. on Oversight & Investigations of the H. Comm. on Interstate & Foreign Commerce*, vol. I, 95th Cong., 1st Sess. at 46 (1977). Chairman John Moss observed that "the commonwealth precedents, customs of both the Commons and the House, fully sustain rejecting a claim of attorney-client privilege if it impedes in any manner whatsoever the necessary inquiries of the Congress in determining whether a law of the United States may have been violated or whether that law accords sufficient protection to the American people." *Id.* at 123 (statement of Chairman Moss).

(*Continued . . .*)

Insofar as we are aware, no court ever has held that a common law privilege validly may be asserted in response to a congressional subpoena; rather, the case law indicates the opposite. For example, in 1990, a Senate subcommittee subpoenaed documents and testimony from a Provident Life and Accident Insurance Company employee. *See Health Care Fraud/Medicare Secondary Payer Program: Hr'g Before the S. Permanent Subcomm. on Investigations of the Comm. on Gov'tal Affairs*, 101st Cong., 2d Sess. at 3-4 (1990). The company declined to produce the materials on attorney-client privilege grounds, and moved to enjoin its employee from responding to the subpoena. The district court declined to issue the injunction and held as follows: "Congress . . . stands as a separate and co-equal branch of government which is capable of making its own determinations regarding privileges asserted by witnesses before it." *In re Provident Life & Accident Ins. Co.*, No. CIV-1-90-219, 1990 U.S. Dist. LEXIS 21067, at *6 (E.D. Tenn. June 13, 1990).

And, in *Ashland Oil, Inc. v. F.T.C.*, 548 F.2d 977 (D.C. Cir. 1976) (per curiam), and *Exxon Corp.*, 589 F.2d 582, this Circuit considered – and rejected – private party efforts to use a statute to block an Executive Branch agency from producing documents to a congressional committee in response to committee letter requests (treated by the Court as functionally equivalent to subpoenas). In *Ashland Oil*, the district court denied the company's request for an injunction to block the Federal Trade Commission from producing statutorily-protected trade

---

On the other hand, committees, from time to time, have acceded to common law privilege assertions when reasoned and persuasive arguments have been advanced in their support. *See, e.g., Iran-Contra Investigation: Joint Hr'gs Before the H. Select Comm. to Investigate Covert Arms Transactions with Iran & the S. Select Comm. on Secret Military Assistance to Iran & the Nicaraguan Opp'n*, 100th Cong., 1st Sess. at 199 (1987) (accepting assertion of attorney-client privilege by Richard Secord). Indeed, some committees have adopted rules for resolving such privilege assertions. *See, e.g.*, Rule 15(h), Rules of the [Oversight Comm.], 112th Cong. (2011) (procedure for resolving privilege assertions raised in depositions), *available at* http://www.gpo.gov/fdsys/pkg/CPRT-112HPRT68229/pdf/CPRT-112HPRT68229.pdf.

secret information to Congress, and the D.C. Circuit affirmed: "'[T]he courts must presume that the committees of Congress will exercise their powers responsibly and with due regard for the rights of affected parties.'"  548 F.2d at 979 (quoting *Ashland Oil, Inc. v. F.T.C.*, 409 F. Supp. 297, 308 (D.D.C. 1976)).  In *Exxon Corp.*, the D.C. Circuit refused to direct the same Executive Branch agency to provide written notice to affected parties before providing trade secret information to Congress:  "For this court on a continuing basis to mandate an enforced delay on the legitimate investigations of Congress whenever these inquiries touched on trade secrets could seriously impede the vital investigatory powers of Congress and would be of highly questionable constitutionality."  589 F.2d at 588.  *Ashland Oil* and *Exxon Corp.* both evince a marked judicial distaste on the part of this Circuit for rulings that would hinder or delay congressional investigations.[12]

Judicial recognition of common law privileges in the context of congressional subpoenas would downgrade Congress' ability to obtain information from the Executive Branch to the level of civil litigants (and FOIA requesters), a consequence this Circuit has rejected.  *See, e.g.*, *Murphy*, 613 F.2d at 1158.

---

[12]  *See also, e.g.*, *Senate Select Comm. on Ethics v. Packwood*, 845 F. Supp. 17, 20-21 (D.D.C. 1994) ("In determining the proper scope of a legislative subpoena, this Court may only inquire as to whether the documents sought by the subpoena are 'not plainly incompetent or irrelevant to any lawful purpose . . . in the discharge of [the legislature's] duties.'" (quoting *McPhaul v. United States*, 364 U.S. 372, 381 (1960))).

In 1999, the D.C. Bar tacitly acknowledged Congress' authority to accept or reject common law privileges.  *See* D.C. Bar Ethics Op. 288, *Compliance with Subpoena from Congressional Subcomm. to Produce Lawyer's Files Containing Client Confidences or Secrets* (1999), *available at* http://www.dcbar.org/bar-resources/legal-ethics/opinions/opinion288.cfm (lawyer discharges responsibility under D.C. Rules of Professional Conduct if s/he produces assertedly attorney-client privileged materials subpoenaed by Congress after committee/subcommittee overrules privilege assertion, orders documents produced, and moves to hold attorney in contempt absent compliance).

21

More importantly, such judicial recognition seriously would distort the balance of powers between the Legislative and Executive Branches in favor of the Executive, diminish Congress' Article I powers, and wreak havoc on Congress' ability to conduct oversight of Executive Branch misconduct.  In narrow terms, Congress is the only bulwark when high-level Executive Branch officials obstruct Congress, as there is every reason to believe DOJ has here.  This is so because, while obstruction of Congress is a crime, *see* 18 U.S.C. § 1505, it is a crime that effectively is inapplicable to high-level Executive Branch officials because "[DOJ] has difficulty investigating alleged criminal activity by high-level government officials."  S. Rep. No. 95-170, at 5 (1977).  That problem is compounded when DOJ's own misconduct is at issue, both because DOJ is even less likely to investigate and prosecute itself, and because DOJ sets the tone for the rest of the Executive Branch.  More broadly, when the Executive goes unchecked, misconduct by public officials goes unexposed, policy-making is subject to manipulation, accountability for poor policy decisions disappears, and the people are poorly served.

The Court's granting the Committee's motion to compel would not mean that the Executive never could raise law enforcement sensitive and similar concerns in response to congressional subpoenas.  When the Executive makes reasoned and persuasive arguments that certain information should be withheld, Congress historically has agreed to exercise its discretion to accommodate those concerns.  But when Congress determines that it *needs* to obtain and review Executive Branch materials that might be privileged in other contexts, as here, it must be able to do so, and common law and statutory privileges cannot stand in its way.[13]

---

[13]  If the Court were to permit the Attorney General now to assert any of his four new non-deliberative privilege claims – as the Committee vigorously maintains it should not – the Committee then would be entitled to test the propriety of the Attorney General's assertions with

(*Continued . . .*)

**D.    There Is No Legal Basis for the Attorney General to Withhold Materials from Documents Responsive to the Holder Subpoena on the Ground that Such Materials Are "Unrelated."**

As the Committee noted earlier, the Attorney General has redacted materials from approximately 372 responsive documents on the basis of something he calls "unrelated," which "could mean non-responsive to the Holder Subpoena, or . . . not relevant (in the opinion of the Attorney General) to the Committee's investigation." Notice of Issues at 3, 8. We indicated a willingness to confer with the Attorney General regarding this category: "[T]o the extent these withholdings reference non-responsive material, the Committee hopes that the parties can resolve these issues without further Court intervention . . . ." *Id.* at 8.

On December 3, 2014, the Committee, as it said it would, proposed to the Attorney General (in writing) "a [specific] means of verification that these [assertedly unrelated] redactions are only of non-responsive material." *Id.* Unfortunately, discussions with the Attorney General about this issue were not productive.[14]

Accordingly, the Court now should direct the Attorney General to produce to the Committee, in full and without any redactions, all documents from which material has been redacted on the ground of "unrelatedness." *See, e.g.*, *David v. Alphin*, No. 3:07-cv-11, 2010 WL 1404722, at *7 (W.D.N.C. Mar. 30, 2010) ("[R]edaction is, after all, an alteration of potential evidence. The Federal Rules sanction only very limited unilateral redaction, *see* Fed. R. Civ. P. 5.2. Outside of these limited circumstances, a party should not . . . decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case."

_____

respect to particular documents through additional briefing and/or *in camera* review, as appropriate.

[14] On December 24, 2014, the Attorney General advised us that he had re-reviewed the "unrelated" withholdings and that some materials previously withheld on that ground would be provided to the Committee. The Committee has not yet received those materials.

(quotation omitted)); *In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, No. 08 md

1945, 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) ("[S]uch redactions are generally

unwise.  They breed suspicions, and they may deprive the reader of context."); *Howell v. City of

New York*, No. CV-06-6347, 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) ("It is not the

practice of this court to permit parties to selectively excise from otherwise discoverable

documents those portions that they deem not to be relevant.").

      In the alternative, we ask that the Court (i) direct the Attorney General to make available

for review by Committee staff and attorneys within a specified period of time the originals or

unredacted copies of all documents containing the withholdings/redactions coded on the Detailed

List as "unrelated," and (ii) direct the Committee to report to the Court, within five business days

of such review, which withholdings/redactions, if any, it contends are responsive to the Holder

Subpoena.

      If the Committee thus is provided with an opportunity to ascertain for itself which

assertedly "unrelated" materials, if any, actually are non-responsive to the Holder Subpoena – as

opposed to having to take the Attorney General's word for it – the Committee will not seek

further relief from the Court with respect to any such materials it concludes are non-responsive.

With respect to assertedly "unrelated" materials, if any, the Committee believes *are* responsive

to the Holder Subpoena, the Committee first will attempt to resolve the issue with the Attorney

General and, failing that, would seek further relief from the Court.

**IV.**    **The Attorney General Should Be Compelled to Produce in Full All Post-February 4 Subset Documents He Has Withheld, or Redacted in Whole or in Part, on Deliberative Process Privilege Grounds.**

      In denying without prejudice the Committee's summary judgment motion, *see* Aug. 20

Order at 5, and in directing the Attorney General to produce to the Committee all documents he

does not contend are "both predecisional and deliberative," as well as a list describing in detail all documents and materials he does contend are both, *id.* at 4, the Court indicated that, before it considered other, broader arguments advanced by the Committee, it first wished to determine whether the Attorney General plausibly could assert deliberative process as to any withheld documents.  The answer, it now is clear, is no.

While the Attorney General asserts that a substantial number of documents, or parts of documents, are both predecisional and deliberative, the Court should reject all of these claims because (i) some claims are supported by *no* explanation for the conclusion that the withheld materials are predecisional and deliberative; (ii) other claims – those characterized as concerning DOJ responses to congressional inquiries or to media/press reports – include information sufficient to enable the Court to conclude that the withheld or redacted materials are *not* both predecisional and deliberative; and (iii) all remaining claims are not supported by information sufficient to enable the Court reasonably to conclude that the documents are both predecisional and deliberative.

A.    **All Documents the Attorney General Has Withheld or Redacted Without Explanation Must Be Produced.**

The Attorney General has withheld, or redacted materials from, some documents on deliberative process grounds – 55 by our count – as to which he has provided *no* explanation whatsoever for his claim that the documents are both predecisional and deliberative.  *See* Docs. With No "Withholding Description" Given ("List of 55"), attached as Ex. I (itemizing these documents by document number and corresponding bates number range).  (The List of 55 was prepared from the revised Detailed List.)  While we specifically described this category of documents in response to the Attorney General's original November 4, 2014 Detailed List, *see* Notice of Issues at 11, the December 4, 2014 revised Detailed List is unchanged in this regard.

These unexplained withholdings and/or redactions plainly are inconsistent with the Court's August 20 and September 9 Orders.  Accordingly, the Court should compel the Attorney General to produce to the Committee, in full and with no redactions, all documents that the Attorney General claimed were deliberative process privileged but as to which he provided no explanation in support of that claim, including those itemized on the List of 55.

> **B.** **All Withheld or Redacted Documents the Explanation for Which Is Predicated on Responses to Congressional Inquiries or Media/Press Reports Must Be Produced.**

The deliberative process privilege serves the limited purpose of "permitting agency decisionmakers to engage in that frank exchange of opinions and recommendations necessary to the formulation of *policy* without being inhibited by fear of later public disclosure." *Paisley v. C.I.A.*, 712 F.2d 686, 698 (D.C. Cir. 1983) (emphasis added), *vacated in part*, 724 F.2d 201 (D.C. Cir. 1984).  Plainly, therefore, "[t]he privilege 'does not operate indiscriminately to shield all decision-making by public officials' such as 'routine operating decision[s].'" *N.Y. Times Co. v. U.S. Dep't of Defense*, 499 F. Supp. 2d 501, 514 (S.D.N.Y. 2007) (quoting *Schiller v. City of New York*, No. 04 Civ. 7922, 2007 WL 136149, at *12 (S.D.N.Y. Jan. 19, 2007)).

This Circuit has held that documents must meet two requirements in order to be deliberative process privilege protected.  *First*, they must be "predecisional," meaning that they were "generated 'antecedent to the adoption of an agency *policy*.'"  *Paisley*, 712 F.2d at 698 (emphasis added; quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc)).  That is, documents cannot qualify for the privilege unless, as an initial matter, they "compris[e] part of a process by which governmental decisions and *policies* are formulated . . . ." *Taxation With Representation Fund v. I.R.S.*, 646 F.2d 666, 677 (D.C. Cir. 1981) (emphasis added).  The key factor is the "role, if any, that the document plays in the process of agency

deliberations." *Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1122 (D.C. Cir. 1989) (quotation omitted); *see also Judicial Watch, Inc. v. Reno*, 154 F. Supp. 2d 17, 18 (D.D.C. 2001) ("[T]he role played by the document in the course of the deliberative process must also be established.").

*Second*, they must be "deliberative," meaning they must reflect "the 'give-and-take' of the deliberative process and contain[] opinions, recommendations, or advice about agency *policies*." *Paisley*, 712 F.2d at 698 (emphasis added; citing *Jordan*, 591 F.2d at 774 & *Arthur Anderson & Co. v. I.R.S.*, 679 F.2d 254, 257 (D.C. Cir. 1982)); *see also Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 875 (D.C. Cir. 2009) ("To the extent the documents . . . [do not] make recommendations for *policy change* . . . they are not predecisional and deliberative despite having been produced by an agency that generally has an advisory role." (emphasis added)); *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975) ("[T]he document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on *legal or policy matters*." (emphasis added)).

The documents and materials the Attorney General has withheld or redacted cannot be deliberative process privileged unless they satisfy both prongs, *see Espy*, 121 F.3d at 737, and the Attorney General bears the burden of establishing, on a document-by-document basis, that both requirements are satisfied, *see, e.g.*, *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) ("[T]he agency has the burden of establishing what deliberative process is involved . . . ."); *id.* at 867 ("[T]he deliberative process privilege is . . . dependent upon the individual document and the role it plays in the administrative process.").

In this case, the withheld documents and redacted materials which the Attorney General has characterized as concerning DOJ's responses to (i) Congress' request for information about

Operation Fast and Furious, or (ii) media or press reports about Operation Fast and Furious, *see* Notice of Issues at 11-12, self-evidently do not concern the kinds of broad "legal or policy matters," *Vaughn*, 523 F.2d at 1144, to which the deliberative process privilege applies. The Attorney General's response to the Committee's investigation into Operation Fast and Furious was and is a constitutional obligation, and neither his carrying out of that obligation nor his apparent efforts to obstruct the Committee's investigation constitutes a "policy" to which the privilege attaches. *See, e.g.*, *Waters v. U.S. Capitol Police Bd.*, 218 F.R.D. 323, 324 (D.D.C. 2003) (records "that speak[] to a particular investigation rather than the adoption of a policy that applies to all cases of a particular nature or type" are not privileged). The same is true of the Attorney General's efforts to spin the press – presumably for some perceived political advantage – regarding Operation Fast and Furious and the Committee's investigation. *See id*.

This Court should be particularly loathe to grant deliberative process privilege status to withheld documents and redacted materials that concern the Attorney General's responses to Congress' request for information, and to media or press reports, about Operation Fast and Furious. *First*, the Committee is part of a co-equal branch of the federal government – not a mere FOIA requester or civil litigant – and here is seeking the documents and materials pursuant to its constitutionally-based subpoena authority. *Second*, the issue at the very core of the Obstruction Component of the Committee's investigation is the manner in which DOJ responded to the Committee's underlying investigation into Operation Fast and Furious. *See* First Am. Compl. ¶¶ 7, 37-39. Under these circumstances, the deliberative process privilege bar should be set particularly high, lest the Court effectively immunize DOJ's internal operations from constitutionally-sanctioned congressional oversight.

28

Accordingly, the Court should compel the Attorney General to produce to the Committee, in full and with no redactions, all documents the Attorney General has claimed are deliberative process privileged and which he has characterized on the Detailed List as concerning DOJ's responses to (i) Congress' request for information about Operation Fast and Furious, and/or (ii) media or press reports about Operation Fast and Furious.

**C.      All Remaining Withheld or Redacted Documents Must Be Produced Because the Explanation Provided Is Not Sufficient to Bear Out the Attorney General's Deliberative Process Claim.**

The August 20 Order directed the Attorney General to describe on the Detailed List "the basis for [each] assertion of the [deliberative process] privilege; in particular, . . . the decision that the deliberations contained in the document precede." Aug. 20 Order at 4. And the September 9 Order refined this by directing the Attorney General to "describe the decisionmaking process to which the document contributed, by, for example, identifying the decision, policy, or action under consideration in the document, whether or not the decision, policy, or action, was eventually adopted or undertaken." Sept. 9 Order at 5 (citing *Senate of the Commonwealth of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987)).

"Conclusory assertions of privilege will not suffice to carry the agency's burden," *Senate of the Commonwealth of P.R.*, 823 F.2d at 585 (quotation omitted), and the D.C. Circuit has made clear the type of document descriptions that are conclusory and thus deficient. In *Senate of the Commonwealth of Puerto Rico*, the Circuit noted that a typical entry on DOJ's index read as follows:

> Memo dated 8-20-80 from Stephen Clark, Attorney, CRT, to Charles Wellford, Deputy Administrator, Federal Justice Research Program. (2 pages) RE: Report on status of Cerro Maravilla case. . . . [C]andid discussion and recommendation as to strategy is deleted to protect the intra-agency deliberative process and attorney work-product.

29

*Id.* at 589.  While the district court found that description adequate, the D.C. Circuit reversed, holding that "[t]he information provided by the DOJ – consisting almost entirely of each document's issue date, its author and intended recipient, and the briefest of references to its subject matter – will not do."  *Id.* at 585 (footnote omitted).  Rather, the Circuit said, "[t]he agency must establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'"  *Id.* at 585-86 (quoting *Coastal States*, 617 F.2d at 868).

The Attorney General's explanations in this case provide no more, and in many cases less, information than the descriptions rejected as inadequate in *Senate of the Commonwealth of Puerto Rico*.  For example, nearly 100 deliberative process claims provide no information beyond the phrase "discussing proposed changes to a draft letter to Congress."  *See, e.g.*, Detailed List Doc. No. 7069 (DOJ-FF-26981 to DOJ-FF-26982).  These explanations self-evidently are facially inadequate, including because "[t]he mere fact that a document is a draft . . . is not a sufficient reason to automatically exempt it from disclosure."  *N.Y. Times Co.*, 499 F. Supp. 2d at 515; *see also Fox News Network, LLC v. U.S. Dep't of the Treasury*, 678 F. Supp. 2d 162, 168 (S.D.N.Y. 2009) (not "an article of faith that a document labeled 'Draft' is automatically protected by the deliberative process privilege"); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 20 F. Supp. 3d 260, 269 (D.D.C. 2014) (same).

Still other entries by the Attorney General consist of conclusory statements such as "directing and drawing attention to particular language within publicly available document," *see, e.g.*, Detailed List Doc. No. 16177 (DOJ-FF-58508 to DOJ-FF-58509), "discussing how to respond to quote," *see, e.g.*, *id.* Doc. No. 17447 (DOJ-FF-62126), "deliberations about briefing," *see, e.g.*, *id.* Doc. No. 15830 (DOJ-FF-57775), and "deliberations about setting up meetings,"

*see, e.g.*, *id.* Doc. No. 15052 (DOJ-FF-55002).  These kinds of content-less explanations do not come close either to "describ[ing] the decisionmaking process to which the document contributed" or to "identify[ing] the decision, policy, or action under consideration in the document."  Sept. 9 Order at 5.

Indeed, even the Attorney General's most detailed explanations fall well short of what is required to enable the Court and the Committee to make informed judgments as to whether documents may be "both predecisional and deliberative."  These are examples of the most detailed explanations that appear on the Detailed List:

- "Internal DoJ discussion about how to handle expected MLAT request in re F&F fm Gov of Mexico; Discussion amongs [sic] involved personnel over process of consultation on the matter," Detailed List Doc. No. 3131 (DOJ-FF-12145 to DOJ-FF-12147);

- "discussing what materials should be made available to which entities; discussion of how Department assets should be managed in light of resource constraints; discussion of necessary steps in an ongoing prosecution," *id.* Doc. No. 11035 (DOJ-FF-44794 to DOJ-FF-44795);

- "discussion re plan for completing collection and review of documents re Fast & Furious inquiry, production of documents to Chairman Issa committee, and conducting interviews re F&F investigation to facilitate decisions re how to communicate info to Congress and public," *id.* Doc. No. 11801 (DOJ-FF-48609);

- "Redacted DP material identifies matters of interest to a DOJ official working on a reponse [sic] to a F&F congressional subpoena, and reveals the pre-decisional

deliberations of the Department over how to respond to the request," *id.* Doc. No. 12499 (DOJ-FF-50970); and

- "discussing particular issue requiring discussion in light of recent development in congressional investigation; providing particular facts as relevant to identified topic, including extrapolation based on prior experience and postdecisional analysis of reasons for prior decision that's [sic] relevant to future decision," *id.* Doc. No. 13720 (DOJ-FF-57609).

In short, the Attorney General's Detailed List is facially inadequate with respect to the remaining assertedly deliberative process privileged documents.  Because the Attorney General has not complied with the Court's August 20 and September 9 Orders, the Court should compel him to produce to the Committee, in full and with no redactions, all remaining assertedly deliberative process privileged documents.[15]

---

[15]  In its summary judgment motion, the Committee argued, among other things, that no deliberative process privilege applies in this case because (i) the Committee is investigating DOJ misconduct and the privilege does not apply "when there is any reason to believe government misconduct occurred," *Espy*, 121 F.3d at 746, and (ii) the Attorney General's privilege assertion was not made in compliance with the terms of Holder Subpoena.  *See* Comm. SJ Mem. at 21-25, 33-36.  The Court's August 20 Order does not address these contentions.  To the extent the Court intended to reserve ruling on these issues until after it determined whether the Attorney General plausibly could assert deliberative process as to any withheld documents, the Committee believes, for the reasons discussed above, *see supra* Argument, Part IV, that the Court now can compel the Attorney General to produce all assertedly deliberative process privileged documents without reaching these two issues.

However, to the extent the Court declines to compel the Attorney General to produce all assertedly deliberative process privileged documents on the basis of the arguments set forth above, the Committee maintains that these two issues are live, and that the Court should rule now that the Attorney General's deliberative process claims are invalid, both because (i) there is "reason to believe government misconduct occurred," and, under these circumstances, "shielding internal government deliberations . . . does not serve the public's interest in honest, effective government," *Espy*, 121 F.3d at 738, 746 (quotation omitted), and (ii) the Attorney General's deliberative process privilege assertion was not made in compliance with the terms of Holder Subpoena.  *See* Comm. SJ Mem. at 21-25, 33-36.

**CONCLUSION**

For all the foregoing reasons, the Court should grant the Committee's Motion to Compel.


Respectfully submitted,


*/s/ Kerry W. Kircher*
KERRY W. KIRCHER, General Counsel
D.C. Bar No. 386816
WILLIAM PITTARD, Deputy General Counsel
D.C. Bar No. 482949
TODD B. TATELMAN, Senior Assistant Counsel
ELENI M. ROUMEL, Assistant Counsel
ISAAC B. ROSENBERG, Assistant Counsel
D.C. Bar No. 998900
KIMBERLY HAMM, Assistant Counsel
D.C. Bar No. 1020989

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)

*Counsel for Plaintiff Committee on Oversight and
Government Reform, U.S. House of Representatives*

January 16, 2015

**CERTIFICATE OF SERVICE**

I certify that on January 16, 2015, I filed and served one copy of the foregoing

Memorandum of Points and Authorities in Support of Plaintiff's Motion to Compel by CM/ECF

on all registered parties.


*/s/ Kyle T. Jones*
Kyle T. Jones