**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM, UNITED STATES HOUSE OF REPRESENTATIVES, ) ) ) ) | |
| *Plaintiff*, ) ) | |
| v. ) ) | Case No. 1:12-cv-01332 (ABJ) |
| ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States, ) ) ) ) | |
| *Defendant*. ) ) | |

# EXHIBIT F



**Office of the Deputy Attorney General**
Washington, D.C. 20530

June 20, 2012

The Honorable Darrell E. Issa
Chairman
Committee on Oversight and Government Reform
U.S. House of Representatives
Washington, DC 20515

Dear Mr. Chairman:

After you rejected the Department's recent offers of additional accommodations, you stated that the Committee intends to proceed with its scheduled meeting to consider a resolution citing the Attorney General for contempt for failing to comply with the Committee's subpoena of October 11, 2011. I write now to inform you that the President has asserted executive privilege over the relevant post-February 4, 2011, documents.

We regret that we have arrived at this point, after the many steps we have taken to address the Committee's concerns and to accommodate the Committee's legitimate oversight interests regarding Operation Fast and Furious. Although we are deeply disappointed that the Committee appears intent on proceeding with a contempt vote, the Department remains willing to work with the Committee to reach a mutually satisfactory resolution of the outstanding issues.

Over the last fourteen months, the Department has provided a significant amount of information to the Committee in an extraordinary effort to accommodate the Committee's legitimate oversight interests. The Department has provided the Committee with over 7,600 pages of documents and has made numerous high-level officials available for public congressional testimony, transcribed interviews, and briefings. Attorney General Holder has answered congressional questions about Fast and Furious during nine public hearings, including two before the Committee. The Department has devoted substantial resources to responding to these congressional inquiries.

In addition, upon learning of questions about the tactics used in Fast and Furious, the Attorney General promptly asked the Department's Acting Inspector General to open an investigation into the operation. This investigation continues today. We expect that the Inspector General's report will further help the Department to understand how these mistakes occurred and to ensure that they do not occur again.

Finally, the Department has instituted a number of significant reforms to ensure that the mistakes made in Fast and Furious are not repeated. For example, a directive was issued to the field prohibiting the flawed tactics used in that operation from being used in future law

The Honorable Darrell E. Issa
Page 2

enforcement operations. Leadership and staffing at ATF and the Arizona U.S. Attorney's Office were reorganized, and ATF instituted new policies to ensure closer supervision by ATF management of significant gun trafficking cases. The Criminal Division refined its process for reviewing wiretap authorization requests by its Office of Enforcement Operations. And component heads were directed to take additional care to provide accurate information in response to congressional requests, including by soliciting information directly from employees with detailed personal knowledge of the subject matter at issue.

The Committee's original report accompanying its contempt resolution identified three "main categories" of interest: (1) "Who at Justice Department Headquarters Should Have Known of the Reckless Tactics"; (2) "How the Department Concluded that Fast and Furious was 'Fundamentally Flawed'"; and (3) "How the Inter-Agency Task Force Failed." Committee on Oversight and Government Reform, U.S. House of Representatives, *Report* at 39-40 (June 15, 2012). With respect to the first category, the thousands of pages of documents and other information we have provided establish that the inappropriate tactics used in Fast and Furious were initiated and carried out by personnel in the field over several years and were not initiated or authorized by Department leadership. We have also provided the Committee with significant information with respect to the third category. In a revised report issued late last week, the Committee has made clear that these categories will not be the subject of the contempt vote. *See Report* at 41.

Rather, the Committee has said that the contempt vote will address only the second category, "How the Department Concluded that Fast and Furious was 'Fundamentally Flawed.'" *See Report* at 42; Letter for Eric H. Holder, Jr., Attorney General, from Darrell E. Issa, Chairman at 1-2 (June 13, 2012) ("Chairman's Letter"). In this regard, your letter of June 13 stated that the Committee is now "focused on" "documents from after February 4, 2011, related to the Department's response to Congress and whistleblower allegations" concerning Operation Fast and Furious, in order to "examine the Department's mismanagement of its response to Operation Fast and Furious." *Id.* The Committee has explained that it needs these post-February 4 documents, including "those relating to actions the Department took to silence or retaliate against Fast and Furious whistleblowers," so that it can determine "what the Department knew about Fast and Furious, including when and how it discovered its February 4 letter was false, and the Department's efforts to conceal that information from Congress and the public." *Report* at 33.

The Department has gone to great lengths to accommodate the Committee's legitimate interest in the Department's management of its response to congressional inquiries into Fast and Furious. The information provided to the Committee shows clearly that the Department leadership did not intend to mislead Congress in the February 4 letter or in any other statements concerning Fast and Furious. The Department has already shared with the Committee all internal documents concerning the drafting of the February 4 letter, and numerous Department officials and employees, including the Attorney General, have provided testimony, transcribed interviews, briefings, and other statements concerning the drafting and subsequent withdrawal of that letter.

This substantial record shows that Department officials involved in drafting the February 4 letter turned to senior officials of components with supervisory responsibility for Operation Fast and Furious – the leadership of ATF and the U.S. Attorney's Office in Arizona – and were told in clear and definitive terms that the allegations in Ranking Member Grassley's letters were false. After the February 4 letter was sent, such assurances continued but were at odds with information being provided by Congress and the media, and the Attorney General therefore referred the matter to the Acting Inspector General for review.

As the Department's review proceeded over the next several months, Department leaders publicly indicated that the facts surrounding Fast and Furious were uncertain and that the Department had significant doubts about the assertions in the February 4 letter. For example, at a House Judiciary Committee hearing on May 3, 2011, the Attorney General testified that the Department's Acting Inspector General was reviewing "whether or not Fast and Furious was conducted in a way that's consistent with" Department policy, stating "that's one of the questions that we'll have to see." The next day, May 4, 2011, in response to a question from Senator Grassley at a Senate Judiciary Committee hearing about allegations that ATF had not interdicted weapons, the Attorney General said, "I frankly don't know. That's what the [Inspector General's] investigation . . . will tell us." As you have acknowledged, Department staff reiterated these doubts during a briefing for Committee staff on May 5, 2011. Testifying before the Committee in June 2011, Ronald Weich, Assistant Attorney General for Legislative Affairs, acknowledged that "obviously allegations from the ATF agents . . . have given rise to serious questions about how ATF conducted this operation." He added that "we're not clinging to the statements" in the February 4 letter.

In October 2011, the Attorney General told the Committee that Fast and Furious was "fundamentally flawed." This statement reflected the conclusion that Department leaders had reached based on the significant effort over the prior months to understand the facts of Fast and Furious and the other Arizona-based law enforcement operations. The Attorney General reiterated this conclusion while testifying before Congress in November 2011. The Department's many public statements culminated in the formal withdrawal of the February 4 letter on December 2, 2011.

The Department has substantially complied with the outstanding subpoena. The documents responsive to the remaining subpoena items pertain to sensitive law enforcement activities, including ongoing criminal investigations and prosecutions, or were generated by Department officials in the course of responding to congressional investigations or media inquiries about this matter that are generally not appropriate for disclosure.

In addition to these productions, we made extraordinary accommodations with respect to the drafting and subsequent withdrawal of the February 4 letter, producing to the Committee 1,364 pages of deliberative documents. And we accepted your June 13 letter's invitation to "mak[e] a serious offer" of further accommodation in hopes of reaching "an agreement that renders the process of contempt unnecessary." Chairman's Letter at 2. Specifically, we offered to provide the Committee with a briefing, based on documents that the Committee could retain,

The Honorable Darrell E. Issa
Page 4

explaining further how the Department's understanding of the facts of Fast and Furious evolved during the post-February 4 period, as well as the process that led to the withdrawal of the February 4 letter. *See* Letter for Darrell E. Issa, Chairman, from Eric H. Holder, Jr., Attorney General at 1 (June 14, 2012). We also offered to provide you with an understanding of the documents that we could not produce and to address any remaining questions that you had after you received the briefing and the documents on which it was based. We believe that this additional accommodation would have fully satisfied the Committee's requests for information. We are therefore disappointed that the Committee has not accepted our offer and has chosen instead to proceed with the scheduled contempt vote.

As I noted at the outset, the President, in light of the Committee's decision to hold the contempt vote, has asserted executive privilege over the relevant post-February 4 documents. The legal basis for the President's assertion of executive privilege is set forth in the enclosed letter to the President from the Attorney General. In brief, the compelled production to Congress of these internal Executive Branch documents generated in the course of the deliberative process concerning the Department's response to congressional oversight and related media inquiries would have significant, damaging consequences. As I explained at our meeting yesterday, it would inhibit the candor of such Executive Branch deliberations in the future and significantly impair the Executive Branch's ability to respond independently and effectively to congressional oversight. Such compelled disclosure would be inconsistent with the separation of powers established in the Constitution and would potentially create an imbalance in the relationship between these two co-equal branches of the Government.

In closing, while we are deeply disappointed that the Committee intends to move forward with consideration of a contempt citation, I stress that the Department remains willing to work toward a mutually satisfactory resolution of this matter. Please do not hesitate to contact this office if we can be assistance.

                                              Sincerely,

                                              James M. Cole
                                              Deputy Attorney General

Enclosure

cc:      The Honorable Elijah E. Cummings
          Ranking Minority Member