**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COMMITTEE ON OVERSIGHT AND | ) | |
| GOVERNMENT REFORM, | ) | |
| UNITED STATES HOUSE | ) | |
| OF REPRESENTATIVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:12-cv-1332 (ABJ) |
| v. | ) | |
| | ) | |
| ERIC H. HOLDER, JR., | ) | |
| in his official capacity as | ) | |
| Attorney General of the United States, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO**

**PLAINTIFF'S MOTION TO COMPEL**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................... iii

INTRODUCTION .................................................................. 1

RELEVANT BACKGROUND ................................................. 5

STANDARD OF REVIEW .................................................... 8

ARGUMENT ....................................................................... 9

I.   THE DEPARTMENT'S WITHHOLDINGS UNDER THE DELIBERATIVE
     PROCESS COMPONENT OF EXECUTIVE PRIVILEGE ARE PROPER ..................... 9

     A.   The Deliberative Process Privilege Is Not Limited To the Formulation
          of Formal Agency Policy .................................................. 9

     B.   The Descriptions on the Department's Detailed List Establish the
          Lawfulness of the Department's Deliberative Withholdings ................. 13

II.  THE COURT SHOULD NOT ORDER DISCLOSURE OF THE NON-
     DELIBERATIVE MATERIAL WITHHELD BY THE DEPARTMENT,
     MUCH OF WHICH THE DEPARTMENT HAS OFFERED TO MAKE
     AVAILABLE FOR THE COMMITTEE'S *IN CAMERA* REVIEW ................ 17

     A.   The Department May Appropriately Defend the Withholding of Non-
          Deliberative Material in this Case ......................................... 18

          1.   *The Court Has Not Already Ruled that the Department's
               Withholdings Are Limited to Deliberative Process.* .................. 18

          2.   *The Department Has Not Waived Non-Deliberative Bases for
               Withholding, Which It Raised on Numerous Occasions Before
               and After the Filing of this Lawsuit* .............................. 19

     B.   The Court Need Not Reach the Issue of the 380 Specific Non-Deliberative
          Documents Allegedly Lacking Descriptions Because They Were
          Adequately Described on Their Face and the Department Has in Any
          Event Updated Its Detailed List .......................................... 24

     C.   The Department is Properly Withholding Material that is Not
          Responsive to the Subpoena Because It is Unrelated to Fast and Furious ......... 25

i

D. The Court Should Not Disturb the Department's Other Non–Deliberative Withholdings, Particularly Absent Any Specific Interest or Objection by the Committee .................................................................................................27

 1. *The Court Need Not Consider the Other Non-Deliberative Withholdings, Much of Which the Department Has Offered for the Committee's* In Camera *Review* ........................................................27

 2. *If the Court Considers the Department's Non-Deliberative Withholdings, It Should Hold that the Material Withheld on these Grounds is Privileged* ..............................................................30

III. THIS CASE IS NOT ABOUT, AND THE COMMITTEE IS NOT ENTITLED TO, DOCUMENTS THAT THE COMMITTEE EXPRESSLY TOOK OFF THE TABLE BEFORE FILING SUIT.............................................................35

A. In May and June 2012, the Committee Substantially Narrowed the Scope of Its Subpoena Request for Documents....................................................36

B. The Committee May Not Obtain Documents In this Suit That It Said It Was No Longer Seeking in the Oversight Process .................................................38

CONCLUSION...................................................................................................................45

# TABLE OF AUTHORITIES

**CASES**          **PAGE(S)**

*Am. Immigration Council v. U.S. Dep't of Homeland Sec.*,
   950 F. Supp. 2d 221 (D.D.C. 2013) ........................................................................ 17

*Am. Nat. Bank & Trust Co. of Chicago v. Equitable Life Assur. Soc'y of U.S.*,
   406 F.3d 867 (7th Cir. 2005) ................................................................................ 17

*Am. Petro. Inst. v. EPA*,
   683 F.3d 382 (D.C. Cir. 2012) .............................................................................. 39

*American Ins. Ass'n v. Garamendi*,
   539 U.S. 396 (2003) ............................................................................................. 30

*In re Apollo Group, Inc. Securities Litig.*,
   251 F.R.D. 12 (D.D.C. 2008) ............................................................................... 11

*Black v. Sheraton Corp. of Am.*,
   564 F.2d 531 (D.C. Cir. 1977) ........................................................................ 31, 32

*\*Cheney v. U.S. Dist. Court for the Dist. of Columbia*,
   542 U.S. 367 (2004) ................................................................................. 22, 23, 26

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,
   --- F. Supp. 2d ----, 2014 WL 2604640 (D.D.C. June 11, 2014) ............................ 15

*\*Coastal States Gas Corp. v. U.S. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ........................................................................ 10, 16

*Committee on Judiciary, U.S. House of Representatives v. Miers*,
   558 F. Supp. 2d 53 (D.D.C. 2008) ................................................................... 39, 40

*\*Competitive Enter. Inst. v. EPA*,
   12 F. Supp. 3d 100 (D.D.C. 2014) ................................................................... 12, 26

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ............................................................................................. 38

*David v. Alphin*,
   No. 3:08-cv-11, 2010 WL 1404722 (W.D.N.C. Mar. 30, 2010) ....................... 26, 27

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001) ................................................................................................ 10

*Elec. Frontier Found. v. U.S. Dep't of Justice*,
739 F.3d 1 (D.C. Cir. 2014), *cert. denied*, 135 S. Ct. 356 (2014) ........................................... 14

\*Full Value Advisors, LLC v. SEC*,
633 F.3d 1101 (D.C. Cir. 2011) ...................................................................................... 39, 41

*Gates v. Rohm & Hass Co.*,
Civil Action No. 06-1743, 2010 WL 295416 (E.D. Penn. Jan. 29, 2007) ............................... 27

*Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
762 F. Supp. 2d 123 (D.D.C. 2011) ...................................................................................... 14

*Heggestad v. U.S. Dep't of Justice*,
182 F. Supp. 2d 1 (D.D.C. 2000) .......................................................................................... 10

*Howell v. City of New York*,
No. CV-06-6347, 2007 WL 2815738 (E.D.N.Y. Sept. 25, 2007) ........................................... 26

*Hunt v. U.S. Marine Corps*,
935 F. Supp. 46  (D.D.C. 1996) ............................................................................................ 12

*ICM Registry, LLC v U.S. Dep't of Commerce*,
538 F. Supp. 2d 130 (D.D.C. 2008) ...................................................................................... 11

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
736 F. Supp. 2d 202 (D.D.C. 2010) ................................................................................. 12, 14

*Judicial Watch v. U.S. Dep't of Hous. & Urban Dev.*,
20 F. Supp. 3d 247 (D.D.C. 2014) ........................................................................................ 17

*Judicial Watch, Inc. v. FDA*,
449 F.3d 141 (D.C. Cir. 2006) .............................................................................................. 15

*Kilbourn v. Thompson*,
103 U.S. 168 (1880) ............................................................................................................ 41

*Loftin v. Bande*,
258 F.R.D. 31 (D.D.C. 2009) ............................................................................................... 17

*Mapother v. U.S. Dep't of Justice*,
3 F.3d 1533 (D.C. Cir. 1993) ................................................................................................. 9

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
575 F.2d 932 (D.C. Cir. 1978) .............................................................................................. 11

*Menifee v. U.S. Dep't of the Interior,*
    931 F. Supp. 2d 149 (D.D.C. 2013) ..................................................................... 26

*Morales v. Gotbaum,*
    --- F. Supp. 2d ---, 2014 WL 2031244 (D.D.C. May 19, 2014) ............................ 39

*NLRB v. Jackson Hosp. Corp.,*
    257 F.R.D. 302 (D.D.C. 2009) ............................................................................. 17

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ............................................................................................... 9

*Nixon v. Sirica,*
    487 F.2d 700 (D.C. Cir. 1973) ........................................................................ 30, 32

*Russell v. Dep't of the Air Force,*
    682 F.2d 1045 (D.C. Cir. 1982) ........................................................................... 10

*Schiller v. City of New York,*
    2006 WL 3592547 (S.D.N.Y. Dec. 7, 2006) ........................................................ 27

*\*In re Sealed Case,*
    121 F.3d 729 (D.C. Cir. 1997) ......................................................... 9, 21, 23, 24

*Sensor Sys. Support, Inc. v. FAA,*
    851 F. Supp. 2d 321 (D.D.C. 2012) ..................................................................... 14

*Sherley v. Sebelius,*
    689 F.3d 776 (D.C. Cir. 2012) ....................................................................... 11, 12

*Shurtleff v. U.S. EPA,*
    991 F. Supp. 2d 1 (D.D.C. 2013) ......................................................................... 11

*Skull Valley Band of Goshute Indians v. Kempthorne,*
    No. 04-339, 2007 WL 915211 (D.D.C. Mar. 26, 2007) ........................................ 14

*In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.,*
    No. 08 md 1945, 2009 WL 1026013 (S.D.N.Y. Apr. 8, 2009).......................... 26, 27

*Tax Analysts v. I.R.S.,*
    410 F.3d 715 (D.C. Cir. 2005) ............................................................................. 27

*U.S. Dep't of Justice v. Reporters Committee for Freedom of Press,*
    489 U.S. 749 (1989) .............................................................................................. 34

v

*United States v. AT&T,*
   551 F.2d 384 (D.C. Cir. 1976) ............................................................ 32

*\*United States v. AT&T,*
   567 F.2d 121 (D.C. Cir. 1977) ................................................... <u>passim</u>

*United States v. House of Representatives,*
   556 F. Supp. 150 (D.D.C. 1983) ......................................................... 41

*United States v. Kellogg Brown & Root Servs., Inc.,*
   284 F.R.D. 22 (D.D.C. 2012) ............................................................... 9

*United States v. Nixon,*
   418 U.S. 683 (1974) ........................................................................... 32

*United States v. Poindexter,*
   727 F. Supp. 1501 (D.D.C. 1989) ...................................................... 23

*Wilson v. U.S. DOT,*
   730 F. Supp. 2d 140 (D.D.C. 2010) ................................................... 26

*Youngstown Sheet & Tube Co. v. Sawyer,*
   343 U.S. 579 (1952) ........................................................................... 31

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 1 .................................................................................. 33
Fed. R. Civ. P. 26 ................................................................................ 26
Fed. R. Civ. P. 60 ......................................................................... 11, 12

## FEDERAL RULES OF EVIDENCE

Fed. R. Evid. 1101 .............................................................................. 33
Fed. R. Evid. 501 ............................................................................... 33

## LEGISLATIVE MATERIALS

H.R. REP. NO. 112-546 (2012) ................................................... <u>passim</u>

## OTHER DOCUMENTS

*Assertion of Executive Privilege Concerning the Special Counsel's Interviews of the Vice
   President and Senior White House Staff,*
   2008 WL 5458939 (O.L.C.) ................................................................ 32

*History of Refusals by Executive Branch Officials to Provide Information Demanded by Congress: Part I-Presidential Invocations of Executive Privilege Vis-à-vis Congress*,
    6 Op. O.L.C. 751 (1982) ................................................................................................ 31

*History of Refusals by Executive Branch Officials to Provide Information Demanded by Congress: Part II-Invocations of Executive Privilege by Executive Officials*,
    6 Op. O.L.C. 782 (1983) ................................................................................................ 32

## INTRODUCTION

The Department of Justice ("Department") has complied fully, exhaustively and in utmost good faith with this Court's Orders for production of documents and provision of a detailed list of withheld material, resulting from the Court's resolution of the parties' cross-motions for summary judgment.  *See* Order (ECF No. 81) ("Summ. J. Order"); Order (ECF No. 88) ("Order on Mots."); Order (ECF No. 95) ("Order on Stay").  The instant motion to compel should therefore be denied.

Specifically, pursuant to the Court's Orders, the Department deployed substantial resources to conduct an exacting document-by-document, line-by-line analysis of the over 64,000 pages of documents withheld pursuant to the President's assertion of Executive Privilege. As a result of that process, in November 2014, the Department released to the Committee on Oversight and Government Reform, U.S. House of Representatives ("Committee"), 10,112 documents in whole or in part (over 40,000 pages), as well as a detailed, over-1,300 page list identifying all documents subject to the Executive Privilege claim, including material properly withheld pursuant to this Court's Orders.  Since making that initial production, the Department has continued to work with the Committee in good faith by providing additional material appropriate for release, supplementing the descriptions provided on the detailed list, responding to the Committee's questions, and identifying a path forward to resolve outstanding disputes.

By contrast, the Committee has filed a motion to compel the production of *all* of the material that the Department has not provided—including deliberative material that this Court's Orders make clear the Department may properly protect pursuant to the President's assertion of Executive Privilege.  The Committee's motion seeks to place before this Court a barrage of issues, many of them new and well beyond the issue that was the basis for this Court's

jurisdiction—the validity of the Executive Privilege assertion.  Not only has the Committee moved to compel on a blanket basis while largely ignoring the detailed list provided by the Department, but the Committee seeks to adjudicate, among other things, documents that the Committee told the Department it did not need to provide, and documents that the Department has offered to make available to the Committee for *in camera* review.

The Committee's arguments in support of expanding this litigation fail as a matter of fact and law.  Of the documents actually at issue in this case—those sought by the Committee in June 2012, and over which Executive Privilege was asserted—the Committee fails to identify any deficiencies in the Department's specific withholdings, other than pointing to a small handful of purportedly insufficient entries from the detailed list of withholdings.  *See* Mem. of P. & A. in Supp. of Pl.'s Mot. to Compel ("Pl.'s Compel Mem.") (ECF No. 103-1) at 30-32.  Instead, the Committee focuses on broad, off-point legal assertions that the Executive Branch may never withhold from Congress *any* Executive deliberations, law enforcement sensitive material, records implicating sensitive U.S. foreign policy concerns, attorney-client privileged information, material protected by the attorney work product doctrine, personal privacy information, or information that is not responsive to the Committee's subpoena.  *See id.* at 9-30.  The arguments the Committee makes are all incorrect.  The Court already has ruled that the Department may withhold deliberative material, and the Department has adequately described its deliberative withholdings.  The Department also is permitted to withhold from a congressional committee the additional sensitive materials that have been withheld.

Moreover, the Committee has not even attempted to address why it believes that the withheld documents do not fit within the withholding bases identified by the Department—the very issue that the Committee was supposed to brief, "notwithstanding [the Committee's]

contention that the privilege should not apply at all."  Summ. J. Order at 5.  The Court should not

have to perform the granular analysis that the Committee was supposed to do itself, and that it is

fully able to do with the benefit of the documents and the detailed list the Department provided.

Nor may the Committee rewrite the terms of this dispute, which concerns whether the

Department may withhold documents over which Executive Privilege was asserted in June 2012.

This dispute is not about all documents arguably responsive to the Committee's October 2011

subpoena, which had been significantly narrowed through the accommodations process by the

time of the Executive Privilege assertion.  Indeed, the Committee could not have been any

clearer when it stated in May and June of 2012 that it had "narrowed [its] request" for

documents, *e.g.*, H.R. REP. NO. 112-546, at 38 (2012), "effectively eliminat[ing]" broad

categories of records from dispute, *e.g.*, Letter from Chairman Issa to Attorney General Holder 1

(June 13, 2012) ("Issa June 13 Letter") (ECF No. 63-8).  Because the Committee clearly took

these documents off the table before filing suit, and because they were not the subject of the

Executive Privilege assertion at issue, the Committee may not now seek these documents

through this litigation.  *See, e.g.*, *United States v. AT&T* ("*AT&T II*"), 567 F.2d 121, 130 (D.C.

Cir. 1977).  If the Committee has further demands for documents beyond those over which

Executive Privilege was asserted, it should return to the traditional process of negotiation and

accommodation.

The Committee's motion places into startling focus its erroneous view of the

constitutionally based negotiation and accommodation process that is central to the relationship

between co-equal Branches of government.  The Committee posits, and asks this Court to

endorse, unprecedented new rules to govern interactions between the political Branches:

-   A congressional committee may serve on an Executive agency a subpoena and demand
    full compliance—potentially requiring invocation of Executive Privilege by the

President—by a date selected unilaterally by the committee, irrespective of burden on the agency, and without regard for whether the parties could reach a mutually satisfactory resolution, or at least narrow the dispute, given additional time, *see, e.g.*, Pl.'s Compel Mem. at 10-14;

- The committee may obtain judicial enforcement of the broadest reading of its subpoena, notwithstanding that the committee assured the agency before filing suit that it had narrowed its requests and that certain otherwise-responsive materials need not be produced in order for the agency to be in compliance, *see, e.g.*, *id.* at 3-8; and

- A court reviewing the agency's compliance with the broadest reading of the subpoena (one broader than the understanding that formed the basis of an Executive Privilege assertion) is prohibited from considering other applicable privileges or bases for withholding, *see, e.g.*, *id.* at 14-22.

And perhaps most surprising about the Committee's envisioned system is the expedient role the Judiciary would play in it: the Committee would have federal courts enforce congressional subpoenas, regardless whether the accommodation process has been exhausted for the documents at issue, while at the same time insisting that established "common law and statutory privileges cannot stand in its way" once the dispute reaches federal court. *Id.* at 22. There is no support in the law for this view of the oversight or judicial process.

In short, the Court should reject the Committee's vision of this Court as an adjunct to its oversight of the Executive Branch, which would serve to dramatically alter the process of negotiation and accommodation as it has functioned between the political Branches for over 200 years. Nor should the Court allow the Committee, thinking itself "entitled" to "additional briefing," *id.* at 22-23 n.13, another chance to brief in the first instance issues the Court ordered it to address already—such as providing specific reasons, on a document-by-document basis, why the Department's production is allegedly insufficient, *see* Minute Order (Dec. 23, 2014) (ordering Committee to brief "all issues raised in plaintiff's notice . . . that remain unresolved"). Rather, and for the reasons described herein, the Court should deny the Committee's motion to compel, and hold that all material withheld by the Department was properly withheld.

## RELEVANT BACKGROUND

In December 2013, the Committee filed a motion for summary judgment, and in January 2014, the Department filed a cross-motion for summary judgment.  Both of these motions focused on the core issue presented by this case: whether the Department validly withheld documents responsive to the Committee's subpoena pursuant to an assertion of Executive Privilege, where the basis for the Privilege assertion was not Presidential communications.  On August 20, 2014, the Court denied the parties' cross-motions for summary judgment without prejudice.  The Court "reject[ed] the Committee's suggestion that the only privilege the executive can invoke in response to a subpoena is the Presidential communications privilege." Summ. J. Order at 2.  It further explained that the Department may withhold from Congress information that is covered by the deliberative process privilege.  *Id.* at 2-4.

Accordingly, the Court directed the Department to conduct a "document-by-document analysis and determine which records" are properly withheld by the Executive from production because the records are covered by the deliberative process privilege as described in the Court's ruling.  *Id.* at 4.  The Court instructed the Department to "prepare a detailed list that identifies and describes the material in a manner sufficient to enable resolution of any privilege claims." *Id.* (quotation marks and citations omitted).  The Court explained that:

> The list should set forth not only the author and recipient(s) and the general subject matter of the record being withheld, but the basis for the assertion of the privilege; in particular, defendant should describe the decisionmaking process to which the document contributed, by, for example, identifying the decision, policy or action under consideration in the document, whether or not the decision, policy, or action was eventually adopted or undertaken.

Order on Mots. at 5.[1]  The Court further directed the Department to produce the list to the

Committee, along with the materials the Court determined must be disclosed, by November 3,

2014.  *See id.* at 3.

The Court indicated that the Committee would "then have the opportunity to agree, based

upon the descriptions provided, that the material falls within the privilege, notwithstanding its

contention that the privilege should not apply at all."  Summ. J. Order at 5.  The Committee was

given until November 26, 2014, to "identify the disputed claims."  Order on Mots. at 3.

Following the Department's review of the relevant documents—which required, in

addition to review within the Civil Division of the Department, reviews by the Bureau of

Alcohol, Tobacco, and Firearms and Explosives ("ATF"); the Department of Homeland Security

("DHS"); the Drug Enforcement Administration ("DEA"); the United States Marshals Service

("USMS"), and the Department of State ("State")—the Department provided to the Committee

on November 4, 2014, the Department's production and the accompanying detailed list.[2]  The

Department produced 10,112 documents (over 40,000 pages) in whole or in part,[3] and its

detailed list of the documents that were subject to the claim of Executive Privilege, including

continued withholdings, was over 1,300 pages long.

In the letter accompanying that production, the Department explained that in addition to

withholding material covered by the deliberative process privilege, it also withheld material that

is law enforcement or foreign relations sensitive, material that contains personal privacy

---

[1] The Department cites here the Summary Judgment Order as modified.

[2] The Committee agreed that the materials "could be delivered on November 4, 2014."  *E.g.*,
Comm.'s Notice of Disputed Claims and Other Issues (ECF No. 98) at 2 n.1.

[3] As explained on the detailed list, over 4,000 documents were "wholly contained within" other
documents.  These duplicative documents were described on the detailed list.

information (telephone numbers, email addresses, etc.), and "unrelated" information concerning

either (i) government business unrelated to Operation Fast and Furious and the associated

congressional investigation, or (ii) personal matters.  *See* Letter from John Tyler to Kerry Kircher

1-2 (Nov. 4, 2014) (attached hereto as Ex. A).  The Department also indicated that, in light of the

time constraints confronting the Department, there may have been some inconsistency in

redactions and that the Department might later release to the Committee material that had been

inadvertently redacted.  *Id.* at 2.  The Department further explained that "some of the withheld

information may be appropriate for congressional review but not for public release," and

accordingly indicated that it would be prepared to discuss with the Committee the possibility of

making such materials available for the Committee's review.  Def.'s Status Rep. (ECF No. 101)

¶ 1 (quotation marks, citation and alterations omitted).

Consistent with the statements in its November 4, 2014, letter, the Department continued

to review a small subset of documents following the initial production.  On November 18, 2014,

the Department provided the Committee with a reprocessed set of documents, as well as a list

identifying the few documents that had received updates.

On November 25, 2014, the Committee filed its objections to the Department's

withholdings, indicating that the Committee disputed *every* withholding asserted by the

Department—largely without making objections to any specific withholdings, and without any

reference to the abundant information about the withheld material provided by the Department in

its detailed list and production.  *See* Comm.'s Notice of Disputed Claims and Other Issues ("Pl.'s

Notice") (ECF No. 98).  In light of the Committee's objections, the Court ordered the parties to

meet and confer by December 10, 2014.  Minute Order (Dec. 3, 2014).

On December 4, 2014, the Department provided the Committee with an updated detailed list of documents.  *See* Def.'s Notice of Filing Privilege List (ECF No. 100) at 1.  A document identifying the few entries that had been updated was provided to the Committee on December 8, 2014.  The parties' meet-and-confer took place on December 8, 2014.  The parties "discussed all issues that the Committee ha[d] identified . . . , including potential means by which they may be able to resolve between themselves some or all of the Department's withholdings falling within certain broader categories."  Def.'s Status Rep. ¶ 2.  The Department was hopeful that continued communication on these subjects might prove fruitful, *id.* ¶ 3, and made a good faith effort to find ways to resolve these issues without adjudication, including by proposing the Committee's *in camera* review of many documents withheld on the basis of law enforcement or foreign policy sensitivity, *see* Letter from Brad Humphreys to Kerry Kircher 1-2 (Dec. 24, 2014) ("Humphreys Dec. 24 Letter") (attached hereto as Ex. B).  The Committee declined the Department's offer. *See* Letter from Kerry Kircher to Brad Humphreys 2 (Dec. 31, 2014) ("Kircher Dec. 31 Letter") (attached hereto as Ex. C).

The Committee filed its Motion to Compel on January 16, 2014.  Subsequently, following further review of certain withheld material that had been the topic of discussion between the parties since the filing of the Committee's Notice, the Department released a small amount of additional material, along with an accompanying updated detailed list, to the Committee on February 19, 2015.  *See* Letter from Brad Humphreys to Kerry Kircher (Feb. 19, 2015) ("Humphreys Feb. 19 Letter") (attached hereto as Ex. D).

## STANDARD OF REVIEW

Motions to compel are typically filed in the context of civil discovery.  Although this motion to compel arises in different circumstances, where, as here, one party has provided

information to the other, the movant—here, the Committee—"has the burden of showing that the

opposing party's responses are incomplete." *United States v. Kellogg Brown & Root Servs., Inc.*,

284 F.R.D. 22, 27 (D.D.C. 2012).  The Committee has not met that burden.

## ARGUMENT

## I.   THE DEPARTMENT'S WITHHOLDINGS UNDER THE DELIBERATIVE PROCESS COMPONENT OF EXECUTIVE PRIVILEGE ARE PROPER.

This Court has recognized that the Department may withhold from the Committee

material that is protected by the deliberative process component of Executive Privilege, *see*

Summ. J. Order at 2-4, and that is precisely what the Department has done.  In diligent response

to the Court's Orders, the Department conducted an exacting line-by-line review of the

Executive Privilege set to identify and withhold material that falls within the protection of the

deliberative process privilege.  That material is described on a document-by-document basis on

the Department's detailed list.  For the reasons discussed below, the deliberative process material

identified by the Department is properly withheld.

### A.   The Deliberative Process Privilege Is Not Limited To the Formulation of Formal Agency Policy.

The deliberative process privilege applies to "decisionmaking of executive officials

generally," and protects documents containing deliberations that are part of the process by which

government decisions are formulated.  *In re Sealed Case*, 121 F.3d 729, 737, 745 (D.C. Cir.

1997).  The purpose of the deliberative process privilege is to "prevent injury to the quality of

agency decisions," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975), by encouraging

full and frank discussion of legal and policy matters within the government, preventing

premature disclosure of proposed policies, and avoiding public confusion that may result from

disclosure of rationales that were not ultimately grounds for agency action, *see Mapother v. U.S.*

*Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993); *Russell v. Dep't of Air Force*, 682 F.2d

1045, 1048 (D.C. Cir. 1982) (en banc); *see also Dep't of Interior v. Klamath Water Users*

*Protective Ass'n*, 532 U.S. 1, 8-9 (2001).

As this Court has recognized, the deliberative process component of Executive Privilege

may shield from Congress materials that are predecisional and deliberative.  Summ. J. Order at 2.

To establish that a document is predecisional, the agency need not identify a specific final

agency decision; rather, it is sufficient to establish "what deliberative process is involved, and the

role played by the documents at issue in the course of that process."  *Heggestad v. U.S. Dep't of*

*Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas Corp. v. U.S. Dep't of*

*Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)).  The privilege therefore applies broadly to

"recommendations, draft documents, proposals, suggestions, and other subjective documents

which reflect the personal opinions of the writer rather than the policy of the agency."  *Coastal*

*States*, 617 F.2d at 866.

Rather than raising specific objections to the Department's deliberative process claims,

the Committee instead makes a blanket argument that *none* of the material that the Department

identified as protected by the deliberative process privilege was properly withheld, relying on its

argument that the deliberative process privilege covers only agency deliberations related to a

specific "policy" decision.[4]  *See* Pl.'s Compel Mem. at 26-28; *see also* Tr. of Mots. Hrg. (May

---

[4] The unreasonableness of the Committee's position is underscored by recent developments in
the *Judicial Watch v. U.S. Department of Justice* FOIA case concerning the same documents and
withholdings (and list of withholdings) at issue here. No. 12cv1510 (JDB) (D.D.C.).  On the
same day the Committee chose to challenge *everything* the Department withheld in this case, the
parties in *Judicial Watch* announced that there were "no issues to be resolved . . . concerning the
Department's production," as Judicial Watch was not "challeng[ing] any of the Department's
withholdings."  Joint Status Report ¶¶ 2-3 (Jan. 16, 2015) (attached hereto as Ex. E), *Judicial*
*Watch, Inc. v. U.S. Dep't of Justice*, No. 12cv1510 (JDB) (D.D.C.).

15, 2014) (excerpts at ECF No. 85-3) at 29-32; Pl.'s Mot. to Clarify (ECF No. 83) at 2-3; Pl.'s

Notice at 10-11 & n.9.  This oft-repeated argument is directly at odds with this Court's own

September 9, 2014, Order, which, by directing the Department to "identify[] the decision, policy,

*or* action under consideration in the document," recognized that the deliberative process

privilege is not limited to specific *policy* decisions.  Order on Mots. at 5 (emphasis added).

Because the Court has already indicated that the deliberative process privilege covers more than

deliberations that lead to a formal agency policy, the Committee's argument should be rejected.

*See Sherley v. Sebelius*, 689 F.3d 776, 781 (D.C. Cir. 2012) ("The courts are appropriately loathe

to reconsider issues already decided, except in the case of extraordinary circumstances . . . ."

(quotation marks and citations omitted)); *cf.* Fed. R. Civ. P. 60(b) (identifying narrow grounds

for relief from a judicial order).

     The Committee's cramped view of the deliberative process privilege also fails because it

is contrary to the law in this Circuit.  As this Court recently explained, "[t]he fact that the

decision-making activity d[oes] not relate to a particular . . . policy decision does not remove the

documents from the protection of [the deliberative process privilege]."  *Shurtleff v. U.S. EPA*,

991 F. Supp. 2d 1, 14 (D.D.C. 2013); *see also Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,

575 F.2d 932, 935 (D.C. Cir. 1978) ("While [plaintiff] correctly notes that the end product of

these Air Force deliberations . . . is not a 'broad policy' decision, that deliberation is nonetheless

a type of decisional process that [the deliberative process privilege] seeks to protect from undue

public exposure." (citation omitted)).  Rather, the privilege "serves to protect the processes by

which 'governmental decisions' as well as 'policies' are formulated."  *In re Apollo Group, Inc.*

*Securities Litig.*, 251 F.R.D. 12, 29 (D.D.C. 2008); *see also ICM Registry, LLC v U.S. Dep't of*

*Commerce*, 538 F. Supp. 2d 130, 136 (D.D.C. 2008) (rejecting argument that material is not

deliberative because "these are not deliberations on substantive agency policy").  Indeed, this Court has routinely recognized that the deliberative process privilege applies to precisely the sort of information that the Committee contends cannot be considered deliberative, *i.e.*, candid discussions reflecting how the Department should respond to Congress and the media regarding a matter of public controversy.  *See, e.g.*, *Competitive Enter. Inst. v. U.S. EPA*, 12 F. Supp. 3d 100, 118 (D.D.C. 2014) ("[The deliberative process privilege] has indeed been found to cover agency deliberations about how to respond to media inquiries regarding prior agency actions, as well as discussions about press coverage of existing agency policies, and suggested talking points about how to answer questions regarding the duties assigned to agency employees." (citations omitted)); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (in concluding that discussions of how to respond to inquiries from the press and Congress were protected by the deliberative process privilege, explaining that, "[b]ecause the handling of [the] case was controversial, it is understandable that . . . numerous discussions involving the controversy took place and required multiple decisions"); *Hunt v. U.S. Marine Corps*, 935 F. Supp. 46, 52  (D.D.C. 1996) (finding that "point papers" prepared to help officers resolve the outcome of a disciplinary proceeding were properly withheld as deliberative).

The Committee further argues, in puzzling conflict with this Court's summary judgment ruling, that the deliberative process privilege should not apply against Congress, "a co-equal branch of the federal government."  Pl.' Compel Mem. at 28.  That claim is directly contrary to the Court's summary judgment ruling, which already recognized that the Department may withhold deliberative information from the Committee.  *See* Summ. J. Order at 2-3.  The Committee provides no reason—and there is none—for the Court to revisit the issue.  *See Sherley*, 689 F.3d at 781; *cf.* Fed. R. Civ. P. 60(b).

**B.      The Descriptions on the Department's Detailed List Establish the Lawfulness of the Department's Deliberative Withholdings.**

On a blanket basis, the Committee argues that *all* of the Department's descriptions of deliberative material are inadequate and, accordingly, contends that *all* material withheld by the Department as deliberative should be ordered produced.  *See* Pl.'s Compel Mem. at 29-32.  The Committee's sweeping argument is baseless.

In compliance with the Court's Order to produce documents and provide descriptions of withheld material "sufficient to enable resolution of any privilege claims," Order on Mots. at 5, the Department conducted a line-by-line review of each of the over 15,000 documents subject to the Executive Privilege assertion, and created a detailed list identifying—where ascertainable and/or applicable—the author and recipient(s), the general subject matter of the relevant document, the bases for the assertion of the privilege (if any), and, for documents withheld as deliberative, the decisionmaking process to which the withheld material contributed.  *See generally* Detailed List.  The Committee largely ignores the abundant information provided by the Department.  Its argument is clearly refuted by a review of the detailed list, whose sufficiency is made clearer still by the context provided by the accompanying documents.

Rather than grapple with the vast amount of information provided by the Department, the Committee cherry-picks a small number of withholding descriptions, and asks the Court to reject *all* of the Department's withholdings based on these few purported deficiencies.  The Committee fails to establish the incorrectness of any—let alone all—of the Department's withholdings.

For example, the Committee points to approximately 100 relatively brief descriptions related to the Department's withholding of "proposed changes to a draft letter to Congress."  *See* Pl.'s Compel Mem. at 30.  Draft letters—discussing the strategy they reflect, weighing the pros and cons of particular language, and providing corresponding edits—are quintessentially

13

deliberative.  *See, e.g.*, *Sensor Sys. Support, Inc. v. FAA*, 851 F. Supp. 2d 321, 329 (D.D.C. 2012) ("Draft documents in general are deemed deliberative because comparing them to final documents can disclose editorial judgments that reflect the agency decisionmaking process." (quotation marks and citation omitted)); *Skull Valley Band of Goshute Indians v. Kempthorne*, No. 04-339, 2007 WL 915211, at *14 (D.D.C. Mar. 26, 2007) (similar). And there is a clear agency decision implicated by drafts of such letters: what the Department decides to write (or not write) to Congress.  *See, e.g.*, *Judicial Watch*, 736 F. Supp. 2d at 208 (draft responses to Congress covered by the deliberative process privilege because they "are generated as part of a continuous process of agency decision making, *viz.*, how to respond to on-going inquiries"); *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 138 (D.D.C. 2011) (email exchange discussing what information to include in response to requests from Congress covered by deliberative process privilege).  Revealing how the Department's letters to Congress evolved as various Department officials edited and commented on the appropriate strategy over time would chill the candid and frank communications necessary for effective decisionmaking, precisely the consequences the privilege is intended to avoid.  *See, e.g.*, *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 7 (D.C. Cir. 2014), *cert. denied*, 135 S. Ct. 356 (2014).

The Committee's focus on these few withholding descriptions also ignores entirely that the list provides information beyond the withholding description itself, such as the author and recipients, the date the document was sent, the general subject matter to which the document pertains, and—in the case of email documents, which make up the majority of the documents described on the detailed list—the subject line of the email.  Although the withholding descriptions alone are sufficient, the additional information on the detailed list beyond the lone

14

column complained of by the Committee provides important additional context.  *Cf. Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) ("[W]e focus on the functions of the *Vaughn* index, not the length of the document descriptions, as the touchstone of our analysis.").

Moreover, the Committee also ignores that, with respect to documents that are redacted in part—a majority of the documents—the released material surrounding the redactions provides even further insight into the decisionmaking process involved.  This additional information provides still further support for the Department's deliberative process withholdings, as does the fact that the material is responsive to specific subpoena topics—*i.e.*, the Department's response to the congressional inquiry into Fast and Furious.  *Cf. Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, --- F. Supp. 2d ----, 2014 WL 2604640, at *5 (D.D.C. June 11, 2014) (concluding that the terms of the document request itself supported the Department's assertion that the withheld material was privileged).  In short, the Department has established— through the withholding descriptions and through all other information provided on the list and in the document production itself—that its deliberative process withholdings are justified.

In addition, the Committee has failed to show the insufficiency of any of the Department's lengthier withholding descriptions.  *See* Pl.'s Compel Mem. at 31-32 (citing Detailed List Doc. Nos. 3131, 11035, 11801, 12499, 13720).  Rather, the examples the Committee itself identifies illustrate that the withheld material is both predecisional and deliberative.  Document number 11035, to choose one example, describes the withheld text as "discussing what materials should be made available to which entities; discussion of how Department assets should be managed in light of resource constraints; discussion of necessary steps in an ongoing prosecution."  Detailed List Doc. No. 11035.  It is apparent from this description that the Department had not taken a final position regarding the decisions involved

(*i.e.*, what materials to make available, how to manage assets, and what next steps to take in an ongoing prosecution), and that the material expresses the "personal opinions of the writer," the disclosure of which "is likely in the future to stifle honest and frank communication within the agency." *Coastal States*, 617 F.2d at 866.  The withholding description for document number 11801 ("discussion re plan for completing" various identified tasks, Pl.'s Compel Mem. at 31 (citing Doc. No. 11801)), is similarly sufficient, as it makes clear that the material consists of personal opinions regarding agency decisions that have yet to be finalized.

Here again, the Committee continues to ignore that the detailed list provides abundant information going beyond what the Committee quotes in its brief, as does the subpoena itself, and the portions of the documents that were released.  The Committee provides no explanation whatsoever to support its bare assertion that the Department's descriptions "fall well short of what is required to enable the Court and the Committee to make informed judgments as to whether documents may be 'both predecisional and deliberative.'"  Pl.'s Compel Mem. at 31. The Committee has failed to even explain what additional information it would need to assess the documents at issue; there appears to be no such information that would satisfy the Committee, short of revealing the deliberative information itself.  The Committee's conclusory objections must fail in the face of the Department's thorough documentation.

Finally, even if the Court were to determine that some of the Department's descriptions are lacking, the Committee's proposed remedy—ordering the immediate release of that material, *see* Pl.'s Compel Mem. at 32—is unfounded.  When a withholding description is inadequate,

absent some showing of bad faith or undue delay, courts should either order the withholding party to provide additional information, or review the withheld materials *in camera*.[5]

## II. THE COURT SHOULD NOT ORDER DISCLOSURE OF THE NON-DELIBERATIVE MATERIAL WITHHELD BY THE DEPARTMENT, MUCH OF WHICH THE DEPARTMENT HAS OFFERED TO MAKE AVAILABLE FOR THE COMMITTEE'S *IN CAMERA* REVIEW.

In addition to withholding deliberative material pursuant to this Court's Orders about the validity of the Executive Privilege assertion at issue in this case, the Department's November 2014 production also withheld some additional material from the Executive Privilege set on bases other than the deliberative process privilege—as the Department informed the Court it intended to do.  *See* Def.'s Mem. of P. & A. in Supp. of its Mot. for Stay ("Def.'s Stay Mem.") (ECF No. 84) at 10; *see also* Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Summ. J. Mem.") (ECF No. 63) at 33 n.10; Reply in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Summ. J. Reply") (ECF No. 71) at 8 n.5.  Specifically, and consistent with longstanding Executive Branch practice for congressional production, the Department withheld certain law enforcement sensitive material, records implicating sensitive foreign policy concerns, attorney-client privileged information, material protected by the attorney work product doctrine, personal

---

[5] *See, e.g.*, *Judicial Watch v. U.S. Dep't of Hous. & Urban Dev.*, 20 F. Supp. 3d 247, 255 n.4 (D.D.C. 2014) ("Even if the Court were to . . . find that [defendant's] *Vaughn* index was insufficient . . . . the proper course would be to . . . give Defendant an opportunity to elaborate upon its description and justification.") (quotation omitted); *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 237 (D.D.C. 2013) (finding that agency's withholding descriptions inadequate and ordering agency to provide additional documentation to justify its withholdings); *NLRB v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 310 (D.D.C. 2009) (reviewing *in camera* documents that were inadequately described in the plaintiff's privilege log); *Loftin v. Bande*, 258 F.R.D. 31, 33 (D.D.C. 2009) ("[P]laintiffs should identify other entries on the Privilege Log or Supplemental Log that they believe are similarly deficient and defendant should supply the missing information."); *see also Am. Nat. Bank & Trust Co. of Chicago v. Equitable Life Assur. Soc'y of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005) (indicating that a finding of waiver based on inadequacies in a privilege log is "impermissibly arbitrary, with an extremely harsh result").

privacy information, and information that is not responsive to the Committee's subpoena.  These

confidentiality concerns were expressed by the Department to the Committee throughout the

oversight process.  And the Department has made clear to the Committee that it is willing to

allow the Committee to review a significant amount of this non-deliberative withheld

information *in camera*.  Thus, there is no basis for the Court to resolve the many new legal issues

the Committee would have it decide—namely, whether each of these withholding bases are valid

as against Congress.  The Committee can see much of the non-deliberative material if it chooses,

and the remainder is properly withheld in the circumstances of this case.

### A.    The Department May Appropriately Defend the Withholding of Non-Deliberative Material in this Case.

The Committee incorrectly claims that the Department may not justify its withholdings

on any basis other than deliberative process.  The Committee's arguments on this point fail.

#### 1.    *The Court Has Not Already Ruled that the Department's Withholdings Are Limited to Deliberative Process.*

The Committee states that the Court has already "ruled that the [Department] may not

assert non-deliberative process privilege claims."  Pl.'s Compel Mem. at 10 (capitalization

omitted).  To the contrary, the Court has noted that "some documents may need to be redacted in

part due to privacy or other concerns."  Order on Stay at 3.  Indeed, on September 9, 2014, the

Court expressly "decline[d] plaintiff's invitation to address what information defendant may or

may not redact when additional material is produced," explaining that the issue was "not before

the Court at th[at] time."  Order on Mots. at 2 n.1.  The Committee's claim that the Court already

has resolved this question is also contrary to the Committee's own past statements.  *See* Comm.'s

Mot. for Order (ECF No. 96) at 8 ("[T]he Committee understands this Court to have indicated a

preference for addressing the question of whether the Attorney General may withhold or redact

on these . . . grounds *after* the Attorney General otherwise has complied with the [Orders].”); *see also id.* (quoting Order on Mots. at 2 n.1).

> 2. *The Department Has Not Waived Non-Deliberative Bases for Withholding, Which It Raised on Numerous Occasions Before and After the Filing of this Lawsuit.*

The Committee argues that the Department has waived the ability to defend the withholding of material pursuant to privileges other than deliberative process.  The Committee’s argument is contradicted by fact, law, and logic.

First, the Committee’s claim that the Department’s “non-deliberative process” withholdings “made their appearance in this case for the very first time on November 4,” 2014, Pl.’s Compel Mem. at 2, is flatly contradicted by the record before this Court.  Multiple letters the Department sent the Committee both before and after receipt of the October 2011 subpoena made clear that the Department was withholding and would continue to withhold material that is law enforcement sensitive, material that implicates personal privacy, and material that is not responsive to the Committee’s subpoena.[6]  In the days immediately following receipt of the

---

[6] *See, e.g.*, Letter from Assistant Attorney General Weich to Chairman Issa 1 (Apr. 8, 2011) (ECF No. 63-5) (explaining that “many of [the Committee’s] requests seek records relating to ongoing criminal investigations,” and that, “[b]ased upon the Department’s longstanding policy regarding the confidentiality of ongoing criminal investigations, [the Department was] not in a position to disclose such documents”); Letter from Assistant Attorney General Weich to Chairman Issa 1 (May 2, 2011) (ECF No. 64-2); Letter from Assistant Attorney General Weich to Chairman Issa 1 (June 13, 2011) (ECF No. 63-14); Letter from Assistant Attorney General Weich to Chairman Issa 1 (Oct. 11, 2011) (ECF No. 61-17) (explaining that Department was redacting “specific details about pending investigations,” privacy-protected information “relating to line employees,” and text “from multi-subject documents . . . that is not responsive to [the Committee’s] requests”); Letter from Assistant Attorney General Weich to Chairman Issa 1 (Oct. 31, 2011) (ECF No. 63-13) (explaining concerns about providing “specific details about pending investigations, . . . information relating to line employees, such as their cellular phone numbers,” information “implicat[ing] individual privacy interests,” as well as material from “multi-subject documents . . . that contained text that was either not responsive or contained details of particular investigations other than Fast and Furious”); Letter from Deputy Attorney General Cole to

October 2011 subpoena, and before the October 25, 2011, return date, the Department further

discussed such concerns with the Committee orally.  *See* Decl. of M. Faith Burton ("Burton

Decl.")[7] (ECF No. 63-1) ¶¶ 11-12.  Although the Department did not have reason to brief these

additional bases for withholdings on summary judgment in light of the Department's position

that all material in the Executive privilege set was validly withheld as congressional response

"work product," the Department nonetheless indicated that there could be other bases to protect

certain information in the documents, including "common-law and statutory privileges."  Def.'s

Summ. J. Mem. at 33 n.10; *see* Def.'s Summ. J. Reply at 8 n.5; *see also* Burton Decl. ¶¶ 13-16

(discussing particular sensitivities in the documents).  And since the Summary Judgment Order,

the Department has clearly stated to the Court that the Department would be reviewing the

Executive Privilege documents for such material.  *See* Def.'s Stay Mem. at 10 ("[T]he review

must identify and redact sensitive law enforcement material . . . . [P]ersonal privacy information

and material unrelated to Fast and Furious would also have to be considered for redaction.");

Def.'s Resp. to the Court's Order of Sept. 9, 2014 (ECF No. 89) at 4 ("[T]he Department intends

to identify certain limited information within the documents subject to the Executive Privilege

---

Chairman Issa 5-7 (May 15, 2012) (ECF No. 63-3) (describing in detail concerns about providing information implicating ongoing law enforcement matters); Letter from Attorney General Holder to Chairman Issa 1 (June 14, 2012) (ECF No. 13-4) (explaining that Department had "repeatedly expressed concern that the production of [law enforcement information] would undermine the integrity and independence of the Department's core law enforcement operations"); *see also* Def.'s Resp. to Pl.'s Statement of Material Facts as to Which There is No Genuine Issue (ECF No. 64-1) ¶ 49.

[7] The Committee previously moved to strike the Burton and Colborn Declarations.  *See* Pl.'s Mot. to Strike (ECF No. 70).  The Court denied that motion as moot, *see* Summ. J. Order at 6, commenting that it found the motion "to be unnecessary in any event," Tr. of Status Conf. (Aug. 20, 2014) (excerpts attached hereto as Ex. F) at 12.  Both the Burton and Colborn Declarations are permissible, for the reasons stated in the Department's opposition brief on the subject.  *See* Def.'s Mem. in Opp'n to Pl.'s Mot. to Strike (ECF No. 72).

assertion that should remain protected even if not deliberative and predecisional – largely, law enforcement sensitive and personal privacy information."); *see also* Decl. of Allison C. Stanton (ECF No. 84-2) ¶¶ 8-9.  The Committee's claim that the Department's "non-deliberative process privilege claims first surfaced on November 4, 2014," is therefore at odds with the clear record before the Court.  Pl.'s Compel Mem. at 11.

Second, the D.C. Circuit has already rejected the Committee's position that the Department's privileges are waived if not asserted before the subpoena return date.  The Department briefed this issue on summary judgment, *see* Def.'s Summ. J. Mem. at 34-36; Def.'s Summ. J. Reply at 16-18, and incorporates by reference those arguments here.  To summarize, in *In re Sealed Case*, 121 F.3d 729, a grand jury issued a subpoena *duces tecum* to the White House Counsel.  Shortly after the subpoena was issued, the White House produced some documents to the Office of Independent Counsel ("OIC"), *id.* at 740, "informed the OIC that it believed some of the material was privileged," and then entered into "lengthy negotiations . . . over the status of the withheld documents," *id.* at 741.  But the White House did not "formally invoke its privileges" by the subpoena's return date; indeed, it did not formally invoke privilege until the OIC filed a motion to compel in district court.  *Id.*

In support of its motion to compel, the Independent Counsel argued that the White House had "waived its claims of privilege" by, among other things, "unduly delaying in invoking privilege."  *Id.* at 736.  The D.C. Circuit rejected this argument, noting that it was "clear from the record that the OIC was well aware the White House would be asserting privileges in regard to certain documents," and explaining further that privilege had been asserted in response to the motion to compel—"the first event which could have forced disclosure of the documents."  *Id.* at 741.  Here, the Department made known the bases for a potential privilege assertion (both

deliberative and otherwise) throughout the accommodation process; formalized its assertion of Executive Privilege prior to the contempt vote, when the issue was fully joined; and thereafter reserved its right to withhold information on bases other than deliberative process throughout this litigation.  The Committee, like OIC, was "clearly aware" that the Executive Branch "likely would be asserting privilege." *Id.*

Third, requiring the Executive Branch to formally invoke privilege in advance of a subpoena return date would turn the process of negotiation and accommodation on its head. Return dates are selected unilaterally by congressional committees; they may or may not allow the responding party enough time to conduct a reasonable search for responsive material, let alone conduct a thorough privilege analysis and prepare an exhaustive written accounting of all withholdings.[8]  *See* Decl. of Paul P. Colborn ("Colborn Decl.") (ECF No. 63-2) ¶ 7 ("[T]he constitutionally mandated need to work through the accommodation process with congressional committees, combined with the fact that committee subpoenas (as was the case with the October 11, 2011 subpoena) are often quite broad and burdensome, generally means that it is not possible for the Branches to reach a resolution by the subpoena's return date.").  If the Executive Branch waives all privileges not formally asserted in writing by whatever return date a congressional committee unilaterally places on its subpoena, there would be nothing to stop that committee from adopting an immediate return date and then rushing off to court for relief, thereby short-

---

[8] Executive agencies must sometimes protect certain materials relevant to Article II functions in order to preserve the separation of powers; the Committee's insistence that the Executive Branch meet a subpoena's return date (irrespective of burden) disregards the unique constitutional dimensions presented when a congressional committee subpoenas Executive records.  *See, e.g.*, *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 390 (2004) ("As this case implicates the separation of powers, the Court of Appeals must also ask, as part of this inquiry, whether the District Court's actions constituted an unwarranted impairment of another branch in the performance of its constitutional duties.").

circuiting the constitutionally based process of negotiation and accommodation that has long characterized congressional oversight of the Executive Branch.  *Cf. Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 389 (2004) (determining that court incorrectly "insiste[d] that the Vice President winnow the discovery orders by asserting specific claims of privilege and making more particular objections").

Even if the Executive Branch were able to make a full privilege assessment by a committee's return date (which is unlikely to be the case), requiring an invocation of privilege by that date would be contrary and destructive to our constitutional order.  "As Judge Friendly recalled in his 1976 Bicentennial lecture, it is one of the major strengths of the Constitution, and far from a weakness, that conflicting viewpoints have been resolved through *intermediate positions*."  *AT&T II*, 567 F.2d at 127 (emphasis added).  In this case, the Department's clearly and promptly expressed views as to privilege and other sensitivities implicated by the subpoena put the Committee on early notice that the Department "likely would be asserting privilege."  *Sealed Case*, 121 F.3d at 741; *see, e.g.*, *supra* at 19-20 & n.6.  And the Department did so without setting the political Branches on the "collision course" presented by a formal assertion of Executive Privilege.  *Cheney*, 542 U.S. at 389.  It is, after all, a *virtue* that the Department tried to resolve this dispute through months of good-faith negotiations, including the provision of over 5,000 pages of material responsive to the October 2011 subpoena, without a formal invocation of privilege.  *See id.* at 389-90 ("Executive privilege is an extraordinary assertion of power not to be lightly invoked. . . .  These occasions for constitutional confrontation between the two branches should be avoided whenever possible." (quotation marks, citations and alterations omitted)); *id.* at 390 (speaking favorably of *United States v. Poindexter*, 727 F. Supp. 1501, 1503 (D.D.C. 1989), in which "the District Court agreed with the President that it is undesirable as a matter of

constitutional and public policy to compel a President to make his decision on privilege with respect to a large array of documents" (quotation marks omitted)); *see also* Colborn Decl. ¶ 7 ("Because the Executive Branch treats assertions of Executive Privilege as a last resort, to be used only when other options have been exhausted, it will generally not be asserted by the return date but rather after a committee seeks to hold the subpoena recipient in contempt—an indication that Congress believes that the accommodation process has reached an impasse.").

In short, the Department's carefully tailored non-deliberative withholdings in this case were not waived simply because these potential bases for withholding were communicated through letters and phone calls throughout the oversight process that the Committee now claims fell short of its professed standards of formality. The "spirit of dynamic compromise" that defines the relations between the political Branches, *AT&T II*, 567 F.2d at 127, is embodied in the Department's approach to its withholdings in this case: informally making known to Congress its preliminary concerns regarding sensitivity and privilege, negotiating in good faith to identify potential areas of agreement and grounds for compromise, providing numerous documents and witnesses responsive to the Committee's requests, and then formally invoking privilege only when an impasse is imminent. *Cf. Sealed Case*, 121 F.3d at 741.

**B.      The Court Need Not Reach the Issue of the 380 Specific Non-Deliberative Documents Allegedly Lacking Descriptions Because They Were Adequately Described on Their Face and the Department Has in Any Event Updated Its Detailed List.**

The Court can quickly dispose of as moot the Committee's complaint about 380 documents for which withholdings were not described on the Department's detailed list. *See* Pl.'s Compel Mem. at 8-9. To begin with, it is perfectly clear from the face of these 380 documents what sort of information was being withheld. For example, in lieu of some names appears a redaction box reading "Admin. Assistant"; over some business phone numbers appears

a redaction box reading "Privacy"; and over some email addresses appears the full name of the person to whom the email address corresponds.  It is likewise clear that the information, while sensitive for the Department and its employees, is of no value to the Committee.

Although the Committee could have resolved any questions about these documents by simply looking at the redactions on the documents themselves (as the Department informed the Committee during the meet-and-confer-process, during which the Department also encouraged the Committee to identify particular documents of concern),[9] the Department has updated its detailed list to address this issue.  *See* Humphreys Feb. 19 Letter at 1-2.  A description of the withholdings from these 380 documents can now be found on the privilege list itself, as well as on the face of the documents.  Accordingly, this complaint is now moot (as well as unfounded).

### C.    The Department is Properly Withholding Material that is Not Responsive to the Subpoena Because It is Unrelated to Fast and Furious.

The Department has appropriately redacted and withheld from the Committee a modest amount of material in the Executive Privilege set as "unrelated" because that material is not itself responsive to the topics identified in the Committee subpoena.[10]   The Department carefully and conservatively applied these "unrelated" redactions to protect the discussion of Executive Branch business wholly unrelated to Operation Fast and Furious and to protect non-responsive

---

[9] The Department attaches hereto as Exhibit G a sample consisting of every fiftieth document from the Committee's list of 380, which indicates that the redaction bases are clear (and justified) on the face of the documents.

[10] Following discussion of this issue at the December 8, 2014, meet-and-confer, the Department re-reviewed all material withheld as "unrelated" and confirmed that nearly all material had been properly marked.  As part of that process, the Department determined that a small amount of material (three sentences) should not have been marked as "unrelated."  *See* Humphreys Feb. 19 Letter at 1.  The Department has since released to the Committee that additional material, except where the material was covered by a separate basis for withholding, such as the deliberative process privilege.  *See id.*

discussion of employees' personal lives.  That the Department may protect such non-responsive material should be uncontroversial, as the Committee did not request it.  Indeed, the Committee itself has suggested that it need not obtain material that is genuinely non-responsive.  *See* Pl.'s Compel Mem. at 23 (citing Pl.'s Notice at 8).  Nonetheless, the Committee now insists that it is entitled to such material, and asks this Court to order its disclosure.

The Committee's position is incorrect.  In suits challenging the withholding of Executive Branch documents, courts routinely allow agencies to redact material that is not responsive to the document request being litigated.  *See, e.g.*, *Competitive Enter. Inst.*, 12 F. Supp. 3d at 114 ("[N]on responsive records need never be produced.").  This Court has explained that "there is no reason . . . to find [responsiveness] redactions improper," even when the material in question was not otherwise exempt from disclosure.  *Menifee v. U.S. Dep't of the Interior*, 931 F. Supp. 2d 149, 167 (D.D.C. 2013) (quotation marks and citation omitted); *see Wilson v. U.S. DOT*, 730 F. Supp. 2d 140, 156 (D.D.C. 2010) (collecting cases).

The cases cited by the Committee, all of which arise in the civil discovery context, are inapposite.  *See* Pl.'s Compel Mem. at 23-24 (citing *David v. Alphin*, No. 3:07-cv-11, 2010 WL 1404722 (W.D.N.C. Mar. 30, 2010); *In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, No. 08 md 1945, 2009 WL 1026013 (S.D.N.Y. Apr. 8, 2009); *Howell v. City of New York*, No. CV-06-6347, 2007 WL 2815738 (E.D.N.Y. Sept. 25, 2007)).  Civil discovery, where permitted, extends to "any nonprivileged matter . . . reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Such permissive standards do not apply to litigation specifically concerning the withholding of documents.  *See Cheney*, 542 U.S. at 388 ("Here, . . . the discovery requests are anything but appropriate.  They provide respondents all the disclosure to which they would be entitled in the event they prevail on the

merits, and much more besides."); *Tax Analysts v. I.R.S.*, 410 F.3d 715, 722 (D.C. Cir. 2005) (explaining that discovery demand in FOIA case would "awarding Appellant in discovery the very remedy for which it seeks to prevail in the suit"). FOIA litigation, in which the only issue is the agency's compliance with a document request, presents the far better analogy to the present circumstances—and fully supports the redaction of "unrelated" material here.

Moreover, some courts disagree with the approach in the cases identified by the Committee. *See, e.g.*, *Gates v. Rohm & Hass Co.*, Civil Action No. 06-1743, 2010 WL 295416, at *1 n.1 (E.D. Penn. Jan. 29, 2007) (concluding that redaction of unrelated material is appropriate because the redacting party has incentive to redact scrupulously and in good faith, and because court may review materials *in camera* to satisfy itself that redacted material is, in fact, non-responsive); *Schiller v. City of New York*, 2006 WL 3592547, at *7 (S.D.N.Y. Dec. 7, 2006) (upholding redaction of irrelevant material). And in two of the Committee's cases, binding protective orders were in place, thereby preserving the producing party's confidentiality interests in the documents. *See David,* 2010 WL 1404722, at *7-8; *State St. Bank*, 2009 WL 1026013, at *1-2; *see also id.* at *2 (determining that unrelated material need not be produced if not subject to the protective order). Thus, even if the Committee's cases were relevant, they would lend scant support to its position.

### D.   The Court Should Not Disturb the Department's Other Non–Deliberative Withholdings, Particularly Absent Any Specific Interest or Objection by the Committee.

#### 1.   *The Court Need Not Consider the Other Non-Deliberative Withholdings, Much of Which the Department Has Offered for the Committee's* In Camera *Review.*

Aside from the "unrelated" information, the Department has withheld some non-deliberative material—namely, certain law enforcement sensitive material, records implicating

sensitive foreign policy concerns, attorney-client privileged information, material protected by the attorney work product doctrine, and personal privacy information.  Although the Committee seeks rulings that each of these bases is an invalid reason for withholding, the Court need not and should not reach those questions.  Such information is regularly withheld from congressional productions; the Department has offered an accommodation that would allow the Committee to see a significant amount of this material; and the Committee has failed to identify any part of this withheld material that it has an interest in reviewing.

To begin with, in the meet-and-confer process, the Department offered to provide to the Committee *in camera* a substantial amount of the non-deliberative material at issue and asked the Committee to identify any specific redacted material in these categories for which the Committee believed that the information provided by the Department was insufficient to justify its withholdings.  *See* Humphreys Dec. 24 Letter at 1-2.  The Committee declined the invitation for *in camera* review, and also has refused to identify a single page of these withholdings that it would like to inspect.  Indeed, the Committee's message to the Department was that it would not negotiate over these materials because "the Committee's position . . . is that there is no legal basis for [the Department's] withholding of any of those materials on any of those grounds." Kircher Dec. 31 Letter at 2.  If the Committee were genuinely interested in these documents— and not merely seeking to precipitate further litigation on the types of material the Executive may withhold from Congress more broadly—it would have accepted the Department's offer to view materials *in camera* notwithstanding its position that they were improperly withheld.  *Cf.* Minute Order (Dec. 3, 2014) (directing parties to confer over the issues identified in the Committee's Notice).  The Department respectfully submits that the Court should decline to consider the Committee's complaints about these withholdings, in light of the Department's

reasonable offer of accommodation and the Committee's manifest disinterest in actually viewing the documents.

In *Miers*, four Members of the plaintiff House Committee on the Judiciary, including current Speaker of the House Boehner, filed an amicus brief that is particularly instructive on this point.  They argued that courts "should look carefully for . . . grounds that would avoid the need to answer" the "grav[e] . . . constitutional and institutional questions" presented in litigation between the political Branches, Mem. of Amici Curiae in Opp'n to Pl.'s Mot. for Summ. J. ("*Miers* Amicus Br.") at 20 (May 9, 2008) (filed June 12, 2008) (attached hereto as Ex. H), *Committee on Judiciary, U.S. House of Representatives v. Miers*, No. 1:08-cv-00409-JDB (D.D.C.), and that courts should decline to consider issues when a congressional committee "might already have acquired" the relevant information had it "chosen to exercise all of the available options," *id.* at 26.  Accordingly, the Court should not rule on whether the Department has properly withheld material when the Committee could have viewed most of it, but demurred.

In addition, before filing suit, the Committee expressly took off the table law enforcement sensitive materials.  *See* H.R. REP. NO. 112-546, at 39 (explaining that Committee was deferring production of law enforcement sensitive materials "as an accommodation meant to alleviate the Department's concerns about preserving the integrity of the ongoing prosecutions").  Therefore, these withholdings, which implicate the equities of State, ATF, DHS, DEA, and USMS, have little if anything to do with the subject of the dispute at the time of the Committee's contempt vote.  *See, e.g.*, Issa June 13 Letter at 1 ("The remaining aspects of our dispute concern documents the Department refuses to produce on the grounds that they reflect internal Department deliberations.").  And they have little if anything to do with what the Committee claimed to seek in this case.  *See* Am. Compl. (ECF No. 35) at 3 ("[T]he Committee seeks in this

action to enforce the Holder Subpoena only as to a limited subset of responsive documents, namely those documents relevant to the Department's efforts to obstruct the Committee's investigation.").

In light of the Committee's apparent disinterest in viewing any of these documents, and the tangential relationship of these documents to the subject this case was supposed to concern, the Court should not consider whether they were properly withheld.

> ## 2. If the Court Considers the Department's Non-Deliberative Withholdings, It Should Hold that the Material Withheld on these Grounds is Privileged.

Should the Court consider the substance of the Department's non-deliberative privilege withholdings, it should uphold them. The Department's non-deliberative withholdings are based in the Constitution, growing out of the President's duty to "take Care that the Laws be faithfully executed," as well as statute and common law. Information of this sort is appropriately and routinely redacted from documents that the Executive Branch provides to Congress. *See* Def.'s Stay Mem. at 9 (citing Burton Decl. ¶¶ 4-6).

Executive Branch agencies have a recognized right to withhold from Congress foreign relations sensitive and law enforcement sensitive information. Indeed, such information has been routinely withheld by the Executive from Congress to prevent congressional intrusion into the proper functioning of the Executive Branch. *See* Def.'s Summ. J. Mot. at 16-17 (citing examples); *see also, e.g.*, *Nixon v. Sirica*, 487 F.2d 700, 737 (D.C. Cir. 1973) (MacKinnon, J., concurring in part and dissenting in part). There is nothing controversial or surprising about their withholding in this case. *See* Pl.'s Compel Mem. at 15-22.

With respect to the foreign relations sensitive material specifically, courts have long recognized that foreign policy and national security are at the very heart of the President's Article II power. *See, e.g.*, *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003) ("[T]he

historical gloss on the 'executive Power' vested in Article II of the Constitution has recognized the President's 'vast share of responsibility for the conduct of our foreign relations.'" (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610-11 (1952))).  And Executive Branch practice dating back to our first President supports the withholding from Congress of sensitive documents relating to foreign relations and diplomacy.  *See generally* History of Refusals by Executive Branch Officials to Provide Information Demanded by Congress: Part I—Presidential Invocations of Executive Privilege Vis-à-vis Congress, 6 Op. O.L.C. 751 (1982) (detailing numerous examples).  Requiring the Executive to produce such information in response to a congressional subpoena would impede the Executive Branch's ability to carry out one of its core functions, preventing it from maintaining confidentiality surrounding sensitive issues of diplomacy such as diplomatic information about the nature of other countries' engagement with the United States, which are often undertaken with an expectation of confidentiality—and also undermining the ability of Executive Branch officials to engage in non-public evaluations of the actions and policies of specific countries and their leaders without fear that the information would become public and cause damage to those very relationships.  *See, e.g.*, *Black v. Sheraton Corp. of Am.*, 564 F.2d 531, 541 (D.C. Cir. 1977) (recognizing that a claim of Executive Privilege concerning "diplomatic or military secrets" "may have constitutional underpinnings).  Here, the Executive Branch has withheld material that implicates precisely such confidentiality concerns.  No court has ordered the Executive Branch to turn over such information to Congress.

The Committee would completely eliminate the Executive's ability to maintain the confidentiality of sensitive foreign relations (and, presumably, national security) information, leaving the ultimate decision regarding public disclosure to Congress' "discretion."  Pl.'s Compel Mem. at 22; *see also* Def.'s Summ. J. Mot. at 33 n.11 (discussing authorities on which

Committee relies now).  The Committee's position—that the Executive Branch lacks authority to withhold such information—is unsupported and at odds with case law going back decades indicating that the Executive has a strong interest in protecting from disclosure sensitive diplomatic information, even from Congress.  *See United States v. Nixon*, 418 U.S. 683, 710-11 (1974); *United States v. AT&T*, 551 F.2d 384, 392-93 (D.C. Cir. 1976); *see also Nixon*, 487 F.2d at 733-34 (explaining that President Washington withheld documents in response to congressional inquiries regarding military and diplomatic matters).  The Court should reject the Committee's argument that foreign relations sensitive material may not be withheld.

Similarly, the Executive Branch's ability to withhold law enforcement sensitive information from Congress is rooted in the President's responsibility to "take Care that the Laws be faithfully executed."  *See Black*, 564 F.2d at 541-42 (recognizing that Executive Privilege encompasses a privilege "based primarily on harm to law enforcement efforts which might arise from public disclosure of [ ] investigatory files"); *Prosecution for Contempt of Congress of an Exec. Branch Official Who Has Asserted a Claim of Exec. Privilege*, 8 O.L.C. 101, 117 (1984) ("Since the early part of the 19th century, Presidents have steadfastly protected the confidentiality and integrity of investigative files from untimely, inappropriate, or uncontrollable access by other branches, particularly the legislature."); *History of Refusals by Executive Branch Officials to Provide Information Demanded by Congress: Part II—Invocations of Executive Privilege by Executive Officials*, 6 Op. O.L.C. 782 (1983) (collecting examples from the inception of the Department of Justice of the withholding from Congress of law enforcement sensitive information); *Assertion of Executive Privilege Concerning the Special Counsel's Interviews of the Vice President and Senior White House Staff*, 2008 WL 5458939 (O.L.C.) (2008); *see also Nixon*, 418 U.S. at 711 (describing the interest in "confidentiality" relating to the

effective discharge of the President's powers as "constitutionally based").  Here, the Department and various law enforcement entities involved in the Department's review have redacted sensitive law enforcement information including, among other things, law enforcement methods and techniques, confidential informant information, and the names of law enforcement personnel involved in criminal investigations.  The Committee provides no reason why the Executive Branch may not maintain confidentiality for such sensitive materials, except to suggest that no such information may ever be withheld from Congress.  The Court should reject out of hand the Committee's attempt to erase the Executive's ability to protect such sensitive information.

In addition to protecting foreign relations and law enforcement sensitive information under the Constitution, the Department has also withheld a small amount of material under the common law attorney work product doctrine and attorney-client privilege.  As with the Department's other withholdings, the Committee does not challenge any of these particular withholdings, but makes the blanket assertion that the Department may not assert *any* common law privilege with respect to Congress.  *See* Pl.'s Compel Mem. at 18-21.

To begin with, such material is routinely withheld from congressional productions, as producing this information would compromise the independent functioning of the Executive Branch.  Moreover, while the Committee goes to great lengths to establish that Congress itself has not adopted common law privileges in its own proceedings, it ignores the fact that the Committee has chosen to *file suit in federal court*.  By availing itself of the Judiciary—another co-equal branch of government—the Committee is obliged to follow the Court's rules, *see, e.g.*, Fed. R. Civ. P. 1; Fed. R. Evid. 1101, which recognize that litigants may assert privileges available at common law, *see, e.g.*, Fed. R. Evid. 501.  Because common law privileges are available to litigants in court proceedings, the Court should reject the Committee's argument that

the Department may not withhold in this case information protected by the attorney work product doctrine or the attorney-client privilege.[11]

Finally, the Committee should not be permitted "additional briefing." Pl.'s Compel Mem. at 22-23 n.13.  Specifically, the Committee has elected not to brief the substance of the Department's non-deliberative claims, instead declaring itself "entitled" to address the Department's "assertions with respect to particular documents" later.  *Id.* at 22-23 n.13.  This approach directly contradicts the Court's Order that the Committee brief "all issues raised in plaintiff's notice . . . that remain unresolved," Minute Order (Dec. 23, 2014), and sidesteps what the Department had understood to be the focus of this briefing: which of the withheld materials are privileged "*notwithstanding* [*the Committee's*] *contention that the privilege should not apply at all*."  Summ. J. Order at 5 (emphasis added).

The Committee should not be rewarded for choosing not to brief the issues that it was ordered to have briefed at this time.  It was the Committee's strategic choice to take a shoot-the-moon position in its motion to compel, seeking unnecessary legal rulings and failing to address the specific withholdings that the Department has meticulously documented through its detailed list and production.  The Court should not indulge this request for additional briefing from a party that could not be bothered to brief the very subjects it was already ordered to address, especially in light of the Department's extensive efforts to comply with the Court's production Order and document its withholding in the most constructive manner possible.

---

[11] The Department also redacted personal privacy information, including home telephone numbers, personal email addresses, and social security numbers of Department employees. These privacy interests are rooted in the common law and have been reasonably and appropriately withheld from the Committee.  *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 767 (1989) (noting the common law privacy interest in the non-disclosure of personal information).

Finally, the Department would be happy to provide the Court with any document listed on the detailed list to facilitate any *in camera* review.  *Cf. id.*  But the Department respectfully submits that such review is not necessary: the Committee has failed to identify any basis to question the appropriateness of the Department's withholdings; the Department has shown the Committee's legal and factual arguments to be incorrect; and the Court therefore is in a position, without the need for further review, to deny the Committee's motion and sustain the Department's remaining withholdings.

III.   **THIS CASE IS NOT ABOUT, AND THE COMMITTEE IS NOT ENTITLED TO, DOCUMENTS THAT THE COMMITTEE EXPRESSLY TOOK OFF THE TABLE BEFORE FILING SUIT.**

The Committee has received *all* of the documents it was demanding from the Department at the time of the contempt vote, less lawful withholdings, for which the Committee has received a full and detailed accounting.  These are the documents over which the President asserted Executive Privilege.  At this point, then, the Committee's disputes, if any, are properly limited to the Executive Privilege set—namely, whether the Department may continue to protect material withheld from the Committee "on the basis of the President's assertion of Executive privilege," which the Committee has previously assured the Court is the "principal legal issue presented in this case."  Pl.'s Opp'n to Def.'s Mot. to Dismiss (ECF No. 17) at 3.

The Committee framed this entire suit around the documents withheld by the Department subject to the assertion of Executive Privilege.  Now, however, the Committee claims that the Department must produce a much broader set of documents, that is, all documents arguably responsive to certain categories of the October 2011 subpoena, *regardless* of whether the documents at issue were sought by the Committee at the time of the June 2012 contempt vote, and *regardless* of whether they were the subject of the Executive Privilege claim.  To be clear,

the Committee now seeks not only all of the Executive Privilege documents, but also an entirely different set of documents than those over which the President asserted Executive Privilege. These are documents that the Committee expressly took off the table as the negotiation and accommodation process between the Executive and Legislative Branches became focused in advance of the contempt vote in June 2012.  The Committee's narrowing of the subpoena was clearly reported to the full House of Representatives: for some documents, it was "deferring production"; for others, the documents simply fell "outside the scope of the narrowed request." H.R. REP. NO. 112-546, at 38-39 (2012).  Because the Committee had withdrawn its demand that the Department produce these documents in order to be in compliance with the subpoena as of June 2012, the Department was not faced with the decision of whether to withhold them, and the President had no need to consider asserting Executive Privilege over them.

The Court should not reach these additional claims, which the Committee has not exhausted.  Whether the Complaint mentions these documents makes no difference, as this Court's judgment should "reflect[] the compromises achieved through negotiation," *AT&T II*, 567 F.2d at 130, and the parties had reached an unambiguous compromise with regard to these documents.  Simply put, this broader universe of documents is not properly a part of this case.

### A.        In May and June 2012, the Committee Substantially Narrowed the Scope of Its Subpoena Request for Documents.

The subpoena that is the subject of this suit, consisting of twenty-two separate and broad requests for documents, was served on October 11, 2011.  The Department began negotiating in good faith with the Committee over the subpoena immediately upon receipt, *see, e.g.*, Burton Decl. ¶¶ 11-12, ultimately providing to the Committee more than 5,000 pages of responsive documents, as well as a large number of written letter responses and numerous witnesses, both for interviews with Committee staff and to testify at hearings, *see e.g.*, Def.'s Summ. J. Mem. at

4, 9.  In light of the Department's efforts, and by the Committee's own accounting, by May 3, 2012, there remained only "three categories of documents necessary for Congress to complete its investigation."  Issa June 13 Letter at 1.

The Committee expressly took one of these three categories off the table on May 18, 2012, when Speaker Boehner and Chairman Issa advised the Department that, "[a]s an accommodation," Congress was "offer[ing] to narrow the scope of documents the Department needed to provide."  H.R. REP. NO. 112-546, at 38.  One of the three previously identified categories of documents was therefore "outside the scope of the narrowed request."  *Id.*; *see also* Letter from John Boehner, *et al.*, to Attorney General Holder 1 (May 18, 2012) (ECF No. 63-9).  Thus, as of May 18, 2012, the Committee was no longer demanding documents concerning "how the inter-agency task force failed," H.R. REP. NO. 112-546, at 38 (capitalization omitted), and the request had been "narrowed . . . to two categories," Issa June 13 Letter at 1.

The Committee soon took off the table another category of documents.  On June 13, 2012, Chairman Issa wrote that the Committee was offering a "further accommodation" to "further narrow[] the focus of what the Justice Department needed to produce."  *Id.*  As Chairman Issa said, "[t]his accommodation by the Committee effectively eliminated the dispute" over one of the two remaining categories of documents.  *Id.*; *see* H.R. REP. NO. 112-546, at 39 (explaining that the Committee was "deferring production" on this category).  Thus, as of June 13, 2012, the Committee was no longer demanding "information gathered during the criminal investigation of Operation Fast and Furious."  Issa June 13 Letter at 1.

In sum, at the time of the contempt vote, and the Executive Privilege assertion, what was still at issue between the Department and the Committee was what Chairman Issa described as

the "remaining aspects of [the] dispute": "documents the Department refuse[d] to produce on the grounds that they reflect internal Department deliberations."  *Id.*

### B. The Committee May Not Obtain Documents In this Suit That It Said It Was No Longer Seeking in the Oversight Process.

This case properly concerns only those documents the Committee was demanding, and that the Department ultimately withheld pursuant to the assertion of Executive Privilege, as negotiations between the political Branches over the Committee's subpoena ended in June 2012, prior to the vote of contempt.  The Committee's additional claims were not exhausted in the oversight process.

The Committee's assertion that "its Complaint defines the universe of documents that have been placed at issue" ignores black-letter law, runs contrary to long and considered precedent of this Circuit, and threatens to render superfluous the constitutionally based process of negotiation and accommodation that has defined relations between the Executive and Legislative Branches for over 200 years.  Pl.'s Compel Mem. at 5.  Contrary to the Committee's position, the scope of a case is not defined exclusively by the breadth of its complaint.  As the Supreme Court has explained in the analogous context of standing, such a rule "would have remarkable implications."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  If the Committee were correct that a court must adjudicate all that a party sets forth in its complaint, then courts could not consider issues like jurisdiction, standing, ripeness, mootness, exhaustion, or equitable discretion, doctrines that by definition contemplate bypassing claims found in the complaint.  *Cf., e.g.*, *id.* at 353 ("Plaintiffs' reading . . . would amount to a significant revision of our precedent.").  A plaintiff surely gets to draft the complaint, but it is the Court that determines the issues it will reach.  *See id.* at 352 (explaining that courts must have basis to review "each claim [a plaintiff] seeks to press").  And here, where the Committee already has been provided

with the Executive Privilege material it sought at the time this suit was filed, subject to withholdings consistent with this Court's Orders, the Court should not allow the Committee to expand this suit to include a brand new swath of additional documents responsive to a broad reading of the October 2011 subpoena that the Committee had expressly narrowed.

The D.C. Circuit has explained that negotiations between the political Branches, even if they fail to "resolve [a] dispute," still serve to "narrow the gap between the parties and provide a more informed basis for further judicial consideration." *AT&T II*, 567 F.2d at 130. As this Court explained in *Miers*, the constitutional process of negotiation and accommodation "contemplates a long period of negotiation with resort to the judiciary, if at all, only in the case of a legitimate impasse." *Committee on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53, 98 (D.D.C. 2008). While the Court determined in this case that there was an "impasse" concerning documents the Committee was demanding but had not received at the time of the Executive Privilege assertion, Mem. Op. (ECF No. 52) at 42-43, there was not, nor could there have been, any impasse concerning documents the Committee was no longer seeking as of May and June of 2012. The Committee is therefore now seeking documents for which the accommodation process was not exhausted. *Cf. Full Value Advisors, LLC v. SEC*, 633 F.3d 1101, 1107 (D.C. Cir. 2011) (explaining that, to exhaust a claim, "a litigant must go through" a particular process "at the agency level to ensure the agency has ample opportunity to crystallize its policy before that policy is subjected to judicial review" (quotation marks, citation and alteration omitted)); *cf. also Am. Petro. Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) (explaining that issues are not ripe for adjudication if pre-filing process did not "run its course"); *Morales v. Gotbaum*, --- F. Supp. 2d ---, 2014 WL 2031244, at *18 n.27 (D.D.C. May 19, 2014) ("[Plaintiff] does not mention that [issue] in connection with the summary judgment motion.

The Court will therefore treat it as abandoned.").  Thus, under *AT&T II* and *Miers*, and consistent with this Court's jurisdictional ruling, the Court should refuse to adjudicate the Committee's demands with respect to documents that the Committee itself removed from issue before filing suit.

This basic principle of equitable exhaustion has been recognized by Members of Congress as well.  Indeed, in *Miers*, the Member amici argued that the Court should decline to consider issues where "[t]he Plaintiff ha[d] failed to exhaust . . . non-judicial means of obtaining relevant and material information."  *Miers* Amicus Br. at 20.  The Members argued in particular that, "[i]f the Plaintiff had chosen to exercise all of the available options in th[e] matter, it might already have acquired" the information it desired.  *Id.* at 26.  Precisely the same can be said about documents that the Committee itself removed from this dispute prior to filing suit.  Indeed, the argument against reaching claims in the absence of exhaustion is substantially stronger in this case than in *Miers*: the Department is not arguing that the Committee should have "run down every conceivable, but highly speculative, lead," 558 F. Supp. 2d at 65 n.10, but rather that this case should not concern documents that the Committee told the Department it need not provide.

If the Committee were correct, and issues it took off the table during the accommodation process can be resurrected in a subsequent litigation, then the process of negotiation and accommodation that has persisted for over 200 years (and served this Republic well) would be dramatically and irreparably altered.  Under such circumstances, an Executive agency would engage in the process of negotiation and accommodation at its peril, for fear that Congress could one day resurrect issues that the agency had succeeded in negotiating away.  *Cf., e.g.*, Burton Decl. ¶¶ 3-5, 22-23 (describing good-faith manner in which Department attempts to negotiate with Congress over requests for sensitive information); *id.* ¶ 6 (explaining that congressional

requesters "usually recognize and accept important Executive Branch confidentiality interests in pending law enforcement investigations").  Thus, all the Executive Branch's good-faith efforts, and the many resources expended in support, would be for naught.

And should such a dispute end up in court, the agency could be forced to defend its failure to provide materials that Congress had abandoned seeking in the oversight process, when no actual privilege determinations had ever been made, and in contravention of judicial policy against "subject[ing] to judicial review" positions an agency has not had "ample opportunity to crystallize."  *Full Value Advisors*, 633 F.3d at 1107 (quotation marks, citation and alteration omitted).  By requiring exhaustion, courts further ensure that they are not used as a means for congressional committees to get documents they would rather not spend their own political capital trying to obtain.  *Cf. Kilbourn v. Thompson*, 103 U.S. 168, 192 (1880) ("It is all the more necessary . . . that the exercise of power by [Congress] . . . should be watched with vigilance, and when called in question before any other tribunal having the right to pass upon it that it should receive the most careful scrutiny.").  Congress should not be permitted to leverage a single, crystallized dispute over certain documents subject to an assertion of Executive Privilege after an extensive accommodation process into wholesale judicial enforcement of a subpoena that the Committee never tried to fully enforce itself.  *See United States v. House of Representatives*, 556 F. Supp. 150, 152 (D.D.C. 1983) ("When constitutional disputes arise concerning the respective powers of the Legislative and Executive Branches, judicial intervention should be delayed until all possibilities for settlement have been exhausted.").  No congressional committee should be able to sue for documents in lieu of seeking them through the established accommodation process.

41

Suppose, for example, a congressional committee served a subpoena demanding ten documents from an agency; the following day, the committee wrote a letter saying that the agency need only provide two of them; the following day, the agency provided one of the documents responsive to the narrowed request, and privilege was asserted over the other. According to the Committee, such a committee could file suit challenging not only the assertion of privilege over the single withheld document, but also demanding production of the eight documents it had taken off the table, even though the parties had never negotiated about the production of those eight documents, even though the agency had never been required to conduct a privilege review (and may not have had time to do so), and even though the President had not been presented with the question of whether to assert Executive Privilege.

This concern is not theoretical. On June 19, 2012, with the Committee's contempt vote looming, the Attorney General asked the President to assert Executive Privilege over the documents that the Committee was then seeking—not documents that the Committee had taken off the table. *See* Letter from Attorney General Holder to the President (June 19, 2012) ("Holder June 19 Letter") (ECF No. 63-10). Recounting the evolution of the dispute, and quoting some of the relevant correspondence from the Committee, the Attorney General explained to the President that certain materials had been removed from issue. *See* Holder June 19 Letter at 1 ("The Committee has made clear that its contempt resolution will be limited to internal Department 'documents from after February 4, 2011, related to the Department's response to Congress.'" (quoting Issa June 13 Letter at 1)). The Attorney General then asked the President to assert Executive Privilege over only those documents still at issue. *See id.* ("I am asking you to assert executive privilege over these documents."). Accordingly, when the President asserted Executive Privilege, he did so "over the relevant post-February 4, 2011, documents"—and no

42

others.  Letter from Deputy Attorney General Cole to Chairman Issa 1 (June 20, 2012) (ECF No. 17-3); *see* Colborn Decl. ¶ 12 ("[B]ased on the narrowed focus, the Attorney General did not ask the President to assert Executive Privilege over documents other than congressional response work product, and the President did not do so.").

Given the status of the negotiations and accommodations process, the scope of the assertion of Executive Privilege in this case is entirely reasonable because there was no impasse concerning records the Committee took off the table; rather, those records had been removed from the parties' dispute.  The Attorney General did not have cause to detail for the President those materials, nor did the President have to consider asserting Executive Privilege over them. Whether and to what extent these additional records are privileged is not properly a subject of this lawsuit, as it is not an issue that the parties had exhausted; it is therefore not an issue that ever crystallized into a potential assertion of Executive Privilege.  At bottom, the Committee's complaint about documents responsive to a broad reading of the subpoena but taken off the table in negotiations is exactly the type of underdeveloped and unexhausted grievance to which the D.C. Circuit referred in *AT&T II* when it described the necessity and import of negotiation and accommodation—a process that is supposed to "narrow the gap between the parties" and result in an "informed basis for . . . judicial consideration."  567 F.2d at 130.

The Committee attempts to hide from its public narrowing of its document demands by likening its actions to "[p]ositions . . . taken in failed settlement discussions."  Pl.'s Compel Mem. at 6.  But these were not mere settlement discussions.  As the D.C. Circuit has explained, the "course of negotiations [between the political Branches] reflects something of greater moment than the mere degree to which ordinary parties are willing to compromise."  *AT&T II*, 567 F.2d at 130.  The Committee and the Department were engaged in the constitutionally based

process of negotiation and accommodation, *see id.*, and as a party to that process, the Committee agreed that certain broad categories of documents need not be provided, *see, e.g.*, H.R. REP. NO. 112-546, at 38 (explaining that some documents were "outside the scope of the narrowed request"); Issa June 13 Letter at 1 (explaining that the Committee was "effectively eliminat[ing] the dispute" over other documents).  Thus, in May and June 2012, the Committee was not merely floating ideas that might one day form the basis of a global resolution; it was expressly stating that the Committee was no longer seeking certain materials, and that the Department did not have to provide them.  *See AT&T II*, 567 F.2d at 130 ("[T]he resolution of conflict between the coordinate branches in these situations must be regarded as an opportunity for a constructive modus vivendi, which positively promotes the functioning of our system.").  The only way for this Court's judgment to "reflect[] the compromises achieved through negotiation," is for it to decline to adjudicate these documents.  *Id.*

The Committee further attempts to diminish the import of its own narrowing of this dispute by averring that its positions in the accommodation process are relevant only to "the House's contempt proceedings," which are not to be "conflate[d] . . . with this litigation."  Pl.'s Compel Mem. at 6.  The Committee's view that its pre-filing narrowing is irrelevant to "this litigation" is belied by its own Complaint, of which the Committee devoted two full pages to recounting its version of this same history.  *See* Am. Compl. ¶ 46(ii).  To be clear, there were not parallel negotiations occurring between the parties in the lead-up to the contempt vote and suit— one for the accommodation process and one for the litigation.  *See, e.g.*, Colborn Decl. ¶ 12 ("[I]t was clear at the time of the Committee's contempt vote that the Committee had narrowed its demands pursuant to the subpoena.").  The parties, rather, were working to resolve *one* disagreement, *see, e.g.*, Issa June 13 Letter at 1 (describing "our dispute"—singular), and by the

end of those discussions, the Committee had definitively agreed that some documents need not be produced for the Department to be deemed in compliance with the subpoena. Those documents therefore are not, and cannot properly be, the subject of this litigation.

As a final matter, the Committee complains that the Department allegedly "revealed" its position on documents beyond the Executive Privilege set only in November 2014, but strangely, and at the same time, the Committee states that the Department advances "exactly the same argument" that it made on summary judgment in January 2014. Pl.'s Compel Mem. at 4. The Committee gets it right the second time: the Department unambiguously described its position about the proper scope of this litigation in support of its motion for summary judgment, *see* Def.'s Summ. J. Mem. at 42-45, and it has stated that position clearly and consistently ever since, *see, e.g.*, Def.'s Summ. J. Reply at 23-25. This case concerns the documents over which Executive Privilege was asserted in June 2012, which were the documents the Committee was seeking at that time. The Committee's additional claim—equally strange—that the Court has already resolved this issue against the Department, *see* Pl.'s Compel Mem. at 5 ("The Court necessarily rejected that argument . . . ."), is belied by the Committee's own October 14, 2014, motion asking the Court to explain whether it had resolved this issue, *see* Comm.'s Mot. for Order at 4-7, as well as the Court's Order, entered the following day, declining to do so, *see* Minute Order (Oct. 15, 2014). Needless to say, the Court has not previously answered the question; it should do so now in favor of the Department.

## CONCLUSION

For the foregoing reasons, the Court should deny the Committee's motion to compel with prejudice, and sustain the Department's withholdings.

Dated: February 20, 2015                     Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

KATHLEEN R. HARTNETT
Deputy Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director


_____*/s/ Gregory Dworkowitz*_____
GREGORY DWORKOWITZ
(NY Bar Registration No. 4796041)
BRADLEY P. HUMPHREYS
(VA Bar Registration No. 83212)
Trial Attorneys
U.S. Department of Justice
Civil Division
Federal Programs Branch
Washington, D.C. 20001
Tel: (202) 305-8576
Fax: (202) 616-8470
gregory.p.dworkowitz@usdoj.gov

Counsel for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2015, I caused a true and correct copy of the

foregoing Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel to be served

on plaintiff's counsel electronically by means of the Court's ECF system.


 */s/ Gregory Dworkowitz*
GREGORY DWORKOWITZ