```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
 2
      Committee on Oversight        ) Civil Action
 3    and Government Reform,        ) No. 12-CV-1332
      United States House of        )
 4    Representatives,              ) STATUS CONFERENCE
                                    )
 5                     Plaintiff,   ) Washington, DC
                                    ) July 30, 2015
 6    vs.                           ) Time:  10:00 a.m.
                                    )
 7    Eric H. Holder, Jr., in His   )
      Official Capacity as Attorney )
 8    General of the United States, )
                                    )
 9                     Defendant.   )
      _____
10
                    TRANSCRIPT OF STATUS CONFERENCE
11                         HELD BEFORE
            THE HONORABLE JUDGE AMY BERMAN JACKSON
12                UNITED STATES DISTRICT JUDGE
      _____
13

14                      A P P E A R A N C E S

      For the Plaintiff: Kerry William Kircher
15                        William Bullock Pittard, IV
                          Sarah Curran
16                        Todd Barry Tatelman
                          U.S. HOUSE OF REPRESENTATIVES
17                        Office of the General Counsel
                          219 Cannon House Office Building
18                        Washington, DC 20515

19    For the Defendant: Kathleen Hartnett
                          Gregory P. Dworkowitz
20                        John K. Theis
                          John Russell Tyler
21                        UNITED STATES DEPARTMENT OF JUSTICE
                          Civil Division
22                        950 Pennsylvania Avenue, N.W.
                          Washington, DC 20530
23    _____
      Court Reporter:        Janice E. Dickman,  RMR, CRR
24                           Official Court Reporter
                             United States Courthouse, Room 6523
25                           333 Constitution Avenue, NW
                             Washington, DC  20001
```

1          THE COURTROOM DEPUTY:  Your Honor, calling civil

2     action number 12-1332, Committee on Oversight and Government

3     Reform, United States of America, House of Representatives

4     versus Eric H. Holder, Jr., in his official capacity as

5     Attorney General.

6          Arguing counsel please identify themselves for the

7     record.

8          MR. KIRCHER:  Kerry Kircher, Your Honor.  I'm

9     joined by Bill Pittard, Todd Tatelman, and Sarah Curran.

10          THE COURT:  Good morning.

11          MS. HARTNETT:  Good morning, Your Honor.  Kathleen

12     Hartnett on behalf of the defendant from the Department of

13     Justice.  With me at counsel table are John Tyler, John

14     Theis, Greg Dworkowitz, and Lauren Charles.

15          THE COURT:  All right.  Good morning.

16          The reason I gave you the microphones is, as you

17     know, we have a number of issues to deal with and I thought

18     it might be more efficient to be able to ask you individual

19     questions on each issue, rather than having you come to the

20     lectern and argue for half a hour on the whole motion.  So

21     hopefully this will work out.  I've done it in other status

22     conferences and it works pretty well.

23          Just to step back for a minute, we're here, again,

24     because the Committee on Oversight and Government Reform of

25     the U.S. House of Representatives has been engaged in an

1  investigation of Operation Fast and Furious since early

2  2011.  This was a law enforcement operation launched by the

3  Bureau of Alcohol, Tobacco, and Firearms and the U.S.

4  Attorney's Office in Phoenix, Arizona in October of 2009 to

5  confront the suspected illegal flow of firearms from the U.S

6  to drug cartels in Mexico.

7        The tactics involved in that operation, which

8  apparently had previously been used by the ATF in 2006, have

9  been the subject of intense criticism.  In particular,

10  during the investigation, during the operation, law

11  enforcement officials permitted the guns to walk.  That is,

12  to let straw purchaser from the cartels carry the firearms

13  across the boarder to Mexico without being apprehended under

14  the theory that the agents would be able to track where the

15  guns were ending up.  This had tragic consequences that we

16  all know about.

17        Neither this case nor this hearing are about the

18  existence of the operation or the propriety of the tactics.

19  The Department has issued clear directives prohibiting the

20  use of these tactics in the future.

21        The case is also not about whether Congressional

22  investigation into the operation is appropriate.  The

23  parties are agreed that it's a legitimate subject of a

24  legislative inquiry.

25        During the early stages of the investigation,

1     though, on February 4th, 2011, the Attorney General wrote a

2     letter to the Committee denying that the gun-walking had

3     taken place.  The letter is not the subject of the hearing,

4     either, and it's not the subject of the lawsuit because the

5     fact that the letter was wrong is not in dispute.

6          The Attorney General subsequently informed

7     Congress that the letter was incorrect.  The letter was

8     officially withdrawn in December of the same year.  There's

9     a long time in between those two things.  And the Committee

10    remains interested in investigating how or why the

11    Department of Justice gave it inaccurate assurances, why

12    they stood uncorrected for such a long time.  So the

13    investigation was expanded to include the second focus,

14    which the Committee calls the obstruction portion of the

15    investigation.

16          We're not here to talk about whether that inquiry

17    was necessary or appropriate.  The Attorney General doesn't

18    question that either.  We're here because the Committee is

19    seeking to enforce a subpoena it issued on October 11, 2011,

20    to the Attorney General of the United States.  I think we

21    have proved the point that if I just let you work it out

22    among yourselves it would have been worked out, probably was

23    an incorrect prediction.  I don't believe that there's any

24    disagreement that despite the characterization of the level

25    of effort, with the timeliness of the effort, that the

1      subpoena has been complied with in part.

2              However, the subpoena sought documents generated

3      after February 4th, 2011 which it believed would illuminate

4      how it was that the Department came to incorrectly deny, on

5      February 2011, that the gun-walking took place.  There's

6      been a lot of meetings, there's been a lot of correspondence

7      back and forth, there have been documents produced that

8      relate to the creation of the letter.

9              But on June 20th, 2012, through a letter signed by

10     former Deputy Attorney General Cole, the Department declined

11     to produce the post February 4th documents that were covered

12     by the subpoena.  The letter stated that the President had

13     asserted the executive privilege over the documents because

14     their disclosure would reveal the agency's deliberative

15     processes.  That was the only reason given.

16             The Committee filed this action to declare that

17     assertion invalid and enforce the subpoena.  The Attorney

18     General moved to dismiss the case on the grounds that the

19     Committee had no standing to bring it and the Court had no

20     jurisdiction to hear it.

21             DOJ warned the Court that it would threaten the

22     constitutional balance of powers between the three branches

23     if the court waded into the merits of a political dispute

24     between two other branches and undertook to assess for

25     itself the weight of the legislator's need for the records

1      versus the executive's interest in confidentiality.

2              Ultimately I ruled, in the first opinion in this

3      case, that this was a legitimate lawsuit and the legitimacy

4      of the claim of executive privilege fell squarely within my

5      jurisdiction.  So the next question that arose was whether

6      the Department could properly claim that all of the

7      documents sought in this case, those generated after

8      February 4th, were shielded by the deliberative process

9      privilege.

10             I had another hearing and I issued another opinion

11     dealing with that issue and that issue only.  And I said,

12     No, you can't assert the privilege on a blanket basis.  You

13     need to review the documents and confirm that they are

14     actually deliberative and pre-decisional.  But I also

15     rejected the Committee's claim that they all had to be

16     produced forthwith.

17             I ordered the Department to go through a

18     document-by-document review and said if that review revealed

19     that the records were not privileged, then they had to be

20     turned over, and that was it.  If they took the position

21     that they were, the Department had to create a log that give

22     us enough information to determine if the assertion of the

23     privilege was well-founded.

24             So after that process was completed, Congress

25     filed a motion to compel, arguing, again, that not one

1      single assertion of the privilege was proper.

2              The Committee's brief is divided into categories

3      of records and categories of grounds for withholdings.  And

4      so I think it's easier to go through them one at a time.

5      For some I need more argument than others.

6              The first issue that the Committee complains about

7      is that there are post February 4 documents that were not

8      included in the index that was provided by the government.

9      And the government, the Department of Justice takes the

10     position the subpoena was narrowed so those documents were

11     not even reviewed as part of its exercise pursuant to my

12     last order.

13             And so, I guess, let me start with the Department

14     of Justice here.  I want to make sure that I understand that

15     the documents you're talking about are post February 4th

16     documents that it's your position are not covered by this

17     lawsuit because they were carved out before.  We're not

18     talking about pre-February 4th documents that were provided

19     before or carved out before.

20             MS. HARTNETT:  Yes, Your Honor.  These are

21     documents that possibly could be responsive to a broader --

22     broadest reading of categories 1, 4, 5, and 10 of the

23     subpoena post February 4, 2011.  And the point the

24     Department was trying to make in its brief here was that as

25     the process moved toward contempt, the Committee took some

1     of the categories of documents off the table.  Most notably,

2     documents relating to the underlying operation and potential

3     problems with that operation that Your Honor referenced in

4     the opening remarks, that were not at issue because at the

5     time what the Committee was most interested in was why, in

6     its view, the Department misrepresented something to

7     Congress and the process that followed that.

8               So as we got closer to the point of contempt, the

9     executive privilege was asserted over the documents that

10    were in fact at issue due to the narrowing that the

11    Committee had done.  And so our position has been that

12    that's the corpus of documents over which privilege was

13    asserted and those are the documents that we went through to

14    conduct the analysis of whether they met the standard set

15    forth in Your Honor's order.

16              THE COURT:  Well, does the letter from Attorney

17    General Cole say documents in these categories are covered

18    by the privilege, or does it say all documents after

19    February 4th, responsive to the subpoena, are covered by the

20    privilege?

21              MS. HARTNETT:  I think that it's fair to say

22    that -- the question of whether the executive privilege

23    should be asserted over categories of documents that were,

24    for example, law enforcement documents that were not part of

25    the narrowed set of documents that the parties were fighting

1    about before contempt, those weren't put before the

2    President for an assertion of the executive privilege

3    because they had been taken off the table.

4          It's sort of akin to a discovery dispute where

5    parties are narrowing the definition of the terms and taking

6    things off the table.  And by the time they got to the

7    moment of contempt, or prior to contempt, the dispute had

8    jelled around these approximately 15,000 documents that were

9    about the Department's response to Congress.  And so there

10   would be some documents that would be entirely not about the

11   response to Congress, but that might actually be responsive

12   to those categories of the subpoena.

13         For example, just a compliant or some sort of a

14   document, a law enforcement document about the underlying

15   investigation, some of those now appear in our actual

16   production set because they've been attached to a document

17   about the response to Congress.  That's the reason why we

18   have some law enforcement redactions in our set, because,

19   for example, say the Department is deciding what documents

20   should we produce to Congress, and they're looking at two

21   different attachments and those are the underlying law

22   enforcement documents.  That would have been captured in the

23   executive privilege set because it was about the response to

24   Congress.  Where if it's just the underlying law enforcement

25   document, totally detached from the response to Congress,

1   that never was even part of the executive privilege assertion.

2         THE COURT:  But is that clear from the executive

3   privilege assertion?  Does the letter say these are the

4   documents that we're still disputing, responsive to these

5   paragraphs of the subpoena, over those documents we're

6   claiming privilege, or does it say your subpoena calls for

7   all documents -- we are asserting the privilege as to all

8   documents after February 4th?

9         MS. HARTNETT:  I think that the letter -- the

10  fundamental premise of the letter is that it was asserting

11  privilege over the documents that the parties were arguing

12  about at that moment.

13        THE COURT:  The unspoken fundamental premise or in

14  the letter?  I keep asking you this question, now three

15  times.

16        MS. HARTNETT:  I would have to look at the letter

17  itself.

18        THE COURT:  All right.  I'll look at it.

19        MS. HARTNETT:  But I think it's important to look

20  at the series of letters that we cited up to that letter,

21  but --

22        THE COURT:  Well, I did.  And my question is would

23  you agree that there's a difference between when you're in

24  discovery and one party says, well, okay, let's narrow the

25  request, somebody says its overbroad and they say, okay,

1      we'll do 2005 to 2008 and that's all we want.  Or when you

2      have a letter that says if we can come to terms, if you give

3      us this, and if you agree to that, then we can avoid

4      contempt.  And the other side comes back and says, well,

5      what about this?  And then they say no.  Do you have a

6      letter somewhere -- what's your document that shows that

7      there was actually a meeting of the minds ever?

8              MS. HARTNETT:  May I just -- if I may, my

9      colleague helpfully directed me to -- so there's the Deputy

10     Attorney General Cole's letter of June 20th, which sets

11     forth to the Committee the explanation that the privilege

12     had been asserted.  That attached a letter from the Attorney

13     General to the President which in more detail explained the

14     basis for the assertion.

15              I would direct you to the letter from the Attorney

16     General to the President which really sets forth the

17     narrowing that had occurred and, therefore, made clear to

18     the President what exact category of documents were being

19     sought to be protected by a privilege assertion.  So that's

20     the best -- one of the best indicators of that.

21              As far as your question of, kind of, the -- how do

22     we have a meeting -- showing the meeting of the minds, as

23     you've seen in this case, a meeting of the minds can be

24     challenging between these two parties.  But I do think that

25     the Chairman Issa letter from June 13th is what we -- and

1    we've described that a bit in our brief in this case, sets

2    forth -- shows that the Committee was taking certain items

3    off the table and basically --

4            THE COURT:  I feel like those letters were very

5    contingent.  I'll take -- if you do this, then we'll do

6    that.  And they don't -- they seem, to me, part of an

7    ongoing negotiation process, as opposed to the typical

8    discovery, narrowing type communication.  But give me the

9    date of the one you think is the best example of it.

10           MS. HARTNETT:  I think that the Chairman Issa's

11   June 13th, 2012 letter is the best.  I think that Speaker

12   Boehner's May 18th letter is also helpful.

13           But, I think, Your Honor -- I don't disagree with

14   your point.  I'm not trying to -- the letters did not

15   disclaim for all time any interest in ever getting those

16   documents.  I think what's important here is Your Honor took

17   jurisdiction of this dispute because a dispute had jelled

18   over a particular set of documents over which the President

19   had asserted executive privilege, and that was the premise

20   of jurisdiction here and it is what we thought that we were

21   fighting about in this case.  Those were the 15,000

22   documents at issue.

23           Undeniably, subject to an executive privilege

24   assertion, we had a broader theory that Your Honor did not

25   accept in full.  But we now are protecting those in part.

1    So I think our point is that it would greatly expand the

2    appropriate scope of this case to allow the Committee to now

3    seek additional documents beyond those about the response to

4    Congress because those were never the subject of an

5    executive privilege assertion because the dispute about

6    those documents had not precipitated to the point of a

7    contempt for failure to produce those documents.

8           THE COURT:  Well, those are the questions that

9    sort of leads me then right to you.  Mr. Kircher, it is true

10   that the lawsuit seeks to enforce the entire subpoena and

11   the subpoena is broad.  But the lawsuit raised one question

12   which said Deputy Attorney General Cole's assertion of the

13   deliberative process as privilege is improper, you, Judge,

14   need to resolve that discrete issue.  It is a discrete

15   matter of law.  It was improper to declare the assertion of

16   privilege to be invalid.  Doesn't that only relate to the

17   documents over which he declared were privileged?

18          MR. KIRCHER:  No.  Of course not, Your Honor.

19   What the lawsuit said was, is we're suing to -- and it's

20   actually not a broad lawsuit, it's a narrow lawsuit.  It was

21   four categories out of 22.  And as to those four categories,

22   only documents generated or created after February of 2011.

23   So it started off as a narrow lawsuit and from day one that

24   was the universe of documents that we placed at issue before

25   you.

1            Now, if they went to the President and he asserted

2    executive privilege over some smaller set that we don't know

3    about -- and there's nothing in Cole's letter or in the

4    letter from the Attorney General to the President that would

5    indicate this narrowing concept that they've now, you know,

6    inserted into this lawsuit several years after this lawsuit

7    started -- if the President didn't assert a broad enough

8    executive privilege, that's not the Committee's problem.

9            The Committee, on the day this lawsuit was filed,

10   said exactly which documents it was looking for.  That has

11   never changed.  We assumed, because of the way the Cole

12   letter was written, that executive privilege had been

13   asserted over everything post February 11th.  That's a fair

14   reading of that letter and, I think, based on Your Honor's

15   orders, that was Your Honor's reading of that letter as well.

16           Now, if that turned out to be an incorrect reading

17   and he had asserted executive privilege over some smaller

18   subset, then of course we can't know what that subset is

19   because they haven't told us until well into this lawsuit.

20   Again, that's not --

21           THE COURT:  Your lawsuit was only categories 1, 4,

22   5, and 10 and everything after February 4th, 2011.  And what

23   you are saying is there are even documents within that

24   category that you didn't review in response to my order

25   because you think they were off the table.  Is that the

 1    Department of Justice's position?

 2              I'm sorry.  I'm now back to the counsel for the

 3    Department of Justice.  I'm looking at you, but you're

 4    taking notes.

 5              MS. HARTNETT:  No.  Sorry.  I was making sure I

 6    had the most helpful information for Your Honor.  And I

 7    believe that -- you know, I think it's just incorrect to

 8    state that neither the Cole letter nor the Attorney

 9    General's letter to the President makes this category clear.

10    I'm just looking at the first page of the Attorney General's

11    letter to the President, which it says, "The Committee --"

12    this is in the third paragraph.  "The Committee has made

13    clear that its contempt resolution will be limited to

14    internal department documents after February 4th related to

15    the Department's response to Congress."

16              And it's that limitation, the relationship to the

17    Department's response to Congress, not some law enforcement

18    document that may fall under these categories that's

19    entirely disconnected from how the Department responded to

20    Congress that was taken off the table.  And that was a

21    premise of both the President's assertion of privilege and

22    it was conveyed through the cover letter from the Deputy

23    Attorney General.  I take your point that it is -- had we

24    known a lawsuit would be here today, I guess, to make it as

25    clear as possible that that was exactly what the privilege

1     was being asserted over, I'm not sure.  But I think it was

2     an obvious understanding between the parties at the time

3     that the House was after, How do we respond to Congress?

4     And that was the corpus of documents that the President was

5     asked to protect.

6          THE COURT:  But in all the letters where they said

7     we'll take it off the table, wasn't it -- it wasn't a

8     unilateral, This subpoena is now narrower than it was

9     yesterday.  Weren't they all, If we can avert contempt by

10    your giving us X, then we're not looking for Y.  And then

11    you came back and said, Well, we'll give you Z.  And so, how

12    did anything ever actually get officially narrowed if you

13    never agreed on anything?

14         MS. HARTNETT:  I do think that the contempt report

15    from the House does use the word "narrowed request."  I

16    would agree with you that the Committee, in various

17    different communications, used different terms to take

18    things off the table.  But I think that the Committee

19    report, which we cite in our papers, along with the May and

20    the June letters that I mentioned, collectively indicate

21    that the -- basically, the Executive Branch and the Attorney

22    General was told that you could avoid contempt by producing

23    this smaller set of documents.  That was what the fight was

24    truly about at the end, and that was by -- because the

25    contempt would have covered those documents, why the

1    executive privilege assertion was teed-up around those

2    documents.

3              I'm not saying they've taken it off the table for

4    all time.  Again, if they want to pursue that aspect of

5    their subpoena, the right way to have done that would have

6    been to continue to ask for that from us.  We would have

7    continued to negotiate and accommodate about that.  And at

8    the end of that road, which never occurred because we

9    stopped negotiating and accommodating on that topic, perhaps

10   they could try again.

11             THE COURT:  There's two issues.  One is whether

12   they took them off the table.  And it seems to me there were

13   offers to take them off the table which were responded to

14   with counteroffers which were rejected.  So there's that

15   issue, and then there's the second issue about what did they

16   sue about?  And they sued to have the Cole assertion of

17   privilege invalidated as a matter of law.

18             And so it seems to me -- I need to go back again,

19   and I did in preparation for the hearing, but I want to do

20   it again, to see what the lawsuit is about, what was

21   declared to be privileged.  But it seems to me every single

22   thing that was declared to be privileged is the subject of

23   this lawsuit, even if there was some point where there was

24   some discussion about some of these documents not being

25   included.

1          MS. HARTNETT:  We would agree that the lawsuit is

2     about the 15,000 documents over which privilege was

3     asserted.  And I would agree, also, that the most important

4     question is what's the proper scope of this lawsuit in light

5     of the premise being that we had reached an impasse and

6     there was a privilege assertion.  And I would also agree

7     with you that -- or, to the extent you're making the point

8     that these have not been taken off the table for all time

9     and all purposes.  That's a separate question from whether

10    they were taken off the table in the lead-up to contempt in

11    a way that would have -- would inform what the documents

12    that were at issue were for the President to decide whether

13    to assert the privilege.

14          THE COURT:  All right.  You've pointed me to the

15    Attorney General's letter attached to Deputy Attorney

16    General's letter, the letter from the chairman of the

17    Committee from June 13th, 2012 and the May 18 letter as the

18    best indicators that we're talking about a narrower

19    universe.  And you were also talking about the Deputy

20    Attorney General's letter and your complaint about what the

21    scope of this lawsuit is.  Are there any other documents?

22          I mean, I know you've both pointed to a lot of

23    them, I've got a lot of them, but is there anything

24    specifically that you want me to look at again in connection

25    with your position, from the Committee's point of view?

```
 1              MR. KIRCHER:  Yes, Your Honor.  Several points let
 2    me make.  Number one, this is set out in considerable detail
 3    in the briefs -- two briefs we've submitted on this.  There
 4    was never any meeting of the minds and --
 5              THE COURT:  And the briefs take me back to the
 6    summary judgment briefs, which take me back to the footnotes
 7    to the summary judgment briefs, which take me to the
 8    attachments to the -- I've mean, I've been though a lot of
 9    it.  It's complicated.
10              MR. KIRCHER:  The letters are enumerated in the
11    briefs, as is the contempt report, which says, you know, in
12    order to avoid contempt we offered to do this.
13              THE COURT:  Yes.
14              MR. KIRCHER:  And we did not do that.
15              THE COURT:  That's why I'm asking the questions
16    I'm asking them.
17              MR. KIRCHER:  So that's one point.  The second
18    point is I think it's important for Your Honor to keep in
19    mind that the contempt proceeding and the civil lawsuit are
20    two entirely separate things.  We're not suing over the
21    contempt report.  The contempt report is a criminal
22    proceeding.  He was voted in contempt by the House.  It was
23    referred to the U.S. Attorney.  That is a crime.  The U.S.
24    attorney is obligated to take that to the grand jury.  He
25    did not do that.  That criminal proceeding ran its course.
```

1    The House voted by a separate resolution.  There was a

2    contempt resolution over here.  There was a separate

3    resolution to authorize a civil suit to enforce the entirety

4    of that subpoena.

5             The committee decided, for its own internal

6    reasons, that it would only sue to enforce a portion of that

7    subpoena.  Namely, the four categories we talked about post

8    February '11.  The relief that the complaint seeks is

9    production of the documents that are responsive to those

10   four categories.

11            Now, it is true that at the time the complaint was

12   filed we understood, based on the way that letter was

13   framed, that executive privilege had been asserted over all

14   of those.  But if that turns out not to be the case, then

15   the rest of the documents that is the delta between the

16   larger circle which is the post February 4 subset and what

17   they're calling the executive privilege subset, the delta

18   between those two needs to be produced forthwith because

19   there's never been a privilege assertion as to those

20   documents.

21            THE COURT:  That is a different issue.  And that

22   is -- in the other categories we've got that same issue.

23   But I just want to make sure I heard what you just said.

24   You said at the time we thought executive privilege had

25   been -- you didn't say had not -- had been asserted as to

1    everything responsive to all four categories after February

2    4th.

3              MR. KIRCHER:  That was the perception of the

4    Committee.  And nobody on that side of the courtroom said

5    anything about that until well into this lawsuit.  And it

6    never really became wholly clear until after your August

7    20th order.

8              THE COURT:  All right.  Well, my coming in here

9    this morning, tentative conclusion, I'm going to have to

10   issue an opinion on this one, it's going to embody it in

11   writing, was this -- the subpoena was not narrowed.  That

12   there were discussions about possibly narrowing it as part

13   of an accommodation, but that that didn't happen and that

14   the lawsuit is the lawsuit.  But I'm going to look at

15   everything again.  But that's kind of where I'm leaning at

16   this point.

17             But, even within -- now getting on to what I'm

18   calling issue number two --

19             MS. HARTNETT:  Your Honor, may I make one remark,

20   since it sounds like you might -- this might be our, kind

21   of, last chance to talk to you about this issue.  But just

22   on the point about the lawsuit being the lawsuit, I just

23   want to make sure it's clear that -- kind of consequence to

24   the oversight process, if they're able to, kind of, come to

25   the court to seek enforcement of the subpoena without

1    exhausting the actual oversight process.  But we have not --

2    this is about -- the documents that will be at issue here,

3    if we get to them, and those were ones that, again, were not

4    being sought at the time of contempt, which is relevant only

5    because that's what precipitated the executive privilege

6    assertion.

7         If they are able to seek -- these are about the

8    operational component that Your Honor, at the top of the

9    hearing today, made the good point, this is not what this is

10   about.  Those are largely going to be about law enforcement

11   operations disconnected from the Congressional response.

12   It's unclear why they would even want those at this point,

13   other than to try to create an issue here, when we've

14   already fully complied with the Court's order regarding the

15   15,000 documents that actually are at issue in this case.

16        And so, again, I would direct you to the various

17   things we cited in our papers, which make clear that I -- we

18   were being as clear as we could be in June of 2012 about

19   what the privilege was being asserted over.  It was what the

20   parties knew they were fighting about.

21        THE COURT:  That's interesting.  You say it was

22   what was sought in contempt that led to the executive

23   privilege assertion, and then it was the executive privilege

24   assertion that led to the lawsuit.  But what was sought in

25   contempt -- there were offers to narrow back and forth, but

 1    I don't know that there was ever an actual completion of the

 2    process because you made a counterproposal and they said we

 3    don't buy it, we are moving forward with contempt.  I don't

 4    see how that's -- we're moving forward with contempt except

 5    over the things that we offered to take off the table, if

 6    you were willing to give us A, B, and C.  And there was a

 7    lot of contingent taking off the table, as opposed to

 8    unilateral taking off the table, that I read in the

 9    correspondence that you pointed me to.

10         So even if I take your point, I'm not sure that

11    the universe was narrowed pre-contempt, as much as the fact

12    that the universe was contemplated being narrowed pre-contempt.

13         MS. HARTNETT:  I don't disagree with some of the

14    points you're making about the conditional language.  I

15    think what's most important is by the end of the day the

16    Attorney General was told you will be held in contempt

17    unless you produce documents about the response to Congress.

18    That was why that exact set of documents was teed-up for the

19    President to assert privilege over, and the reason why you

20    exactly mapped out the connections correctly.

21         The executive privilege documents are the very

22    reason why we're here for this lawsuit, because the House

23    has said that we did not have a valid basis for the

24    privilege and Your Honor took jurisdiction to figure out

25    what's the proper scope of executive privilege.  So it would

1    really be an entirely different dispute to start fighting

2    about whether or not some other documents that were not the

3    subject of a privilege claim, because they would have not

4    been the basis --

5              THE COURT:  Right.  No, I understand that my

6    assertion jurisdiction here and the whole argument that

7    underlay our first hearing was that this was going to be a

8    crisp, classic legal dispute of the sort that judges resolve

9    all the time.  I remember that.

10             MS. HARTNETT:  But I guess my point is not even to

11   reargue that at all, but more to make the point that if they

12   really want these other documents that were not the thing

13   they were saying would be the basis of a contempt citation

14   if the Attorney General didn't produce them, we would go

15   back to the accommodation and negotiation process over those

16   documents.  If we reach an impasse about those documents

17   through the oversight process, it would be at that point

18   that they would come back to you and ask for jurisdiction

19   over the case.

20             THE COURT:  All right.  Well, I think I understand

21   both of your positions clearly.  And I just want to look at

22   everything before I rule on it.  I think you both know what

23   my concerns are on each side.

24             The next issue is within the documents that you do

25   concede are covered by the lawsuit and this privilege, were

1    withheld and were sued over, when you withheld them, they

2    were withheld on grounds other than the deliberative process

3    privilege that prompted the lawsuit; common law privileges,

4    such as attorney-client privilege, also FOIA-based type

5    exemptions, and privileges for ongoing law enforcement,

6    privacy, issues like that.

7         So I want to talk to you both about that.  First,

8    Mr. Kircher, I certainly know that it's Congress's position,

9    and often is and always has been, that these sorts of common

10   law privileges don't apply.  But the part of the brief that

11   sets that up seems to be based heavily, if not totally, on

12   treatise and law review articles.  And so other than the one

13   case from the Eastern District of Tennessee, what is your

14   best case law on that point?

15        MR. KIRCHER:  Your Honor, I don't have any case

16   law other than what's set out in the brief.  Those are our

17   arguments in support of the position that the common law

18   privileges cannot be asserted in response to a Congressional

19   subpoena.  Most of their argument is predicated on FOIA

20   cases.  FOIA does not apply to Congress.

21        Some of these privileges are not even common law.

22   Privacy, for example, that's not even a common law

23   privilege.  All right?  Other is not a common law privilege.

24   Unrelated is not a common law privilege.

25        THE COURT:  We'll get to unrelated, which, to me,

1    obviously, isn't a privilege.  I'm talking about everything

2    except unrelated at the moment.  One of the things you say

3    is that some committees have rules for the resolution of

4    these kinds of privilege disputes.  Does this committee?

5              MR. KIRCHER:  No.

6              THE COURT:  Okay.  When you tell me I don't have

7    to be worried if I rule in favor of the Committee because

8    the Executive would never be able to raise important law

9    enforcement privileges or attorney-client privilege concerns

10   in the future because, you say, quote, "When the Executive

11   makes reasoned and persuasive arguments that certain

12   information should be withheld, Congress historically has

13   agreed to exercise its discretion to accommodate those

14   concerns."

15             Is there any indication in the record here of that

16   kind of consideration being accorded to the concerns

17   underlying the Department's invoking the law enforcement

18   privilege?

19             MR. KIRCHER:  Yes, I think there is some

20   reflection of that in the correspondence that preceded the

21   contempt vote in June.  There was some discussion of the

22   Department being concerned about some prosecutions and the

23   Committee being willing to accommodate those.  Those,

24   obviously, have long since gone by the board because those

25   prosecutions have run themselves to completion.  But there

1    is evidence in those letters that those negotiations back

2    and forth in the spring and early summer of 2012 that

3    reflect exactly consideration of those concerns.

4              THE COURT:  Right.  But right now your whole

5    argument with me seems to be, well, they didn't raise this

6    issue before, they only said deliberative process, they

7    don't get to raise it now.  And that doesn't seem to

8    recognize that there might be any legitimate reason why law

9    enforcement documents that fall within what they've looked

10   at might need to be withheld.

11             MR. KIRCHER:  I didn't -- well, you mean in this

12   particular case or as a general matter?

13             THE COURT:  In this case.

14             MR. KIRCHER:  In this particular case, no.  At

15   this point the Committee wants all of these documents.  It

16   believes it's legally entitled to them and that there is not

17   a legitimate legal basis to refuse to withhold those in the

18   face of a subpoena.  The argument we've made is, of course,

19   that will not affect negotiations in the future because at

20   times the Department will make arguments that the Congress

21   will reflect.

22             I think there's argument being made on the other

23   side that if you rule that these are not applicable, then

24   the -- you know, kitty's out of the door, they will never be

25   able to withhold anything again.  And that just isn't true,

1       Your Honor.  It will always be the case that the Executive

2       will have the documents and that the Congress will be trying

3       to get the documents.

4               It will always be the case that the Congress will

5       be on a two-year election cycle, that there will be time

6       pressures.  It will always be the case that it takes time to

7       litigate cases through the court to get enforcement orders.

8       So there will always be incentives and pressures to reach

9       agreements over things like this.  That negotiation and

10      accommodation process is not going to disappear.  But when

11      push to comes to shove, when the subpoena is on the table

12      for enforcement in front of the court, there's got to be a

13      legal basis for withholding that stuff, and there just

14      isn't.  There just isn't.

15              And they've introduced -- they've put this stuff

16      up now three years into the process, they've injected this

17      stuff after the August 20th order said you turn over

18      everything that you don't contend is both pre-decisional and

19      deliberative.  That's what the August order said.

20              THE COURT:  I take your point that they should

21      have aired some of this before.  But their first position

22      was, basically, we don't have to produce any of the

23      documents in the box.  And I said, No, actually, you've got

24      to open the box and you've got to go document through

25      document.  Then it turns out that the box contains the sort

1    of stuff that the agency generally never has to turn over.

2    And so the question is should I really be getting into that

3    at all?

4              Is it better to, say, you know, to issue a legal

5    ruling about whether or not they can withhold them or not,

6    or to look at them and say, you know, these really do relate

7    to ongoing law enforcement efforts.  And those are the kinds

8    of things that they've historically been permitted to not

9    produce and to try to figure out what your particular need

10   is for that.

11             MR. KIRCHER:  No, I don't think so, Your Honor.  A

12   couple points.  One, you say they opened the box.  Well, the

13   box should have been opened in October of 2011 when the

14   subpoena was issued, not in November of 2014 after you

15   issued an order.  If there were materials in there that they

16   thought were privileged on one of those basis and they

17   wanted to assert one of those privileges, the time to do

18   that was when the subpoena was issued or shortly thereafter

19   or, at the very least, by June of 2012.

20             THE COURT:  I understand that point.  But, my

21   question is now:  What would be the legitimate grounds to

22   overcome attorney-client privilege issues or the law

23   enforcement type privilege issues, now that we know that

24   some of these documents are in this pile?

25             MR. KIRCHER:  The ground is that there is no legal

1    basis for withholding it.  There is no statute.  There is no

2    common law case.  They concede tacitly that common law

3    privileges cannot be asserted, there is no constitutional

4    basis for those claims.  There is no basis for those claims.

5              THE COURT:  Let's say I didn't recognize it as a

6    matter of law.  I didn't say, you know, issue an opinion

7    saying they are allowed to assert this privilege in response

8    to a Congressional subpoena, which, of course, is the ruling

9    that you don't want to have and there's no -- they have very

10   little support on their side that I could do it.  But does

11   it make sense to submit those types of things that

12   ordinarily you would expect the parties to work out among

13   themselves, that they clearly can't work out among

14   themselves, to some sort of neutral arbitrator, as long as I

15   don't recognize the privilege as a matter of law?

16             MR. KIRCHER:  Well, obviously, the Court can enter

17   whatever order it deems fit.  I do not think that's

18   appropriate four years post the issuance of the subpoena,

19   three years after the issuance of the lawsuit, a year after

20   the issuance of the August 20th --

21             THE COURT:  I take that point, and I've said that

22   several times.  I'm just trying to figure out, putting aside

23   that they should have done this before, is there some way to

24   address the underlying concerns here that avoids what you

25   want -- what everybody is concerned about, which is a court

1    ruling that says, no, you can't ever assert these privileges

2    against Congress, or one saying to you, yes, they can.

3              MR. KIRCHER:  I don't see how you avoid ruling,

4    Your Honor, unless you assume that this is all going to be

5    worked out in some sort of mediated process.  And the record

6    in this case is not very good in that regard, to be

7    perfectly honest.

8              The other thing I would like to point out is it is

9    true, as I indicated before, that Congress, from time to

10   time, has been willing to accede to these kinds of concerns

11   about ongoing prosecutions and things of that nature.  It is

12   also true that Congress, from time to time, has demanded the

13   production of those things from the Department of Justice

14   and, ultimately, the executive branch and has gotten them.

15   So it is not the case that Congress uniformly says if you

16   trot out the words law enforcement sensitive, we will not

17   ask you for the documents.

18             THE COURT:  Right.  It says you kind of make a

19   case-by-case analysis and you're really willing to consider

20   serious arguments made on the other side.  And I just don't

21   know that there's been any serious discussion about the

22   content of these particular materials.  I mean, we're

23   talking about, it seems to me, a range of things from things

24   where just the name of an agent might have been redacted out

25   for privacy purposes for which you might not have as strong

1     a need as things related to the underlying criminal

2     investigations.

3               MR. KIRCHER:  But they did trot that out.  They

4     did trot that out in the spring of 2011.  They made them law

5     enforcement sensitive.  And at that time the Committee was

6     willing to postpone production of some of that stuff.  But

7     that was based on ongoing prosecutions.  That's now gone by

8     the board.  That justification, which is the justification

9     they asserted at the time, is no longer valid.

10              So, if you're asking me is the Committee willing

11    to sort of engage in an endless round of them inventing new

12    excuses for not producing this material, I think the answer

13    is no.

14              THE COURT:  All right.  Well, I know that's your

15    position.  Let me ask you one question about the unrelated

16    documents and then I'm going to go on to the Department.

17              All right.  If the documents contain material

18    that's responsive to the subpoena, but some material that's

19    not responsive to the subpoena, on what basis can I bar them

20    from redacting what's not responsive, if the whole point is

21    to enforce the subpoena?

22              MR. KIRCHER:  Well, I think you can do that on the

23    legal ground that a document is a document.  But on that

24    particular point, on that single particular point, I would

25    point out that we did in fact say we're willing to look at

1     the stuff that you claim is not responsive.  And if we agree

2     it's not responsive, we'll take it off the table.  All

3     right?  The Committee made that offer.  Committee said

4     you've got 300-and-some-odd-claims of unrelatedness.  We

5     don't know, we, the Committee, do not know whether by

6     "unrelated" you mean nonresponsive or not relevant to our

7     investigation, in your judgment.

8            If it's the former, we're willing to take it off

9     the table so that the judge does not have to rule on that.

10    That is, we're not going to ask or push for a ruling in this

11    case on material that is simply not responsive to the

12    subpoena.  If it's the latter, if it's something that looks

13    like you've made a judgment that's not relevant in the

14    investigation, then we're prepared to bring that back to the

15    court for a ruling.

16           THE COURT:  All right.  So where does that process

17    stand right at this moment?

18           MR. KIRCHER:  We got turned down on that.

19           THE COURT:  All right.  Okay.  Now, what I want to

20    know, first of all, is just want to confirm that some of

21    these privileges have been invoked for documents that

22    otherwise are not covered by the deliberative process

23    privilege, is that correct?

24           MS. HARTNETT:  Yes, Your Honor.  It's for portions

25    of documents, not full documents.

1              THE COURT:  All right.  Why isn't your ability to

2      assert those privileges waived by the failure to identify

3      any other privileges in accordance with the schedule set out

4      in the subpoena?  There was a subpoena, you said you can't

5      have the following documents because they're covered by the

6      deliberative process privilege, you didn't say anything else

7      about it.  In front of me the agency has taken the strong

8      position, over and over again, that the only privilege

9      that's applicable here is the deliberative process

10     privilege.  So where do you get the right to suddenly inject

11     this into the case?

12             MS. HARTNETT:  Yes, Your Honor.  So, the reason

13     why the deliberative process privilege -- in fact, the kind

14     of broader Congressional response work file argument that

15     your order rejected, those were the basis for the executive

16     privilege assertion by the President.  And so that was the

17     reason for that being the argument before you on summary

18     judgment.  If you had upheld the broader privilege, the

19     Congressional response work file privilege, which is derived

20     from a deliberative theory, that's -- of course, that's

21     untested in the courts because this is a unique case to be

22     in the court.

23             But had you accepted that theory, it would have

24     protected all the documents, without the need to assert

25     privileges that would have protected only parts of the

1    documents.  And so the reason why that was not part of the

2    case until we -- and we have, of course, opened the box

3    earlier because the President, in the course of determining

4    whether or not to assert executive privilege, careful review

5    by the Department of Justice of those documents occurred, to

6    make sure those fell within the Congressional response work

7    product theory, that was the basis for the assertion over

8    the whole 15,000.

9         Once we came to the point of complying with Your

10   Honor's order to redact only for deliberative process

11   material, we also realized that there were important, law

12   enforcement sensitive, foreign policy, privacy, and some

13   very small amount of attorney-client, attorney work product

14   material that also was the type that we would normally

15   redact in a production to Congress.  I think we erred on the

16   side of being as careful as we could be to make sure those

17   redactions were appropriate and we did it with a line-by-

18   line approach that Your Honor asked for.

19        And I think at this point the reason why -- and we

20   also would just note that not only do we kind of present

21   them in this litigation at the appropriate moment, and we

22   did -- foreshadows of this might come up in our summary

23   judgment briefing, but I think pages 19 to 20 of our motion

24   to compel response set forth how the Department, throughout

25   the oversight process, also flagged for the Committee that

1    these were issues, in addition to deliberative process, that

2    the documents presented.

3              THE COURT:  But now that it's before me, as

4    opposed to in the accommodation process, do you have any

5    authority for the notion that FOIA exemptions apply to

6    congressional subpoenas and that I can issue an opinion

7    saying that you're allowed to invoke those exemptions in

8    this proceeding?

9              MS. HARTNETT:  That's not our argument at all,

10   Your Honor.  We are not arguing that FOIA exemptions are why

11   we're not turning these documents -- or, these portions of

12   the documents over to Congress.

13             THE COURT:  Well, is the law enforcement privilege

14   anything other than a FOIA exemption?  Is there a common law

15   law enforcement privilege?

16             MS. HARTNETT:  Yes, Your Honor.  So, our brief

17   sets forth -- for the formulations and for the law

18   enforcement privileges, our brief sets forth arguments under

19   the Constitution, as well as the common law.  And then for

20   privacy and for attorney-client and attorney work product,

21   we also cited the common law and statute.

22             Again, we're not -- this is a unique proceeding

23   where we're now kind of having a federal -- you know, we're

24   in court, layered on top of an investigation, and it struck

25   us that it would be appropriate to look to the common law

1    for us to be able to protect certain privileges, in addition

2    to the Constitution.

3           And to be clear, there hasn't been an executive

4    privilege assertion on the basis of law enforcement

5    privilege or foreign relations because, as I mentioned, the

6    earlier assertion of privilege was thought to have covered

7    the whole set of documents.  But what is important now is

8    that we have well-founded theories that we've set forth in

9    our brief for all of these redactions.

10          I also would just note that we, in the course of

11   Mr. Tyler's letter transmitting the production back in

12   November of last year to the House Committee, we indicated

13   we would be willing to talk with them about a way to

14   possibly accommodate their interest in seeing some of those

15   additional redacted materials.  We had talked about, in our

16   meet and confer, among other things, whether there would be

17   a way for it on the law enforcement or the formulation

18   materials, subject to the appropriate protections, some sort

19   of an in camera arrangement.

20          I think the Committee is, frankly, more interested

21   in trying to precipitate a legal ruling on some of these

22   issues than trying to find a way forward on the documents,

23   which, again, are things that the Committee -- again, not to

24   tell the Committee what it cares about, but these are

25   materials such as, for purposes of privacy, as people's cell

1    phone numbers or e-mail addresses where it's administrative

2    assistant or a certain level of official, or for attorney

3    work product, and that attorney-client is about people

4    seeking a consult on some sort of issue with their employer,

5    that has nothing really to do with the response to Congress.

6              And I'm also -- on the law enforcement, again,

7    these are going to be, among other things, sealed

8    indictments or other law enforcement documents and it's hard

9    to understand why they would be trying to fight this fight

10   when they really don't go to the underlying point, which is

11   how does the Department respond to Congress?

12             THE COURT:  But are those things sealed now?  Are

13   those ongoing law enforcement investigations now?

14             MS. HARTNETT:  So as of the time of our

15   production, that was at the -- we were taking law

16   enforcement redactions where there was an ongoing law

17   enforcement interest.

18             I think I would want to bring to the court's

19   attention that we are in the course of updating that

20   production.  As the case is still alive, we will make sure

21   that we produce to them any additional law enforcement

22   materials that become available as the law enforcement

23   interests for open investigations or other confidentiality

24   restrictions were to expire.

25             THE COURT:  So, is it clear from the log that

1        every law enforcement withholding is related to an ongoing

2        investigation?

3               MS. HARTNETT:  Some of them are about tactics.  I

4        would not say that every law enforcement redaction is about

5        an ongoing investigation.  The law enforcement redactions do

6        attempt to describe the nature of the law enforcement

7        material at issue, which could include ongoing

8        investigation, under seal, or some sort of a tactic or some

9        other confidential information that we normally don't turn

10       over to Congress.

11              I'd also just note that they have not made any

12       effort to go through the log with regularity to identify any

13       specific law enforcement redactions they are concerned

14       about.  We were willing to do that in the process of the

15       meet and confer, to see if we could get a way for it on

16       particular documents of interest.  But again, most of these

17       materials are really -- it's hard to understand why they're

18       fighting so hard for them.  And moreover, we've tried to

19       propose a way forward.  And I think we, too, agree that

20       precipitating additional legal rulings is not -- not the

21       best idea here.

22              THE COURT:  Are the privacy redactions only

23       redactions, names and phone numbers, of documents that are

24       otherwise produced in their entirety?

25              MS. HARTNETT:  Yes.  I mean, they are generally

1    very targeted redactions.  For example, the name of an

2    administrative assistant, a personal phone number, or

3    another type of a -- some sort of personal identifying

4    information that's ordinarily something we would redact when

5    we produce it to Congress to protect the individual's privacy.

6              THE COURT:  But even if I think this is an area

7    where Congress should be accommodating, if you can't work it

8    out, where does my authority to officially sanction

9    withholding on common law grounds come from?  They have --

10   there's not a lot of law saying Congress doesn't recognize

11   the privileges, but there is case law, the *Exxon* case that

12   they cite, that does talk about a tradition of judicial

13   abstention in just the workings of the Committee.  And if

14   they're saying we don't care if it's privilege, where do I

15   actually get the authority?

16             The only Constitutional privilege we've ever

17   talked about here is the deliberative process privilege.

18   And the reason we're even here is because I said that it has

19   some Constitutional underpinnings, even though it's weaker

20   than the executive communications privilege.  Throughout

21   this whole discussion nobody has ever said, Well, there's

22   some of these documents covered by other Constitutional

23   privileges.  That's not what you said in your letter to

24   them, that's not what you said in response to this lawsuit.

25             So, where does the authority suddenly come from to

1    carve out other areas that they don't have to produce?

2         MS. HARTNETT:  Well, Your Honor, I mean, just to

3    begin with, I think we do present argument on each of the

4    categories in our papers that would be sufficient, if the

5    Court were to reach the question of us having authority to

6    withhold that from Congress, just as you recognized the

7    deliberative process privilege.  I think the law enforcement

8    and the formulations privileges we explained by citation to

9    some historical examples.  Not cases, but examples of times

10   where we've withheld that material from Congress that could

11   support Your Honor if you would wish to make a ruling on

12   those issues.

13        I think we agree that it's -- the idea

14   precipitating additional rulings does not make sense and

15   it's unfortunate that the House Committee is pushing

16   for these -- pushing to see these material when it's

17   mystifying, frankly, to why they want to push this.

18        THE COURT:  All right.  Well, how do I do it

19   without a ruling?  Would you be willing to submit it to a

20   neutral arbiter, as long as I don't recognize the privileges

21   as a matter of law?

22        MS. HARTNETT:  I've thought through this question

23   because I agree that a path forward is what's needed here,

24   assuming that they're not going to agree to some of the

25   reasonable attempts we made to accommodate them and to kind

1    of -- I would also just note, for example, Judicial Watch,

2    persistent and, you know, strong FOIA requester had sought

3    all of these same exact set of documents and once it saw our

4    Vaughn, it -- the case was over.  It agreed and believed

5    there was a foundation for all of our redactions.

6           So again, it's unfortunate we're here, but I do

7    think what you could do, another option would be to use your

8    equitable -- you have equitable power here as to what you

9    took jurisdiction over.  You took jurisdiction over the

10   scope of the executive privilege as it was exerted as to the

11   corpus of documents.  And I think it would be within your

12   equitable power to not rule on these questions, these sort

13   of incidental or secondary questions that are not really

14   part of the lawsuit that came before you in the first place.

15   I think that is the appropriate path forward in light of the

16   Committee's failure to --

17          THE COURT:  But the lawsuit that came before me in

18   the first place, I said if it's not deliberative process,

19   turn it over.

20          MS. HARTNETT:  It was all about, though, in the

21   context of documents over which the President had asserted

22   executive privilege.  And here we have no actual executive

23   privilege assertion on these theories.  Again, because the

24   privilege assertion that he made at the time was thought to

25   have covered the entire corpus of documents.

1          THE COURT:  The work file, work privilege -- the

2     work file aspect of this I don't think came up at the

3     beginning either.  At the beginning it was deliberative

4     process.  It seemed to be a little bit later in line when

5     you said, Well, actually, everything in our files we're

6     withholding.  I don't know, at the beginning, that you ever

7     called those deliberative, you called them something else.

8     Deliberative process is what it is.  It's pre-decisional and

9     it's deliberative.  This stuff isn't.

10          MS. HARTNETT:  Understood, Your Honor.  And I

11     guess I'm just trying to think creatively of paths forward,

12     assuming the Committee is going to press the motion to

13     compel information that, again, it's not clear why it would

14     want it.  I think we, too, agree that additional judicial

15     rulings about privileges in new areas is not ideal.  We have

16     a solid basis for all of our redactions.

17          I think, again, you know, we could be asked to

18     negotiate again with them and come back to you with a status

19     report, to see if we found a way forward with the helpful

20     indication from Your Honor that we have some basis for doing

21     what we're doing.  But I do think the equity and your power

22     to decide what you took jurisdiction over would provide a

23     way forward here.

24          I also think we would be happy to submit the

25     documents to you in camera, for you to -- or, a sample of

1    them, for you to be assured that we were taking redactions

2    that were appropriate and consistent with those privileges

3    that might help you possibly convince our counterparts that

4    it's not worth pursuing these -- this information.

5                THE COURT:  Well, I don't think I can be the

6    mediator and the decisionmaker at the same time.  I think if

7    we're going to get into a discussion trying to persuade them

8    that they should take a different position, and I might

9    ultimately have to rule, I think that's got to be somebody

10   else.

11               MS. HARTNETT:  Sorry.  I meant --

12               THE COURT:  And I think that there might be a role

13   for that here.  It has been wildly unsuccessful every time

14   we've tried it.  But maybe if it's very narrow.  And the

15   attorney-client privilege documents seem to me to be a very

16   small subset.  And it seems to me if they don't relate to,

17   What are we going to tell Congress about this, you know, and

18   the more that we know and the when did we know it kind of

19   stuff that relate to getting lawyers' advice about other

20   things, why would you want that, Mr. Kircher, other than the

21   fact that they didn't say they weren't going to give it to

22   you before?

23               MR. KIRCHER:  Your Honor, the Committee is not in

24   a position to make judgments about what it wants when it

25   doesn't have the documents or can't see the redactions.

1   They keep harping on this notion of why do you want it, why

2   do you want it?  We don't have it.  We haven't seen it.  We

3   can't even get them to share with us stuff that they claim

4   is nonresponsive so that we can try to reach an agreement.

5   How are we supposed to -- how is the Committee supposed to

6   make a judgment about whether it needs it or not and why

7   should the Committee --

8           THE COURT:  Well, for instance, let's talk about

9   the privacy redactions.  When you have the whole document

10  and it's clear that all they've redacted is somebody's phone

11  number or their name, why do you need to know what the name

12  is under the black mark to know whether or not you need it?

13          MR. KIRCHER:  I don't know what the name is.  I

14  don't know which particular document you are talking about.

15  I mean, they're redacting stuff willy-nilly here on a wide

16  variety of basis, you know, a year after an order that

17  directed them to produce all of this stuff.  And the

18  Committee's frustration at all of this is that this process

19  doesn't seem to come to an end because --

20          THE COURT:  I understand that.  But at the same

21  time that you are telling me how reasonable you are willing

22  to be, there is not one single withholding in this entire

23  case that you're willing to not litigate over.

24          MR. KIRCHER:  That's not true, Your Honor.  I made

25  very clear, and we made very clear in writing, and you have

1    the correspondence on the unrelated.  That was 300-some-

2    odd-plus documents that they told us were unrelated.  And we

3    said, Fine, show us the documents, we'll look at them in

4    your office.  You don't have to give them to us, we'll go

5    look at them in your office.  And if we agree with you that

6    they're not responsive, take that off the table and the

7    judge doesn't have to deal with it.  Okay?  We get the door

8    shut in our faces.

9         On the attorney-client stuff, I sent a specific

10   letter.  That letter is in the record, saying give us some

11   more information on the attorney-client.  It's a small

12   number of documents.  Give us some more information.  Don't

13   show us the documents, give us some information so we can

14   try to make a judgment about whether your attorney-client

15   privilege, because it is a small number, is reasonable.  No.

16   The door shut in our face.

17        So if you're asking me why, you know, why the

18   Committee hasn't done any of these things, the Committee has

19   tried, Your Honor.  The obstinacy is not on the Committee's

20   part, the obstinacy is on the other side.  The concern on

21   the Committee's part is it is now entitled to a ruling on

22   these things.  It has teed these things up, Your Honor.

23        There is no legal basis, there is no statute,

24   there is no common law basis to recognize it.  There is no

25   constitutional basis.  There is no legal basis for them

1    doing what they are doing, letting -- leaving aside the fact

2    that we are now four years post the issuance of the subpoena.

3              THE COURT:  All right.  Let me ask one more

4    question about the unrelated documents to the Department of

5    Justice.  Are you saying -- what does "unrelated" mean?

6    Unrelated to what?  Are they responsive?  Are they not

7    responsive?

8              MS. HARTNETT:  Your Honor, we tried to be clear in

9    our brief on that point, but I'm happy to speak to that.  I

10   think it's an important point.  The unrelated documents are

11   wholly unrelated to Fast and Furious.  So it would be a

12   meeting where we're going to talk about three things at this

13   meeting:  One, Fast and Furious; two, some official's trip

14   to a different country on a different matter; three, some

15   intelligence report on something.  I'm making that up.

16             But, some three different -- and the two other

17   things would be sensitive executive branch material that the

18   House is not seeking at all in this subpoena or otherwise

19   that we believe would be appropriate to redact because it

20   has nothing to do with, is not responsive to.  Not because

21   of some technical reading of the subpoena, but because it's

22   wholly unrelated to Fast and Furious broadly conceived.

23             THE COURT:  So they're not responsive -- so why do

24   you say they're not responsive?  I guess it's the unrelated

25   that --

1           MS. HARTNETT:  They're unrelated to Fast and

2      Furious.  And so I think that -- I'm trying to find a

3      category that response -- to the extent there is a portion

4      of a document that's not responsive, but not because of some

5      technicality about responsiveness or not because they're

6      just on a totally --

7           THE COURT:  Are there any documents withheld in

8      their entirety as unrelated?

9           MS. HARTNETT:  I don't believe so.

10          THE COURT:  So you have a document that is

11     responsive in part, but isn't it unresponsive in part, or --

12          MS. HARTNETT:  Yes.  I mean, that's why we took

13     the redaction.  But I would also just point out, we also,

14     just to be clear, used that redaction, as we said in our

15     papers, for personal matters.  This is not personal privacy

16     as much as Fast and Furious is going, blah, blah, blah, and

17     then the second paragraph would be I'm also going to go to

18     the birthday party for so-and-so and some personal

19     information that would be typically something we would not

20     turn over to Congress because it has nothing to do with Fast

21     and Furious and would just invade the person's privacy.  But

22     it's not a privacy redaction in the more specific sense that

23     we were using privacy to mean people's numbers, names, or

24     e-mail addresses.

25          THE COURT:  If it can be determined by me or by

1      someone that, in fact, anything redacted is not actually

2      responsive, is there any basis that I should order them to

3      turn it over?

4              MR. KIRCHER:  If it's wholly unresponsive, Your

5      Honor, the answer is no.  But, the Committee's concern is

6      that it does not have sufficient trust in the Department of

7      Justice to take the Department's word on that.  And that's

8      where the hang-up is.  That is why we suggested just show it

9      to the Committee lawyers and we'll look through it.  If

10     there's birthday party stuff there, fine, we'll agree.  But

11     let us look at it.  Why is it so sensitive that we can't

12     look at it and make a judgment for ourselves and then come

13     back to you if there are any leftover in that process to

14     bring to you?  There may well not be.

15              But let the Committee take a look at it.  If it's

16     that unresponsive, if it's birthday party stuff, then why

17     can't the Committee look at it in camera at the Department

18     of Justice and satisfy itself?  Why do we have to rely on

19     them or someone who's not part of the Committee

20     investigative process?

21              What's wrong with the Committee?  What's wrong

22     with the court ordering them to let the Committee examine

23     the unresponsive redactions in camera at the Department of

24     Justice and then reporting back to you on all the ones that

25     they agree are in fact nonresponsive and any that may not be

1    nonresponsive?

2             THE COURT:  What if I took nonresponsive law

3    enforcement, privacy, attorney-client, all of that, and gave

4    it to a special master or someone else to decide?  Are you

5    willing to give a third-party control over that decision?

6             MR. KIRCHER:  No.  The answer is no, Your Honor,

7    because as to the materials other than the nonresponsive,

8    those are, in fact, responsive to the subpoena, to the

9    subpoena we have sued on and are seeking to enforce and have

10   been seeking to enforce.

11            THE COURT:  Okay.  All right.  Let's go on to what

12   I think is the issue that involves the largest quantity of

13   documents, which is those have been designated as

14   deliberative and described as deliberative.  There are a

15   few, I believe less than ten, for which there's no further

16   explanation.  And that's really a quick question for the

17   Department of Justice, how could I agree that a document for

18   which there was no explanation was appropriately withheld?

19            MS. HARTNETT:  Your Honor, I believe those would

20   either be oversights to the extent -- this is a, kind of, an

21   extraordinary process of trying to collect ourselves on our

22   end to make sure we had gone through every document, had

23   re-reviewed them and done the quality control.  I think

24   there was some very small number of deliberative documents

25   that didn't have a description and we updated the log so

1    they would have that description.

2              THE COURT:  Are there none anymore with no

3    explanation?

4              MR. KIRCHER:  That's not accurate, Your Honor.

5    There were originally 55 with no explanation.  We broke

6    those down in our reply brief, which came after their

7    February 19th updated letter.  Thirty-seven of those 55 they

8    added an explanation, 11 of them they changed from

9    deliberative process to law enforcement, they changed the

10   privilege assertion.  And as to ten of those 11, there was

11   no explanation for that.

12             So there's ten now law enforcement sensitive with

13   no explanation.  There was one of those that was changed to

14   other with no explanation.  And then there were six that the

15   privilege assertion was removed entirely and there's no

16   explanation.

17             So, of that original 55 --

18             THE COURT:  Well, those then you have, right, if

19   they're not saying they're privileged?

20             MR. KIRCHER:  No.  I don't have those.  I have the

21   list where there's no explanation.  As to the ten law

22   enforcement --

23             THE COURT:  Anything that's now been changed to be

24   law enforcement is in the category issue number two that we

25   just discussed that I haven't ruled on yet.  Anything that

1    is no longer privileged at all needs to be produced.  And

2    anything for which no explanation has been offered needs to

3    be produced.  I think we're talking about maybe less than

4    ten documents.  But --

5            MR. KIRCHER:  We're talking about 17 documents,

6    Your Honor.

7            MS. HARTNETT:  Your Honor, we're happy to -- we

8    just have not had any conference with them on this issue.

9    So I'm happy to --

10           MR. KIRCHER:  It's in our reply brief.

11           MS. HARTNETT:  Understood, but --

12           THE COURT:  Do not start arguing with each other

13   in this courtroom or this hearing is going to stop.

14           MS. HARTNETT:  No.  Of course, Your Honor.  My

15   point is just we have not had a chance to confer about this

16   issue.  I'm sure that there's an explanation -- we provided

17   an explanation for any missing or allegedly insufficient

18   description that's been brought to our attention.

19           I mean, the 55, for example, were out of over

20   5,000 deliberative process claims.  And we did address all

21   the 55 with an updated list.  I think some of them were

22   actually mislabeled as deliberative process in the index

23   when they actually were a different redaction, which is why

24   that was corrected.  I believe a couple of them were

25   actually just a pixilated dot that got left on the page that

1    got picked up by our automatic software to indicate that it

2    was deliberative process when it's not.

3          So these are -- again, we appreciate these being

4    brought to our attention and we're happy to discuss any

5    issues for further explanation, but we believe that all

6    withholdings that we're taking now are appropriate.  Again,

7    that's part of the process when they scrutinize the log and

8    ask questions that we're able to provide answers and,

9    hopefully, information that would normally help the other

10   side to understand why we're withholding the document.

11         MR. KIRCHER:  Your Honor, could I say one thing on

12   that?

13         THE COURT:  Yes.

14         MR. KIRCHER:  All right.  There are 17 documents

15   with either no privilege assertion or no explanation.

16   They're in the reply brief.  They are enumerated by document

17   numbers and Bates numbers individually.

18         THE COURT:  Those documents, once you look at

19   those numbers, if there is no explanation offered as to why

20   they are deliberative as was required in my original order,

21   then they need to be produced.  If you've now said, well,

22   we're withholding them on one of the law enforcement or

23   privacy issues that I still have to rule on, then they'll be

24   covered by that ruling.  But if they're not under that

25   category, you described them as deliberative, but you

1     haven't explained why, then you've had that opportunity to

2     do that.  I mean, we're talking about they need to be

3     produced at this point.

4            MS. HARTNETT:  Your Honor, we agree with that and

5     we don't believe there are any that fall in that category,

6     but we will check.

7            THE COURT:  Well, look at the ones in his reply

8     brief.

9            MS. HARTNETT:  Yep.

10           THE COURT:  The next, more important category are

11    deliberations about press releases and deliberations about

12    how to respond to Congress itself.  The Committee cites a

13    number of cases that talk about the privilege in general and

14    then it italicizes every time they use the word "policy."

15    But adding your own emphasis doesn't mean that those

16    opinions actually limited the privileged policy.  There are

17    plenty of cases that go beyond policy, including *Espy*

18    itself, which talks about alternative approaches to agency

19    decisions, which is much broader.

20           There's case law that I've reviewed that says the

21    privilege attaches even if a broad policy decision is not

22    the end product, that's the *Mead Data Central* case, to a

23    decision about how to draft a report and the give and take

24    of how to conduct an internal review in light of anticipated

25    litigation.  That's *In re:  Apollo Group*.  And even

1    responding to press inquiries, since an agency's policy

2    about how it's going to relate to the public is a policy.

3    That's the *ICM Registry* case.  The closest case appears to

4    be Judge Leon's decision in *Judicial Watch versus Homeland*

5    *Security*, which dealt with draft responses to Congress and

6    the press.

7          What is the best case for your position that the

8    privilege is actually limited to policy and doesn't include

9    decisions about how the agency will communicate with the

10   public or Congress?

11         MR. KIRCHER:  Your Honor, I did not come to court

12   today prepared to argue the motions.  I was under the

13   impression that we were having a status conference, so I

14   have not prepared in the sense that you are now asking me

15   some of these questions.  So on those kinds of questions,

16   I'm going to have to rest on the materials that we cited in

17   our brief.

18         THE COURT:  All right.  Well, you cited one case

19   which is the *Waters* case from a magistrate judge in this

20   courthouse.  And putting aside the question of whether, you

21   know, another District Court opinion is binding on me, that

22   case seems to be completely distinguishable because it's

23   based on the fact that the documents related to a particular

24   personnel decision.

25         The Committee took the position I've already ruled

1    on this question in my last opinion, which is simply not

2    true.  It doesn't even point to language in the opinion.  I

3    mean, the Department says I ruled on this already.  It just

4    says I ordered you, in your index, to tell us which policy

5    decision or action was under consideration.  I think that

6    hardly constitutes a ruling on this question.

7             I didn't take it up because I didn't know what

8    basis you were going to be withholding the materials.  But,

9    I can say now that having read -- and while I recognize you

10   would have argued forcefully, I don't think you could have

11   argued authority that you didn't cite to me in your brief.

12   I've read everything you cited.  I read what they cited.

13   And I believe that the Department's position is supported by

14   the case law and I plan to rule in its favor on that issue,

15   that the documents reflecting deliberations concerning

16   responding to Congressional and press inquiries can be

17   covered by the deliberative process privilege.  So I don't

18   think that in and of itself is going to be a reason to say

19   that the privilege doesn't apply.  We need to go on to the

20   next step.

21            But there's still another category of documents

22   which are not being held under some other basis, which do

23   not relate to communications with the press, which is a

24   large chunk of the material, or with Congress itself.  But

25   the other ones, where you say that the explanations in

1   general are insufficient, and I want to know, are you

2   seriously trying to tell me that not one of the descriptions

3   in the entire index of 17,000 documents was adequate?

4   Because it struck me when I looked at the ones that you

5   plucked to put in your brief to show me how bad they are,

6   that they were pretty straightforward about what was being

7   deliberated about.

8           Your strongest position seems to be that what they

9   were deliberating about doesn't count.  You often, in that

10  section, provided me with examples where they're talking

11  about press releases, and that's a different point.

12          But on this point, it seems to me that at least

13  the explanations I've looked at, make it pretty clear what

14  the thing is that they say the withheld document is

15  deliberating about.  And you say they're not, none of them

16  are, which I thought was a pretty extreme position.

17          So, I guess my question is how would you propose

18  that I go about resolving this?  Do I have to review all

19  17,000 descriptions in the log and check them off as to

20  whether I think they're sufficient or not?  Should I ask

21  each side to give me a representative sample and you can

22  pick the worst ones, and they can pick the ones that they

23  think are representative, and I determine the adequacy of

24  the log as a whole based on that?  Do I need to review the

25  documents themselves?  What is the way to get at your

1    complaint that I asked for a log and it's not good enough?

2         MR. KIRCHER:  Well, it's not 17,000 or anywhere

3    near that number, Your Honor.  I think we broke this down in

4    our original notice back in November, when we tried to break

5    this out to make this process somewhat more manageable.  And

6    I'm just looking for those numbers.

7         THE COURT:  But if we throw all the ones with the

8    press and the Congress back in the pot and some of those are

9    the examples of the ones that you said were inadequate,

10   there's certainly a large chunk that you believe are

11   inadequate.

12        MR. KIRCHER:  Roughly 5,000.

13        THE COURT:  I'm sorry?

14        MR. KIRCHER:  Roughly 5,000 to which deliberative

15   process is concerned.

16        THE COURT:  What would you like me to do with the

17   5,000?

18        MR. KIRCHER:  What I would like you to do is enter

19   an order directing them to turn them over forthwith.  But

20   barring that --

21        THE COURT:  Right.  But when you gave my some

22   examples of why they were inadequate, they seemed, to me, to

23   be pretty clear what was being deliberated about.  So, what

24   do you think of the sampling methodology as a way to get at

25   that?  That they can give me a sample and you can say, no,

1    that's not really a good sample because this is how bad they

2    really are and you pick out 50 worse or 100 worse, or

3    whatever we decide the sample is for purposes of drawing

4    some conclusions about the 5,000?

5              MR. KIRCHER:  Well, I'm not sure where the

6    sampling takes us because clearly there's going to be a

7    broad range of -- you know, from what we gave you, which

8    were the most elaborate, probably the most elaborate

9    explanations among that 5,000 which we think are inadequate,

10   down to next to nothing.  I don't have a problem with doing

11   what you're describing, I just don't quite see how it gets

12   us through to the end of the process.

13             It may be that we can identify -- and I need to

14   confer with my colleagues to be sure, but it may be that we

15   can identify some formulations that are repetitive and ask

16   for rulings on those.  In other words, things that have been

17   used over and over and over again in large numbers as a way

18   to winnow this down to, again, to a more manageable number

19   that maybe you or perhaps a magistrate would have to review

20   at the end of the process.

21             THE COURT:  Well, my problem with sending it off

22   to a special master or magistrate judge is that you all will

23   appeal every single decision that they make.  So -- both

24   sides.  So I don't want to do this twice.  So we either need

25   to agree that a special master or magistrate can do it and

it will be binding, or we have to come up with a way that I do it. But, I don't want to do any more two-step processes because this just will never get done.

But, my impression, when I looked at it, was that most of them were what Vaughn-index-like descriptions are supposed to be and that they did say what the thing was that was being deliberated about. Now, you may not trust that designation, which is a different issue; that's asking me to compare the designation to the underlying document. But, whether the designation was adequate, it's hard for me when you say every single one was inadequate in your brief and then you cite a few and those didn't seem inadequate to me.

So, I need to know where to go from there in a rational process that will satisfy everybody. What do you think?

MS. HARTNETT: Your Honor, I think the motion to compel should just be denied on this point. This is exactly the point of the briefing that Your Honor ordered, was for them to identify -- they had a notice of disputed claims that identified their disputed claims. At that point they identified 5,369 deliberative process redactions. And their brief largely fought the premises of your order before and said that there was not a legal basis for the withholdings. It also presented this additional legal argument and then it did not, with regularity, identify problems with any of the

1    deliberative -- except with the few examples, of any of the

2    deliberative process redactions.

3           In a normal situation it's their -- it's the

4    motion to compel, it's their burden to show why they -- why

5    we should be compelled to turn that over.  They chose to

6    take the tactic they did in this briefing, which was to not

7    do that, even though we produced a 1,300 page Vaughn for

8    them to review and lots of documents, thousands of documents

9    that provided context for that Vaughn that would help them

10   review them.

11          And so, with respect -- I believe that the right

12   step here is to deny the motion to compel because they

13   failed to show that there's any issue with any of our

14   deliberative process withholdings.

15          THE COURT:  And I can find that without looking at

16   them beyond the ones that they chose to put in their brief?

17          MS. HARTNETT:  I believe so, Your Honor, because

18   they've identified -- it's their burden at this stage to

19   identify the documents that they believe were not supported

20   by adequate withholding.  They've chosen to do some by

21   category in the brief, and Your Honor spoke to those and I

22   believe that those are adequate.  The more generalized ones

23   they talked about.  They also had a bullet point list of

24   like six or -- five or six examples.  They made their case

25   and I believe it's just inappropriate to have further

1    proceedings at this point.  And our Vaughn backs up Your

2    Honor's view, which is that we have described deliberative

3    process redactions with adequate specificity and they failed

4    to do what they were supposed to do at this stage of the

5    case.

6             MR. KIRCHER:  May I be heard, Your Honor?  All

7    that would do -- and, obviously, that is an option for you,

8    but all that would do, according to the August 20th order,

9    is kick that back to you to make a determination as to

10   whether the privilege applies.  Your August 20th order says

11   specifically, "For any documents over which a claim of

12   privilege has been asserted and for which the claim is

13   disputed, the court will rule, presumably after an in camera

14   review, whether the privilege applies."  If you deny the

15   motion to compel, all you're denying is --

16            THE COURT:  They're my words, "presumably after an

17   in camera," or did you just insert that on my order?

18            MR. KIRCHER:  I beg your pardon?

19            THE COURT:  Did I say, "presumably after an in

20   camera review"?

21            MR. KIRCHER:  Yes.

22            THE COURT:  Okay.  I just want to know.  I mean,

23   the point of the index is to obviate the need for an in

24   camera review.  I shouldn't have to review all the documents

25   if they've explained -- that's the point of the index, is to

1      tell me what the basis for the withholding is.  If you look

2      at D.C. Circuit opinions on how courts are supposed to deal

3      with situations like this, they don't require you to look at

4      every single document.

5             You can look at samples of documents, you can look

6      at the log, if the log is adequate.  And, I mean, I'm not

7      sure that I can just say because you haven't proven that the

8      log is inadequate, deny the motion to compel.  I mean, I

9      think we're at a point where we need to come up with a

10     procedure for me to test the applicability and the adequacy

11     of the --

12            MR. KIRCHER:  It may be, Your Honor, that that

13     simply gets wrapped into the need analysis, which is what

14     your August 20th order contemplates, if you accept that the

15     privileges are validly asserted.  Right?  This is still a

16     qualified privilege.

17            THE COURT:  Yes.  Yes.  We're going to get there

18     next.

19            MR. KIRCHER:  But it may be that that process gets

20     all wrapped into one and you determine whether the privilege

21     is properly asserted and whether the Committee need

22     outweighs the Department's interest in continuing

23     withholding at the same time.  Maybe a single process, in

24     order to speed this whole thing along, that we could come up

25     with.

1              THE COURT:  Do you want to say something?

2              MS. HARTNETT:  I was going to point out, I do

3    think it would be unfair at this point to allow them another

4    chance to try to fight the deliberative process privilege as

5    it's been applied to these documents.  I think the point of

6    Your Honor's order about in camera review was probably

7    drawing an analogy to the normal other context where you

8    would have a document dispute where the parties would

9    presumably identify which issues on the Vaughn or the

10   privilege log were the ones that they wanted to press, and

11   then there would be, you know, briefing on those documents,

12   which is what we expected those to be.  And then you -- if

13   you -- both sides were just arguing about whether the

14   redaction was -- whether the description was appropriate,

15   you would take that smaller set back in camera and determine

16   whether -- who was right.

17             I think that's -- it's not what would be

18   contemplated would be for you -- with them having failed to

19   identify any specific entries that are allegedly inadequate,

20   other than the few that they've identified in their brief,

21   for you to have to go back and try to map that on to all the

22   documents and test whether or not our redactions are

23   appropriate.  I think that the next step --

24             THE COURT:  I understand that and I appreciate

25   your concern for my time.

```
1              MR. KIRCHER:  Could I be heard just briefly?

2              THE COURT:  Yes.

3              MR. KIRCHER:  And that is, with all that we are

4    talking about, 5,000 deliberative process entries, there is

5    no practical way for us to submit a brief to you on every

6    single one of those 5,000.

7              THE COURT:  I know that, but when you said to me

8    they are all inadequate and here are examples of the fact

9    that they are all inadequate and those examples are not

10   inadequate, that's a good place to start, would be the ones

11   you picked, right?

12             MR. KIRCHER:  Yes, meaning everything else is

13   lesser than that.

14             THE COURT:  That's not what it said, these are the

15   best ones they had --

16             MR. KIRCHER:  The best ones for them.  I think we

17   said these were the most detailed ones that they submitted

18   and the rest of them were considerably less detailed than

19   that.  And I think the assumption was that the Court would,

20   you know, perhaps look through and see some of these other

21   ones.  But if you want --

22             THE COURT:  I did look through and they didn't

23   jump out at me as inadequate.  So we need to figure out how

24   to get to the bottom of that.  And now you know that what

25   I'm thinking about right now is process.
```

1          The next argument you raised in your briefs,

2     though, you seem to have addressed the concern I was about

3     to address in your argument just now, is in your brief you

4     said that I didn't address the point in *Espy* that the

5     privilege, quote, "does not apply when there is any reason

6     to believe government misconduct occurred," and that I

7     hadn't addressed that in August.

8          And in August I specifically said that there would

9     be a balance undertaken, but the first thing to do is to

10    determine whether there's any documents that are

11    deliberative in the first place.  And you seem to be arguing

12    in your brief that the allegation of misconduct means

13    they're not privileged.  Now, just now you seem to say once

14    you determine whether they're privileged, then we have to

15    determine whether that privilege is outweighed by the fact

16    that there's been a misconduct allegation.

17         So, do we have to go into that issue, or do you

18    agree with me that the question of whether misconduct has

19    been alleged doesn't affect the deliberative quality of the

20    documents, it just affects whether the privilege is going to

21    be abrogated or not?

22         MR. KIRCHER:  The way we construed your August

23    20th order, Your Honor, was that you would take the

24    misconduct allegations into account at the need balancing

25    stage, at the back end.

1          THE COURT:  Correct.  And you argued in your brief

2      that it actually goes to whether they're privileged or not,

3      which I don't believe the case law supports.

4          MR. KIRCHER:  But we think it does and I'm simply

5      preserving that position.  I think we raised that earlier in

6      the -- we did raise that earlier in the summary judgment

7      proceeding and we're simply preserving it at this stage.

8          THE COURT:  If you look at *Espy*, on page 746 and

9      738, it talks a great deal, it has that little phrase that

10     you put in your brief, but that phrase is in the middle of a

11     paragraph where it talks about why, how and why the

12     privilege can be overcome, not whether it exists or not.

13     And so, I don't believe there's authority for the

14     proposition that the documents are not privileged at all

15     because there's an investigation of wrongdoing.  I think the

16     issue is, as I set it out on August 20th, is that we get to

17     that after we decide if they're privileged at all.

18          Assuming that there's some document in the 17,000

19     that is validly covered by the deliberative process

20     privilege, what showing should I require down the road on

21     whether there is reason to believe that government

22     misconduct occurred?  Is it your position that that showing

23     is already in the record or that you need to demonstrate

24     that to me?

25          MR. KIRCHER:  Well, we've briefed that before,

1    Your Honor, and I'm happy -- obviously, if there's going to

2    be further briefing on the need issue, as I suspect there

3    would be, we will put that back in front of you.  I don't

4    think there needs to be evidence, if that's what you're

5    asking.  But we have briefed that issue more than once and

6    we certainly will brief that again.  And it's, you know,

7    it's predicated principally on the documents, and back and

8    forth, and other things that have been brought to bear in

9    this case from day one.

10            THE COURT:  But what is the specific wrongdoing

11   that you're saying these documents illuminate?  That there

12   was a knowing false statement made on February 4th?  Or that

13   it became aware that it was known after February 4th that

14   the February 4th letter was wrong and then the misstatement

15   was compounded?  Or that it just took too long to rescind

16   it?  Or that they shouldn't have relied on what the U.S.

17   Attorney and the ATF told them in the first place?  Where's

18   the --

19            MR. KIRCHER:  Your Honor, I'm simply not in a

20   position to argue that issue here today.  That's further

21   down the road in this case.  I did not come prepared to

22   argue that.  But my shorter answer is probably all of the

23   above.  Right?  There was an obstructive pattern here

24   beginning in February and ending in December.  And that's

25   what we will argue is the misconduct.  I don't know that we

 1    will -- or, that we are required to bring it to the level of

 2    some sort of mens rea, but there is a pattern here that is

 3    quite obvious.

 4          THE COURT:  Right.  I mean, reason to believe is

 5    what the case law says.  It's a very ad hoc sort of

 6    determination, that the law is clear that this privilege is

 7    more easily overcome by a showing of need than the executive

 8    communications privilege.  But I think I have to understand

 9    what the basis is for the reason to believe there's been

10    wrongdoing and what the wrongdoing is -- probably in the

11    reverse order.

12          So my question to the Department of Justice is

13    even if I say that the material is privileged, there's no

14    question that under the law we have to get to this question,

15    which is whether the privilege yields in the face of a

16    reason to believe about wrongdoing.  There is an IG report,

17    it's pretty detailed about what happened within Main Justice

18    before and after February 4th and how the information was

19    ultimately received and disseminated.

20          And one of the things that struck me when I looked

21    at it is what is the basis for continuing to assert that the

22    privilege can't be overcome when we're talking about drafts

23    of what was going to be said to Congress in May and drafts

24    about what was going to be said to Congress in October when

25    that back and forth has already quoted in detail in the

1        public portion of the IG report?

2                MS. HARTNETT:  Your Honor, I think we do agree

3        that that would be appropriately the subject of further

4        briefing, once the court is satisfied that we have a

5        properly asserted deliberative process privilege over the

6        documents, which I think we are at that point at this point.

7        But I think that we've already -- as my opposing counsel

8        pointed out, we have had some amount of briefing on this in

9        the papers.  I think the Department's position was that this

10       is going to entail a balancing of interest that was going to

11       present a problem on the theory of jurisdiction in the first

12       place, but we don't need to revisit that today.

13               We also had some argument about what the right

14       standard was.  I think we thought the Senate select standard

15       of demonstratively critical was the appropriate one for

16       deliberative process to be overcome in a context of a

17       Congressional-Executive dispute, and so we probably would

18       want to make that point to the Court again in the briefing.

19       But then even -- I think our briefing said even if the, kind

20       of, more relaxed standard applies, it would still be

21       incumbent on the Committee -- and this is from our summary

22       judgment briefing -- to demonstrate with specificity why

23       it's likely that the subpoenaed materials contained

24       important evidence and why that evidence is not available

25       from another source.

1          And so I think that the point of that briefing we

2     would make was, in a way, the IG report and having that

3     material that's already out there, having some other -- they

4     now have thousands of pages of non-deliberative material

5     related to the response to Congress that's been added to the

6     equation.  I think even before that we had thousands of

7     pages that the Department had produced.

8          I think the question would be do they actually

9     have a need for these additional documents that we are --

10    or, additional portions of the documents that we've redacted

11    that's outweighed by the important interests that are served

12    by protecting the deliberative process privilege?  And so I

13    think the appropriate next step would be to brief that

14    issue.

15         THE COURT:  Well, I'm listening to you about the

16    standard and I'm not sure that you're quoting to me the

17    standard that really goes along with deliberative process

18    privilege.  The cases that both sides have relied upon,

19    certainly the *Espy* case, which you both pointed to me over

20    and over again, talks about reason to believe.  There's

21    no -- is it absolutely impossible to get it from anyplace

22    else test.

23         So, you know, I think you may have overstated the

24    showing that they need to make to overcome this particular

25    privilege.  We're not talking about executive communications.

1    We're talking about, you know, a much more qualified

2    privilege.  And all the case law we've talked about says

3    it's an ad hoc balancing.  So, you know, I'm going to let

4    you guys brief the standard.

5         I'm going to issue an order later today because I

6    think it's clear that at least some of these records are

7    going to be found to be covered by the privilege.  And so

8    I'm going to ask people to start briefing this and I'm going

9    to come up with a schedule.  I had a shorter schedule in

10   mind because I didn't realize there was as much dispute

11   about the standards, so I'll let you brief the standard.

12        But, in terms of the Committee, I am really going

13   to require a pleading that sets forth with specificity, and

14   not simply conclusory language, what the particular

15   wrongdoing there is reason to believe occurred and the

16   specific reasons to believe it occurred.  It's well

17   established that the February 4th letter was inaccurate.  So

18   that alone is not going to be the wrongdoing we're talking

19   about.

20        I think we need to know whether it was knowingly

21   inaccurate, and then just the fact that it took until

22   December to correct it, the question is are you talking

23   about the May communication with Congress?  Are you talking

24   about the October communication with Congress?  You know,

25   what is the wrongdoing that you're saying this falls in the

1    face of?  And so that's going to have to be pretty specific.

2            And, the government submission is going to need to

3    specifically address why, in light of the IG report, the

4    privilege should cover the documents related to the drafting

5    of the May 2nd letter to Congress and the June 15th

6    testimony.  Because the IG, there's some "knew" or "should

7    have known" language in there.  And so, once you're talking

8    about knew or should-have-known and they're saying we've got

9    an investigation into whether it's wrongdoing or not, are

10   they there?  So, you'll get an order that talks about the

11   briefing that I want on that issue.

12           And finally, I guess I want to know, are there any

13   other categories of records or withholdings to which there

14   are objections that we haven't covered this morning, Mr.

15   Kircher?

16           MR. KIRCHER:  One point of clarification on what

17   you just said, Your Honor.  On the need standard, I assume

18   Your Honor is going to permit briefing on matters other than

19   the allegations of wrongdoing, because we're entitled to

20   make a need showing independent of the wrongdoing.  The

21   wrongdoing is certainly an element of that in this

22   particular case, but it's qualified privilege that, you

23   know, entitles us to make a showing of our need versus

24   theirs, even if there were no wrongdoing.

25           THE COURT:  Okay.  I understand that.

1          MR. KIRCHER:  Just to make sure --

2          THE COURT:  I just think we've had a lot of

3    pleadings in this case that have been highly pejorative,

4    highly conclusory, highly argumentative, highly press

5    release in nature, and I want this one to be specific.  I

6    really want you to help me make this decision, rather than

7    arguing to the world in general.  So, it's just a word to

8    the wise, it will be more helpful to me in that regard.

9          MR. KIRCHER:  Okay.  Am I clear, Your Honor, that

10   you're going to deem all of the deliberative process

11   assertions to be valid?

12         THE COURT:  No.  I'm saying there's at least going

13   to be some.  So we might as well start thinking about these

14   issues.

15         MR. KIRCHER:  So you would just postpone a

16   decision on that pending the need analysis?  Because if the

17   need analysis demonstrates we're entitled to all of them,

18   then presumably you wouldn't have to make --

19         THE COURT:  Until I determine what the process is

20   going to be, I don't know which one is going to get done

21   first.  But there is no question in my mind that at some

22   point we're going to need this to be briefed, and so I think

23   we might as well get started with it.  Because in the end,

24   this is where this is going to come down.

25              I mean, I've already said that e-mails back and

1    forth attaching drafts of what are we going to say to

2    Congress and what are we going to say to the press, which is

3    certainly specific enough to understand what it is, is

4    deliberative under the case law.  So now the question is

5    whether you're going to get it because your need outweighs

6    it.  So I think that's coming and it's clear enough that

7    it's coming that while I'm doing what I have to do, you guys

8    can start doing what you have to do.

9            MR. KIRCHER:  I understand that, Your Honor,

10   except that you're talking about making that need analysis

11   with respect to the 5,000 different documents.

12           THE COURT:  No, I didn't say which documents were

13   making it.  You say you need them all, every single one of

14   them, right?

15           MR. KIRCHER:  Well, they've asserted executive

16   privilege as to 5,000 of them.  What I'm trying to

17   understand is --

18           THE COURT:  No, there's more because they've

19   asserted it as to all the ones with press and Congress,

20   which was a separate category but now has to be added back

21   in if I say it's deliberative, right?

22           MR. KIRCHER:  At least according to the numbers

23   that we gave to you in November in our notice, there were

24   5,000 total deliberative process.

25           THE COURT:  I thought there were 5,000 that were

1    inadequate for other reasons.  So the 5,000 includes the

2    press and Congress, too?

3              MR. KIRCHER:  Exactly.

4              THE COURT:  Okay.  All right.

5              MR. KIRCHER:  I think that's right.  I think

6    that's right.  So all I'm saying --

7              THE COURT:  That's the universe we're talking

8    about.

9              MR. KIRCHER:  I guess what I'm asking is, is it of

10   use to the Court for us to propose some way to try to cut

11   through that 5,000, to whittle that down?

12             THE COURT:  Yes.  It is always of use to the Court

13   for us to whittle this down.  I've been asking you to do

14   that since day one.  And so I'm not saying that's the only

15   thing I'm going to be ordering you to do.  I don't know

16   because I asked you this question for the first time today,

17   and you both were, I think, grappling with the question in a

18   fair way.  But I think you're probably going to need to have

19   a chance to tell me what you think the next best step is.

20             I won't even suggest that you jointly propose the

21   next best step; that would, of course, be the best thing,

22   but is highly unlikely.  But I will want your point of view

23   on that, too.  So, you'll get a more detailed order from me

24   about what I need from you next.

25             Yes?

1        MS. HARTNETT:  I just want to be clear, Your

2   Honor.  If there's any documents that would be useful for

3   you to view in camera as you're assessing the privileges, we

4   would be happy to provide them.

5        THE COURT:  I appreciate that.  And that may be

6   what we come up with.  I mean, I think it makes -- some of

7   them the Vaughn index may be sufficient and I don't need to

8   look at the actual documents.  For other things that relate

9   to privileges, that may be necessary.  I don't know yet,

10  that's what we're trying to figure out, whether we can do --

11  I don't want to do an in camera review of 5,000 documents.

12  I just don't think that's a good use of resources or

13  necessary.

14       MS. HARTNETT:  I was also thinking more about the

15  unrelated, for example.  I just want to briefly just respond

16  to the notion that, obviously, turning the documents over to

17  the other side, it kind of obviates the whole point about

18  not turning them over in the first place.  And so for that

19  category, for example, that might be one where it could be

20  of use for you to take a look at some point.

21       MR. KIRCHER:  Just to be clear, we didn't ask for

22  them to be turned over, we asked --

23       THE COURT:  To the staff.  I know.  To counsel, to

24  you.

25       MR. KIRCHER:  Yes.

1              THE COURT:  You, as opposed to the Committee.

2              MR. KIRCHER:  At the department.

3              THE COURT:  Correct.  All right.  I understand

4    what your offer was.

5              MR. KIRCHER:  Thank you.

6              THE COURT:  All right.  Any other issues related

7    to these 17,000 documents and whether they need to be

8    produced or not that we haven't taken up today?

9              MR. KIRCHER:  No.

10             THE COURT:  I think I went through every category

11   of your motion, is that correct?

12             MR. KIRCHER:  I think so, yes.

13             THE COURT:  Is there anything else that we need to

14   talk about on behalf of the government right now?

15             MS. HARTNETT:  No, Your Honor.

16             THE COURT:  Okay.  Well, I appreciate everybody's

17   helping me focus in on where the real issues and the

18   pressure points are this morning.  I think this was helpful,

19   and I will try to continue to get this to the next stage.

20             Thank you very much everybody.

21                            *   *   *

22

23

24

25

```
1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4           I, JANICE DICKMAN, do hereby certify that the above

5    and foregoing constitutes a true and accurate transcript of

6    my stenograph notes and is a full, true and complete

7    transcript of the proceedings to the best of my ability.

8                          Dated this 5th day of August, 2015.

9

10

11                         /s/_____

12                         Janice E. Dickman, CRR, RMR
                           Official Court Reporter
13                         Room 6523
                           333 Constitution Avenue NW
14                         Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25
```