**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM, UNITED STATES HOUSE OF REPRESENTATIVES, | ) ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. 12-1332 (ABJ) |
| LORETTA E. LYNCH, Attorney General of the United States, | ) ) ) |  |
| Defendant. | ) ) ) |  |

**MEMORANDUM OPINION AND ORDER**

This case concerns a Congressional subpoena for documents from plaintiff, the Committee on Oversight and Government Reform of the United States House of Representatives ("Committee") to the defendant, the Attorney General of the United States.[1] Before the Court is plaintiff's motion to compel the production of documents [Dkt. # 103], which the Court will grant in part and deny in part.

**INTRODUCTION**

The pending motion is styled as a motion to compel, but it seeks the relief sought in the lawsuit itself: an order compelling the production of certain documents responsive to an October 11, 2011 subpoena issued by the Committee to the Attorney General for records related to Operation Fast and Furious. Compl. [Dkt. #1] ¶¶ 4, 7, 8. In particular, the action seeks those

---

1   Loretta E. Lynch replaced Eric H. Holder, Jr., as Attorney General on April 27, 2015. Accordingly, pursuant to Federal Rule of Civil Procedure 25(d), Loretta E. Lynch is substituted as defendant in this case.

records generated after February 4, 2011 that have been withheld on the grounds that they are covered by the deliberative process prong of the executive privilege. *Id.* ¶ 14.

After the lawsuit was filed, the Department of Justice took the position that this Court did not have – or should decline to exercise – jurisdiction over what the Department characterized as a political dispute between the executive and legislative branches of the government. The defense warned that it would threaten the constitutional balance of powers if the Court endeavored to weigh the Committee's stated need for the material against the executive's interest in confidential decision making, or if the Court were to make its own judgment about whether the negotiation and accommodation process to date had been adequate. Mem. in Supp. of Def.'s Mot. to Dismiss [Dkt. # 13-1] at 19–45. Individual Members of Congress also urged the Court to stay its hand and entrust the matter to the time-honored negotiation process. Memorandum Amici Curiae of Reps. Cummings, Conyers, Waxman, Towns & Slaughter in Supp. of Dismissal [Dkt. # 30] ("Mem. Amici Curiae").

In response to the motion to dismiss, the Committee argued that it was both lawful and prudent for the Court to exercise jurisdiction since the case involved a discrete, narrow question of law:

> This type of case – at bottom, a *subpoena enforcement case* – has been brought in and addressed by the courts in this Circuit many times before . . . . Moreover, this case involves the purely legal question of the scope and application of Executive privilege . . . .

Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. # 17] at 6 (emphasis in original).

The Court agreed. Citing *United States v. Nixon,* 418 U.S. 683 (1974), it ruled that it had not only the authority, but the responsibility, to resolve the conflict.

> [T]he Supreme Court held that it was "the province and duty" of the Court "'to say what the law is'" with respect to the claim of executive privilege that was presented in that case. *Id.* at 705, quoting *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177 (1803). "Any other conclusion would be contrary to the basic concept of separation of powers and the checks and balances that flow from the scheme of a tripartite government." *Id.* at 704. Those principles apply with equal force here. To give the Attorney General the final word would elevate and fortify the executive branch at the expense of the other institutions that are supposed to be its equal, and do more damage to the balance envisioned by the Framers than a judicial ruling on the narrow privilege question posed by the complaint.

Mem. Op. (Sept. 30, 2013) [Dkt. # 52] ("Mem. Op. on Mot. to Dismiss") at 17–18; *see also id.* at 15–16, citing *Comm. on the Judiciary v. Miers,* 558 F. Supp. 2d 53, 84–85 (D.D.C. 2008).

The Committee then moved for summary judgment on the grounds that as a matter of law, the executive branch could not invoke the deliberative process privilege in response to a Congressional subpoena. Pl.'s Mot. for Summ. J. [Dkt. # 61]. In the Committee's view, since the records did not involve actual communications with the President that would raise separation of powers concerns, they had to be produced. Mem. of P. & A. in Supp. of Pl.'s Mot. for Summ. J. [Dkt. # 61] ("Pl.'s Summ. J. Mem."). The Court ruled against the Committee on that issue. Order [Dkt. # 81] ("Order on Mot. for Summ. J."). It determined that there is an important constitutional dimension to the deliberative process aspect of the executive privilege, and that the privilege could be properly invoked in response to a legislative demand. *Id.* at 2, citing *In re Sealed Case,* 121 F.3d 729, 745 (D.C. Cir. 1997) ("*Espy*").

However, the Court also found that defendant's blanket assertion of the privilege over all records generated after a particular date could not pass muster, because no showing had been made that any of the individual records satisfied the prerequisites for the application of the privilege. Order on Mot. for Summ. J. at 3–4. Defendant was ordered to review the responsive

records to determine which, if any, records were both pre-decisional and deliberative and to produce any that were not. *Id.* at 4–5. Defendant was also ordered to create a detailed list identifying all records that were being withheld on privilege grounds. *Id.* at 4.

The current motion pending before the Court marks the next stage in these proceedings, as the Committee has moved to compel the production of every single record described in the list, as well as a body of material that defendant did not include in the index. Pl.'s Mot. to Compel ("Mot. to Compel") [Dkt. # 103] and Mem. of P. & A. in Supp. of Pl.'s Mot. to Compel ("Pl.'s Mem. for Mot. to Compel") [Dkt. # 103-1]. Fundamentally, the Committee takes the position that not one of the records is deliberative, and that even if some are, the privilege is outweighed in this instance by the Committee's need for the material. In particular, the Committee seeks a declaration that intra-agency communications about responding to Congressional and media requests for information are not covered by the privilege. Pl.'s Mem. for Mot. to Compel at 26–29. It also argues that the right to invoke any privilege has been vitiated by the Department's own misconduct. *Id.* at 32 n.15.

As will be explained in more detail below, the Court rejects the Committee's articulation of the scope of the privilege. In accordance with other authority from this Circuit, the Court finds that records reflecting the agency's internal deliberations over how to respond to Congressional and media inquiries fall under the protection of the deliberative process privilege. It also finds that the defendant's detailed list describes the records being withheld with sufficient detail to support the assertion of the privilege.

But, as both parties recognize, the deliberative process privilege is a qualified privilege that can be overcome by a sufficient showing of need for the material. *Espy,* 121 F.3d at 737–38.

> This need determination is to be made flexibly on a case-by-case, ad hoc basis. "[E]ach time [the deliberative process privilege] is asserted, the district court must undertake a fresh balancing of the competing interests . . . ."

*Id.*, quoting *In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992). Thus, while the determination of whether the executive exceeded his authority in withholding materials began with the sort of pure legal inquiry that undeniably rests with the judiciary, following that process to its conclusion necessarily involves the kind of balancing that may raise separation of powers concerns when the legislature is the other party involved.

In other words, now that that legal ruling that was the stated justification for the invocation of this Court's jurisdiction has been issued, prudential considerations could weigh against going further and engaging in the balancing of the competing interests. But here, that exercise can be accomplished without the sort of interference in legislative or executive matters that courts should endeavor to avoid, and the Court can decide this case without assessing the relative weight of the interests asserted by the other two co-equal branches of government.

There is no need for the Court to invade the province of the legislature and undertake its own assessment of the legitimacy of the Committee's investigation, because the Department of Justice has conceded the point: it has repeatedly acknowledged the legitimacy of the investigation. *See e.g.,* Mem. in Supp. of Def.'s Mot. to Dismiss [Dkt. # 13-1] at 2–3 (referring to "Congress's legitimate oversight interests" and "legitimate investigative concerns"); Mem. in Supp. of Def.'s Mot. for. Summ. J. & in Opp. to Pl.'s Mot. for Summ. J. [Dkt. # 63] ("Def.'s Summ. J. Mem.") at 7–9; Letter from James M. Cole to Darrell E. Issa (June 20, 2012) [Dkt. # 17-3] ("June 20 Cole Letter") at 1 ("[T]he Department has provided a significant amount of information to the Committee in an extraordinary effort to accommodate the Committee's legitimate oversight interests."); and Tr. of May 15, 2014 Hearing at 72 [Dkt. # 79] (counsel for

defendant:  "because we had had an inaccurate letter [] we believed that it was appropriate to provide them with documents explaining that letter").

Furthermore, there is no need to balance the need against the impact that the revelation of any record could have on candor in future executive decision making, since any harm that might flow from the public revelation of the deliberations at issue here has already been self-inflicted: the emails and memoranda that are responsive to the subpoena were described in detail in a report by the Department of Justice Inspector General that has already been released to the public.  *See* A Review of ATF's Operation Fast and Furious and Related Matters (Redacted), Office of the Inspector General Oversight and Review Division, U.S. Dep't of Justice (Sept. 2012) ("IG Report"), https://oig.justice.gov/reports/2012/s1209.pdf.

Therefore, the Court finds, under the unique and limited circumstances of this case, that the qualified privilege must yield, given the executive's acknowledgment of the legitimacy of the investigation, and the fact that the Department itself has already publicly revealed the sum and substance of the very material it is now seeking to withhold.  Since any harm that would flow from the disclosures sought here would be merely incremental, the records must be produced. The Court emphasizes that this ruling is not predicated upon a finding of wrongdoing.

The Committee's motion also raises issues about the withholding of records on other grounds and whether the subpoena was narrowed by agreement of the parties.  Since the Committee was quite clear when it invoked the jurisdiction of this Court that it was simply asking for a ruling on the discrete question of law that has now been decided, the Court will decline to interpose itself in the negotiations between the parties on those other issues or to rule on questions that were not posed by the complaint.  *See* Pl.'s Opp. to Mot. to Dismiss [Dkt. # 17] at 43–44 ("Once the limits and application of the deliberative process privilege in the context of

the Holder Subpoena have been declared, the parties will know how to proceed."). The Committee has assured the Court that in the past, it has been willing and able to accommodate legitimate concerns about revealing law enforcement, attorney-client privileged, or purely private information and that it will be prepared to do so in the future. *See* Pl.'s Mem. for Mot. to Compel at 22; Tr. of July 30, 2015 Hearing [Dkt. # 109] at 27–28. So now that the issues have been substantially narrowed, all that is left to accomplish is the execution of a familiar set of steps applying a familiar set of principles. Given that backdrop, notwithstanding the Committee's insistence that the time for negotiation about these particular records has passed, the Court encourages the parties to start with a fresh slate and resolve the few remaining issues with flexibility and respect.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 11, 2011, the Committee issued a subpoena to the Attorney General calling for documents related to its investigation of a law enforcement initiative known as Operation Fast and Furious. The operation, launched by the Bureau of Alcohol, Tobacco, and Firearms ("ATF") and the U.S. Attorney's office in Phoenix, Arizona in 2009, sought to address the suspected illegal flow of firearms from the United States to drug cartels in Mexico. As part of the investigation, law enforcement officers allowed straw purchasers to buy firearms illegally in the United States and take them into Mexico without being apprehended – deliberately permitting the guns to "walk" in order to track them to their destination. But after a U.S. law enforcement agent was killed in December 2010 by a bullet fired from one of these guns, the ATF's tactic came under intense scrutiny.

Congress began inquiring into Operation Fast and Furious in early 2011, and on February 4, 2011, Assistant Attorney General Ronald Weich sent a letter to Senator Charles E. Grassley,

Ranking Minority Member of the Committee on the Judiciary, denying that the tactic had been utilized or that straw purchasers were permitted to transport firearms into Mexico without being interdicted.  Letter from Ronald Weich to Charles E. Grassley (Feb. 4, 2011) [Dkt. # 17-1].  Ten months later, though, on December 2, 2011, the Deputy Attorney General officially retracted the earlier denial and confirmed that in fact, federal investigators had permitted the weapons to leave the country and enter Mexico.  Letter from James M. Cole to Darrell E. Issa (Dec. 2, 2011) [Dkt. # 17-2].  The Committee then expanded its investigation to look into the circumstances behind the Justice Department's initial inaccurate assurances, as well as when and how the Department determined that the February 4 letter was incorrect and why it took as long as it did for Congress to be informed.  As part of that effort, the Committee issued the October 11, 2011 subpoena. The Department produced a considerable volume of material that was responsive to the subpoena, but it withheld all records created on or after February 4, 2011.

This response was not satisfactory to the Committee, and the parties engaged in several months of negotiations concerning the post-February 4 documents.  Ultimately, the Committee threatened to hold the Attorney General in contempt of Congress for withholding the records. The Committee scheduled a hearing on the contempt issue for June 20, 2012, and as the date approached, additional letters were exchanged in an attempt to avert the vote.  Letter from James M. Cole to Darrell E. Issa (June 11, 2012) [Dkt. # 13-5]; Letter from Darrell E. Issa to Eric H. Holder, Jr. (June 13, 2012) [Dkt. # 63-8] ("June 13 Issa Letter"); Letter from Eric H. Holder, Jr. to Darrell E. Issa (June 14, 2012) [Dkt. # 13-4] ("June 14 Holder Letter"); Letter from James M. Cole to Darrell E. Issa [Dkt. # 13-6] (June 19, 2012) ("June 19 Cole Letter").  This effort did not bear fruit.  On June 20, 2012, the Deputy Attorney General informed the Committee that the President had asserted executive privilege over the documents in dispute – internal documents

related to the Department's response to Congress – on the grounds that their disclosure would reveal the agency's deliberative processes.  June 20 Cole Letter [Dkt. # 17-3].  His letter lies at the heart of this action.

On August 13, 2012, the Committee filed this lawsuit to enforce the October 11, 2011 subpoena, Compl. [Dkt. # 1], and the complaint was amended in January of 2013 when the incoming 113th Congress reissued the subpoena.  Am. Compl. [Dkt. # 35].  On September 30, 2013, the Court denied defendant's motion to dismiss for lack of subject matter jurisdiction, Order [Dkt. # 51], and the parties subsequently filed cross-motions for summary judgment. The Committee sought judgment on the grounds that the Attorney General could not invoke executive privilege to shield records that did not involve direct communications with the President, Pl.'s Summ. J. Mem. [Dkt. # 61], and the Department took the position that the entire set of records was covered by the deliberative process prong of the executive privilege.  Def.'s Summ. J. Mem. [Dkt. # 63].

On August 20, 2014, the Court denied both motions without prejudice, holding that the executive branch could properly invoke the deliberative process privilege in response to a legislative demand, but that it could not do so unless the prerequisites for the application of the privilege had been established.  Order on Mot. for Summ. J. at 3.

The Court ordered the defense to review each of the withheld documents and to produce all that were not both predecisional and deliberative.  *Id.* at 4.  With respect to those documents for which a claim of privilege was still being asserted, the Court ordered the Department to generate a detailed list identifying "the author and recipient(s) and the general subject matter of the record being withheld, [and] the basis for the assertion of the privilege; in particular, . . . the decision that the deliberations contained in the document precede."  *Id.*

On November 4, 2014, the Department produced 10,104 records that had been previously withheld – totaling 64,404 pages. It also provided the detailed list of the records it deemed to be privileged in whole or in part after the individualized review. Pl.'s Notice of Disputed Claims & Other Issues [Dkt. # 98] at 2–3. On December 10, 2014, it produced a revised list, which it also provided to the Court. Not. of Filing of Privilege List [Dkt. # 100].[2] Defendant provided a third revised list to plaintiff on February 19, 2015, which was not filed with the Court. Pl.'s Reply to Def.'s Opp. to Pl.'s Mot. to Compel [Dkt. # 106] ("Pl.'s Reply") at 1. Finally, on May 29, 2015, the Department notified the Court that it had re-reviewed certain material withheld from the Committee, and it transmitted a final revised detailed list to the Committee and the Court. Def.'s Not. of Subsequent Developments. [Dkt. # 107].

Based on the Court's review of defendant's final revised list, which had a total of 17,835 entries, it appears that 4082 of the documents listed are duplicates wholly contained within other documents on the list, leaving 13,753 unique documents. Of those, approximately 3307 were released in full to plaintiff. The remaining 10,446 documents were withheld in whole or part:

| Basis for Withholding | Number of Documents |
|---|---|
| Deliberative process privilege | 5342 |
| Law enforcement sensitive | 3041 |
| Privacy | 1351 |
| Other | 310 |
| Unrelated | 394 |
| No reason provided | 8 |

---

2    The Court ordered the parties to file notice of any objections to the Court making the revised list publically available on its website, Min. Order of Dec. 9, 2014, and upon receiving none, the Court posted the list to its website. *See* http://www.dcd.uscourts.gov/dcd/sites/dcd/files/DefsDetailedListofPrivDocsCtteHolder12-1332.pdf.

On January 16, 2015, plaintiff filed the instant motion to compel production of all the documents on the revised detailed list,[3] and that motion has been fully briefed.  Pl.'s Mot. to Compel [Dkt. # 103] and Pl.'s Mem. for Mot. to Compel [Dkt. # 103-1]; Def.'s Mem. in Opp. to Pl.'s Mot. to Compel [Dkt. # 104] ("Def.'s Opp. to Mot. to Compel"); Pl.'s Reply [Dkt. # 106].

## ANALYSIS

The Committee asks the Court to order the Attorney General to produce all of the post-February 4, 2011 documents that have been withheld.  The Committee's motion divides the withheld materials into several categories:

1) materials withheld under the deliberative process privilege;

2) materials for which defendant has provided no basis for the claim of privilege;

3) materials that defendant neither produced to the Committee nor included on the detailed list; and

4) materials withheld on grounds other than the deliberative process privilege.

With respect to the records the defense seeks to withhold as deliberative, the Committee argues that the descriptions in the log are insufficient to support the invocation of the privilege, the types of records described are not covered by the privilege, and the qualified privilege has been outweighed in any event.  The Court will address this category of material – which is the subject of the lawsuit – first.

## I.      Documents withheld on the basis of deliberative process privilege

As this Court has already held, the executive privilege consists of two prongs: the Presidential communications privilege and the deliberative process privilege.  While the

---

3      The Court recognizes that the motion to compel was filed and briefed before defendant produced its final revised list in May 2015, so the numbers of documents identified based on the Court's review of that list do not match those in the motion, which was based on earlier versions of the list.

Presidential communications prong of the privilege may derive more protection from the Constitution, the deliberative process privilege reaches beyond conversations with the President to protect other communications among executive branch officials "crucial to fulfillment of the unique role and responsibilities of the executive branch."  *Espy,* 121 F.3d at 736–37.  This privilege "allows the government to withhold documents and other materials that would reveal advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Id.* at 737.

For a document to be protected by the deliberative process privilege, it must be both predecisional and deliberative.  *Id.*, citing *Army Times Publ'g Co. v. Dep't of the Air Force*, 998 F.2d 1067, 1070 (D.C. Cir. 1993); *Wolfe v. Dep't of Health and Human Servcs.*, 839 F.2d 768, 774 (D.C. Cir. 1988).   So in this case, the Court directed the Attorney General to prepare a detailed list "that identifies and describes the material in a manner 'sufficient to enable resolution of any privilege claims,'" including "the author and recipient(s) and the general subject matter of the record being withheld, . . . the basis for the assertion of the privilege; . . . in particular, . . . the decision that the deliberations contained in the document precede."  Order on Mot. for Summ. J. at 4, quoting *Miers,* 558 F. Supp. 2d at 107 and Fed. R. Civ. Proc. 45(e)(2)(A)(ii).

The Committee challenges the sufficiency of the entries on the list, *see* Pl.'s Mem. for Mot. to Compel at 29–31, but the Court has reviewed the list and finds that with respect to the bulk of the material being withheld as deliberative, the Attorney General has specified the grounds for the assertion of the privilege with enough detail to permit the Court to rule on the availability of the privilege as a legal matter.  For example,

- Doc. No. 3, DOJ-FF-00003–00005, is a bulleted summary of ATF reports, described as containing "draft reforms at ATF in wake of Fast and Furious."  Revised Detailed List (Dec. 4, 2014).

- Doc. No. 251, DOJ-FF-00998–01001, is a draft email to the Mexican government regarding Fast and Furious, described as "discussing proposed email to Mexican government re FF briefings."   Revised Detailed List (Dec. 4, 2014).

- Doc. No. 484, DOJ-FF-01939–01944, is an email discussing a scheduled meeting, described as containing a "discussion of proposed personnel action and recommendations concerning internal Department management."   Revised Detailed List (Dec. 4, 2014).

The Committee's real problem with the list appears to be its contention that the sorts of deliberations that are often described should not fall within the ambit of the privilege at all. *Compare* Pl.'s Mem. for Mot. to Compel at 26–29 (arguing that deliberations about how to respond to Congress and the press are not covered by the privilege) *with* Pl.'s Mem. for Mot. to Compel at 30–32 (providing sample descriptions that it contends are insufficient involving many of the same issues, including "proposed changes to a draft letter to Congress," "discussing how to respond to quote," "how to communicate info to Congress and public").[4]

### A.  Documents reflecting the Department's internal deliberations about how to respond to Congressional and media inquiries about Operation Fast and Furious are protected by the deliberative process privilege.

The deliberative documents at the center of this litigation concern communications within the Department about how to respond to press and Congressional inquiries into Operation Fast and Furious.   In its complaint and motion for summary judgment, the Committee took the position that these materials could not lawfully be withheld from the legislature because they did not involve communications with the President, and the deliberative process privilege did not

---

[4]     Plaintiff also asserted that there are fifty-five documents that were withheld as deliberative process privileged in defendant's revised detailed list of December 4, 2014 for which no "Withholding Description" was provided.  Pl.'s Mem. for Mot. to Compel at 25; Ex. I to *id.*   Based upon the Court's review of the final list of May 29, 2015, it appears that only document, Doc. No. 9087, remains listed as deliberative process privileged with the Withholding Description column left blank.   Because defendant did not provide an adequate description of why this document is covered by the privilege, defendant must produce it to plaintiff.

have the same constitutional dimension as the executive communications privilege.  In its order of August 20, 2014, the Court held that the Attorney General could properly invoke the deliberative process prong of the executive privilege in response to a Congressional subpoena, but that it was necessary to do so on a document-by-document basis.  Order on Mot. for Summ. J. at 2–4.

Now the Committee contends that the documents that survived that review are not covered by the deliberative process privilege because the privilege only applies to deliberations concerning the development of policy.  *See* Pl.'s Mem. for Mot. to Compel at 26–27 (asserting that the privilege allows "agency decisionmakers to engage in that frank exchange of opinions and recommendations necessary to the formulation of *policy* without being inhibited by fear of later public disclosure" and must reflect "the 'give-and-take' of the deliberative process and contain[] opinions, recommendations, or advice about agency *policies*") (emphasis added by plaintiff) (citations omitted); *see also* Pl.'s Mem. for Mot. to Compel at 27, quoting  *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 875 (D.C. Cir. 2009) ("To the extent the documents . . . [do not] make recommendations for *policy change* . . . they are not predecisional and deliberative despite having been produced by an agency that generally has an advisory role.") (emphasis added by plaintiff).[5]

Notwithstanding the Committee's added emphasis on the word "policy" found in selected excerpts from opinions, the precedent that governs this Circuit does not hold that the privilege is limited to deliberations concerning the formulation of policy.

---

5      Given this argument, the Committee does not appear to be challenging the application of the privilege to records that have been plainly described as dealing with the development of policy, such as Doc. No. 3, a bulleted summary of ATF reports containing "draft reforms at ATF in wake of Fast and Furious."  DOJ-FF-00003–00005, Revised Detailed List (Dec. 4, 2014).

The purpose of the privilege is to protect the decision-making process within government agencies and to encourage "the frank discussion of legal and policy issues" by ensuring that agencies are not "forced to operate in a fishbowl." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993), quoting *Wolfe*, 839 F.2d at 773. The Court of Appeals has applied that privilege to such mundane operational matters as the selection of a vendor to provide data retrieval services. *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 575 F.2d 932, 935 (D.C. Cir. 1978) ("While [plaintiff] correctly notes that the end product of these Air Force deliberations on the [Mead Data Central] proposal is not a 'broad policy' decision, that deliberation is nonetheless a type of decisional process that Exemption 5 seeks to protect from undue public exposure.").[6] *See also In re Apollo Grp., Inc. Sec. Litig.*, 251 F.R.D. 12, 29 (D.D.C. 2008) (holding that documents reflecting the Department of Education's review of a university's compliance with Title IV were covered by the privilege and rejecting the argument that a specific policy judgment is necessary for the privilege to apply because "the privilege serves to protect the processes by which 'governmental decisions' as well as 'policies' are

---

6      The Committee cites *New York Times Co. v. U.S. Dep't of Defense*, 499 F. Supp. 2d 501, 514 (S.D.N.Y. 2007) for the proposition that the privilege does not reach "routine operating decisions." Pl.'s Mem. for Mot. to Compel at 26, but it is the *Mead Data* opinion that has precedential value here.

formulated"), citing *Espy*, 121 F.3d at 737 and *NLRB v. Sears, Robuck & Co.*, 421 U.S. 132, 150 (1975).[7]

And even if one were to draw a distinction between operational and policy-related matters, in *ICM Registry, LLC v. Dep't of Commerce,* 538 F. Supp. 2d 130 (D.D.C. 2008), the district court recognized that internal deliberations about public relations efforts are not simply routine operational decisions: they are "deliberations about policy, even if they involve 'massaging' the agency's public image." *Id.* at 136 (holding that internal e-mails about how to present an agency decision to the public were covered by the deliberative process privilege). Other courts in this district have reached similar conclusions. *See Judicial Watch v. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C 2010) (holding that documents concerning "how to respond to on-going inquiries from the press and Congress" about the entry of a government witness and Mexican national into the United States fell under the deliberative process privilege); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 83 (D.D.C. 2007) (finding that deliberative process privilege covered email messages discussing the agency's response to news article); *Judicial Watch, Inc. v. Reno,* No. 00-0723, 2001 WL 1902811 (D.D.C. Mar. 30, 2001), at *3 (holding that deliberations about

---

7      Even the cases the Committee cites indicate that the privilege covers agency deliberations about decisions, as well as the formulation of policy positions.  In *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 677 (D.C. Cir. 1981), the Court stated, "the privilege protects documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated . . . ."  *See also Paisley v. CIA*, 712 F.2d 686, 698–99 (D.C. Cir. 1983), vacated on other grounds, 724 F.2d 201 (D.C. Cir. 1984) (holding that in analyzing whether materials are protected from disclosure under Exemption 5 of FOIA – which protects materials covered by the deliberative process privilege – a "court must first be able to pinpoint an agency decision or policy to which these documents contributed," and stating that the decision whether to prosecute an individual is the type of decision protected by the privilege).

"how to handle press inquiries and other public relations issues" are covered by Exemption 5 under FOIA).

Following the same reasoning, the Court holds that documents withheld by defendant that reveal the Department's internal deliberations about how to respond to press and Congressional inquiries into Operation Fast and Furious are protected by the deliberative process privilege.[8]

**B.**     **Plaintiff's need for the withheld documents outweighs the concerns that underlie the privilege in this case because the substance of these internal deliberations has already been made public.**

On August 20, 2014, the Court ruled on the central issue it was asked to address in this lawsuit:  are internal agency documents that do not involve communications with the President covered by the executive privilege?  The answer was yes, if the documents are both deliberative and pre-decisional.   And the Court has now ruled on the subsidiary issue it was subsequently asked to address:  does that deliberative process prong of the executive privilege extend to cover internal discussions about communications with Congress or the press?  The answer to that question is yes as well.

The decision that these withheld documents are privileged is just the first step of a two-step analysis, though, because the law is clear that the deliberative process privilege is a qualified one.  *Espy*, 121 F.3d at 737.

> [C]ourts must balance the public interests at stake in determining whether the privilege should yield in a particular case, and must specifically consider the need of the party seeking privileged evidence.

*Id.* at 746.

---

8      In *Waters v. U.S. Capitol Police Bd.*, 218 F.R.D. 323, 324 (D.D.C. 2003), a Magistrate Judge determined that a document about "a particular investigation rather than the adoption of a policy that applies to all cases of a particular nature or type" is not covered by the privilege, but this Court is not bound to follow that opinion, which is not directly on point in any event.

Therefore, the question of whether the privilege has been outweighed is an essential aspect of the legal analysis the Court agreed to undertake, and this second step involves determining whether plaintiff's need for the documents outweighs the defendant's need to protect them.   To resolve this question, the Court must balance the competing interests on a flexible, case by case, ad hoc basis, considering such factors as the relevance of the evidence, the availability of other evidence, the seriousness of the litigation or investigation, the harm that could flow from disclosure, the possibility of future timidity by government employees, and whether there is reason to believe that the documents would shed light on government misconduct, all through the lens of what would advance the public's – as well as the parties' – interests.  *Id.* at 737–38.

One factor the *Espy* opinion directs the balancing judge to consider is whether the government is a party to the litigation, *id.* at 746, and in this case, the "government" is on both sides of the dispute.   Under those circumstances, the necessary "ad hoc" balancing could give rise to the very concerns that prompted the Attorney General to argue that the case should be dismissed on prudential grounds and the Ranking Member of the Committee and other representatives to file an amicus brief in support of the motion.   Mem. Amici Curiae at 9 (arguing that "this case implicates considerations of self-protection that are among the most important reasons for the rules of judicial restraint discussed above – to enable courts to resist being enlisted as one branch's pawn in political fights").

The Court is mindful of the principles that caution against judicial intervention in a dispute between the other two branches, and it recognizes that those principles derive from the balance of separate powers carefully enunciated in the Constitution.  *See Allen v. Wright,* 468 U.S. 737, 752 (1984), abrogated on other grounds*, Lexmark Int'l, Inc. v. Static Control*

*Components, Inc.*, 134 S. Ct. 1377 (2014) ("federal courts may exercise power only in the last resort . . . and only when adjudication is consistent with a system of separated powers and [the dispute is one] traditionally thought to be capable of resolution through the judicial process") (internal quotation marks omitted).  But in the unique situation presented here, the Court can decide this issue based on undisputed facts, without intruding upon legislative or executive prerogatives and without engaging in what could otherwise become a troubling assessment of the relative merit and weight of the interests being asserted by the either party.

Looking at the *Espy* factors, the Court first observes that the Attorney General has repeatedly firmly acknowledged the seriousness and legitimacy of the Committee's investigation.  *See, e.g.,* Reply in Supp. of Def.'s Mot. to Dismiss [Dkt. # 27] at 1 ("The Department has never taken the position that the Committee lacks the authority to investigate . . . ."); Mem. in Supp. of Def.'s Mot. to Dismiss [Dkt. # 13-1] at 10 ("Ordinarily, the Department does not provide to Congress internal Executive Branch materials generated in the course of responding to a congressional inquiry.  But in light of the acknowledged inaccuracies in the February 4 Letter, the Department made a rare exception to its recognized protocols . . . . The Department thereby gave the committee unprecedented access to deliberative materials reflecting how the letter came to be drafted.") (internal quotations omitted).  And the defense acknowledged the relevance of the materials sought here when it emphasized to the Court that given the importance of the issues at stake, the Department had asked its Inspector General to review the same records in order to answer the same questions.  *See* Mem. in Supp. of Def.'s Mot. to Dismiss at 9–10.

With respect to the harm that could flow from disclosure, the Department has explained that the privilege was invoked because the release of deliberative records concerning

communications with Congress would cause significant damage.  "In particular, 'it would inhibit the candor of such Executive Branch deliberations in the future and significantly impair the Executive Branch's ability to respond independently and effectively to congressional oversight.'"  Mem. in Supp. of Def.'s Mot. to Dismiss at 16, quoting Letter from Eric H. Holder, Jr. to the President (June 19, 2012) ("June 19 Holder Letter") at 1–2.[9]  The law recognizes the legitimacy of those concerns, and the principle that the Department sought to vindicate to protect its deliberations in the future has been upheld in this opinion and in the Court's previous rulings.

But the Court notes that in this case, the Department has pointed repeatedly to the existence and thoroughness of the Inspector General investigation.  *See* Mem. in Supp. of Def.'s Mot. to Dismiss at 17–18 (stating that the "[t]he IG Report provides an extensive description of the very events that the Committee has pursued here, . . . the Department's responses to Congress as they related to the disputed statements in the February 4 letter, . . . and the withdrawal of the February 4 letter"); Reply in Supp. of Def.'s Mot. to Dismiss [Dkt. # 27] at 3 ("the IG report . . . has changed the landscape, releasing a vast amount of information"); and *id.* at 24 (the IG report and the release of related documents "comprehensively addressed the Department's response to congressional inquiries").  While the Department outlined these circumstances as part of the its effort to persuade the Court to stay its hand altogether, and they relate – somewhat – to the *Espy*

_____

9       The letter is not attached to defendant's motion to dismiss, but a copy is available on plaintiff's website at https://oversight.house.gov/wp-content/uploads/2012/08/May-19-2011-Holder-to-Obama.pdf.

factor of whether the information can be obtained elsewhere,[10] in the end, they serve to persuade the Court that whatever incremental harm that could flow from providing the Committee with the records that have already been publicly disclosed is outweighed by the unchallenged need for the material.

What harm to the interests advanced by the privilege would flow from the transfer of the specific records sought here to the Committee when the Department has already elected to release a detailed Inspector General report that quotes liberally from the same records?  *See* IG Report at 329–417; *see also* Reply in Supp. of Def.'s Mot. to Dismiss at 25 (stating that the IG Report "discloses vast amounts of information that the Committee purported to seek in its Complaint").  The Department has already laid bare the records of its internal deliberations – and even published portions of interviews revealing its officials' thoughts and impressions about those records. While the defense has succeeded in making its case for the general legal principle that deliberative materials – including the sorts of materials at issue here – deserve protection even in the face of a Congressional subpoena, it can point to no particular harm that could flow from compliance with this subpoena, for these records, that it did not already bring about itself.

Also, in this particular case, it is prudent for the Court to resolve the matter given the failure of the negotiation and accommodation process with respect to this particular issue to date. The parties have been wrangling over the applicability of the deliberative process privilege since

---

10      The existence of the IG report does not necessarily establish that the evidence sought can be obtained elsewhere, because the report described the emails and internal documents and quoted them in part, but the source materials were not attached to the published report. According to defendant, though, the documents "referenced in the report" were provided to the Committee, Mem. in Supp. of Def.'s Mot. to Dismiss at 18, and that circumstance undermines the Committee's repeated assertions that the Department has been engaged in a wrongful exercise to conceal the truth.  But given the fact that through the report, the barn door on these issues has been thrown wide open, why should Congress, if it is pursuing a legitimate investigation, be limited to the records selected by the Inspector General for inclusion in his report?

2011, and the Court took the extraordinary step of delaying its proceedings twice to refer the matter to a senior U.S. District Judge to assist in the process, but those efforts did not succeed.

So, under the specific and unique circumstances of this case, the Court finds that the qualified privilege invoked to shield material that the Department has already disclosed has been outweighed by a legitimate need that the Department does not dispute, and therefore, the records must be produced.  This ruling is not predicated on a finding that the withholding was intended to cloak wrongdoing on the part of government officials or that the withholding itself was improper.

## II.  Withholdings and redactions for which defendant asserted no basis for its claim of privilege

There are three smaller sets of records that present other concerns.  First, the Committee complains that defendant has withheld several documents without identifying any grounds for the claim of privilege – that is, the "Withholding Basis" column of the detailed list was left blank.  Pl.'s Mem. for Mot. to Compel at 8–9.  According to plaintiff, the revised detailed list of December 4, 2014 included 380 of these entries.  *Id.* at 8; Ex. E to *id.*  The Court's review of the final revised detailed list of May 29, 2015 – excluding duplicate documents and documents released in full – identified eight documents for which the "Withholding Basis" column remains blank.

| 883 | DOJ-FF-03842 to DOJ-FF-03844 |
|------|------------------------------|
| 6592 | DOJ-FF-25558 to DOJ-FF-25558 |
| 6594 | DOJ-FF-25561 to DOJ-FF-25561 |
| 7038 | DOJ-FF-26927 to DOJ-FF-26927 |
| 7987 | DOJ-FF-29733 to DOJ-FF-29736 |
| 8002 | DOJ-FF-29766 to DOJ-FF-29769 |

| 9685 | DOJ-FF-37439 to DOJ-FF-37441 |
| 14768 | DOJ-FF-60507 to DOJ-FF-60507.012 |

These records must be produced.

The Court ordered defendant to prepare a detailed list that would "identif[y] and describe[] the material in a manner 'sufficient to enable resolution of any privilege claims.'" Order on Mot. for Summ. J. [Dkt. # 81] at 4, quoting *Miers,* 558 F. Supp. 2d at 107; *see also* Fed. R. Civ. Proc. 45(e)(2)(A)(ii). Failure to provide any grounds for withholding particular records does not comply with the order or enable the Court to resolve defendant's privilege claims as to those documents. Accordingly, defendant must produce the material withheld without any proffered justification.

## III. Documents that defendant did not produce originally and did not include on the detailed list

In its motion, the Committee asks the Court to compel defendant to produce *all* of the responsive records in its possession dated after February 4, 2011, including records that were not described in defendant's detailed list of documents covered by the deliberative process privilege. Pl.'s Mem. for Mot. to Compel at 3–8. The Department explains that the documents it did not include in the list are those that the Committee "took off the table" in 2012 when the parties were attempting to negotiate a resolution to the looming contempt proceedings. Def.'s Opp. to Mot. to Compel [Dkt. # 104] at 35–45. According to defendant, the Committee agreed to narrow the scope of the subpoena at that time, so when the President asserted the executive privilege in June of 2012, his action covered only the set of materials that was still at issue. Thus, defendant argues, any other records are not the subject of this lawsuit challenging that assertion of the privilege. *See id.* at 36–38.

The Committee takes the position that any accommodations were simply offers that were rejected by the Attorney General, and that this action to enforce a valid subpoena covers all records responsive to that subpoena.  Pl.'s Mem. for Mot. to Compel at 3–8.

Both parties point to a series of communications in the spring of 2012 to support their positions.   On May 3, 2012, Committee Chairman Darrell Issa reminded the rest of the Committee that when the Committee issued the subpoena "for Justice Department documents, the Committee specified 22 categories of documents it required the Department to produce." Mem. from Darrell E. Issa to Members, Committee on Oversight and Government Reform (May 3, 2012) ("May 3 Issa Mem."), at 9.[11]  He then reported:

> [S]ome important areas remain cloaked in secrecy:
>
> - How did the Justice Department finally come to the conclusion that Operation Fast and Furious was "fundamentally flawed"? . . .
>
> - What senior officials at the Department of Justice were told about or approved the controversial gunwalking tactics that were at the core of the operation's strategy? . . .
>
> - How did inter-agency cooperation in a nationally designated Strike Force fail so miserably in Operation Fast and Furious?

May 3 Issa Mem. at 7–9.

After further negotiations, Speaker of the House Rep. John Boehner wrote a letter to the Attorney General stating that although the Department had provided some documents in response to the subpoena, "two key questions remain unanswered:  first, who on your leadership team was informed of the reckless tactics used . . . and, second, did your leadership team mislead

---

11     This document is available at http://oversight.house.gov/wp-content/uploads/2012/05/ Update-on-Fast-and-Furious-with-attachment-FINAL.pdf.

or misinform Congress in response to a Congressional subpoena?"  Letter from John Boehner to

Eric H. Holder, Jr. (May 18, 2012) [Dkt. # 63-9] ("May 18 Boehner Letter") at 1.[12]

On June 13, 2012, the Committee wrote to the Attorney General:

> [A] May 3, 2012, Committee memo identified three categories of
> documents necessary for Congress to complete its investigation
> into Operation Fast and Furious.  On May 18, House leaders and I
> narrowed this request to two categories:  (1) information showing
> the involvement of senior officials during Operations Fast and
> Furious, and (2) documents from after February 4, 2011, related to
> the Department's response to Congress and whistleblower
> allegations. . . .
>
> [O]n Monday, June 11, the Committee further narrowed the focus
> of what the Justice Department needs to produce to avoid
> contempt.  This further accommodation . . . focused on the
> aforementioned relevant materials created after February 4, 2011 –
> after Operation Fast and Furious ended.  This accommodation by
> the Committee effectively eliminated the dispute over information
> gathered during the criminal investigation of Operation Fast and
> Furious . . . .  Despite this proposed compromise by the
> Committee, the Department has not indicated a willingness to
> accept these terms.

June 13 Issa Letter at 1 [Dkt. # 63-8].

On June 14, 2012, the Attorney General responded to the Committee, expressing

"appreciat[ion] that the Committee has narrowed its request for information related to its review

of Operation Fast and Furious and now no longer seeks sensitive law enforcement information

arising out of that investigation."  June 14 Holder Letter [Dkt. # 13-4] at 1.

The parties met on June 19, 2012 but failed to resolve the impasse.  *See* June 19 Cole

Letter [Dkt. # 13-6] at 1.

---

12      According to defendant, this accommodation eliminated plaintiff's demand for
information about "how the inter-agency task force failed."  Def.'s Opp. to Mot. to Compel at
37, quoting H.R. REP. NO. 112-546, at 38 ("As an accommodation to the Department, the letter
offered to narrow the scope of documents the Department needed to provide in order to avoid
contempt proceedings.").

That same day, the Attorney General wrote a letter to the President about the matter. "The Committee has made clear that its contempt resolution will be limited to internal Department 'documents from after February 4, 2011, related to the Department's response to Congress.'"  June 19 Holder Letter, quoting June 13 Issa Letter at 1–2.  He asked the President "to assert executive privilege over *these* documents."  *Id.* at 1 (emphasis added).  "They were not generated in the course of the conduct of Fast and Furious.  Instead, they were created . . . in the course of the Department's deliberative process concerning how to respond to congressional and related media inquiries into that operation."  *Id.* at 1–2.

On June 20, 2012, Deputy Attorney General Cole advised the Committee of the President's decision on the Attorney General's request:  "I write now to inform you that the President has asserted executive privilege over the relevant post-February 4, 2011, documents." June 20 Cole Letter [Dkt. # 17-3] at 1.

According to defendant, the parties' negotiations left at issue only the "documents the Department refuse[d] to produce on the grounds that they reflect internal Department deliberations."  Def.'s Opp. to Mot. to Compel at 29, quoting June 13 Issa Letter.  It appears, as the complaint alleges and the records reflect, that it was this narrowed set that was submitted to the President for his consideration, and that the President's assertion of executive privilege related to those particular deliberative materials.  *See* Am. Compl. ¶¶ 14–15.  And it also appears from the correspondence that the focus of the Committee's inquiry became more sharply defined over time.  But it is not clear from a review of the communications that the parties agreed that the Committee would forego any interest in the broader universe of responsive records for all time since there was no meeting of the minds.  Yes, the Committee offered to take several categories of documents off the table, and yes, the Chairman said that this "effectively eliminated" the

dispute over records created during the ongoing law enforcement operation, but it appears that those offers were made in the context of a negotiation, in return for something the Committee never received.

In any event, the Court is not obligated to unravel all of the threads that have become tangled in this dispute, and it would not be prudent for it to do so.  It is not necessary to decide which of the parties' unduly argumentative pleadings – which rely heavily on their own self-serving correspondence – characterizes the state of the negotiations more accurately.  And the Court does not need to define the scope of the "post-February 4 subset," a term apparently coined by the Committee and used in the complaint but none of the previous correspondence, or the "Executive Privilege Set," a term put forward by counsel for the Department.  *See* Pl.'s Reply [Dkt. # 106] at 2, 3, 6, and 14.  In the end, the Court did not – and it should not – accept an assignment to supervise the entire contentious relationship between these parties.  It took jurisdiction over the single, legal issue presented by the complaint, and what the lawsuit is about is clear.

The lawsuit challenged the Attorney General's withholding of documents on the grounds of executive privilege, and the correspondence reveals that the President asserted executive privilege over the same records underlying the Committee's decision to hold the Attorney General in contempt:  those related to the Department's response to the congressional investigation into Operation Fast and Furious.  *See also* Am. Compl. ¶¶ 14–15.

As the Committee explained in both the amended complaint[13] and its opposition to the defendant's original motion to dismiss:

> The Committee legally is entitled to all documents responsive to the Holder Subpoena that have not been produced. Nevertheless, in this action, the Committee seeks to enforce that subpoena only as to a subset of post-February 4, 2011 responsive documents (the "Post-February 4 Subset," Compl. ¶ 62). That subset is particularly relevant to the Committee's efforts to determine whether DOJ deliberately attempted to obstruct the Committee's investigation by, among other things, lying to the Committee or otherwise providing it with false information.
>
> The principal legal issue presented in this case is whether the Attorney General may withhold this responsive subset on the basis of the President's assertion of Executive privilege over internal agency documents that reflect no advice to or communications with him.

Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. # 17] at 3.  Indeed, the Committee urged the Court to exercise jurisdiction to resolve the case precisely because it presented such a narrow, "quintessentially legal" question:

> The dispute here revolves around the applicability of the deliberative process privilege – which the Attorney General casts as a form of Executive privilege – to a congressional subpoena. By determining (i) whether this privilege may validly be asserted in response to the Holder Subpoena, and (ii) whether the Attorney General's failure to produce to the Committee the Post-February 4 Subset of documents is without legal justification and violates his legal obligations to the Committee, *see* Compl. ¶¶ 62–81, the Court definitively will resolve the controversy between the parties . . . .

---

13     Am. Compl. Introduction at 3 ("While the Committee is entitled to all documents responsive to the Holder Subpoena that have not been produced, the Committee seeks in this action to enforce the Holder Subpoena only as to a limited subset of responsive documents, namely those documents relevant to the Department's efforts to obstruct the Committee's investigation. The principal legal issue presented here is whether the Attorney General may withhold that limited subset on the basis of "Executive privilege" where there has been no suggestion that the documents at issue implicate or otherwise involve any advice to the President, and where the Department's actions do not involve core constitutional functions of the President."); *see also* Am. Compl. ¶ 67.

> Once the limits and application of the deliberative process
> privilege in the context of the Holder Subpoena have been
> declared, the parties will know how to proceed.

*Id.* at 43–44.

According to the Committee, then, this Court's work is done, and the Court agrees.

What the Court undertook to address is whether the Attorney General could lawfully withhold those responsive documents dated after February 4 over which the executive had asserted the deliberative process privilege. On August 20, 2014, the Court answered the primary legal question and ruled that that the deliberative process privilege was a legitimate prong of the constitutionally-based executive privilege that could be validly asserted in response to a Congressional subpoena to shield records as long as they were both deliberative and predecisional. Order on Mot. for Summ. J. [Dkt. # 81]. The Court went further today and answered the remaining subsidiary legal question: whether internal deliberations concerning communications with the press and Congress fell within the scope of the privilege.

The Court has already ordered that any records that were withheld on June 20, 2012 but were not both deliberative and predecisional had to be produced, Order on Mot. for Summ. J. at 4, and, applying the *Espy* factors, it has ordered today that even the privileged, deliberative records related to how the Department would respond to congressional and related media inquiries into Operation Fast and Furious must also be produced. But any responsive documents that were not embraced in that privilege assertion are an entirely separate matter, and intervention in that dispute would entangle the Court in an ongoing political dispute of the sort that is not suitable to judicial resolution. *See Allen,* 468 U.S. at 752; *see also Baker v. Carr,* 369 U.S. 186, 217 (1962); *United States v. AT&T,* 551 F. 2d 384, 390 (D.C. Cir. 1976). The unresolved legal issue that posed the primary impediment to a negotiated solution has been

alleviated, and the process of negotiation and accommodation has not been exhausted with respect to any of the other issues.

## IV.     Documents and redactions withheld on a basis other than the deliberative process privilege

Plaintiff also asserts that defendant must be ordered to produce any documents that were either redacted or withheld in their entirety for reasons other than the deliberative process privilege, Pl.'s Mem. for Mot. to Compel at 9–24 – which defendant withheld because they contained "certain law enforcement sensitive material, records implicating sensitive foreign policy concerns, attorney-client privileged information, material protected by the attorney work product doctrine, and personal privacy information."  Def.'s Opp. to Mot. to Compel at 27–28. These issues are best left to the process of negotiation and accommodation as well.

The Committee takes the position that these privileges have been waived since the defense has never asserted them in this litigation.  Pl.'s Mem. for Mot. to Compel at 10–14; Pl.'s Reply at 8–11.  While both parties made it clear that the litigation was about the scope of the deliberative process privilege, and defendant formally eschewed any reliance on the Presidential communications privilege, Joint Status Report [Dkt. # 32] at 5, it has not been established that the Department waived its right to rely on the other grounds as it ordinarily does in response to Congressional subpoenas.  *See* Letter from James M. Cole to Darrell E. Issa (May 15, 2012) [Dkt. # 63-3] (explaining why law enforcement sensitive information was redacted from document productions); Letter from Ronald Weich to Darrell E. Issa (Apr. 19, 2012) (requesting that the Committee refrain from contacting or subpoenaing cooperating and other witnesses in indicted federal criminal cases as part of its investigation of Operation Fast and Furious while the criminal matters remain pending), https://oversight.house.gov/wp-content/uploads/2012/08/April-19-2011-Weich-to-Issa.pdf; *see also* Mem. Amici Curiae at 15–16 [Dkt. # 30].

Indeed, at oral argument, counsel for the Committee acknowledged that these are privileges that are regularly respected in legislative requests for information as a matter of comity.  But he took the position that the Committee "does not have sufficient trust in the Department of Justice to take the Department's word on [redactions]."  Tr. of July 30, 2015 Hearing [Dkt. # 109] at 49.  The legitimacy of these privileges is not an issue that was presented in the complaint, and prudential concerns dictate that these questions are more appropriately resolved by the parties in the first instance.  As for whether the redactions are what they purport to be, the Court notes that counsel for even the most disputatious parties are often called upon to trust each other, and that the judiciary relies regularly on declarations by the executive branch that matters redacted from FOIA productions are what they are described to be in the *Vaughn* index.  *See Loving v. U.S. Dep't of Def.,* 550 F.3d 32, 41 (D.C. Cir. 2008) (holding that district court had not abused its discretion by relying on agency's *Vaughn* index and declaration in determining whether a disputed document contained segregable portions); *Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau*, 60 F. Supp. 3d 1, 13 (D.D.C. 2014) ("The reviewing court may rely on the description of the withheld records set forth in the Vaughn index and the agency's declaration that it released all segregable information.").  The Court has been provided with no reason to believe that its assistance is needed to verify for counsel for one branch of government assertions made in pleadings by an officer of the court representing another, equal branch of government.  If in the end, a neutral is required to read each individual redaction and confirm that what the Department claims is simply a name or a telephone number is in fact a name or a telephone number, the parties can arrange for that on their own.

## CONCLUSION

For the reasons stated above, it is **ORDERED** that plaintiff's motion to compel [Dkt. # 103] is **GRANTED** insofar as it calls for the production of documents responsive to the October 11, 2011 subpoena that concern the Department of Justice's response to congressional and media inquiries into Operation Fast and Furious which were withheld on deliberative process privilege grounds, and it is **GRANTED** with respect to the nine documents for which no justification for the invocation of the privilege has been provided:  document numbers 9087, 883, 6592, 6594, 7038, 7987, 8002, 9685, and 14768.  In all other respects, it is **DENIED**.  Records subject to this order shall be produced to plaintiff by February 2, 2016.

It is further **ORDERED** that by February 2, 2016, defendant shall produce to plaintiff all segregable portions of any records withheld in full or in part on the grounds that they contain attorney-client privileged material, attorney work product, private information, law enforcement sensitive material, or foreign policy sensitive material.  Whether any additional records or portions of records are to be produced is a matter to be resolved between the parties themselves.

Finally, it is further **ORDERED** that the parties shall file a notice by February 2, 2016 setting forth their joint position (or separate positions if they cannot agree) on whether, in light of this order resolving all of the pending issues in the case, the case should now be dismissed as moot, and if not, how the Court should proceed.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE:  January 19, 2016

32