**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>*Plaintiff*,<br><br>v.<br><br>JEFFERSON B. SESSIONS III, in his official capacity as Attorney General of the United States,<br><br>*Defendant*. | Case No. 1:12-cv-01332 (ABJ) |

# EXHIBIT A

# Conditional Settlement Agreement

This Conditional Settlement Agreement (the "Agreement") is entered into as of the last date set forth below by and between the Committee on Oversight and Government Reform of the United States House of Representatives (the "Committee") and the Honorable Jefferson B. Sessions, III, in his official capacity as Attorney General of the United States (the "Department").

WHEREAS, the Committee is the appellant and the Department is the appellee in an appeal pending in the United States Court of Appeals for the D.C. Circuit (the "Court of Appeals"), styled *Committee on Oversight and Government Reform of the United States House of Representatives v. Sessions*, No. 16-5078 (D.C. Cir.) (the "Appeal"), arising out of litigation commenced by the Committee against the Department in the United States District Court for the District of Columbia (the "District Court"), styled *Committee on Oversight and Government Reform of the United States House of Representatives v. Sessions*, No. 1:14-cv-01967-RMC (the "Lawsuit"); and

WHEREAS, the Committee and the Department (collectively, the "Parties") now desire to attempt to resolve amicably the matters in controversy between them in the Lawsuit giving rise to this Appeal;

NOW THEREFORE, in consideration of the mutual covenants contained herein, the Parties agree as follows:

1. Settlement of the Parties' dispute is contingent upon vacatur of the District Court's orders of August 20, 2014 and January 19, 2016 (the "Orders"). Accordingly, upon execution of this Agreement, the Parties will promptly file with the District Court a motion for an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1 ("Motion for Indicative Ruling"), substantially as set forth in Exhibit A hereto, asking that court to issue an order (the "Indicative Ruling") stating that (a) if the Court of Appeals remands the case to the District Court at the Parties' request, the District Court will hold the case in abeyance pending the Parties' efforts to achieve final resolution of their dispute in accordance with the terms of this Agreement, and (b) if the Parties thereafter jointly certify that they have achieved final resolution of their dispute in accordance with the terms of this Agreement, the District Court will vacate the Orders and dismiss the Lawsuit with prejudice.

2. If the District Court declines to grant the motion described in paragraph 1 above, or indicates that it would enter other relief not jointly supported by the Parties, this Agreement shall be of no force and effect and the Parties shall be returned to their respective positions prior to execution of this Agreement. If the District Court issues the Indicative Ruling, the Parties will promptly file with the Court of Appeals a motion for remand pursuant to Federal Rule of Appellate Procedure 12.1 ("Motion for Remand"), substantially as set forth in Exhibit B hereto, asking that court to retain jurisdiction of the Appeal but to hold the Appeal in abeyance and remand to the District Court so that the Parties can attempt to achieve final resolution of their dispute in accordance with the terms of this Agreement.

3. If the Court of Appeals denies the Motion for Remand, this Agreement shall be of no force and effect and the Parties shall be returned to their respective positions prior to execution of this Agreement. If the Court of Appeals grants the Motion for Remand and enters an order retaining jurisdiction but holding the Appeal in abeyance and remanding the case to the District Court (the "Remand Order"), the Parties will seek in good faith to achieve final resolution of their dispute in accordance with the terms of this Agreement, as set forth below.

4. The Parties recognize that the Executive Branch of the United States Government ("Executive Branch") continues to disagree with the District Court's non-merits holdings, including its conclusion that the Committee had standing and a cause of action to bring this suit. The Parties agree that because subsequent developments have obviated the need to resolve those issues in an appeal in this case, the District Court's holdings on those issues should not in any way control the resolution of the same or similar issues should they arise in other litigation between the Committee and the Executive Branch, and hereby waive any right to argue that the judgment of the District Court or any of the District Court's orders or opinions in this case have any preclusive effect in any other litigation.

5. Within 30 days after entry of the Remand Order, the Department will produce to the Committee in electronic format all documents (including previously withheld material) that it previously offered to make available to the Committee *in camera* in its letter of June 17, 2016, subject only to the redactions identified in that letter and to the following conditions, which are offered by the Committee purely as an accommodation: the Committee will store these documents exclusively on (a) a computer that is not connected to either the Internet or the House computer network and that is physically located in a locked area of the Committee's offices, or (b) removable digital media that will be kept in a locked container. The Committee will give the Department written notice seven calendar days before publicly releasing any of the newly unredacted material. During the seven-day notice period and prior to the Committee's public release of any such material, the Department will not disclose to any person outside of the Department either (a) the fact that the Committee is intending to make the disclosure or (b) the contents of the impending disclosure, *provided*, that the Department may inform individuals employed by the Executive Office of the President on a need-to-know basis if such individuals agree to preserve the confidentiality of all such information prior to disclosure by the Committee.

6. (a) The Department represents that it used its best efforts, understanding limitations due to the passage of time, to provide to the Committee an explanation of the processes and mechanisms that were used to search for and compile the documents identified on the Department's final log of responsive documents in this Lawsuit, including the search terms used and the names of custodians whose records were searched.

    (b)(1) Using the search terms specified below, the Department will search for and produce to the Committee on a rolling basis all documents responsive to categories 1, 4, 5, and 10 of the subpoena issued by the Committee to the Department on October 11, 2011, and subsequently reissued in subsequent Congresses (the "Holder subpoena") that (i) relate to the Department's responses to Congress and/or the Committee's investigation of Operation Fast and Furious, (ii) were created or modified between Oct. 11, 2011, and June 28, 2012, and (iii) were

contained in the files or emails of the following custodians: Eric Holder, Jr., Gary Grindler, James Cole, Lanny Breuer, Ronald Weich, Jason Weinstein, Matt Axelrod, Tracy Schmaler, Lisa Monaco, Mythili Raman, Stuart Goldberg, and/or Steven Reich; *provided*, that the Department's search and production will be limited to relevant material in sent email folders for the foregoing custodians; *provided further*, that the Department's production will be limited to emails without attachments, but the Committee may request specific attachments or additional emails received but not authored by the foregoing custodians within four months after receiving the relevant emails and the Parties will negotiate in good faith to address any such request. The Parties reserve their respective rights with respect to any such request, including the right to continue the Appeal and Lawsuit if the Parties cannot reach agreement within three months after submission of any such request and either Party thereafter notifies the other Party in writing that it is exercising its right to terminate the Agreement within 30 days after expiration of any such good-faith negotiation period.

(2) **Search terms**: For Matt Axelrod and Steven Reich, the Department's search of their sent email folders will employ all of the original search terms used in compiling the "Executive Privilege set";[1] plus the following additional search terms:

Committee, House, Senate, Grassley!, Issa!, "our guy," Cummings!, Leahy!, Chairman!, Ranking Member!, RM, Ranking Minority Member, RMM, OGR, COGR, HOGR, T III, T-III, wiretap, AZ gun trafficking case, AZ, Brian Terry, "transcribed interview," "agency counsel," contempt, subpoena, transcript, "executive privilege," "memos on memos," "deliberative process," deliberative, "fair compilation," "representative sample," "priority doc!";

plus variations of names necessary to capture all references to the following people:

Stephen "Steve" Castor
Jason Foster
Kolan Davis
Tristan Leavitt
Henry Kerner
Ashok Pinto
Carlton Davis
Robert "Rob" Borden

---

[1] These search terms are: "_ff_"; "0057"; "785041-09-0008"; "785045-07-0177"; "785085-08-0057"; "785115-10-0020"; "estrella-sesma"; "f & f"; "f and f"; "f/f"; "fast/furious"; "fnf"; "grenade case"; "lone wolf"; "lwtc"; "mad dawg"; "mad dog"; "medina-duarte"; "novelty items"; "post blast recover*"; "wide receiver"; "wr"; "wr1"; "wr2"; "x-caliber"; (arizona OR az) AND gun AND "large fir"; (arizona OR az) w/10 straw; (celis w/2 acosta) w/10 (gun OR firearm; 112 w/10 (firearm OR gun); 117 w/10 (firearm OR gun); 15 w/10 (firearm OR gun); 16 w/10 (firearm OR gun) ; 50 w/3 cal*; alejandro w/3 posada; arizmendi; avila w/10 (gun OR firearm); betancourt; carson AND paskalis; celaya; chamber* w/10 (gun OR firearm); daniel w/3 mueller; detty; dna w/15 taggant; draco; drako; elenes; fast w/2 furious; fernandez; gonzalez; grenade w/15 flourescent; grenade w/15 phoenix; grenade w/15 yuma; gun* w/4 south*; gun* w/4 walk*; gun* w/5 mexico; hernan; hernandez; hoover AND paskalis; horowitz; isaias; ken w/10 (gun OR firearm); kingery; maddog; may w/2 douglas; medina; medrano; melson w/10 (gun OR firearm); merritt; morales; newell AND paskalis; parra; patino w/10 (gun OR firearm); pedro w/2 ramirez; phoenix AND gun AND large AND firearm; phoenix w/10 straw; posada; rambo; ramos; rutledge; shriber; siria; southbound w/3 op*; tucchi; valencia; x w/2 caliber.

      Jo-Marie St. Martin (including variations such as Jo Marie and JoMarie)
      Mike Sommers

(3) For the remaining custodians (Eric Holder, Jr., Gary Grindler, James Cole, Lanny Breuer, Ronald Weich, Jason Weinstein, Tracy Schmaler, Lisa Monaco, Mythili Raman, and Stuart Goldberg), the Department's search of their sent email folders will employ all of the same search terms referenced in paragraph 6(b)(2), except for the following:

      Committee, House, Senate, Chairman!, Ranking Member!, RM, Ranking Minority Member, RMM

(4) The search and production referenced in this paragraph 6(b) will proceed in the following manner:

    (A)  The Department will initially provide the full set of responsive Steven Reich search materials to the Committee, within 60 days after entry of the Remand Order.
    (B)  Based on its initial review of those materials, the Committee will consider whether some of the additional searches of the other custodians' emails can be narrowed or targeted in a manner that reduces the burden on the Department while still allowing the Committee to advance its oversight interests.  The Committee will then communicate its initial views on that subject to the Department in writing, and thereafter the Parties will (at the Department's option) engage in good-faith negotiations on that subject for up to 21 days.
    (C)  After expiration of the good-faith negotiations period referenced in paragraph 6(b)(4)(B), the Department will identify and produce to the Committee the remaining search materials as outlined above, subject to any agreed-upon narrowing of the scope of the search (if any) that may have resulted from the good-faith negotiations referenced in paragraph 6(b)(4)(B).  The production will occur on a rolling basis and will be completed within six months after expiration of the good-faith negotiations period referenced in paragraph 6(b)(4)(B).

(c)  Commencing upon entry of the Remand Order, the Department will conduct a new search for and produce to the Committee within six months (or certify the completeness of the preceding production of) all responsive documents that fall into the following categories:

(1)  All documents and communications dated or created between March 30, 2011, and May 3, 2011, involving the custodians identified in this paragraph (1)  in response to or as a result of the email communications attached as Exhibit B (two dated March 30, 2011, and one dated March 31, 2011).  The search shall be conducted as follows:  The Department will process all email in time range for review – March 30, 2011 through May 3, 2011 – for Matt Axelrod, Ronald Weich, Jason Weinstein, and Stuart Goldberg, using the following search terms:  Melson, T III, T-III, wiretap application, authorization, ROI, ROIs, Report! of Investigation!, seal, affidavit, and paragraphs 17 and 24.

(2)  All documents and communications dated or created between June 19, 2011, and July 15, 2011, involving the custodians identified in this paragraph (2)  in response to, in

4

reference to, or as a result of then-Acting ATF Director Kenneth E. Melson's communications with the Committee, including the June 19, 2011, communications, the July 3, 2011 meeting with Committee staff, and the July 4, 2011, interview.  The search shall be conducted as follows:  The Department will process all email in the specified time range for review – June 19, 2011 through July 15, 2011 – for Matt Axelrod, Ronald Weich, Jason Weinstein, and Stuart Goldberg, using the following search terms:  Kenneth Melson, Ken Melson, Melson, Richard Cullen, Cullen, personal counsel, personal lawyer, Committee, House, Senate, Grassley, Issa, OGR, COGR, HOGR, Steve Castor, Stephen Castor, Steve, Castor, Jason Foster, Foster, and Jason.

(3)  All documents and communications dated or created between Aug. 4, 2011, and December 3, 2011, that were created, sent, or received by any custodian identified in paragraph 6(b)(1) above and that concern or relate to the drafting and/or delivery of the December 2, 2011, letter from Deputy Attorney General James M. Cole to Committee Chairman Darrell E. Issa and Senator Charles E. Grassley, with the search to be limited as follows:

    (A)  For the entire Aug. 4 – Dec. 3, 2011 time period, the Department will search using the following terms:

> T III, T-III, wiretap application, authorization, "highly deliberative," "long-held," "both political parties," "significant confidentiality interests," "come to light," "formally withdraw!," "unique circumstances," "sui generis," ROI, ROIs, Report! of Investigation!, seal, affidavit, interdict, "every effort," "remains our understanding," February 4, 2011, February 4!, Feb 4, "February 4 letter," withdraw!, inaccura!, mislead!, veracity.

    (B)  In addition, for the Aug. 4, 2011 – Oct. 10, 2011 date range only, the Department will also search using the new terms proposed by the Committee for the search referenced in paragraph 6(b)(1) above, in the same manner as for that search (i.e., using the full set of new terms for Steven Reich and Matt Axelrod, and the reduced set for the other custodians).

    (C)  The production under this paragraph (3) need not include documents previously produced to the Committee either prior to this agreement or pursuant to Paragraph 6(b)(4) above or any other provision of this agreement.

(4)  All documents and communications in the possession, custody, or control of the Department of Justice that were created, sent, or received by any custodian identified in paragraph 6(b)(1) above and/or by any individuals in the Executive Office of the President and that concern or relate to any meeting between any of the custodians identified in paragraph 6(b)(1) above and any person employed in the White House Counsel's Office that occurred between June 12, 2011, and June 26, 2012, and that concerned the Department of Justice's response to the Committee's investigation into Operation Fast and Furious, with the search to be limited as follows:  The date ranges to be searched will be limited to dates from 2 days before through 5 days after the following

dates on which White House meetings with relevant Department of Justice personnel occurred in 2012:   Feb. 8, 15, 17, 21, 23, 27, 29; Apr. 11, 23; May 1, 2, 15; and June 26.

7. Electronic documents shall be produced in accordance with instruction 5 of the Schedule Instructions attached to the Holder subpoena, and shall include the following metadata fields:  BegDoc; EndDoc; BegAttach; EndAttach; PageCount; DocType; Author; From; CC; To; BCC; Subject; DateSent; DateSent_Time; Title; FileName; FileExtension; FileSize; DateCreated; DateCreated_Time; LastSaveDate; LastSaveDate_Time; TextFilePath; NativeFilePath; Custodians.

8. Consistent with the in camera availability letter of June 17, 2016, all productions pursuant to this agreement are subject to appropriate redaction of limited information that federal law bars the Department from disclosing (including grand jury material, *see* Fed. R. Crim. P. 6(e)(2), Title III wiretap material, *see* 18 U.S.C. §§ 2517, 1518; and information sealed in federal court) and information that, if disclosed, could put confidential informants, special agents, and witnesses at risk of personal harm and/or jeopardize ongoing investigations.  In making such redactions, the Department will apply the same approach employed in removing previous redactions as referenced in the June 17, 2016 letter, and will redact nothing other than information necessary to address the limited concerns referenced above.  The production of material under this agreement does not waive or otherwise remove privilege or other protections for this information or for other information that is related to the material disclosed.

9. If the Agreement is terminated pursuant to its terms or for material breach of its terms, the Committee shall have the right to continue the Appeal with respect to any remaining issues in dispute.  If the Agreement is not terminated, upon completion of all of the searches and productions required under the terms of the Agreement, and after expiration of any applicable period(s) of good-faith negotiation and any subsequent 30-day notice period(s) pursuant to paragraph 6(b)(1), the Parties shall jointly certify to the District Court that they have achieved final resolution of their dispute in accordance with the terms of the Agreement, and shall request that the District Court vacate the Orders and dismiss the Lawsuit with prejudice in accordance with the Indicative Ruling.  Upon vacatur of the Orders and dismissal of the Lawsuit, the Parties will jointly move the Court of Appeals to dismiss the Appeal.

10. Fees and Costs.    The Parties will bear their own costs, fees, and expenses relating to the Lawsuit and the Appeal.

11. Representations.  By signing this Agreement, each attorney represents that his or her client(s) agree with all the terms of this Agreement and that he or she has the authority to sign on behalf of his or her client(s).  The Parties agree that this Agreement is fully binding on them and their successors.

12. Jointly Drafted Agreement.  This Agreement shall be considered a jointly drafted agreement and shall not be construed against any party as the drafter.

13. <u>Execution in Counterparts and Electronic Signatures.</u>  This Agreement may be executed and delivered in counterparts, and may be executed by electronic signature, and if so, shall be considered an original.  Each counterpart, when executed, shall be considered one and the same instrument, which shall comprise the Agreement, which takes effect on the date of execution by all parties to the Agreement.

14. <u>Other.</u>  This Agreement, consisting of seven pages, fully and completely expresses the entire understanding among the Parties on the subject matter hereof and no statement, remark, agreement or understanding, oral or written, which is not contained herein, shall be recognized or enforced.  This Agreement cannot be modified or amended except by an instrument in writing, agreed to and signed by the Parties, nor shall any provision hereof be waived other than by a written waiver, signed by the Parties.

        FOR THE COMMITTEE:

        <u>/s/  Thomas G. Hungar</u>
        Thomas G. Hungar
        General Counsel

        OFFICE OF GENERAL COUNSEL
        U.S. HOUSE OF REPRESENTATIVES
        219 Cannon House Office Building
        Washington, D.C. 20515
        202/225-9700 (telephone)
        *Counsel for Appellee*

Executed this 7th day of March, 2018, in Washington, D.C.

        FOR THE DEPARTMENT:

        <u>/s/ Chad A. Readler</u>
        Chad A. Readler
        Acting Assistant Attorney General

        U.S. DEPARTMENT OF JUSTICE
        Civil Division
        950 Pennsylvania Ave., Room 3601
        Washington, D.C. 20530
        202/353-7830 (telephone)
        *Counsel for Appellants*

Executed this 7th day of March, 2018, in Washington, D.C.