# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERSON B. SESSIONS III, Attorney General of the United States,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 12-1332 (ABJ)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

The Court entered judgment in this case on February 8, 2016, and the case is now pending before the United States Court of Appeals for the District of Columbia Circuit. The parties have arrived at a negotiated solution, and they have filed a joint motion for an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1. They ask the Court to inform them now whether it would agree to vacate its orders of August 20, 2014 and January 19, 2016[1] and dismiss the case with prejudice if the matter were remanded in accordance with the terms of their conditional settlement agreement. Joint Mot. for Indicative Ruling [Dkt. # 130] ("Joint Mot.").

---

[1] Order [Dkt. # 81], *Comm. on Oversight & Gov't Reform, U.S. House of Representatives v. Holder*, No. 12-cv-1332, 2014 WL 12662665 (D.D.C. Aug. 20, 2014) (hereinafter the "August 2014 Order"); Order, [Dkt. # 117], *Comm. on Oversight & Gov't Reform, U.S. House of Representatives v. Lynch*, 156 F. Supp. 3d 101, 108 (D.D.C. Jan. 19, 2016) (hereinafter the "January 2016 Order") (collectively, "the Orders").

The motion comes almost two years after the Court ordered the defendant, the Attorney General of the United States, to respond to a Congressional subpoena issued by plaintiff, the Committee on Oversight and Government Reform of the U.S. House of Representatives, for Department of Justice documents concerning a law enforcement effort known as Operation Fast and Furious. The parties have executed a conditional settlement agreement providing that the Department will search for and produce certain documents from its investigation of the operation to the Committee, subject to this Court's vacating the Orders and dismissing the case under Federal Rule of Civil Procedure 60(b). Joint Suppl. Br. in Supp. of Mot. for Indicative Ruling [Dkt. # 135] ("Joint Suppl.") at 3–4, citing Conditional Settlement Agreement, Ex. A to Joint Mot. [Dkt. # 130-1] ¶¶ 1, 5–8 (stating the settlement is only effective "upon vacatur of the District Court's orders of August 20, 2014 and January 19, 2016").

Because neither the balance of the equities nor the public interest weigh in favor of vacatur, the Court will deny the parties' motion.

## FACTUAL AND PROCEDURAL HISTORY

On October 11, 2011, the Committee issued a subpoena to the Attorney General[2] for documents related to the Department's investigation into Operation Fast and Furious. The operation, run by the Bureau of Alcohol, Tobacco, and Firearms and the U.S. Attorney's Office in Phoenix, Arizona, sought to track the suspected flow of firearms from the United States to drug cartels in Mexico. During the course of the investigation, agents permitted straw purchasers to buy firearms illegally in the United States, and then let the purchasers "walk" the firearms into

---

2    At that time, the Attorney General was Eric H. Holder, Jr. Pursuant to Federal Rule of Civil Procedure 25(d), Loretta E. Lynch was substituted as defendant in this case after she replaced Holder, and Jefferson Sessions was substituted as defendant after he became Attorney General.

Mexico without being apprehended. Am. Compl. [Dkt. # 35] ¶ 1. The tactic was designed to track the guns to their ultimate destination and reveal any nexus between the leaders of Mexican crime syndicates and the individuals who purchased the firearms. *Id*. But the initiative came under intense scrutiny when a U.S. law enforcement agent was killed in December 2010 with one of the guns that was part of the operation. *Id*. ¶ 2. Members of Congress began inquiring into the matter, and in a letter dated February 4, 2011, the Department of Justice firmly denied that ATF ever knowingly failed to interdict weapons that had been purchased illegally. *Id*. As more facts came to light, though, the Department acknowledged that law enforcement agents had in fact permitted some guns to walk during the course of the Phoenix operation. *Id*. ¶ 3. The Committee then shifted its focus to uncovering why the Department had provided it with incorrect information at the outset. *Id*. ¶ 4.

On October 11, 2011, the Committee issued the subpoena to the Attorney General that lies at the heart of this lawsuit. *See* Am. Compl. ¶ 8. While a large volume of materials was produced, the Department informed the Committee on June 20, 2012 that the President had asserted executive privilege over all relevant documents dated after February 4, 2011. *Id.* ¶ 14. On August 13, 2012, the Committee filed this action to compel the production of those records, which had been withheld on the grounds that they were covered by the deliberative process prong of the executive privilege. *See* Compl. [Dkt. #1].

The case produced a number of rulings. After the lawsuit was filed, the Department of Justice moved to dismiss it. It took the position that this Court did not have – or should decline to exercise – jurisdiction over what the Department characterized as a political dispute between the executive and legislative branches of the government. The Attorney General warned that it would threaten the constitutional balance of powers if the Court endeavored to weigh the Committee's

stated need for the material against the executive's interest in confidential decision making, or if the Court were to make its own judgment about whether the negotiation and accommodation process to date had been adequate.  Mem. in Supp. of Def.'s Mot. to Dismiss [Dkt. # 13-1] at 19–45.

The Committee opposed the motion to dismiss.  It argued that it was both lawful and prudent for the Court to exercise jurisdiction since the case involved a discrete, narrow question of law:

> This type of case – at bottom, a *subpoena enforcement case* – has been brought in and addressed by the courts in this Circuit many times before . . . .  Moreover, this case involves the purely legal question of the scope and application of Executive privilege . . . .

Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. # 17] at 6 (emphasis in original).

The Court agreed.  Citing *United States v. Nixon,* 418 U.S. 683 (1974), it ruled that it had not only the authority, but the responsibility, to resolve the conflict.

> [T]he Supreme Court held that it was "the province and duty" of the Court "'to say what the law is'" with respect to the claim of executive privilege that was presented in that case.  *Id.* at 705, quoting *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177 (1803).   "Any other conclusion would be contrary to the basic concept of separation of powers and the checks and balances that flow from the scheme of a tripartite government."  *Id.* at 704.  Those principles apply with equal force here.  To give the Attorney General the final word would elevate and fortify the executive branch at the expense of the other institutions that are supposed to be its equal, and do more damage to the balance envisioned by the Framers than a judicial ruling on the narrow privilege question posed by the complaint.

*Comm. on Oversight & Gov't Reform, U.S. House of Representatives v. Holder*, 979 F. Supp. 2d 1, 11–12 (D.D.C. 2013); *see also id.* at 10–11, citing *Comm. on the Judiciary v. Miers,* 558 F. Supp. 2d 53, 84–85 (D.D.C. 2008).

The parties then filed cross-motions for summary judgment.  *See* Pl.'s Mot. for Summ. J. [Dkt. # 61]; Def.'s Mot. for Summ. J. [Dkt. # 63].  The Committee contended that as a matter of

law, the executive branch could not invoke the deliberative process privilege in response to a Congressional subpoena. Pl.'s Mot. for Summ. J. [Dkt. # 61]. In the Committee's view, since the records did not involve actual communications with the President that would raise separation of powers concerns, and they did not raise national security concerns, they had to be produced. Mem. of P. & A. in Supp. of Pl.'s Mot. for Summ. J. [Dkt. # 61]. On August 20, 2014, in the first of the two orders at issue in the pending motion, the Court ruled against the Committee on that issue. *Holder*, 2014 WL 12662665. It determined that there is a constitutional dimension to the deliberative process aspect of the executive privilege, and that the privilege could be properly invoked in response to a legislative demand. *Id*. at *1, citing *In re Sealed Case,* 121 F.3d 729, 745 (D.C. Cir. 1997) ("*Espy*").

However, the Court also found that the Attorney General's blanket assertion of the privilege over all records generated after a particular date could not stand, because no showing had been made that any of the individual records satisfied the legal prerequisites for the application of the privilege. *Holder*, 2014 WL 12662665, at *2. The Department was ordered to review the responsive records to identify those records that were both pre-decisional and deliberative and to produce any that were not. *Id.* at *2. It was also ordered to create a detailed list identifying all records that were being withheld on privilege grounds. *Id.*

As the Committee acknowledged in a notice filed with the Court, the Department complied with the August 2014 Order. *See* Comm.'s Notice of Disputed Claims and Other Issues [Dkt. # 98] (reporting that on November 4, 2014, the Department produced 10,104 documents, or 64,404 pages, and it produced a list with 14,281 entries for documents being withheld on privilege grounds). But the parties disagreed about whether the bulk of the records on the list – those

memorializing internal agency discussions about communications with Congress or with the media – could be covered by the privilege. *See id.* at 2, 11.

The Committee then moved to compel the production of every record described in the list, as well as a body of material that defendant did not include in the index. Pl.'s Mot. to Compel [Dkt. # 103] and Mem. of P. & A. in Supp. of Pl.'s Mot. to Compel ("Pl.'s Mem. for Mot. to Compel") [Dkt. # 103-1]. It took the position that not one of the records was deliberative, and that even if some were, the interests advanced by the privilege were outweighed by the Committee's need for the material. The Committee asked the Court to hold that intra-agency communications about responding to Congressional and media requests for information are not covered by the privilege. Pl.'s Mem. for Mot. to Compel at 26–29. It also argued that the right to invoke any privilege had been vitiated by the Department's own misconduct. *Id.* at 32 n.15.

In the second order at issue here, the Court rejected the Committee's articulation of the scope of the privilege. *Lynch*, 156 F. Supp. 3d at 105. Based upon authority from this Circuit, it found that records containing the agency's internal deliberations over how to respond to Congressional and media inquiries were entitled to protection under the deliberative process privilege. *Id.* But the Court also acknowledged, citing *Espy,* 121 F. 3d at 737–38, that the privilege is a qualified one that can be overcome by a sufficient showing of need for the material. *Id.* Ultimately, though, the Court concluded that there was no need to balance the Committee's need for the records against the impact their disclosure could have on candor in future executive decision making because the Department had already disclosed the records itself. *See id.* at 105–06, citing U.S. Dep't of Justice, Office of the Inspector Gen. Oversight and Review Div., A Review of ATF's Operation Fast and Furious and Related Matters (Redacted) (Sept. 2012), https://oig.justice.gov/reports/2012/s1209.pdf.

The Court ruled that the qualified privilege must yield, given the executive's acknowledgment of the legitimacy of the investigation, and the fact that the Department itself had already publicly revealed the sum and substance of the very material it was seeking to withhold. *Id.* at 106. Since any harm that would flow from the disclosure in response to the subpoena would be merely incremental, the Court ordered on January 19, 2016 that the records had to be produced. *Id.*[3] Thereafter, the parties informed the Court that its orders had resolved all of the issues in the case and that a final order should issue. *See* Def.'s Notice Regarding Entry of Final J. [Dkt. # 120] ("Defendant agrees that the Court's Order resolves all of the outstanding issues in the case, and therefore entry of final judgment is appropriate at this time."); Pl.'s Not. of Compliance with Court's Feb. 1, 2016 Min. Order [Dkt. # 121] (submitting proposed Final Judgment); Final Judgment [Dkt. # 124].

---

3      The Court emphasized that its order was not based on any finding of misconduct on the part of the Department. *Lynch*, 156 F. Supp. 3d at 106.
        In addition to the materials withheld on deliberative process grounds, the Committee's motion to compel also addressed three other categories of documents:  materials for which no basis for a claim of privilege had been identified on the list; materials that the Department had neither produced nor included on the list; and materials withheld in full or in part on grounds other than the deliberative process privilege.  The Court ordered the production of any records for which no explanation had been offered. *Id.* at 120–21. With respect to the records that had not been included in the production or the list, the Court declined to address the parties' dispute over whether the Committee's request had been previously narrowed by agreement to exclude what the Committee referred to in the motion to compel as the "post February 4 subset" since those records were not embraced in the June 20, 2012 assertion of executive privilege that prompted the lawsuit. *Id.* at 119.  It also ordered that any remaining disputes concerning withholdings of attorney-client privileged material, attorney work product, law enforcement sensitive material, national security matters, or personal privacy information fell outside the scope of the complaint and should be resolved through the negotiation and accommodation process. *Id.* Since the Committee was quite clear when it invoked the jurisdiction of the Court that it was simply asking for a ruling on the discrete questions of law that had been decided – can the executive assert the deliberative process privilege in response to a Congressional request? And if so, does the privilege cover internal deliberations that do not include advice to or communication with the President? – the Court declined to interpose itself in the negotiations between the parties on the other issues.

Notwithstanding the fact that it had prevailed in its effort to enforce compliance with the subpoena, the Committee filed a Notice of Appeal on April 8, 2016. Notice of Appeal [Dkt # 125]; *see also* Notice of Appeal [Doc. # 1609215], *Comm. on Oversight & Gov't Reform, U.S. House of Representatives v. Sessions*, No. 16-5078 (D.C. Cir. Apr. 18, 2016). While the Notice of Appeal covered "all aspects" of the Court's Final Judgment "that are adverse to the Committee, including, but not limited to, from the Order of August 20, 2014 (ECF No. 81); the Order of September 9, 2014 (ECF No. 88); and the Memorandum Opinion and Order of January 19, 2016 (ECF No. 117)," *id.* at 2, the brief filed in the D.C. Circuit was more narrowly focused.

The Committee challenged the ruling that the deliberative process privilege can be invoked by the executive in Congressional investigations, and it objected to the Court's decision to decline to address other issues: the Department's failure to produce what the Committee referred to as the "Post-February 4 Subset" of documents, and the withholding or redaction of records on grounds other than the deliberative process privilege. Br. for Appellant [Doc. #1639836] at 14–61, *Sessions*, No. 16-5078 (D.C. Cir. Oct. 6, 2016).

In response, the Department argued that the case that had been appealed was moot: the complaint sought an order compelling the Department to produce documents that had been withheld as deliberative, the order had been issued by this Court, and – of importance to this motion – the documents had already been produced. Br. for Appellee [Doc. # 1651995] at 10–11, *Sessions*, No. 16-5078 (D.C. Cir. Dec. 20, 2016) ("[T]he district court ordered the Department to produce all materials withheld on deliberative process grounds, and the Department has complied in full."). The Department added that it had also provided the Committee *in camera* access to disputed non-deliberative materials unrelated to the Committee's suit "with very minor exceptions." *Id.* at 11. It urged the Court of Appeals to refrain from addressing any other aspects

of the Committee's appeal, and it took the position that the case did not include the "post-February 4 subset" of documents. *Id*. at 17–24. In the event the Circuit decided to hear the matter on the merits, the Department also reasserted the jurisdictional arguments based on standing and separation of powers that had been rejected below, and it defended this Court's rulings on the scope of the deliberative process privilege and the other documents. *Id.* at 26–59.

On January 13, 2017, the Committee filed a consent motion to hold the appeal in abeyance because it was attempting to negotiate a settlement of the remaining outstanding matters with the incoming Administration. Appellant's Unopposed Mot. to Hold Appeal in Abeyance [Doc. #1655926], *Sessions*, No. 16-5078 (D.C. Cir. Jan. 13, 2017). The Court granted the motion, Order [Doc. # 1667880], *Sessions*, No. 16-5078 (D.C. Cir. Jan. 19, 2017), and the appeal has remained in abeyance since then.

On March 7, 2018, the parties filed the instant motion. The Court then ordered the parties to file a further submission "detail[ing] the exceptional circumstances" that would justify vacatur and why it would be in the public interest. Order (Mar. 12, 2018) [Dkt. # 131] at 2–3. The parties filed supplemental submissions on April 16, 2018 and May 21, 2018. Joint Suppl.; Joint Notice of Suppl. Authority [Dkt. # 136].

The parties seek vacatur of the August 2014 and January 2016 orders pursuant to Rule 60(b) and the conditional settlement agreement "and in light of changed circumstances," and they argue that they do not need to make a showing of "exceptional circumstances" to prevail. Joint Mot. at 1; Joint Suppl. at 1. Since the Court finds that the balance of the equities does not weigh in favor of vacating the Orders, it will deny the motion, and it need not determine whether exceptional circumstances are required.

# ANALYSIS

Utilizing the procedure set forth in Federal Rule of Civil Procedure 62.1,[4] the parties have asked the Court to issue an indicative ruling stating that in light of the parties' conditional settlement, it will vacate its August 2014 and January 2016 orders upon remand.

In *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 22 (1994), the Supreme Court addressed the question of whether an appellate court should vacate a civil judgment if the case becomes moot because, as here, it was settled while it was on appeal. The Court noted that generally, when "a civil case from a court in the federal system . . . has become moot while on its way here or pending our decision on the merits," the established practice is "to reverse or vacate the judgment below and remand with a direction to dismiss." *Id.* at 22, quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). It made it clear, though, that this practice is limited to those cases in which the mootness arose out of circumstances beyond the parties' control and was not engineered by the party that filed the appeal. *Bancorp*, 513 U.S. at 25.

The Court reasoned that "a party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstances, ought not in fairness be forced to acquiesce in the judgment." *Id.* But it highlighted the contrast between that circumstance and a situation in which a party settles a case and "voluntarily forfeit[s] his legal remedy by the ordinary processes of appeal

---

[4]     Rule 62.1 provides that upon the timely filing of a motion "for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1. This rule is invoked in situations where a court has lost jurisdiction over a case because it has been docketed for appeal, and therefore cannot entertain motions such as those made under Rule 60(b) for relief from judgment. 11 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2911 (3d ed.). Rule 62.1 allows a court to indicate to the appeals court that it would grant the party's motion if remanded to the lower court. *Id.*

. . . thereby surrendering his claim to the equitable remedy of vacatur." *Id.* Thus, the Court concluded:

> [M]ootness by reason of settlement does not justify vacatur of a judgment under review. This is not to say that vacatur can never be granted when mootness is produced in that fashion. As we have described, the determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course. It should be clear from our discussion, however, that those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur – which neither diminishes the voluntariness of the abandonment of review nor alters any of the policy considerations we have discussed.

513 U.S. at 29.

While the D.C. Circuit has not addressed whether the ruling in *Bancorp* should apply to a request that a district court vacate its own order under Rule 60(b), several courts in this district have looked to *Bancorp* for guidance. In *3M Co. v. Boulter*, the Circuit remanded a case and instructed the district court to consider a motion for vacatur under Rule 60(b), adding, "*see U.S. Bancorp.*" 290 F.R.D. 5, 7 (D.D.C. 2013); Order, *3M Co. v. Boulter* [Dkt. # 96] (D.D.C. Jan. 4, 2013). The court proceeded to consider the motion under both Rule 60(b)(6) and *Bancorp*. *3M Co.*, 290 F.R.D. at 8 (noting that relief under Rule 60(b)(6) requires a showing of "extraordinary circumstances" and that *Bancorp* requires "'exceptional circumstances' to justify the equitable relief of vacatur following a settlement"), quoting *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863–64 (1988) and *Bancorp*, 513 U.S. at 25–26. The court ruled that the circumstances presented were not so extraordinary or exceptional to warrant the requested relief. *Id.* Other courts in this district have applied the *Bancorp* principles as well when considering whether to vacate their own decisions. *See St. Lawrence Seaway Pilots' Ass'n v. Collins*, No. 03-cv-1204 (RBW), 2005 WL 1138916, at *2 (D.D.C. May 13, 2005) (relying on *Bancorp* in vacating district court opinion on grounds that the opinion had become moot because the rulemaking at issue had been completed, and the dispute may be the subject of future litigation

involving the same parties); *Fund for Animals v. Mainella*, 335 F. Supp. 2d 19, 25–26 (D.D.C. 2004) (collecting cases in which district courts relied on *Bancorp* as a basis to vacate their own opinions but denying vacatur because, among other reasons, movants had failed to request the administrative record that they now argued made the district court's ruling unreviewable).[5]

The parties insist, though, that this Court need not find that extraordinary circumstances exist before it may vacate its orders. They point to the passage in *Bancorp* in which the Supreme Court observed that an appellate court may simply remand a case to take advantage of the options available to a district judge under the Federal Rules:

> Of course even in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for vacatur of a district-court judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b).

*Bancorp,* 513 U.S. at 29.

Here, the Court of Appeals has not instructed this Court to do anything. But the parties are asking the Court to indicate that it would exercise its equitable discretion to vacate the Orders under Federal Rule of Civil Procedure 60(b) alone and to forego – or at least, adopt an alternative construction of – the *Bancorp* extraordinary circumstances test.[6] Joint Suppl. at 3–7.

---

5       The Fourth Circuit has held that the *Bancorp* considerations, "that are relevant to appellate vacatur for mootness, are also relevant to . . . a district court's vacatur decision for mootness under Rule 60(b)(6)," while noting that the Ninth Circuit in *American Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164 (9th Cir.1998), arguably rejected that view. *See Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 121 (4th Cir. 2000).

6       *See* Joint Suppl. at 6–7 (arguing that if the Court applies the "exceptional circumstances" test to its decision to vacate its own orders, the Court should reject a narrow application of the test).

The problem with this approach is that the parties point to only two provisions in Rule 60 that could supply a basis for relief in this case: subsections (b)(5) and (b)(6). Rule 60(b)(5), as will be discussed in more detail below, is inapplicable as a matter of law, and section (b)(6) requires a showing of extraordinary circumstances anyway. The D.C. Circuit has repeatedly cautioned that the residual clause should be "sparingly used" and only in "extraordinary circumstances." *Salazar ex rel. Salazar v. District of Columbia*, 633 F.3d 1110, 1119–20 (D.C. Cir. 2011), quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950), and *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007). So it is unclear what the parties accomplish by predicating their motion on Rule 60 alone.

In the end, though, the Court need not wrestle with the question of whether it is bound by *Bancorp,* or what must be shown to satisfy the *Bancorp* requirement of extraordinary circumstances, or whether there is any difference between the *Bancorp* and Rule 60(b)(6) extraordinary circumstance standards because, as the parties acknowledge, a district court's decision to vacate its own orders is subject to equitable considerations. Joint Suppl. at 5–6, citing *Jewish War Veterans of the U.S of Am., Inc. v. Mattis*, 266 F. Supp. 3d 248, 252 (D.D.C. 2017) and *Fund for Animals*, 335 F. Supp. 2d at 25; *see also* Fed. R. Civ. Proc. 60(b) ("On motion and just terms, the court may relieve a party from a final judgment . . . ."). The Court finds that the balance of equities does not favor vacatur in this case, and that vacating the orders would not be in the public interest. Thus, it is unnecessary to determine whether a higher threshold applies or whether the parties could overcome it.

## I.  The Parties are Not Entitled to Vacatur under Rule 60(b)(5).

Rule 60(b)(5) authorizes courts to grant relief from a judgment for the reason that: "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ.

Pro. 60(b)(5). The rule is to be invoked when "a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Am. Council of the Blind v. Mnuchin*, 878 F.3d 360, 366 (D.C. Cir. 2017), quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009) (internal quotation marks omitted).

The parties rely solely on the third clause of section (b)(5); they assert in their motion that applying the orders "prospectively is no longer equitable." Joint Mot. at 1. A court may modify an order or judgment under this portion of Rule 60(b)(5) "only to the extent it has prospective application." *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988). Here, neither order has prospective application as that term has been interpreted by the D.C. Circuit, and in fact, the Department has already complied with both of them. Therefore, Rule 60(b)(5) does not supply a basis for vacatur in this case.

The standard to be applied when determining whether an order or judgment has prospective application within the meaning of Rule 60(b)(5) is "whether it is 'executory' or involves 'the supervision of changing conduct or conditions'" within the meaning of *Wheeling* and *Swift,* the two Supreme Court cases from which this portion of the rule was derived. *Twelve John Does*, 841 F.2d at 1139, citing *State of Pa. v. Wheeling & Belmont Bridge Co.,* 59 U.S. (18 How.) 421 (1856), and *United States v. Swift & Co.,* 286 U.S. 106 (1932). In *Wheeling,* the Court had ordered that a bridge impeding navigation of the Ohio River must either be elevated or removed, but Congress passed a statute legalizing the structure. The Court then found that the portion of the original order requiring the abatement of construction was an executory, continuing decree meant to govern the parties' actions into the future, and therefore, it concluded that the order could be modified in light of the change in circumstances. *See Twelve John Does,* 841 F. 2d at 1138–39, citing 59 U.S. at 431. In *Swift,* the Supreme Court declined to modify an injunction, and it stated that such

14

decrees are "continuing" only if they "involve the supervision of changing conduct or conditions and are thus provisional and tentative." 286 U.S. at 114. Applying those precedents in *Twelve John Does*, the Court found that a prior order dismissing the Attorney General as a defendant from a case involving D.C. prisons lacked prospective application because "it did not compel the Attorney General to perform, or order him not to perform, any future act; [and] it did not require the court to supervise any continuing interaction between him and the other parties to the case." 841 F. 2d. at 1139.

Obviously, each order in this case required the Department to do something after the order was entered, but that is not the touchstone of an "executory" order.

> Virtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect; even a money judgment has continuing consequences, most obviously until it is satisfied . . . . That a court's action has continuing consequences, however, does not necessarily mean that it has "prospective application" for the purposes of Rule 60(b)(5).

*Twelve John Does*, 841 F.2d at 1138.

The orders at issue here were not "provisional" or "tentative," *see Swift*, 286 U.S. at 114; they did not embroil the Court in ongoing oversight, and they were no more executory or prospective than an order to pay a money judgment. The first order in August 2014 denied the parties' cross motions for summary judgment without prejudice, and it called for the production of some records and the creation of a detailed list justifying any withholdings by a date certain. *Holder*, 2014 WL 12662665, at *3. The defendant complied with the order fully as of November 4, 2014, *see* Comm.'s Notice of Disputed Claims and Other Issues, and the order included no ongoing obligations.

The January 2016 Order then required the Department to produce the deliberative records described in the list to the Committee. *See* 156 F. Supp. 3d at 106. That too has been

accomplished.  Br. for Appellee at 10–11.  So even if the first order contemplated that the Court would remain involved for some time to rule on the privilege assertions in the list, neither order has any prospective elements now.  Both parties advised this Court on February 3, 2016 that the orders resolved all of the outstanding issues presented in the case, and they called for entry of final judgment.  *See* Def.'s Notice Regarding Entry of Final J.; Pl.'s Not. of Compliance with Court's Feb. 1, 2016 Min. Order; *see also* Final Judgement.  Thus, the Orders bear no resemblance to continuing injunctions that call for ongoing supervision or involvement by a Court.  Indeed, the only aspect of the dispute that was supposed to play out in the future was that portion of the process from which the Court expressly excluded itself:  negotiation over other privileges that were not a part of the initial complaint, and the resolution of the parties' spat over whether they had or had not narrowed the subpoena by agreement.  *See Lynch*, 156 F. Supp. 3d. at 119 ("[A]ny responsive documents that were not embraced in [the privilege assertion on June 20, 2012] are an entirely separate matter, and intervention in that dispute would entangle the Court in an ongoing political dispute of the sort that is not suitable to judicial resolution.").

Furthermore, if a goal of the request that the Orders be vacated is, as the parties have indicated, to eliminate any "preclusive effect[s]," Conditional Settlement Agreement ¶ 4, the Circuit has made it clear that future preclusive effects do not fall within the scope of "prospective application" as that term is used in  Rule 60(b)(5).  *Hall v. CIA,* 437 F.3d 94, 101 (D.C. Cir. 2006), quoting *Twelve John Does,* 841 F.2d at 1139–40 ("[P]reclusive effects do not qualify as 'prospective application[s]' under Rule 60(b)(5), which is addressed to 'executory' decrees or ones involving 'the supervision of changing conditions or circumstances.'").  Accordingly, there is no legal basis to vacate the Orders under Rule 60(b)(5).

## II. The Parties are Not Entitled to Vacatur under Rule 60(b)(6).

The parties also point the Court to subsection (b)(6) of Rule 60, referred to as the catch-all provision, *see Kramer v. Gates,* 481 F.3d 788, 792 (D.C. Cir. 2007), which authorizes courts to grant relief from a judgment for "any other reason." Fed. R. Civ. P. 60(b)(6). It is a well-established principle that a party must show "extraordinary circumstances" to obtain relief under Rule 60(b)(6). *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 393 (1993); *see also Kramer,* 481 F.3d at 792 (observing that a party "must clear a very high bar to obtain relief under Rule 60(b)(6)" and that the rule should be used "only sparingly"). But even if this Court simply weighs the equities involved and considers the public interest, it finds that the parties' motion falls short.

The parties explain that they are seeking vacatur because they "have reached a negotiated resolution of their dispute, contingent on vacatur of only the two specified orders." Joint Mot. at 3. They assert that "equitable considerations strongly favor" their requested relief because settlement "is highly favored," and granting the motion will save the parties and the public "time and money" by facilitating the settlement. Joint Mot. at 3, quoting *United States v. Hyundai Motor Co.,* 77 F. Supp. 3d 197, 199 (D.D.C. 2015) and *Citizens for a Better Env't v. Gorsuch,* 718 F.2d 1117, 1126 (D.C. Cir. 1983). They add that allowing the settlement to proceed will save judicial resources by obviating a decision by the Court of Appeals in a case they are prepared to resolve amicably. Joint Mot. at 3; Joint Suppl. at 1–2. Finally, their conditional settlement agreement also makes it clear that they are seeking to be relieved of any preclusive effect the Orders might have in future litigation. *See* Conditional Settlement Agreement ¶ 4.

None of these considerations supports the grant of equitable relief. First, the Court agrees with the view of the district court in *3M Co. v. Boulter,* 290 F.R.D. at 7, that because the parties' request is based solely on their conditional settlement agreement, *Bancorp* is instructive, even if it

is not binding.  And in *Bancorp*, the Supreme Court stated that judicial opinions "are presumptively correct and valuable to the legal community as a whole.  They are not merely the property of the private litigants and should stand unless a court concludes that the public interest would be served by a vacatur."  *Bancorp*, 513 U.S. at 26, quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting).  When a case between two adversaries ends, the case produces judicial precedent that has "social value . . . created at [a] cost to the public and other litigants."  *In re United States*, 927 F.2d 626, 628 (D.C. Cir. 1991), quoting *In re Mem'l Hosp. of Iowa Cty., Inc.*, 862 F.2d 1299, 1302 (7th Cir. 1998) (stating that precedent should not "be a bargaining chip in the process of settlement" because it is "a public act of a public official").  This is particularly true in this case where the adversaries and amici that briefed and argued their positions before the Court were not private litigants, but all were government entities or individual officials whose mission is to serve the public.

The parties contend nonetheless that vacating the Orders would serve the public interest because their proposed settlement would serve the public interest.  They argue first that it is in the public interest to vacate the Orders because "courts should avoid unnecessarily deciding constitutional questions."  Joint Suppl. at 7–8, citing *Nat'l Black Police Assoc. v. District of Columbia*, 108 F.3d 346, 353–54 (D.C. Cir. 1997).  But the cases the parties cite for this point involved vacating decisions that became moot due to circumstances beyond the control of the parties, and not due to a settlement.  *See Nat'l Black Police Ass'n*, 108 F.3d at 348 (declining to rule on First Amendment challenge to a D.C. campaign finance law that capped campaign contributions after the D.C. Council passed legislation that increased the cap while the case was on appeal); *Kremens v. Bartley*, 431 U.S. 119, 134 (1977) (declining to answer a constitutional question because new legislation made the issue moot); *In re City of El Paso*, 887 F.2d 1103, 1106

(D.C. Cir. 1989) (declining to address the constitutional issue of the district court quashing a deposition subpoena issued by the U.S. Senate because the state court case was dismissed).[7]

Furthermore, the D.C. Circuit has expressed the view that "the precedential power of an opinion is a reason arguing *against* vacatur." *Mahoney v. Babbitt*, 113 F.3d 219, 222–23 (D.C. Cir. 1997) (emphasis added), citing 513 U.S. at 26–27; *see also Jewish War Veterans*, 266 F. Supp. 3d at 248 ("[W]here an opinion establishes precedent on a rarely-litigated constitutional issue . . . , that presents a reason to deny vacatur."), citing *Mahoney*, 113 F.3d at 222. Because disputes between the political branches "are normally settled through negotiation and accommodation," *Miers*, 558 F. Supp. 2d at 85, the issues addressed in the orders can be said to fall within the "rarely-litigated" category, and that militates against vacatur.

The parties also posit that their settlement exemplifies the sort of the comity between the legislative and executive branch that this Court and others have encouraged, and that favors vacatur in this instance. Joint Suppl. at 8–9. They cite *United States v. Am. Tel. & Tel. Co.*, 567 F.2d 121, 127 (D.C. Cir. 1977), in which the Department sought to enjoin AT&T from responding to a Congressional subpoena. Joint Suppl. at 9. The D.C. Circuit noted in that case that there is an "implicit constitutional mandate to seek optimal accommodation" of disputes between the branches of government rather than judicial intervention to resolve them, but after those efforts failed, it determined it was necessary for the Court to resolve the parties' dispute. 567 F.2d at 127–28. Similarly, this Court repeatedly urged the parties to resolve their dispute before it issued

---

7    The parties also cite *Clarke v. United States*, 915 F.2d 699 (D.C. Cir. 1990) (en banc) for the proposition that removing the precedential effect of a ruling that carries broad implications supports vacatur.  *See* Joint Suppl. at 8.  But the D.C. Circuit has subsequently noted that *Clarke* "may no longer be good law." *Mahoney*, 113 F.3d at 222–23 (noting that the Supreme Court held after *Clarke* was decided that "the precedential power of an opinion is a reason arguing against vacatur"), citing *Bancorp*, 513 U.S. at 26–27.

the Orders in this case. *See Comm. on Oversight & Gov't Reform, U.S. House of Representatives v. Holder*, No. 12-cv-1332, 2013 WL 5428834 (D.D.C. Sept. 30, 2013), at *25–26. So the suggestion that the parties should be permitted to work this out among themselves comes a little late in the proceedings to be a compelling factor. Indeed, the Supreme Court has observed that a settlement at this stage does not weigh in favor of vacating an order, because granting vacatur after appeal may create an incentive not to settle earlier in the process. *See Bancorp*, 513 U.S. at 28 (warning that making vacatur available while a judgment is on appeal "may *deter* settlement at an earlier stage" because "*[s]ome* litigants . . . may think it worthwhile to roll the dice rather than settle in the district court . . . if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur") (both emphases in original); *see also Neuman v. Prudential Ins. Co. of Am.*, 398 F. Supp. 2d 489, 493 (E.D. Va. 2005) ("[S]ettlement conditioned on post-judgment vacatur, in sharp contrast to prejudgment settlement" encourages litigants to forgo "settlement early in the litigation process, hoping to either prevail at trial or . . . bargain away any adverse decision.").

Nor does the parties' settlement now do much to conserve judicial resources. While it would render a decision by the Court of Appeals unnecessary, "the judicial economies achieved by settlement at the district-court level are ordinarily much more extensive than those achieved by settlement on appeal." *See Bancorp*, 513 U.S. at 28. That is also particularly true in this case, which involved multiple rounds of briefing and argument to resolve the large number of legal issues. And, since the Orders were not executory, and they have already been complied with, denying the instant motion would not hinder a negotiated resolution in any way; the parties do not

need vacatur to agree to settle the matter and eliminate the expenditure of additional effort on the part of counsel or the Court of Appeals.[8]

At the end of the day, the parties' emphasis on the fact that they have come to an agreement that the Court should welcome rings hollow, and their request that the Orders be vacated because of the settlement and for no other reason is not persuasive.

Not only did the parties fail to take advantage of multiple opportunities to achieve a mediated solution while the case was pending, but the case was virtually over when they came to this vaunted accommodation – the Court had already ordered the production of the documents that had been withheld on deliberative process privilege grounds, and they had already been turned over. The few loose ends that remained had been expressly left to be negotiated between the parties anyway, and the Department advised the Court of Appeals that it had already granted the Committee access to the bulk of those materials too. So there was little if anything to negotiate, and the only real change in circumstance since the filing of the appeal has been the change in political leadership at the Department of Justice in the wake of the Presidential election. This suggests that the primary, if not the sole, objective of the conditional settlement and the pending motion is to erase the Court's prior rulings.

---

8    The parties' suggestion that the Court should value accommodation over the public interest in its opinions is particularly strained in this situation. In the Orders in question, the Court ruled that the documents at issue in the complaint were subject to a valid privilege, but that they must be produced, and thereafter, they were produced. So there was nothing left to negotiate after that took place. With respect to other privileges that had not been challenged in the complaint, and the parties' dispute about whether they had narrowed the universe of records to be searched by agreement, the Court ruled that it would not get involved in those issues and that they were better suited to the process of negotiation and accommodation. This was one of the rulings the Committee appealed, but if it has since changed its position on that issue, there is nothing in the Orders that stands in the way of the negotiated resolution.

The Court of course appreciates the fact that the parties were willing to sit down and resolve the few open issues there were among themselves, even if it was long after the case had come to a conclusion and after the expenditure of the parties' and the Court's resources. But the fact that this unique dispute involving the production of a specific set of records – which the Court found had already been disclosed to the public in any event – has been resolved does not diminish the importance of the fundamental legal questions that arose along the way. And the parties have not articulated any reason why the Court's opinions on those broad subjects – which were shaped by its consideration of the thorough briefing and skilled argument by both sides – should simply evaporate. During the course of this litigation pitting two branches of the United States government against one another, the Court determined: that the dispute was justiciable and that Congress could seek to enforce its duly issued subpoena in this Court; that the executive branch could invoke the deliberative process prong of the executive privilege to shield records from production to the legislature; that the privilege could not be asserted on a blanket basis, though, but only on a document-by-document basis; that the privilege covered internal deliberations concerning communications with Congress or the media; and that the privilege was not absolute and could be waived or overcome by a showing of need. These are all issues that could very well arise again in the future.

The parties maintain that the opinions should be vacated so that this Court's decisions on those complex and delicate issues do not bind other courts in the future. Joint Suppl. at 7–8. But as the parties well know, one district judge's rulings are not binding on other district judges, and they operate only as persuasive authority. *Camreta v. Greene*, 563 U.S. 692, 709, n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."); *Fund for*

*Animals*, 335 F. Supp. 2d at 27 ("[A] decision by a district court has no precedential effect."), citing *In re Exec. Office of the President*, 215 F.3d 20, 24 (D.C. Cir. 2000).  And other courts have noted that "a party's desire to avoid the potential legal precedent set by an order does not qualify for Rule 60(b)(6) relief."  *3M Co.*, 290 F.R.D. at 10, quoting *Tustin v. Motorists Mut. Ins. Co.,* 668 F. Supp. 2d 755, 763 (N.D. W. Va. 2009).

When this Court ruled that it had jurisdiction to hear the dispute between Congress and the Attorney General, it cited another district court's opinion in *Committee v. Miers*, not because it was required to follow it, but because it independently reached the same conclusion.  However, it found the opinion to be persuasive and instructive in that process, and it had access to the ruling on the jurisdictional question even though that dispute was ultimately resolved among the parties. Judges find other judges' opinions to be helpful when they are considering difficult questions, even if they ultimately disagree with them, and that is one reason why these rulings should remain on the books.[9]  Also, the concordance between the two opinions – written by different judges, at times when different political parties were in control of the House and were running the Department of Justice – is a powerful illustration of the fact that under the Constitution, the rule of law endures even when power changes hands, and no matter which party's interests are affected by its application.  This is why the mere fact that the leadership of the Department of Justice has changed should not be deemed to be a circumstance that warrants extraordinary equitable relief, and it is yet another reason that the public interest would not be served by vacatur in this case.

_____

9       The rulings may also prompt analysis in the academic sphere about what the law should be; according to Westlaw, the initial decision finding that the Court had jurisdiction has been cited in fifteen law review articles and the January 2016 Order at issue here has been mentioned in five law review articles and multiple treatises.

In light all these factors, the Court holds that the balance of equities weighs against vacating the Orders and that granting the parties' motion would not be in the public interest.

## CONCLUSION

For the reason set forth above, the Joint Motion for an Indicative Ruling [Dkt. # 130] is DENIED.

AMY BERMAN JACKSON
United States District Judge

DATE:  October 22, 2018